**P O R T E R | S C O T T**

A PROFESSIONAL CORPORATION
Lindsay A. Goulding, SBN 227195
Tatiana M. Bush, SBN 343503
350 University Avenue, Suite 200
Sacramento, California 95825
lgoulding@porterscott.com
tbush@porterscott.com
TEL: 916.929.1481
FAX: 916.927.3706

Attorneys for Defendant
LAWRENCE MCVOY

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

DAVID M. KISSNER, an individual,

        Plaintiff,

v.

LOMA PRIETA JOINT UNION SCHOOL DISTRICT, a California public agency; LISA FRASER, former superintendent at Loma Prieta Joint Union School District, in her official and individual capacities; COREY KIDWELL, former superintendent at Loma Prieta Joint School District, in her official and individual capacities; KEVIN GRIER, successor superintendent at Loma Prieta Joint School District, in his official capacity; BILLY MARTIN, principal of CT English Middle School, in his official and individual capacities; DEANA A. ARNOLD, Loma Prieta Joint Union School District trustee, in her official and individual capacities; BEN ABELN, Loma Prieta Joint Union School District trustee, in his official and individual capacities; RON BOURQUE, Loma Prieta Joint Union School District trustee, in his official and individual capacities; CHARLOTTE KHANDELWAL, Loma Prieta Joint Union School District

CASE NO. 22-CV-00949-CRB
Assigned to: Hon. Charles R. Breyer

**DECLARATION OF LINDSAY A. GOULDING IN SUPPORT OF DEFENDANT'S MOTION FOR ADMINISTRATIVE RELIEF REQUESTING LEAVE FOR PAGE LIMIT INCREASE TO NOTICE OF MOTIONS AND [1] SPECIAL MOTION TO STRIKE PURSUANT TO CALIFORNIA ANTI-SLAPP STATUTE, CAL. CODE OF CIV. PROC. § 425.16, OR, IN THE ALTERNATIVE, [2] MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. 12(b)(6); MEMORANDUM OR POINTS AND AUTHORITIES**

Complaint Filed: 3/20/2022

PORTER |SCOTT
350 University Avenue, Suite 200
Sacramento, CA  95825
TEL: 916.929.1481
FAX: 916.927.3706

{02714451.DOCX}

1

DECLARATION OF LINDSAY A. GOULDING IN SUPPORT OF DEFENDANT'S MOTION FOR ADMINISTRATIVE RELIEF REQUESTING LEAVE FOR PAGE LIMIT INCREASE TO NOTICE OF MOTIONS AND [1] SPECIAL MOTION TO STRIKE PURSUANT TO CALIFORNIA ANTI-SLAPP STATUTE, CAL. CODE OF CIV. PROC. § 425.16, OR, IN THE ALTERNATIVE, [2] MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. 12(b)(6)

PORTER | SCOTT
350 University Avenue, Suite 200
Sacramento, CA 95825
TEL: 916.929.1481
FAX: 916.927.3706

1   trustee, in her official and individual
2   capacities; ERIN ASHEGHIAN, Loma
    Prieta Joint Union School District trustee, in
3   her official and individual capacities;
    PATRICIA ELLIOT, an individual; JOIE
4   GRIMMET, an individual; LAWRENCE
    MCVOY, and individual, and DOES 1
5   through 50, inclusive,

6          Defendants.

7   _____/

8

9              **DECLARATION OF LINDSAY A. GOULDING**

10      I, Lindsay A. Goulding, state and declare as follows:

11      1.      I am an attorney at law licensed to practice before all courts in the State of

12   California. I am a shareholder at the law firm of Porter Scott, attorneys of record for defendant

13   LAWRENCE MCVOY in the above-entitled action. In that capacity, I have personal knowledge

14   of the facts set forth below or have been sufficiently informed with respect to the information, and

15   could competently testify thereto if called upon to do so.

16      2.      I have reviewed the Motion for Administrative Relief Requesting Leave For Page

17   Limit Increase to Defendant's [1] Special Motion To Strike Pursuant To California Anti-SLAPP

18   Statute and the [2] Motion To Dismiss Pursuant To Federal Rule Of Civil Procedure 12(b)(6) that

19   accompanies my declaration and believe the contents of the motion to be true and accurate and

20   that the granting of the motion is warranted in this case.

21      3.      On May 16, 2022, I sent a Meet and Confer letter to Plaintiff's counsel regarding

22   all causes of action against MCVOY. I informed Plaintiff's counsel that we would be willing to

23   waive attorneys' fees if Plaintiff dismissed all causes of action against MCVOY. I informed

24   Plaintiff's counsel that failure to dismiss all causes of action would result in my filing a Special

25   Motion to Strike Pursuant to California Anti-SLAPP Statute with request for attorneys' fees and

26   Motion to Dismiss Pursuant to FRCP 12(b)(6). See **Exhibit A**.

27      4.      On May 23, 2022, Plaintiff's counsel responded and agreed to dismiss with

28   prejudice the following causes of action: civil harassment, intentional infliction of emotional

{02714451.DOCX}                                    2

1   distress and civil rights conspiracy.  See **Exhibit B.**

2   　　　5.　　On May 25, 2022, I informed Plaintiff's counsel by e-mail of our intention to file

3   the Special Motion to Strike Pursuant to California Anti-SLAPP Statute with request for attorneys'

4   fees and Motion to Dismiss Pursuant to FRCP 12(b)(6).

5   　　　6.　　On May 26, 2022 – the day Defendant's responsive pleading was due, Plaintiff's

6   counsel notified me by e-mail that he was not actually going to dismiss with prejudice one (1) of

7   the aforementioned causes of action. Consequently we spent the better part of the day updating

8   Defendant's Responsive Pleading to address the cause of action that would no longer be

9   dismissed.  The Motion was timely filed in the department I erroneously understood to be the

10  appropriate department.  See **Exhibit C**.

11  　　　7.　　Plaintiff received a timely copy of Defendant's Responsive Pleading by both email

12  and ECF service and, as such, has suffered no harm or prejudice resulting from this inadvertent

13  delay.

14  　　　8.　　On May 27, 2022, Plaintiff's counsel notified me by e-mail of his intent to oppose

15  Defendant's Notice of Motions and Motions as untimely. See **Exhibit D**. Because of this, I am not

16  able to provide a stipulation and instead submit this declaration.

17  　　　I declare under penalty of perjury under the laws of the United States that the foregoing is

18  true and correct and that this declaration was executed on May 27, 2022, in Sacramento,

19  California.

20

21  

22  　　　　　　　　　　　　　　　　Lindsay A. Goulding

23

24

25

26

27

28

PORTER │ SCOTT
350 University Avenue, Suite 200
Sacramento, CA  95825
TEL: 916.929.1481
FAX: 916.927.3706

**DECLARATION OF LINDSAY A. GOULDING IN SUPPORT OF DEFENDANT'S MOTION FOR ADMINISTRATIVE RELIEF REQUESTING LEAVE FOR PAGE LIMIT INCREASE TO NOTICE OF MOTIONS AND [1] SPECIAL MOTION TO STRIKE PURSUANT TO CALIFORNIA ANTI-SLAPP STATUTE, CAL. CODE OF CIV. PROC. § 425.16, OR, IN THE ALTERNATIVE, [2] MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. 12(b)(6)**

# EXHIBIT "A"

01054547.WPD

**PORTER | SCOTT**

ATTORNEYS

May 16, 2022

<u>**VIA E-MAIL**</u>

William J. Beker, Jr.
Jeremiah D. Graham
FREEDOM X
11500 Olympic Blvd., Suite 400
Los Angeles, CA. 90064
Bill@FreedomXLaw.com
JeremiahDGraham@gmail.com

Re:   <u>**David M. Kissner v. Loma Prieta Joint Union School District et al.,**</u>
      **United States District Court Northern District of California**
      **Case No.: 22-CV-00949-VKD**

Dear Messer's:

Please allow this correspondence to serve as an effort to meet and confer regarding plaintiff's Second Amended Complaint ("SAC") as it relates to the causes of action alleged against Lawrence McVoy.  As explained in detail below, plaintiff's SAC fails to plead facts sufficient to establish any of the causes of action against McVoy.

**I.     <u>DEFAMATION PER SE</u>**

Plaintiff asserts his fourth cause of action for defamation per se against defendant McVoy.

"To sustain a cause of action for defamation, a plaintiff must demonstrate the intentional publication of a statement of fact which is false, unprivileged, and has a natural tendency to injure or which causes special damage."  *Ringler Assocs. Inc. v. Md. Cas. Co.* (2000) 80 Cal. App. 4th 1165, 1179.  "The question whether a statement is defamatory can be reached on a demurrer as a matter of law."  *Polygram Records, Inc. v. Superior Court* (1985) 170 Cal. App. 3d 543, 551.  "The critical determination of whether an allegedly defamatory statement constitutes fact or opinion is a question of law for the court [citation] and therefore suitable for resolution by demurrer." *Ferlauto v. Hamsher* (1999) 74 Cal. App. 4th 1394, 1401.

Here, plaintiff fails to plead facts necessary to show that McVoy's post was a statement of fact rather than opinion.  As quoted, the statement in question is: "… Fuck that guy. He's someone who was grooming kids. I can't prove that, but all the evidence points that way." The words, "I can't prove that" on their face establish that McVoy was not making a statement of fact, but was airing his opinion on the evidence before him. As McVoy's post was nothing more than a statement of opinion, it does not give rise to a defamation claim.  *See Eisenberg v. Alameda Newspapers,*



William J. Beker, Jr.
Jeremiah D. Graham
**Kissner v. Loma Prieta Union School District**
May 16, 2022
Page 2

*Inc.* (1999) 74 Cal. App. 4th 1359, 1383 ("It is an essential element of defamation that the publication be of a false statement of *fact* rather than opinion."). Thus, plaintiff's defamation claim fails.

Furthermore, "[p]ublic figure plaintiffs must also prove that the defendant acted with actual malice, meaning that the defendant uttered the statement with knowledge that it was false or with reckless disregard for whether it was false or not." *See Nguyen-Lam v. Cao* (2009) 171 Cal. App. 4th 858, 867, citing *New York Times Co. v. Sullivan* (1964) 376 U.S. 254, 279-80. Plaintiff qualifies as a limited public figure for the purposes of this claim because of his numerous media interviews, being the subject of various news articles, his persistent, active presence within the community, the small size of the community (about 3,000 people), and more. Consequently, to be successful on a claim of defamation as a limited public figure, plaintiff must prove actual malice.

To prove actual malice, plaintiff must demonstrate that McVoy knew his statements were false or exhibited a reckless disregard for their truth. *Kimoanh Nguyen-Lam v. Sinh CuongaCao* (2009) 171 Cal. App. 4th 858, 867. "Malice requires 'plaintiffs to show that defendant had "a high degree of awareness of probable falsity," and "in fact entertained serious doubts as to the truth of his publication," such that defendant had a "subjective awareness of probable falsity."''" *Barger v. Playboy Enters.* (N.D. Cal. 1983) 564 F. Supp. 1151, 1156, quoting *Garrison v. La.* (1964) 379 U.S. 64, 74-79.

Here, there is absolutely no evidence pled by plaintiff, nor any in existence to suggest that McVoy knew that his statement was false at the time of posting nor made with reckless disregard for its truth; particularly given the fact that McVoy was merely sharing his personal opinion in response to another community member releasing public records obtained pursuant to the California Public Records Act (i.e., the Amended Notice of Intent to Dismiss and the subsequent Board Decision.)

Plaintiff alleges that "McVoy's statement of fact is false, unprivileged, and has a natural tendency to injure Kissner throughout the community…." However, plaintiff has pled no facts even remotely suggesting that McVoy knew his statement was false. Even drawing all reasonable inferences in plaintiff's favor, the absent allegations in his SAC make no suggestion that McVoy had "a high degree of awareness of [any] probable falsity" of plaintiff's grooming behavior. *Garrison v La.* (1964) 379 U.S. 64, 74. Thus plaintiff's defamation claim as a limited public figure also fails.

## II.    FALSE LIGHT INVASION OF PRIVACY

Plaintiff asserts his fifth cause of action for false light invasion of privacy against defendant McVoy.



William J. Beker, Jr.
Jeremiah D. Graham
**Kissner v. Loma Prieta Union School District**
May 16, 2022
Page 3

"'False light' is a species of invasion of privacy, based on publicity that places a plaintiff before the public in a false light that would be highly offensive to a reasonable person, and where the defendant knew or acted in reckless disregard as to the falsity of the publicized matter and the false light in which the plaintiff would be placed." *Jackson v. Mayweather* (2017) 10 Cal. App. 5th 1240, 1264.

Generally, in order to establish a claim for false light invasion of privacy, the plaintiff must establish that the defendant had knowledge of the falsity of the representation on which the claim is based or acted in reckless disregard as to its truth or falsity. *See* Restatement Second, Torts § 625(E)(b). This requires plaintiff to plead facts sufficient to show that defendant had knowledge of the falsity yet published the statement anyway. Plaintiff must make a similar showing to prove the statement to be "highly offensive to a reasonable person."

Here, plaintiff pleads no facts alleging McVoy had knowledge his statement was false or that he acted with reckless disregard as to its falsity. Thus, plaintiff's false light claim fails.

Additionally, "[w]hen a false light claim is coupled with a defamation claim, [as is here,] the false light claim is essentially superfluous and stands or falls on whether it meets the same requirements as the defamation cause of action." *Jackson v. Mayweather* (2017) 10 Cal. App. 5th 1240, 1264. As explained above, plaintiff fails to plead facts sufficient to prove all elements of defamation. For these same reasons, plaintiff's claim of false light is equally deficient. Thus, plaintiff's false light claim fails again.

## III.   **CIVIL HARASSMENT**

Plaintiff asserts his twelfth cause of action for civil harassment against defendant McVoy.

In order to properly plead a civil harassment cause of action "the plaintiff must show by clear and convincing evidence that he has been harassed, which is defined as 'a knowing and willful course of conduct directed at a specific person which seriously alarms, annoys, or harasses the person, and which serves no legitimate purpose." *Nebel v. Sulak* (1999) 73 Cal. App. 4th 1363, 1369. To prove harassment, plaintiff must plead facts alleging defendant engaged in continued behavior establishing harassment. Stated another way, plaintiff must plead facts alleging McVoy's course of conduct which show harassment. "The course of conduct must be such as would cause a reasonable person to suffer substantial emotional distress and must actually cause substantial emotional distress to the plaintiff. Course of conduct 'is a pattern of conduct composed of a series of acts over a period of time, however short, evidencing a continuity of purpose." *Ibid*.; *see also* Cal. Code Civ. Proc. § 527.6(b) and (d).

California Code of Civil Procedure section 527.6 "require[s] the applicant to establish a course of conduct giving rise to a threat of future harm necessitating injunctive relief. In other words, the



William J. Beker, Jr.
Jeremiah D. Graham
**Kissner v. Loma Prieta Union School District**
May 16, 2022
Page 4

course of conduct must be ongoing at the time the injunction is sought, as a single incident of harassment does not constitute a course of conduct entitling the applicant to injunctive relief." *Scripps Health v. Marin* (1999) 72 Cal. App. 4th 324, 333.

Here, plaintiff has only pled a single statement made by McVoy as the basis of his civil harassment cause of action. However, a single statement is not a "pattern of conduct composed of a series of acts over a period of time." For this reason, plaintiff's SAC fails to plead facts sufficient to show McVoy engaged in the requisite "course of conduct" necessary to prove civil harassment.

Thus, plaintiff's civil harassment claim fails.

## IV.    INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

Plaintiff asserts his thirteenth cause of action for intentional infliction of emotional distress against defendant McVoy.

"A cause of action for intentional infliction of emotional distress exists when there is '(1) extreme and outrageous conduct by the defendant with the intention of causing, or reckless disregard of the probability of causing, emotional distress; (2) the plaintiff's suffering severe or extreme emotional distress; and (3) actual and proximate causation of the emotional distress by the defendant's outrageous conduct.' A defendant's conduct is 'outrageous' when it is so 'extreme as to exceed all bounds of that usually tolerated in a civilized community.' And the defendant's conduct must be 'intended to inflict injury or engaged in with the realization that injury will result.'" *Hughes v. Pair* (2009) 46 Cal. 4th 1035, 1050–51.

"[T]he trial court initially determines whether a defendant's conduct may reasonably be regarded as so extreme and outrageous as to permit recovery." *Plotnik v. Meihaus* (2012) 208 Cal. App. 4th 1590, 1614. "[M]any [courts] have dismissed intentional infliction of emotional distress cases on demurrer, concluding that the facts alleged do not amount to outrageous conduct as a matter of law." *Bock v. Hansen* (2014) 225 Cal. App. 4th 215, 235. This application is appropriate here.

Here, (1) plaintiff fails to state facts alleging McVoy's statement was extreme and outrageous. Plaintiff further fails to plead any facts showing McVoy made his statement with the intent to cause plaintiff emotional distress. (2) Plaintiff also fails to plead any facts as relates to McVoy showing plaintiff's suffering severe or emotional distress. Finally, (3) plaintiff fails to plead any facts showing plaintiff's alleged suffering to be caused by McVoy's statement. Thus, plaintiff's intentional infliction of emotional distress claim fails.

## V.    NEGLIGENCE

Plaintiff asserts his fifteenth cause of action for negligence against defendant McVoy.



William J. Beker, Jr.
Jeremiah D. Graham
**Kissner v. Loma Prieta Union School District**
May 16, 2022
Page 5

"The elements of a cause of action for negligence are well established. They are '(a) a legal duty to use due care; (b) a breach of such legal duty; [and] (c) the breach as the proximate or legal cause of the resulting injury.'" *Ladd v. County of San Mateo* (1996) 12 Cal. 4th 913, 917.

"The concept of duty of care is still an essential factor in any assessment of liability for negligence. Whether a defendant owes a duty of care in a given factual situation presents a question of law which is to be determined by the courts alone, and the judicial recognition of a duty of care in a defendant, with the consequence of his liability for negligence for its breach, is initially to be directed or precluded by considerations of public policy." *Peter W. v. San Francisco Unified School District* (1976) 60 Cal. App. 3d 814, 815-16. "The existence of a duty to use care is '[t]he threshold element of a cause of action for negligence.'" *Southern California Gas Leak Cases* (2017) 18 Cal. App. 5th 581, 587, *aff'd* (2019) 7 Cal. 5th 391.

Where the pleadings and matters subject to judicial notice establish the defendant owed the plaintiff no duty, a negligence case may properly be disposed of on demurrer, without further waste of judicial resources. *See Avila v. Citrus Community College District* (2006) 38 Cal. 4th 148.

Here, plaintiff pleads no facts specific to McVoy showing McVoy owed him any duty of care under any theory of negligence. Additionally, regarding plaintiff's alleged economic damages, "a defendant [generally] owes no duty to prevent purely economic loss to third parties under any negligence theory." *Southern California Gas Leak Cases* (2017) 18 Cal. App. 5th 581, 587, *aff'd* (2019) 7 Cal. 5th 391. This means that plaintiff has failed to meet even the threshold element of a negligence cause of action against McVoy. Thus, plaintiff's negligence claim fails.

## VI.   CIVIL RIGHTS CONSPIRACY

Plaintiff asserts his eighteenth cause of action for civil rights conspiracy against defendant McVoy.

"Every person who, ***under color of any statute***, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress ...." 42 U.S.C. § 1983, emphasis added. Private actors are considered state actors under § 1983 <u>only</u> if their conduct that allegedly gave rise to the deprivation of plaintiffs' constitutional rights may be fairly attributable to the State. *Marie v. American Red Cross* (6th Cir. 2014) 771 F. 3d 344.

Here, plaintiff fails to plead any facts alleging McVoy's action in making an opinion-based statement in a community forum as a private actor was in *any* way "attributable to the State" as is



William J. Beker, Jr.
Jeremiah D. Graham
**Kissner v. Loma Prieta Union School District**
May 16, 2022
Page 6

required to assert a valid claim for civil rights conspiracy. Thus, plaintiff's civil rights conspiracy claim fails.

## VII.   ANTI-SLAPP MOTION AND MOTION TO DISMISS

"A special motion to strike under the anti-SLAPP statute, Code of Civil Procedure section 425.16, 'is a procedural remedy to dispose of lawsuits brought to chill the valid exercise of a party's constitutional right of petition or free speech. [Citation.] The purpose of the anti-SLAPP statute is to encourage participation in matters of public significance and prevent meritless litigation designed to chill the exercise of First Amendment rights. [Citation.] The Legislature has declared that the statute must be "construed broadly" to that end.'" [Citation.] [an appellate court, whenever possible, should interpret the First Amendment and section 425.16 in a manner "favorable to the exercise of freedom of speech, not its curtailment"]. This legislative directive "is expressed in unambiguous terms." [Citation.] "[T]he broad construction expressly called for in subdivision (a) of section 425.16 is desirable from the standpoint of judicial efficiency." [Citation.] *De Havilland v. FX Networks, LLC* (2018) 21 Cal. App. 5th 845, 854–855.

Here, McVoy's statement in the community forum discussing the Amended Notice of Intent to Dismiss and the subsequent Board Decision is a conversation among community members on a topic of public significance; specifically, the possibility of an ongoing threat to children manifested in plaintiff's continued behavior. Community members, including McVoy, were sharing statements of public concern. As such, we believe McVoy's statement falls squarely within the intent of the Ant-SLAPP statute: to "prevent the meritless litigation designed to chill the exercise of First Amendment rights."

California Code of Civil Procedure section 425.16 permits a defendant to bring a special motion to strike state law claims based on protected speech. This statute "was enacted to allow early dismissal of meritless first amendment cases aimed at chilling expression through costly, time-consuming litigation." *Metabolife Int'l, Inc. v. Wornick* (9th Cir. 2001) 264 F.3d 832, 839. Evaluation of an anti-SLAPP motion entails a burden-shifting approach. First, the burden is on the moving party to make prima facie showing that the statute applies. *See Equilon Enters. v. Consumer Cause, Inc.* (2002) 29 Cal. 4th 53, 67-68. The plaintiff must "demonstrate that the act or acts of which the plaintiff complains were taken 'in furtherance of the [defendant]'s right of petition or free speech under the United States or California Constitution in connection with a public issue,' as defined in the statute." *Ibid.*, quoting Cal. Code Civ. Proc. § 425.16; *see also Dwight R. v. Christy B.* (2013) 212 Cal. App. 4th 697, 710. The anti-SLAPP statute broadly defines what acts are covered, including

> (1) any written or oral statement or writing made before a legislative, executive, or judicial proceeding, or any other official proceeding authorized by law, (2) any written or oral statement or writing made in connection with an issue under



William J. Beker, Jr.
Jeremiah D. Graham
**Kissner v. Loma Prieta Union School District**
May 16, 2022
Page 7

> consideration or review by a legislative, executive, or judicial body, or any other official proceeding authorized by law, (3) any written or oral statement or writing made in a place open to the public or a public forum in connection with an issue of public interest, or (4) any other conduct in furtherance of the exercise of the constitutional right of petition or the constitutional right of free speech in connection with a public issue or an issue of public interest.

Cal. Code Civ. Proc. § 425.16(e). If the court finds the anti-SLAPP movant has established covered conduct, the burden shifts to the plaintiff to demonstrate "a probability of prevailing on the claim." *Equilon Enters. v. Consumer Cause, Inc.* (2002) 29 Cal. 4th 53, 67.

> In order to establish a probability of prevailing on the claim, a plaintiff responding to an anti-SLAPP motion must state *and* substantiate a legally sufficient claim. Put another way, the plaintiff must demonstrate that the complaint is both legally sufficient *and* supported by a sufficient prima facie showing of facts to sustain a favorable judgment if the evidence submitted by the plaintiff is credited.

*Wilson v. Parker, Covert & Chidester* (2002) 28 Cal. 4th 811, 821, quotation marks, alterations, and citations omitted; emphasis added. Given the current factual situation as pled in plaintiff's SAC and the fact that McVoy's statement clearly falls within subdivision (e) of the anti-SLAPP statute, plaintiff will not be able to establish the requisite probability of success on his claims to survive defendant's demurrer. Plaintiff fails to plead facially sufficient evidence that he will succeed as a matter of law.

Code of Civil Procedure Section 425.16(c)(1) provides, in pertinent part, "a prevailing defendant on a[n anti-SLAPP motion] shall be entitled to recover his or her attorney's fees and costs." The language of Section 425.16(c)(1) is mandatory: "[I]t requires a fee award to a defendant who brings a successful motion to strike. Accordingly, our Supreme Court has held that under this provision, 'any SLAPP defendant who brings a successful motion to strike is entitled to mandatory attorney fees.'" *G.R. v. Intelligator* (2010) 185 Cal. App. 4th 606, 620, citations and italics omitted.

If we are forced to bring a Motion to Dismiss and Anti-SLAPP Motion to Strike, we will recover our fees in doing so. However, if you dismiss the Complaint as to McVoy with prejudice now – and before we spend the time preparing said Motions – we will agree to waive fees and costs incurred to date.

Please confirm receipt of this correspondence. Please also provide a substantive response to these issues by or before Monday, May 23, 2022, so we may inform the court or proceed with the aforementioned motions.

PORTER | SCOTT
ATTORNEYS

William J. Beker, Jr.
Jeremiah D. Graham
**Kissner v. Loma Prieta Union School District**
May 16, 2022
Page 8

Thank you for your attention to this matter.  Please do not hesitate to contact my office with any questions or concerns.

Very truly yours,

PORTER SCOTT
A PROFESSIONAL CORPORATION

By

Lindsay A. Goulding

LAG/txb

# EXHIBIT
# "B"

01054547.WPD



May 23, 2022

Lindsay A. Goulding, Esq.
PORTER SCOTT
350 University Avenue, Suite 200
Sacramento, CA 95825

       Re:    Mot. To Dismiss/Mot. To Strike Meet And Confer
       Case:  <u>David M. Kissner v. Loma Prieta Joint Union School District, et al</u>. (USDC-ND)
       Case No.:   22-CV-00949-VKD
       Our Client:  David M. Kissner
       Your Client:  Lawrence McVoy

Dear Ms. Goulding:

We have reviewed your correspondence of May 16, 2022, and thank you for presenting it to us for consideration. In the following discussion, we address your concerns, concluding that an anti-SLAPP motion to strike and a motion to dismiss will not succeed as to the defamation and false light claims. We agree to dismiss the remaining claims.

## I.     MOTION TO STRIKE (CODE CIV. PROC. § 425.16)

As you correctly point out, proof of an act made in furtherance of one's right to petition or free speech raises a rebuttable presumption that can be defeated by the plaintiff in order to avoid anti-SLAPP liability. Under the statute's burden-shifting scheme, the defendant need only establish that the challenged lawsuit arose from an act on the part of the defendant in furtherance of his right of petition or free speech. *Equilon*, *id*., quoting *Fox Searchlight Pictures, Inc. v. Paladino*, 89 Cal. App. 4th 294, 307 (Cal. App. 2d Dist. 2001). This is sufficient to raise a presumption of constitutionality.

Once the defendant has met his prima facie burden, "[i]t is then up to the plaintiff to rebut the presumption [of constitutionality] by showing a reasonable probability of success on the merits" of the challenged claim." *Id*. Plaintiff can succeed in meeting his burden by "demonstrat[ing] that the complaint is both legally sufficient and supported by a sufficient prima facie showing of facts to sustain a favorable judgment" *Wilson v. Parker, Covert & Chidester*, 28 Cal.4th 811, 821 (2002).

" 'Reasonable probability' in the anti-SLAPP statute has a specialized meaning" and "requires only a 'minimum level of legal sufficiency and triability.' " *Chaquico v. Freiberg*, 17-CV-02423-MEJ, 2018 WL 3368733, at *3 (N.D. Cal. July 10, 2018). "Indeed, the second step of the anti-SLAPP inquiry is often called the "minimal merit" prong." *Mindys Cosmetics, Inc. v. Dakar*, 611 F.3d 590, 598 (9th Cir. 2010). California courts have repeatedly emphasized that "[o]nly a cause

**FREEDOM X**

Lindsay A. Goulding, Esq.
PORTER SCOTT
May 23, 2022
Page 2 of 9

_____

of action that lacks even minimal merit constitutes a SLAPP." *Overstock.com, Inc. v. Gradient Analytics, Inc.*, 151 Cal.App.4th 688, 700 (2007). "To establish 'minimal merit,' the plaintiff need only 'state and substantiate a legally sufficient claim.' " *Id.* at 598–99. "This entails a "sufficient prima facie showing of facts to sustain a favorable judgment if the evidence submitted by the plaintiff is credited." *Davis v. Elec. Arts Inc.*, 10-03328 RS, 2012 WL 3860819, at *11 (N.D. Cal. Mar. 29, 2012), aff'd, 775 F.3d 1172 (9th Cir. 2015). "In evaluating the parties' positions, the court is to consider 'the pleadings, and supporting and opposing affidavits stating the facts upon which the liability or defense is based.' " *Id.*; Code Civ. Proc. § 425.16(b)(2).

As I will explain, Kissner's complaint satisfies the plaintiff's burden as to the claims for defamation and false light.

## II.     DEFAMATION PER SE

### A.     Whether McVoy's Statement Asserts Facts Or Opinions Is A Question Of Fact To Be Determined By A Jury

As alleged, McVoy published the following statement: "… Fuck that guy. He's someone who was grooming kids. I can't prove that but all the evidence points that way." Compl., ¶ 283.

The dispositive question is whether a reasonable factfinder could conclude that McVoy's statement implies an assertion that Kissner is a "groomer" (i.e., child sexual predator). *See Milkovich v. Lorain J. Co.*, 497 U.S. 1, 21 (1990). McVoy stated categorically that Kissner "was grooming kids" and that "all the evidence points that way." This is not the sort of "loose, figurative, or hyperbolic language which would negate the impression" that McVoy was seriously maintaining that Kissner committed the crime of grooming.[1] *See id*; *see also Baker v. Los Angeles Herald Examr.*, 42 Cal. 3d 254, 261-262 (1986) (language indicating author's "impression" would lead "a reasonable person [to] understand that a statement of opinion rather than of fact was to follow."). Nor does the general tenor of the post ("Fuck that guy.") negate this impression. *See id*.

You argue the language "I can't prove that" implies the statement, taken in its entirety, transforms the categorical assertions of fact into opinion. But that is not at all obvious. Rather, taken as a

_____

[1] The federal government defines grooming, which is technically called "enticement," as "a method used by offenders that involves building trust with a child and the adults around a child in an effort to gain access to and time alone with them. In extreme cases, offenders may use threats and physical force to sexually assault or abuse a child. More common, though, are subtle approaches designed to build relationships with families." Section 2422 of the United States Criminal Code is the federal enticement law that makes it a crime to attempt or to knowingly persuade, induce, entice, or coerce any individual under age 18 to engage in prostitution or any criminal sexual activity.

**FREEDOM X**

Lindsay A. Goulding, Esq.
PORTER SCOTT
May 23, 2022
Page 3 of 9

_____

whole, McVoy's statement suggests ambiguously that proof of guilt depends both on a subjective standard (his ability to prove it) and/or an objective standard ("all the evidence"). "[S]ome statements are ambiguous and cannot be characterized as factual or nonfactual as a matter of law." *Kahn v. Bower*, 232 Cal. App. 3d 1599, 1608 (Cal. App. 1st Dist. 1991), reh'g denied and opinion modified (Sept. 6, 1991) (citations omitted). Although "[t]he question whether the challenged statements convey the requisite factual imputation is ordinarily a question of law for the court," "[i]n these circumstances, it is for the jury to determine whether an ordinary reader would have understood the [statement] as a factual assertion...." *Id*. Accordingly, whether ambiguous statements are assertions of fact or opinion cannot be reviewed on a motion to dismiss or an anti-SLAPP motion to strike.

Quite obviously, whether McVoy can prove guilt is nugatory if "all the evidence" proves it and nothing McVoy states negates the observation that "all the evidence" proves guilt. Nor does McVoy attempt to qualify his statement in any particular way to suggest he is offering his own interpretation of "all the evidence" (e.g., All the evidence "apparently" shows Kissner to be a groomer;  My impression is that …). *See Baker*, *supra*. In fact, McVoy doesn't bother to outline the facts available to him sufficient to make it clear that the challenged statements represent his own interpretation of express facts. *See Manufactured Home Communities, Inc. v. County of San Diego*, 544 F.3d 959, 965 (9th Cir. 2008); *Partington v. Bugliosi*, 56 F.3d 1147, 1156 (9th Cir. 1995) ("[W]hen a speaker outlines the factual basis for his conclusion, his statement is protected by the First Amendment."). Indeed, McVoy had no access to authenticated facts, even mischaracterizing a charging document as "evidence."[2]

McVoy's statement is ambiguous for the additional reason that it suggests he may have entertained serious doubts as to its truth ("I can't prove that"). Assuming, *arguendo*, Kissner is a limited public figure, proof of actual malice requires that he either knew of the falsity of the facts he asserted or entertained serious doubts about them. *See Burrill v. Nair*, 217 Cal. App. 4th 357, 390 (Cal. App. 3d Dist. 2013) ("[W]e must determine [at the anti-SLAPP stage] whether [the Plaintiff] has made a sufficient prima facie showing of facts to sustain her burden of demonstrating a high probability that [the Defendant] published the defamatory statements with knowledge of their falsity or while entertaining serious doubts as to their truth.")

Assuming the Court were to conclude that McVoy's statement is unambiguous, the Court would determine whether it is one of fact or opinion by looking to the "totality of the circumstances" and whether the average reader could have reasonably understood McVoy's statement to be one of fact. *Baker v. Los Angeles Herald Examr*., 42 Cal. 3d at 260-261. "When one states a view in terms

_____

[2] McVoy's apparent sources of information included the school district's statement of charges against Kissner in connection with its dismissal proceedings. The allegations McVoy is believed to have relied upon later were voluntarily withdrawn by the District and didn't even survive the prehearing stage of dismissal proceedings.

**FREEDOM X**

Lindsay A. Goulding, Esq.
PORTER SCOTT
May 23, 2022
Page 4 of 9
_____

of an 'impression,' the listener or reader is on notice that the maker is not vouching for its accuracy. A reasonable person would understand that a statement of opinion rather than of fact was to follow." *Id*. at 261–262. In *Baker*, the writer began his message with the words, "[m]y impression is…." *Baker* cites other cases where the writer qualified his statement with the word "apparent" and its cognates. McVoy used no qualifying language.

McVoy could have used qualifying language to soften his assertions. He could have pointed out that the statement of charges is not the final word and that he would await the judgment of the legal tribunal hearing Kissner's dismissal case. Instead, he referred to mere allegations as "evidence." Not just some evidence but "all the evidence."

But even assuming the statement is unambiguous, it is motivated by such ill will and hatred for Kissner that it may reasonably be interpreted as a malicious statement of fact. Evidence of McVoy's hostility toward Kissner's partner in at least one political matter shows McVoy's intemperance to such a degree that he seeks to tactically destroy his political enemies, including using false information disguised as fact.

McVoy knew, for instance, that Kissner and his partner Sean Rokni were the two proponents of a petition against the county superintendent to seek a special board election. McVoy's unhinged hostility toward Rokni and, by association, Kissner is evident in emails he sent to Rokni around the same time he published his defamatory post:

> From: Larry McVoy <lm@mcvoy.com>
> Sent: Saturday, May 8, 2021 8:28 PM
> To: shahryarrokni@hotmail.com <shahryarrokni@hotmail.com>
> Subject: Re: [95033talk] Special Election
>
> I've had 24 hours to think about this.  I wanted to get in a place
> where I could somehow respect you.  And I've failed.
>
> You could have been a decent person and let things play out but instead
> you just poured your hate on the school district, you are fine with costing
> all of us $200-$600K.
>
> Fuck you.  If I saw you bleeding out and you needed my help to live,
> I'd let you bleed out.  You suck that much.
>
> And you can take me to court with my words, I will tell the judge all
> the times I have gone to help people, there are hundreds of times and
> all of those people will show up to back me up.

**FREEDOM X**

Lindsay A. Goulding, Esq.
PORTER SCOTT
May 23, 2022
Page 5 of 9
_____

      I'll tell the judge, judge, this guy is a piece of shit, here is what
he did and here is why I said what I said.

      And you know what?  I'm 100% positive the judge will sigh and go
I'm with Larry, I'm not with this asshole.

      You are just an awful person and you need to leave.  Go some place
else, just leave.

      I saw the video of your son making a kid pass out today.  Awful parent,
awful kid.  You are just an awful person, if a car hit you and you died
today,  I'd be sorry for the loss of life, but I would not be sorry that
you are gone.  You suck.

      Fuck you.

      And for the record, in my 59 years, I have never written an email like
this, this is way over the top for me, if my wife saw this she would be
pissed.  You are that awful.

      On Fri, May 07, 2021 at 10:14:29PM -0700, Larry McVoy wrote:
      > You are an asshole.  Please leave this place.
      >
      > I was willing to give you a chance if you had let it go but you doubled
      > down.  You are an ASSHOLE.  You are not welcome here, I can't believe
      > you want to live in this community, everyone hates you.
      >
      > Fuck you.  I help everyone when stuff goes wrong, I pull people out
      > of ditches, I remove trees, I put the deer down that you hit, I help.
      > I help *everyone*.  I lean hard left, I'm left off Bernie.  I help
      > people who lean hard right.
      >
      > You are the first person that I can say if you were in trouble I would
      > not come help you.  You suck that much.  I will help anyone but I won't
      > come help you.  You are an asshole.  Fuck you.

We have no doubt McVoy was not merely expressing an opinion but was driven by malice in
purposely sabotaging his political adversary.

**FREEDOM X**

Lindsay A. Goulding, Esq.
PORTER SCOTT
May 23, 2022
Page 6 of 9

_____

      **B.**     **<u>Private or Limited Public Figure</u>**

We disagree that Kissner qualifies as a limited public figure. Kissner was a school teacher targeted for dismissal at the time McVoy published his statement. A limited purpose public figure is defined as "an individual [who] voluntarily injects himself or is drawn into a particular public controversy and thereby becomes a public figure for a limited range of issues." *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 351 (1974). However, "[a]bsent **<u>clear evidence</u>** of general fame or notoriety in the community, and pervasive involvement in the affairs of society, an individual should not be deemed a public personality for all aspects of his life. It is preferable to reduce the public-figure question to a more meaningful context by looking to the nature and extent of an individual's participation **<u>in the particular controversy giving rise to the defamation</u>**." *Id*. at 352. (Emphasis added.)

"A private individual is not automatically transformed into a public figure just by becoming involved in or associated with a matter that attracts public attention." *Wolston v. Reader's Dig. Ass'n, Inc.*, 443 U.S. 157, 167 (1979). The "controversy" surrounding Kissner's conduct with children was not something Kissner sought to initiate or exploit. He gave no media interviews concerning it, nor, as you claim, was he the subject of various news articles concerning it. Nor was the separate controversy relating to the 2018 walkouts, where a parent invited media attention to the controversy, Kissner's doing.

The fact that Kissner had an "active presence within the community" participating in civic matters as a concerned citizen, coaching wrestling, participating in church activities, and organizing camping trips, does not thrust him into the ether of fame and notoriety for purposes of this controversy any more than your involvement in civic and social affairs would. *See Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 352 (1974). As the Supreme Court stated in *Time, Inc. v. Firestone*, 424 U.S. 448, 457 (1976) and repeated with emphasis in *Wolston*:

> [W]hile participants in some litigation may be legitimate 'public figures,' either generally or for the limited purpose of that litigation, the majority will more likely resemble respondent, drawn into a public forum largely against their will in order to attempt to obtain the only redress available to them or to defend themselves against actions brought by the State or by others. There appears little reason why these individuals should substantially forfeit that degree of protection which the law of defamation would otherwise afford them simply by virtue of their being drawn into a courtroom. The public interest in accurate reports of judicial proceedings is substantially protected by *Cox Broadcasting Co.* [*v. Cohn*, 420 U.S. 469, 95 S.Ct. 1029, 43 L.Ed.2d 328 (1975)]. As to inaccurate and defamatory reports of facts, matters deserving no First Amendment protection . . . , we think *Gertz* provides an adequate safeguard for the constitutionally protected interests of the press and affords it a tolerable margin for error by requiring some type of fault."

FREEDOM X

Lindsay A. Goulding, Esq.
PORTER SCOTT
May 23, 2022
Page 7 of 9

_____

*Wolston* at 168–69 (1979).

Teachers, in particular, are not held to be public figures. "The governance or control which a public classroom teacher might be said to exercise over the conduct of government is at most remote and philosophical: Far too much so, in our view, to justify exposing each public classroom teacher to a qualifiedly privileged assault upon his or her reputation." *Franklin v. Benv. etc. Or. of Elks*, 97 Cal. App. 3d 915, 924 (Cal. App. 1st Dist. 1979) (holding that public school teachers do not assume the risk of nonmalicious defamation, characterizing such a rule as a "real and intolerable danger to the freedom of intellect and of expression which the teacher must have to teach effectively.")

     **C.**    **Actual Malice**

If, *arguendo*, Kissner is deemed a limited public figure, then proof of defamation requires application of the actual malice standard. In such cases, where a statement reasonably implies false and defamatory facts regarding public figures, the plaintiff must show that such statements were made with knowledge of their false implications **or with reckless disregard of their truth**." *Manzari v. Associated Newspapers Ltd.*, 830 F.3d 881, 891 (9th Cir. 2016), citing *Milkovich v. Lorain Journal Co.*, 497 U.S. 1, 20 (1990) (emphasis added). "[R]eckless conduct is not measured by whether a reasonably prudent man would have published, or would have investigated before publishing. There must be sufficient evidence to permit the conclusion that the defendant in fact entertained serious doubts as to the truth of his publication." *Id*., citing *Time, Inc. v. Pape*, 401 U.S. 279, 291–92 (1971). "This standard ensures that publishers are not held liable for unintentional misstatements or implications, which public figures later claim are defamatory." *Id*.

To be sure, portions of McVoy's statements are aggressively assertive and leave the reader with no doubt that he believes unreservedly that Kissner is a groomer (e.g., "He's someone who was grooming kids."). But as already argued, McVoy inserts an ambiguous tincture of doubt that leaves open the possibility of error ("I can't prove that but…"). McVoy's apparent sources of information included statements posted by other individuals and the school district's statement of charges against Kissner in connection with its dismissal proceedings. McVoy knew or should have known that a statement of "charges" is not a statement of "evidence."

In short, McVoy relied upon a poorly drafted indictment. But he additionally relied upon the indoctrinating influence of other individuals spreading their "confirmation bias" or "anchor bias" via the phenomenon of online social media. *See*, *e.g.*, *Duncan v. Bonta*, 19 F.4th 1087, 1122 (9th Cir. 2021) ("Confirmation bias refers to the tendency to interpret new information as confirmation of one's pre-existing assumptions or theories. Anchoring bias refers to the tendency to over-rely on the initial evidence we discover as we learn about a given topic."). These phenomena, though not restricted to social media, tend to flourish there, leaving the truth to be orphaned and the "received truth" (the consensus view of a subject) to proliferate. As one commentator has noted:

**FREEDOM X**

Lindsay A. Goulding, Esq.
PORTER SCOTT
May 23, 2022
Page 8 of 9

_____

"There's a tenet of journalism: 'If your mother says she loves you, check it out.' In an age when a lie can spread much faster than the truth, the rest of us should check our facts before inflicting them on others."[3] McVoy not only failed to qualify his harmful assertions but acted with reckless disregard for the truth or falsity of the implication that Kissner is a child groomer and the certain damage to Kissner's reputation such an odious claim would naturally breed.

Kissner therefore meets the "minimal merit" threshold to withstand a motion to strike and has sufficiently alleged facts necessary to support the defamation claim.

## III.     FALSE LIGHT INVASION OF PRIVACY

The substantive elements of the false light tort are similar to those of the tort of defamation; for both actions the matter publicized must be in fact false, it must be "published" or communicated to third parties, and the publication must be made with some degree of fault on the part of the originating party. The two torts differ, however, in three substantive ways.

First, the false light cause of action is not limited to matters actually defamatory, either on their face or in context, but may be brought for any "highly offensive" false portrayal before the public, based on the sensitivities of a "reasonable person." Restatement (Second) of Torts § 652E(b) comment b (1965).

Second, any publication or revelation of the subject matter to a third party suffices to give rise to a defamation action,(50 Am. Jur. 2d, Libel and Slander §§ 152 et seq.), while the subject matter of an actionable false light privacy invasion usually is required to come to the notice of at least a substantial portion of the general public, or at least to be of such character and subject to such dissemination as to be reasonably certain of such exposure. This rule comports with the requirement that the plaintiff be placed in a false light "before the public," or falsely be "given publicity" as to the matter at issue. Restatement (Second) of Torts § 652E comment a (1965), citing § 652C comment a.

Finally, there is considerably less emphasis on proof of injury to public reputation in the false light tort than in defamation, the thrust of the false light action being towards the subjective "privacy" of the individual. The emphasis of the false light action, unlike an action for defamation, is on the subjective mental and emotional suffering of the victim, an element of damages which in defamation is either secondary to the loss of reputation, or even irrelevant, depending on the applicable law. 50 Am. Jur. 2d, Libel and Slander §§ 357, 358.

_____

[3] Andrew Kleske, *When fake news travels fast, everyone should become fact-checkers*, San Diego Union-Tribune (2/5/2022); https://www.sandiegouniontribune.com/opinion/commentary/story/2022-02-05/opinion-andrew-kleske-when-fake-news-travels-fast-news-consumers-should-check-their-facts

**FREEDOM X**

Lindsay A. Goulding, Esq.
PORTER SCOTT
May 23, 2022
Page 9 of 9

_____

For these reasons and those made in connection with the defamation claim, unless you can present a compelling argument for dismissing this cause of action, we intend to retain it.

## IV.    CIVIL HARASSMENT/INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS/CIVIL RIGHTS CONSPIRACY

We agree to dismiss these causes of action with prejudice.

**FREEDOM X**

Sincerely,

William J. Becker, Jr., Esq.

# EXHIBIT
# "C"

01054547.WPD

**Tatiana Bush**

---

| | |
|---|---|
| **From:** | Bill Becker <freedomxlaw@gmail.com> |
| **Sent:** | Thursday, May 26, 2022 10:09 AM |
| **To:** | Tatiana Bush |
| **Cc:** | Lindsay A. Goulding; Jeremiah Graham; Virginia Yao |
| **Subject:** | Re: Kissner v. Loma Prieta JUSC, et al. 5:22-cv-00949-VKD Meet and Confer Response |
| **Attachments:** | McVoy.Dismissal.Kissner.Lawsuit.docx |

**\*\*\*External email\*\*\***

# We inadvertently said we would dismiss the intentional infliction of emotional distress claim. Attached is a proposed dismissal of the civil harassment and civil conspiracy claims only. We will file this today.

Bill Becker
President/CEO/Chief Counsel
www.freedomxlaw.com



**Freedom X** is registered with the IRS as a 501(c)(3) charitable non-profit.
Your donations are tax-deductible.

11500 Olympic Blvd., Suite 400 | Los Angeles, CA 90064 | Tel: **(310) 636-1018**

Confidentiality Notice: This electronic mail message (including attachments) is covered by the Electronic Communications Privacy Act, 18 U.S.C. §§ 2510-2521, is confidential and may be legally privileged.  If you are not the intended recipient, you are hereby  notified that any retention, dissemination, distribution, or copying of this communication is strictly prohibited.  Please reply to the  sender that you have received the message in error, or please call the sender at (310) 636-1018 and then delete this email from  your system.  Thank you.

On Wed, May 25, 2022 at 12:31 PM Tatiana Bush <tbush@porterscott.com> wrote:

Mr. Becker,

Thank you for providing your response to our May 16 Meet & Confer letter. Please move forward with the dismissals as to the agreed upon causes of action (i.e., civil harassment, intentional infliction of emotional distress and civil rights conspiracy). We will proceed with the Motions for the remaining causes of action as detailed in our Meet & Confer letter.

Thank you for your time.

My best,

Tatiana

---

**From:** Bill Becker <freedomxlaw@gmail.com>
**Sent:** Monday, May 23, 2022 10:27 AM
**To:** Lindsay A. Goulding <lgoulding@porterscott.com>
**Cc:** Jeremiah Graham <jeremiahdgraham@gmail.com>; Virginia Yao <vyao@porterscott.com>
**Subject:** Kissner v. Loma Prieta JUSC, et al. 5:22-cv-00949-VKD Meet and Confer Response

**\*\*\*External email\*\*\***

# Dear Ms. Goulding:

# Please see the attached response to your May 16 meet and confer letter.

Bill Becker

President/CEO/Chief Counsel

www.freedomxlaw.com

Freedom **X** is registered with the IRS as a 501(c)(3) charitable non-profit.

Your donations are tax-deductible.

11500 Olympic Blvd., Suite 400 | Los Angeles, CA 90064

Tel: (310) 636-1018 | Toll Free: (866) 649-6057 |  Fax: (310) 765-6328

Confidentiality Notice: This electronic mail message (including attachments) is covered by the Electronic Communications Privacy Act, 18 U.S.C. §§ 2510-2521, is confidential and may be legally privileged.  If you are not the intended recipient, you are hereby  notified that any retention, dissemination, distribution, or copying of this communication is strictly prohibited.  Please reply to the  sender that you have received the message in error, or please call the sender at (310) 636-1018 and then delete this email from  your system.  Thank you.

# EXHIBIT
# "D"

01054547.WPD

**Tatiana Bush**

---

| | |
|---|---|
| **From:** | Bill Becker <freedomxlaw@gmail.com> |
| **Sent:** | Friday, May 27, 2022 9:05 AM |
| **To:** | Lindsay A. Goulding |
| **Cc:** | Tatiana Bush; Virginia Yao; Jeremiah Graham |
| **Subject:** | Re: Kissner : wrong judge and courtroom |

**\*\*\*External email\*\*\***

## Calm down. You catch more flies with honey.

[www.freedomxlaw.com](www.freedomxlaw.com)Bill Becker
President/CEO/Chief Counsel
[www.freedomxlaw.com](www.freedomxlaw.com)



**Freedom X** is registered with the IRS as a 501(c)(3) charitable non-profit.
Your donations are tax-deductible.

11500 Olympic Blvd., Suite 400 | Los Angeles, CA 90064 | Tel: **(310) 636-1018**

Confidentiality Notice: This electronic mail message (including attachments) is covered by the Electronic Communications Privacy Act, 18 U.S.C. §§ 2510-2521, is confidential and may be legally privileged.  If you are not the intended recipient, you are hereby  notified that any retention, dissemination, distribution, or copying of this communication is strictly prohibited.  Please reply to the  sender that you have received the message in error, or please call the sender at (310) 636-1018 and then delete this email from  your system.  Thank you.

On Fri, May 27, 2022 at 8:47 AM Lindsay A. Goulding <[lgoulding@porterscott.com](lgoulding@porterscott.com)> wrote:

No Mr. Becker, we did not.  We have not filed a formal appearance yet and you did not serve us with a copy of that order.  We will refile in the appropriate department today. If you chose to oppose based on the motion being untimely, we will point out that you failed to advise us of the change of department and you changed your mind about dismissing one of the causes of action at 10:00 a.m. on the day our motion was due, causing us to have to go back into a completed motion and add arguments related to that causes of action, resulting in a filing at such a late hour that the mistake could not have been discovered until this morning.  Moreover, as you were, in fact, served with our motion timely, you have suffered no harm and any argument to the contrary would be in bad faith.



*Lindsay A. Goulding*

Attorney | Shareholder

350 University Avenue | Suite 200 | Sacramento, CA 95825
T| 916. 929. 1481 x 311 F| 916. 927. 3706

www.porterscott.com

CONFIDENTIALITY NOTICE: This email and any attachments are confidential and privileged.  Any inadvertent disclosure shall not waive the attorney-client or work product privileges.  If you have received this email in error, please notify the sender immediately and delete all copies of the email and any attachments.

**From:** Bill Becker <freedomxlaw@gmail.com>
**Sent:** Friday, May 27, 2022 8:00 AM
**To:** Lindsay A. Goulding <lgoulding@porterscott.com>; Tatiana Bush <tbush@porterscott.com>; Virginia Yao <vyao@porterscott.com>
**Cc:** Jeremiah Graham <jeremiahdgraham@gmail.com>
**Subject:** Kissner : wrong judge and courtroom


**\*\*\*External email\*\*\***


Counsel,


Did you not obtain the order of reassignment? You will need to re-file your motion. We may oppose it as untimely. See the attached Order.


Other counsel appropriately filed it with Judge Breyer for July 21. I suggest you set it for the same date.


www.freedomxlaw.comBill Becker

President/CEO/Chief Counsel

www.freedomxlaw.com

**Freedom X** is registered with the IRS as a 501(c)(3) charitable non-profit.

Your donations are tax-deductible.

11500 Olympic Blvd., Suite 400 | Los Angeles, CA 90064 | Tel: **(310) 636-1018**

Confidentiality Notice: This electronic mail message (including attachments) is covered by the Electronic Communications Privacy Act, 18 U.S.C. §§ 2510-2521, is confidential and may be legally privileged.  If you are not the intended recipient, you are hereby  notified that any retention, dissemination, distribution, or copying of this communication is strictly prohibited.  Please reply to the  sender that you have received the message in error, or please call the sender at (310) 636-1018 and then delete this email from  your system.  Thank you.