1   William J. Becker, Jr., Esq. (SBN: 134545)
    Bill@FreedomXLaw.com
2   Jeremiah D. Graham, Esq. (SBN: 313206)
    JeremiahDGraham@gmail.com
3   **FREEDOM X**
    11500 Olympic Blvd., Suite 400
4   Los Angeles, California 90064
    Telephone: (310) 636-1018
5   Facsímile: (310) 765-6328
6

7   Counsel for *David M. Kissner*

8

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

9

| | |
|---|---|
| **DAVID M. KISSNER**, | Case No. 22-CV-00949-CRB |
| Plaintiff, | Hon. Charles R. Breyer |
| vs. | **PLAINTIFF DAVID M. KISSNER'S RESPONSE IN OPPOSITION TO DEFENDANT LAWRENCE MCVOY'S (1) SPECIAL MOTION TO STRIKE PURSUANT TO CALIFORNIA ANTI-SLAPP STATUTE, CAL. CIV. CODE § 425.16, OR, IN THE ALTERNATIVE, (2) MOTION TO DISMISS PURSUANT TO FEDERAL. R. CIV. P. 12(b)(6); MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF** |
| **LOMA PRIETA JOINT UNION SCHOOL DISTRICT, et al.,** | |
| Defendants. | |

**Date:**   August 12, 2022
**Time:**   10:00 a.m.
**Location:**   Videoconference Only

**SAC Filed:**   March 20, 2022

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................. iii

MEMORANDUM OF POINTS AND AUTHORITIES ..................................................... 1

I.      INTRODUCTION ................................................................................................... 1

II.     RELEVANT FACTUAL BACKGROUND ........................................................... 2

      A.    Pleading History ........................................................................................ 2

      B.    Nature of the Case ..................................................................................... 2

      C.    Civic Activity in 2020 and 2021 ............................................................... 6

      D.    Kissner Is Appealing Both His Layoff And Dismissal ............................. 6

      E.    McVoy Defamed Kissner ......................................................................... 7

      F.    Kissner Was Harmed By McVoy's Statement .......................................... 7

      G.    Kissner is a Private Figure ........................................................................ 8

      H.    Plaintiff's Pleading And Letter Discrepancies Show Plaintiff Has Not Sued
Defendant For Negligence ......................................................................... 9

III.    STANDARDS APPLICABLE TO AN ANTI-SLAPP MOTION .................... 10

IV.     PLAINTIFF KISSNER HAS MORE THAN MET HIS BURDEN TO PREVAIL ON A
MOTION TO STRIKE ........................................................................................ 11

      A.    Plaintiff Need Only Demonstrate His Claims Meet A Minimum Level Of Legal
Sufficiency And Triability To Demonstrate A Probability Of Prevailing On His
Claims Against McVoy ........................................................................... 11

      B.    The Totality Of The Circumstances Demonstrate That Defendant's Statement
Purports To Offer The Online Community A Factual "Summary" Of The
Dismissal Order's Findings .................................................................... 12

      C.    Ambiguous Statements Require The Factfinder To Determine Whether They
Should Be Characterized As Factual Assertions Or Statements Of Opinion ........ 17

V.      STANDARDS APPLICABLE TO MOTION TO DISMISS ............................ 18

      A.    Defendant's Motion To Dismiss Plaintiff's Fourth Claim For Relief Should Be
Denied Because Plaintiff Has Sufficiently Alleged Defamation Per Se ............... 19

      B.    Defendant's Motion To Dismiss Plaintiff's Fifth Claim For Relief Should Be
Denied Because Plaintiff Has Sufficiently Alleged False Light Invasion Of Privacy
.................................................................................................................. 20

      C.    Defendant's Motion To Dismiss Plaintiff's Thirteenth Claim For Relief Should Be
Denied Because Plaintiff Has Sufficiently Alleged Intentional Infliction Of
Emotional Distress ................................................................................. 21

      D.    Plaintiff Had Agreed To Dismiss The Remaining Claims Against Defendant ...... 22

Pl.'s Opp'n To Def. McVoy's (1) Special Mot. To Strike; (2) Mot. To Dismiss          Case No. 22-CV-00949-CRB

VI.    ASSUMING THE COURT GRANTS DEFENDANT'S MOTIONS, IT SHOULD
       GRANT PLAINTIFF LEAVE TO AMEND THE COMPLAINT ................................... 22

VII.   PLAINTIFFS ARE ENTITLED TO RECOVER ATTORNEYS FEES .......................... 23

VIII.  DEFENDANTS CANNOT RECOVER ATTORNEYS FEES ........................................ 23

IX.    CONCLUSION .......................................................................................................... 24

**Pl.'s Opp'n To Def. McVoy's (1) Special Mot. To Strike; (2) Mot. To Dismiss**      Case No. 22-CV-00949-CRB

1

# TABLE OF AUTHORITIES

2

**Cases**

3

*Alexis v. Rogers*,
   15CV691-CAB-BLM, 2017 WL 3840341 (S.D. Cal. Sept. 1, 2017),
      aff'd, 735 Fed. Appx. 389 (9th Cir. 2018) .................................................................. 26

4

5

*Balistreri v. Pacifica Police Dept.*,
   901 F.2d 696 (9th Cir. 1990) ..................................................................................... 20

6

7

*Bell Atl. Corp. v. Twombly*,
   550 I 544 (2007) ....................................................................................................... 20

8

9

*Brown v. Kelly Broadcasting Co.*,
   48 Cal.3d 711 (1989) ................................................................................................. 21

10

*Chaquico v. Freiberg*,
   17-CV-02423-MEJ, 2018 WL 3368733 (N.D. Cal. July 10, 2018) ............................ 12

11

12

*Chisholm v. Daniel*,
   963 F.2d 378 (9th Cir. 1992) ..................................................................................... 27

13

*Conley v. Gibson*,
   355 U.S. 41 (1957) .................................................................................................... 19

14

15

*Davis v. Elec. Arts Inc.*,
   10-03328 RS, 2012 WL 3860819 (N.D. Cal. Mar. 29, 2012),
   aff'd, 775 F.3d 1172 (9th Cir. 2015) .......................................................................... 13

16

17

*Dooley v. Reiss*,
   736 F.2d 1392 (9th Cir.), cert. denied, 469 U.S. 1038 (1984) .................................... 19

18

19

*Duran v. Cisco Systems*, Inc.,
   2008 WL 4793486 (C.D.Cal 2008) ............................................................................ 20

20

21

*Equilon Enterprises v. Consumer Cause, Inc.*,
   29 Cal. 4th 53 (2002) ........................................................................................... 12, 26

22

23

*Fallay v. San Francisco City and County*,
   C 08-2261 CRB, 2015 WL 7874312 (N.D. Cal. Dec. 4, 2015) .................................. 11

24

*Fellows v. Natl. Enquirer, Inc.*,
   42 Cal. 3d 234 (1986) ................................................................................................ 23

25

26

*Ferlauto v. Hamsher*,
   74 Cal. App. 4th 1394 (Cal. App. 2d Dist. 1999) ...................................................... 14

27

*Fox Searchlight Pictures, Inc. v. Paladino*,
   89 Cal. App. 4th 294 (Cal. App. 2d Dist. 2001) ........................................................ 12

28

iii

*Gallagher v. Philipps*,
    563 F. Supp. 3d 1048 (S.D. Cal. 2021) ................................................................ 14, 15, 16, 17

*Garcia v. Santana*,
    174 Cal. App. 4th 464 (Cal. Ct. App. 2009) ................................................................ 27

*Gordon v. County of Alameda*,
    CV-06-02997-SBA, 2007 WL 2904281 (N.D. Cal. Oct. 4, 2007) .................................... 27

*Hughes v. Pair*,
    46 Cal. 4th 1035 (2009) ................................................................................................ 24

*Kahn v. Bower*,
    232 Cal. App. 3d 1599 (Cal. App. 1st Dist. 1991),
    reh'g denied and opinion modified (Sept. 6, 1991) ...................................................... 18

*Light v. Martel*,
    09-00177 JSW, 2009 WL 4456385 (N.D. Cal. Nov. 30, 2009) ...................................... 1

*Lopez v. Smith*,
    203 F.3d 1122 (9th Cir. 2000) ...................................................................................... 26

*Manufactured Home Communities, Inc. v. County of San Diego*,
    544 F.3d 959 (9th Cir. 2008) ........................................................................................ 19

*Milkovich v. Lorain J. Co.*,
    497 U.S. 1 (1990) .......................................................................................................... 14

*Mindys Cosmetics, Inc. v. Dakar*,
    611 F.3d 590 (9th Cir. 2010) ........................................................................................ 12

*Overstock.com, Inc. v. Gradient Analytics, Inc.*,
    151 Cal. App. 4th 688 (Cal. App. 1st Dist. 2007) .................................................. 11, 12

*Palm Springs Tennis Club v. Rangel*,
    73 Cal. App. 4th 1 (1999) ............................................................................................ 22

*Pareto v. F.D.I.C.*,
    139 F.3d 696 (9th Cir. 1998) ........................................................................................ 20

*Partington v. Bugliosi*,
    56 F.3d 1147 (9th Cir. 1995) ........................................................................................ 19

*Patton v. County of Kings*,
    857 F.2d 1379 (9th Cir. 1988) ...................................................................................... 27

*Piping Rock Partners, Inc. v. David Lerner Associates, Inc.*,
    946 F. Supp. 2d 957 (N.D. Cal. 2013), aff'd, 609 Fed. Appx. 497 (9th Cir. 2015) ............ 15

iv

*Rogers v. Home Shopping Network, Inc.*,
   57 F. Supp. 2d 973 (C.D. Cal. 1999) .................................................................................. 25

*See Baker v. Los Angeles Herald Examr.*,
   42 Cal. 3d 254 (1986) ........................................................................................................ 19

*Smith v. Maldonado*,
   72 Cal. App. 4th 637 (Cal. App. 1st Dist. 1999), as modified (June 23, 1999) ..................... 21

*Song fi Inc. v. Google, Inc.*,
   108 F. Supp. 3d 876 (N.D. Cal. 2015) ................................................................................. 21

*Sprewell v. Golden State Warriors*.
   266 F.3d 979 (9th Cir. 2001) ............................................................................................. 20

*Todd v. Lovecruft*,
   19-CV-01751-DMR, 2020 WL 60199 (N.D. Cal. Jan. 6, 2020) ........................................... 21

*U.S. v. Halamek*,
   5 F.4th 1081 (9th Cir. 2021) ............................................................................................... 1

*U.S. v. Shill*,
   740 F.3d 1347 (9th Cir. 2014) ............................................................................................. 2

*United States v. City of Redwood City*,
   640 F.2d 963 (9th Cir. 1981); ............................................................................................ 20

*Usher v. City of Los Angeles*,
   828 F.2d 556 (9th Cir. 1987) ............................................................................................... 1

*Vachani v. Yakovlev*,
   15-CV-04296-LB, 2016 WL 7406434 (N.D. Cal. Dec. 22, 2016) ......................................... 24

*Verizon Delaware, Inc. v. Covad Communications Co.*,
   377 F.3d 1081 (9th Cir. 2004) ........................................................................................... 25

*Wilson v. Parker, Covert & Chidester*,
   28 Cal.4th 811 (2002) ........................................................................................................ 12

**Statutes**

18 U.S.C. § 2422 ..................................................................................................................... 2

Cal. Civ. Code § 425.16 .............................................................................................. 1, 10, 13, 26

Civ. Code §§ 45, 46 ................................................................................................................ 21

Fed. R. Civ. P. 12(b)(6) ................................................................................................. 1, 20, 21, 26

v

Fed. R. Civ. P. 15(a) ......................................................................................... 26

Penal Code §§ 288, 287, 288.2, 288.3, 288.4, 288.5, 288.7, 647.6, and 261.5 ............................... 2

*See Parks Sch. Of Bus., Inc. v. Symington*, 51 F.3d 1480, 1484 (9th Cir. 1995)........................... 20

**Other Authorities**

50 Am. Jur. 2d, Libel and Slander §§ 152 et seq. ................................................................. 20

50 Am. Jur. 2d, Libel and Slander §§ 357, 358 .................................................................... 20

Cal. Civ. Jury Instructions (''CACI'') 1802 ...................................................................... 21

Restatement (Second) of Torts § 652E comment a (1965) ......................................................... 20

Restatement (Second) of Torts § 652E(b) comment b (1965) ...................................................... 20

**Treatises**

5 Witkin, Summary of Cal. Law (9th ed. 1988) Torts § 471, pp. 557-558 .................................... 19

vi

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## MEMORANDUM OF POINTS AND AUTHORITIES

Plaintiff David M. Kissner ("Plaintiff" or "Kissner"), by and through his undersigned attorneys, submits this Response in Opposition to Defendant Lawrence McVoy's ("Defendant" or "McVoy") (1) Special Motion to Strike Pursuant to California Anti-SLAPP Statute, Cal. Civ. Code § 425.16, or, in the Alternative, (2) Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(6) (the "Motion").

Plaintiff respectfully requests that this Court deny Defendant's motions because (1) the Second Amended Complaint ("SAC") contains sufficient factual matters that, if accepted as true, state claims to relief for defamation, false light invasion of privacy, and intentional infliction of emotional distress[1] against Defendant that are plausible on their face and that (2) Plaintiff can demonstrate a reasonable probability of prevailing on his claims.

## I.     INTRODUCTION

Plaintiff, a private figure,[2] alleges in the SAC that Defendant defamed him in an online social media post by asserting as fact that Plaintiff is guilty of "grooming kids," a crime of moral turpitude.[3] Defendant over-confidently argues that Plaintiff's primary purpose for suing him for

---

[1] Plaintiff has dismissed all of the claims against McVoy except for defamation per se, false light invasion of privacy, and intentional infliction of emotional distress. Decl. Becker, ¶ 7.

[2] Plaintiff has alleged in the Complaint that he is a "private figure for the purposes of this defamation action, having lived his entire life out of the public eye." SAC, ¶ 288. Defendant has not argued otherwise. Accordingly, the Court must accept the Plaintiff's allegations as true and treat Plaintiff as a private figure for purposes of this Motion. *Usher v. City of Los Angeles*, 828 F.2d 556, 561 (9th Cir. 1987).

[3] "Grooming" is a term applied to child sex abuse that has been defined as "a series of behaviors that some child sexual abusers use to break down children's resistance to sexual advances and endear themselves." *Light v. Martel*, 09-00177 JSW, 2009 WL 4456385, at *3 (N.D. Cal. Nov. 30, 2009). It includes "giving a child gifts and support, treating a child as special, isolating a child from his/her social support, gradually increasing sexually explicit talk about sex through jokes, ... and gradually desensitizing the child to touch (e.g., cuddling, tickling, wrestling, hugging)." *U.S. v. Halamek*, 5 F.4th 1081, 1086 (9th Cir. 2021). The federal government defines grooming, which is technically called "enticement," as "a method used by offenders that involves building trust with a child and the adults around a child in an effort to gain access to and time alone with them. In extreme cases, offenders may use threats and physical force to sexually assault or abuse a child. 18 U.S.C. § 2422(b) federally criminalizes the attempted enticement of a minor to engage in "any sexual activity for which any person can be charged with a criminal offense." *U.S. v. Shill*, 740 F.3d 1347, 1349 (9th Cir. 2014). California child molestation crimes are defined in Penal Code §§ 288, 287, 288.2, 288.3, 288.4, 288.5, 288.7, 647.6, and 261.5.

1

defamation and false light invasion of privacy is to chill his constitutional right of free speech. Defendant contends that the asserted claim was merely an expression of his opinion concerning "evidence" he had scrutinized.

As argued below, Defendant's motions should be denied because Plaintiff has sufficiently alleged claims for relief for defamation per se, false light invasion of privacy, and intentional infliction of emotional distress.

## II.    RELEVANT FACTUAL BACKGROUND

### A.    <u>Pleading History</u>

Plaintiff filed his initial Complaint (Dkt. No. 1) and his Motion to Proceed In Forma Pauperis (Dkt. No. 3) on February 16, 2022.  The Court granted Plaintiff's Motion on March 17, 2022. (Dkt. No. 14.) Plaintiff filed a First Amended Complaint on March 8, 2022. (Dkt. No. 8.) The Second Amended Complaint ("SAC") was filed March 14, 2022. (Dkt. No. 13.) Plaintiff filed voluntary notices of dismissal with prejudice of the Twelfth Claim for Relief (Civil Harassment) and Eighteenth Claim for Relief (Civil Conspiracy) on May 26, 2022. (Dkt. No. 42.) Plaintiff inadvertently filed a voluntary notice of dismissal with prejudice of the Fourteenth Claim for Relief (Negligence (Emotional Distress)) and intentionally filed a voluntary notice of dismissal with prejudice of the Fifteenth Claim for Relief (Negligence) on June 6, 2022. (Dkt. No. 49.)

### B.    <u>Nature of the Case</u>

Until last year, Kissner was a tenured, certificated teacher employed by CT Middle, one of two schools within the Loma Prieta Joint Union School District in Los Gatos, CA. SAC, ¶ 30. Kissner had enjoyed full-time employment with the District for approximately nine years teaching math (for which he is certificated) and science while additionally volunteering to coach wrestling. *Id*. Kissner was fired after a three-year ordeal in which he was subjected to multiple investigations and falsely accused of immoral conduct involving minors. *Id*., ¶ 31.

Kissner is a family man with a wife and a young son; a combat veteran; a devout practicing Christian; a proud educator; and an active community member. *Id*., ¶¶ 34-40. He is also someone who devoted the early part of his post-military service career helping at-risk children. *Id*., ¶ 35. And every summer, he and his wife organize camping trips to various mountain wilderness locations where they provide opportunities for families and children to experience outdoor recreation. *Id*., ¶ 41.

Kissner simply does not fit the profile of a child predator or someone involved in child abuse. The *worst* that can be said about him is that he made a mistake once, a mistake that follows him to this day and that gave his detractors an opportunity to falsely assert that he is a child "groomer." In 2016, while on a backpacking trip during one of his family group outdoor excursions, Kissner toasted a teenager's successful leadership accomplishments with him by sharing a single sip of alcohol. *Id*., ¶¶ 50, 115. The single sip of alcohol was intended to celebrate a significant outdoor achievement. *Id*., ¶ 115. The trip was neither school related nor involved any District students. *Id*. When the teenager's parent, Helen Odea, also a District teacher, learned about the incident, she sought a meeting with Kissner. *Id*., ¶ 50. The matter was resolved when Kissner acknowledged the impropriety and took responsibility for exercising poor judgment. *Id*. That should have been the end of it. But two years later, under other circumstances, the incident surfaced in retaliation for Kissner's role in a school-related controversy. *Id*., ¶ 119.

In March 2018, Kissner objected to his school taking part in a nationwide student walkout, *Id*., ¶¶ 54-58. The school did not have a written policy concerning student walkouts, but the school administration was advised by municipal attorneys that it would be unlawful for students to miss class by attending such political demonstrations.  *Id*., ¶ 59. Kissner also understood that state law prohibited the school administration supporting political walkouts and taking sides in contentious political debates. *Id*., ¶¶ 65-66.

3

Kissner's school superintendent at first publicly rejected the idea of allowing the walkout to take place, telling parents it was unlawful, but reversed that position just one day before it was set to occur. *Id.*, ¶¶ 75-81. Kissner was prepared to give a quiz on the day of the walkout and warned his class that anyone leaving class would be given a failing grade on the quiz. *Id.*, ¶¶ 82-85. Three students ignored the warning and received failing grades. *Id.*, ¶ 86. When one of the parents heard about it, he went to a Bay Area TV news channel and revealed the grading decision to the public. *Id.*, ¶ 89. The story spread quickly throughout California and soon Kissner was being approached by the media to explain his decision. *Id.*, ¶ 89. Kissner explained to a reporter he opposed the school promoting the walkout because it was unconstitutional for a public school to take sides in disputed political issues. *Id.*, ¶ 96.

On one side of the community debate, people were calling Kissner a hero. *Id.*, ¶¶ 120-122. On the other side, he was being called something substantially less tame than a bum. *Id.*, ¶¶ 89-95, 99-101. People were calling for him to be fired. *Id.*, ¶¶ 89-95, 101. The news of Kissner's decision caught the attention of a local community member who somehow knew about the 2016 alcohol sip incident. *Id.*, ¶ 119. The individual, identified only years later, wrote anonymously to the school district accusing Kissner of "grooming" children. *Id.*, ¶¶ 110-111. The seed of the 2016 incident, though dormant, had now been strategically planted with Kissner's employer where it grew into a full-scale investigation into his "conduct with children." *Id.*, ¶¶ 139-153.

But the investigation seemingly led nowhere, and Kissner remained employed for another three years without ever learning its findings and conclusions. *Id.*, ¶¶ 152-153. When Kissner ultimately obtained the investigative report through discovery requests in his dismissal proceedings, the word "grooming" showed up only once and only in quoting the anonymous letter. *Id.*, ¶ 148. Nothing in the report substantiated culpability. *Id.*, ¶¶ 148, 152.

That didn't stop the school district from repeating the smear and other false claims in its Statement of Charges supporting Kissner's dismissal in 2021. *Id.*, ¶¶ 183-185. From an anonymous letter to an investigative report, the allegation of "grooming"—or, more precisely, "potential grooming"—found its way into the charging statement. *Id.*, ¶¶ 183-185. On or about March 22, 2021, Kissner's attorney, Becker, demanded the District dismiss the false statement accusing Kissner of potential grooming behavior. The letter to District counsel Brian Bock ("Bock") stated in relevant part:

> These slanderous charges lack any substance and are shamelessly based on nothing more than anonymous inadmissible hearsay. Accusations of "potential grooming," asking about sex, etc., are made with NO SOURCE, NO VICTIM, NO DETAILS, NO OFFICIAL COMPLAINT, NO REPORTS.... Should these accusations remain in these proceedings or otherwise find their way toward republication, we will not hesitate to hold the District and each person involved accountable.

*Id.*, ¶ 186.

Bock ignored the demand and never responded to it, never sought to meet and confer regarding it, and apparently authorized its release to the public. *Id.*, ¶ 187.

Then, on April 16, 2021, an individual submitted a public records act request for the charging statement to the school district. *Id.*, ¶ 188. The district didn't hesitate to produce it, and within less than an hour the false charge of grooming was loosed into the community, where it grew into a beanstalk of vilification on social media. *Id.*, ¶¶ 189-193. Then again, on July 6, 2021, another PRA request was made seeking the District's Amended Statement of Charges and once again the District hastily released it to the public. The release of the charge of grooming was unfounded and the District failed to provide Kissner with an opportunity to petition for a writ of mandate enjoining its release. *Id.*, ¶¶ 189-192.

The road to inventing the fictional character *Kissner the child "groomer"* becoming urban legend began with an anonymous letter. The letter prompted an investigation. The investigation produced a report quoting the anonymous false allegation. The allegation was borrowed from the

investigative report and inserted as an allegation into a charging document released to the public. Repeated by McVoy, it gained mythical acceptance.

### C.   Civic Activity in 2020 and 2021

Prior to the release of the Statement of Charges and the dismissal proceedings in 2021, Kissner was politically active in school finance and election issues. *Id.*, ¶¶ 159-182. As a concerned citizen, he participated in gathering signatures and opposing a tax measure that would have provided the District with additional funding. *Id.*, ¶ 160. Kissner opposed the measure (Measure N) because the District had squandered revenue from a prior tax measure and the District refused to commit to identifying how the new funding would be applied. *Id.*, ¶¶ 161-163. In addition to actively volunteering to help defeat the tax measure, Kissner opposed the District's effort to fill a board vacancy with a political crony and organized a petition calling for a special election authorizing the community to vote on the position. *Id.*, ¶¶ 174-175. These and other activities drew belligerent scorn from some community members, notably McVoy, who hurled hateful, over-the-top insults against Kissner and his collaborating partner, Sean Rokni (e.g., "Kissner and Rokni need to find a different place to live.… they are not welcome here. Find some other school to harass."). Decl. Kissner, ¶ 6, Exh. 1.

### D.   Kissner Is Appealing Both His Layoff And Dismissal

Kissner is the only teacher to ever be simultaneously laid off and dismissed the same year in the District (perhaps anywhere). He was the only tenured teacher subject to the reduction in force in 2021. Decl. Becker, ¶ 5. He was the only teacher dismissed. *Id*. These are no mere coincidences. *Id*. Both the layoff and dismissal are being appealed. *Id*.  In both cases, the ALJs abused their discretion. Despite Defendant's attempt to litigate them in these proceedings, they are not material to the issue before this Court. Nevertheless, McVoy's statement that all the evidence points to Kissner grooming kids is false. This is confirmed both by the CPC's Decision (Def's Mot, Exhibit,

"Decision."), which neither discusses nor considers evidence of "grooming" nor reaches a judgment regarding the allegation of "grooming," and by the District's decision to withdraw the charge of "grooming" prior to the dismissal hearings. SAC, ¶¶ 32, 33, 201, 266; Decl. Becker, ¶ 4, Exh. 2.

### E.   McVoy Defamed Kissner

On January 11, 2022, Allan Hessenflow published an initial post in the online "95033 Talk" Yahoo community forum ("online community forum"). Decl. McVoy, Exhibit, "Community Forum Thread." The initial post included a copy of the Commission's Decision. *Id*. McVoy, along with other community members, all posted comments. *Id*. In the version produced by Defendant, McVoy's statement reads:

> Summary because I read it all looking for this:
>
> Respondent David Kissner is dismissed from his position as a permanent certificated employee ... due to evident unfitness for service.
>
> Finally, seems like what should have happened. And I say this as a dude that thought he was wrongly accused, then I learned more, and yeah, f*ck that guy, he's someone who was grooming kids. I can't prove that, but all the evidence points that way.
>
> The vast majority of teachers are awesome, they love their kids, they spend their own money on class supplys [sic], they protect those kids from crazy helicopter parents, or abusive parents, teachers rock. And should get paid more.
>
> Kissner guy was a train wreck waiting to happen.

*Id*.

McVoy was the only member posting that he had taken the time to read the decision and assimilate its content. *Id*. McVoy was the only person who asserted that Kissner "was grooming kids" and that "all the evidence points that way." *Id*.

### F.   Kissner Was Harmed By McVoy's Statement

Kissner had been tormented by the District's false allegations of "grooming," even being brought to the point of tears during his testimony at the dismissal proceedings. Decl. Kissner, ¶ 7. However, McVoy's statement transformed unproven allegations into an authoritative distillation of

evidence purportedly presented to the CPC. *See* Argument, *infra*. It is common knowledge that statements made on social media have the effect of becoming conventional wisdom or perceived truth. Understanding this, Kissner was forced to relocate his family out of the area in order to distance himself from the stigma he has been branded with. Decl. Kissner, ¶ 7. The impact of such a stigma burns in him and although as a Christian he is able to find relief in prayer and through God's grace, the damage this has done to his sense of self-worth is something he experiences emotionally every day. *Id*. He fears he can never return to Los Gatos without being looked at as a child predator. *Id*. Indeed, many of those who posted on the 95033talk community thread state they would never trust him around their children. Decl. McVoy, Exhibit, "Community Forum Thread."

### G.   Kissner is a Private Figure

Kissner is a private figure for the purposes of this defamation action, having lived his entire life out of the public eye. SAC, ¶¶ 288-289. At no time did Kissner engage in any public controversy regarding any allegations of inappropriate conduct with children, or "grooming." *Id*., *passim*. Kissner's public involvement involved civic matters, such as political speech over public school-sponsored walkouts, ballot measures, election campaigns, and use of public funds. *Id*., ¶¶ 159-182. Although Kissner was active in the community and opposed District policy, he never sought attention for the claims that were the subject of McVoy's defamatory statements. Decl. Kissner, ¶ 8. Kissner did not seek to initiate or exploit the controversy about which McVoy posted defamatory statements. *Id*. Contrary to McVoy's arguments in his motion (14:6), Kissner's "conduct with children" was not a subject of years-long debate or divisiveness in the community and he offers no

evidence to support such a false claim.[4]  Kissner's civic activity was the source of debate and divisiveness. SAC, ¶ 163.

Kissner's limited public statements after the accusations in 2018 were reasonable, proportionate, and in direct response to the false accusations against him and do not render Kissner as a limited purpose public figure. (SAC 291).

### H.    Plaintiff's Pleading And Letter Discrepancies Show Plaintiff Has Not Sued Defendant For Negligence

On May 16, 2022, Defendant's counsel, Lindsay Goulding ("Goulding"), wrote to Plaintiff's counsel, Bill Becker ("Becker"), to meet and confer regarding Defendant's intent to file the instant motions. Decl. Goulding, Exh. A. In her letter, Goulding made <u>no mention</u> of the lengthier version of her client's online post and failed to present any argument or analysis regarding her client's theories as derived from that version of the post. Decl. Becker, ¶ 6.

Becker responded to Goulding's letter on May 23, 2022. Decl. Goulding, Exh. B. In his letter, he stated, "In the following discussion, we address your concerns, concluding that an anti-SLAPP motion to strike and a motion to dismiss will not succeed **as to the defamation and false light claims**. **We agree to dismiss the remaining claims**." *Id.*, p. 1 (emphasis added). His analysis was limited to the defamation and false light claims and did not touch upon other claims. Decl. Becker, ¶ 8. However, in the closing paragraph of his letter, Becker made no mention of the negligence claims because the SAC didn't allege them against McVoy, or at least Becker had never intended to allege them against McVoy. *Id*. In fact, the SAC inadvertently and erroneously stated

---

[4] Defendant dishonestly cites SAC ¶ 163 for the claim, "By Plaintiff's own admission, the uproar surrounding [Kissner's] controversial actions and inappropriate behavior with children naturally created public debate lasting years 'with a large segment of the Los Gatos community and created outspoken divisiveness in the small community on social media.'" But ¶ 163 merely states, "The lack of government transparency made the measure unpopular with a large segment of the Los Gatos community and created outspoken divisiveness in the small community on social media." There is no reference to "controversial actions and inappropriate behavior with children." It is strictly limited to Kissner's involvement with the ballot measure.

9

under the claim for relief title that the Fifteenth Claim for Relief alleging Negligence is against "All Defendants." *Id*.; (Dkt. No. 13, p. 83). But the caption page *inconsistently* indicates this claim is sued against only "District & Individual District Defendants." *Id*. Moreover, the Fourteenth Claim for Relief for Negligence (Emotional Distress) is consistently alleged against only District and Individual District Defendants both on the title page and under the claim title. *Id*., pp. 2, 81. *Id*. Had Plaintiff intended to allege the negligence claim against Defendant, he logically would have alleged the negligence (emotional distress) claim against him also. *Id*.

But these inconsistencies were never brought to Becker's attention prior to the motion. Decl. Becker, ¶ 10. Goulding never asked Becker to resolve either the inconsistent pleading error or the inconsistent statements in his letter making negligence an uncertain legal theory intended to be brought against McVoy. *Id*. Goulding apparently wasn't even curious why Becker had not even addressed the negligence claims in his meet and confer letter. *Id*. On May 26, 2022, Becker advised Goulding that he had reconsidered dismissing the intentional infliction of emotional distress claim, but never mentioned the negligence claim because it was never intended to be alleged against McVoy. *Id*., ¶ 11.

## III.    STANDARDS APPLICABLE TO AN ANTI-SLAPP MOTION

Code Civ. Proc. § 425.16(b)(1) provides:

> A cause of action against a person arising from any act of that person in furtherance of the person's right of petition or free speech under the United States Constitution or the California Constitution in connection with a public issue shall be subject to a special motion to strike, **unless the court determines that the plaintiff has established that there is a probability that the plaintiff will prevail on the claim**.

(Emphasis added.)

"Resolving the merits of a section 425.16 motion involves a two-part analysis, concentrating initially on whether the challenged cause of action arises from protected activity within the meaning of the statute and, if it does, proceeding secondly to whether the plaintiff can establish a probability

of prevailing on the merits." *Overstock.com, Inc. v. Gradient Analytics, Inc.*, 151 Cal. App. 4th 688, 699 (Cal. App. 1st Dist. 2007). The Court does not weigh credibility, nor evaluate the weight of the evidence. *Id*. at 699–700. Instead, the Court must accept as true all evidence favorable to the plaintiff and assess the defendant's evidence only to determine if it defeats the plaintiff's submission as a matter of law. *Id*. Only a cause of action that lacks "even minimal merit" constitutes a SLAPP. *Id*. Indeed, as this Court has previously noted, "The Ninth Circuit has characterized the standard to withstand an anti-SLAPP motion as 'a low bar'." *Fallay v. San Francisco City and County*, C 08-2261 CRB, 2015 WL 7874312, at *3 (N.D. Cal. Dec. 4, 2015) (citations omitted).

## IV.   PLAINTIFF KISSNER HAS MORE THAN MET HIS BURDEN TO PREVAIL ON A MOTION TO STRIKE

### A.   <u>Plaintiff Need Only Demonstrate His Claims Meet A Minimum Level Of Legal Sufficiency And Triability To Demonstrate A Probability Of Prevailing On His Claims Against McVoy</u>

Plaintiff does not dispute that Defendant has met his prima facie burden and that his defamatory statement was made in connection with a public issue. Indeed, the welfare of children is a matter of serious concern to the public. But establishing a constitutional right to speak on matters of public concern does not end the analysis. Under the statute's burden-shifting scheme, once the defendant has met his prima facie burden of raising a presumption of constitutionality by establishing that the challenged lawsuit arose from an act on the part of the defendant in furtherance of his right of petition or free speech, "[i]t is then up to the plaintiff to rebut the presumption that the purpose of the action was to chill the defendant's exercise of First Amendment rights by showing a reasonable probability of success on the merits of the challenged claim." *See Equilon Enterprises v. Consumer Cause, Inc*., 29 Cal. 4th 53, 61 (2002), quoting *Fox Searchlight Pictures, Inc. v. Paladino*, 89 Cal. App. 4th 294, 307 (Cal. App. 2d Dist. 2001) (cleaned up). Plaintiff can succeed in meeting his burden by "demonstrat[ing] that the complaint is both legally sufficient and

supported by a sufficient prima facie showing of facts to sustain a favorable judgment" *Wilson v. Parker, Covert & Chidester*, 28 Cal.4th 811, 821 (2002).

"'Reasonable probability' in the anti-SLAPP statute has a specialized meaning" and "requires only a 'minimum level of legal sufficiency and triability.'" *Chaquico v. Freiberg*, 17-CV-02423-MEJ, 2018 WL 3368733, at *3 (N.D. Cal. July 10, 2018). "Indeed, the second step of the anti-SLAPP inquiry is often called the "minimal merit" prong." *Mindys Cosmetics, Inc. v. Dakar*, 611 F.3d 590, 598 (9th Cir. 2010). California courts have repeatedly emphasized that "[o]nly a cause of action that lacks even minimal merit constitutes a SLAPP." *Overstock.com, Inc. v. Gradient Analytics, Inc.*, 151 Cal.App.4th at 700. "To establish 'minimal merit,' the plaintiff need only 'state and substantiate a legally sufficient claim.' " *Id*. at 598–99. "This entails a 'sufficient prima facie showing of facts to sustain a favorable judgment if the evidence submitted by the plaintiff is credited.' " *Davis v. Elec. Arts Inc*., 10-03328 RS, 2012 WL 3860819, at *11 (N.D. Cal. Mar. 29, 2012), aff'd, 775 F.3d 1172 (9th Cir. 2015). "In evaluating the parties' positions, the court is to consider 'the pleadings, and supporting and opposing affidavits stating the facts upon which the liability or defense is based.' " *Id*.; Code Civ. Proc. § 425.16(b)(2).

### B.   The Totality Of The Circumstances Demonstrate That Defendant's Statement Purports To Offer The Online Community A Factual "Summary" Of The Dismissal Order's Findings

As alleged in the Complaint, Defendant published the following statement: "… Fuck that guy. He's someone who was grooming kids. I can't prove that but all the evidence points that way." SAC, ¶ 283. This allegation was made on the basis of the information known to Plaintiff when the Complaint was filed. Decl. Kissner, ¶ 4. Defendant contends that Plaintiff's allegation is "more nuanced" (Def's Mot. 17:22) and that the actual January 11, 2022, published statement contained additional language:

Summary because I read it all looking for this:

Respondent David Kissner is dismissed from his position as a permanent certificated employee ... due to evident unfitness for service.

Finally, seems like what should have happened happened [sic]. And I say this as a dude that thought he was wrongly accused, then I learned more, and yeah, f*ck that guy, he's someone who was grooming kids. I can't prove that but all the evidence points that way.

The vast majority of teachers are awesome, they love their kids, they spend their own money on class supplys [sic], they protect those kids from crazy helicopter parents, or abusive parents, teachers rock. And should get paid more.

Kissner guy was a train wreck waiting to happen.

Def's Mot., 11:3-11.

"Because defamation requires a falsehood, it is sometimes said that an opinion, which is neither true nor false, is not actionable." *Gallagher v. Philipps*, 563 F. Supp. 3d 1048, 1086 (S.D. Cal. 2021). "This is an oversimplification. **Statements of opinion do not enjoy blanket protection. The issue is whether the statement of opinion implies a statement of fact. Statements of opinion that imply a false assertion of fact are actionable**." *Id*. (Emphasis added.)

The dispositive question is whether a reasonable factfinder could conclude that Defendant's statement implies an assertion that Kissner is "someone who was grooming kids." *See Milkovich v. Lorain J. Co.*, 497 U.S. 1, 21 (1990). This must be answered in the affirmative. The clear impact in some seven sentences is that Kissner is "someone who was grooming kids" and that "all the evidence points that way." *See id*. This is not the sort of "loose, figurative, or hyperbolic language which would negate the impression" that McVoy was seriously maintaining that Kissner committed the crime of grooming. *See id*. Nor does the general tenor of the post ("F*ck that guy") negate this impression. *See id*.

Defendant argues that the published statement inevitably leads to the conclusion that the publication assumes the character of a statement of opinion because, applying a "totality of the circumstances" test, it was published in an "adversarial setting" (Def's Mot. 16:10) "in which the

13

audience [clearly] anticipate[d] efforts by the [commentators] to persuade others to their position" (*id*., 16:24-26 (citing *Ferlauto v. Hamsher*, 74 Cal. App. 4th 1394, 1401 (Cal. App. 2d Dist. 1999)). But Defendant's incomplete analysis fails to consider other factors courts must consider bearing on "the natural and probable effect upon the mind of the average reader." *Id*.

"The crucial question of whether challenged statements convey the requisite factual imputation is ordinarily a question of law for the court." *Gallagher v. Philipps*, 563 F. Supp. 3d at 1086 (citations omitted). "To make this determination, we apply a totality of the circumstances test. First, we examine the language of the statement itself, to determine whether the words are understood in a defamatory sense. Second, we examine the context in which the statement was made." *Id*. (Citations omitted.) In addition to considering "the medium by which the statement is disseminated and the audience to which it is published," applying a "totality of the circumstances" test in order to distinguish actionable fact from opinion requires that the Court consider "all the words used, not merely a particular phrase or sentence" and "give weight to cautionary terms [if any] used by the person publishing the statement." *Piping Rock Partners, Inc. v. David Lerner Associates, Inc.*, 946 F. Supp. 2d 957, 970 (N.D. Cal. 2013), aff'd, 609 Fed. Appx. 497 (9th Cir. 2015) (unpublished) (interpolation added). This is hardly a straightforward task for the Court because it requires the Court to tread carefully into the esoteric field of semantics.[5] Nevertheless,

---

[5] "In linguistics, semantics is the subfield that studies meaning. Semantics can address meaning at the levels of words, phrases, sentences, or larger units of discourse. Two of the fundamental issues in the field of semantics are that of compositional semantics (which pertains on how smaller parts, like words, combine and interact to form the meaning of larger expressions such as sentences) and lexical semantics (the nature of the meaning of words). Other prominent issues are those of context and its role on interpretation, opaque contexts, ambiguity, vagueness, entailment and presuppositions." Wikipedia, https://en.wikipedia.org/wiki/Semantics (citations omitted). "The central idea of semantics, which goes back to Plato's Theaetetus, is that to know something is the ability to give an account of its constituent parts." Andras Kornai, *Semantics* (Springer Nature Switzerland AG 2020), p. 1. Under the principle of compositionality, "[t]he meaning of a complex expression is determined by its structure and the meanings of its constituents." *Id*.

Pl.'s Opp'n To Def. McVoy's (1) Special Mot. To Strike; (2) Mot. To Dismiss        Case No. 22-CV-00949-CRB

as courts have managed to do (*See*, *e.g.*, *Gallagher v. Phillips*, *supra*), each sentence of the defamatory statement(s) must be deconstructed by the Court.

McVoy begins his post offering to present a "summary" of the Decision of the Commission on Professional Competence in the matter of Kissner's dismissal from employment with the Loma Prieta Joint Union School District (the "Decision"). The reader may reasonably assume he is referring to the Decision because it appears to be attached to the post. *See* Decl. McVoy, Exhibit, "Decision," p. 47. The post suggests McVoy is offering a "summary" of the Decision because he "was looking for" its bottom line—whether Kissner was dismissed and the basis for his dismissal ("Respondent David Kissner is dismissed from his position as a permanent certificated employee ... due to evident unfitness for service."). This is unquestionably an assertion of fact, not opinion. McVoy is reporting to the community the result of the dismissal proceedings. Isolated from the rest of the post, this portion standing alone is not actionable defamation.

McVoy then shifts from reporting the fact of the Decision's result to offering his opinion on it, declaring it to be a correct outcome ("seems like what should have happened happened"). This statement, standing alone, is non-actionable opinion. He explains this perspective by claiming that he initially afforded Kissner the presumption of innocence ("I say this as a dude that thought he was wrongly accused") but that newly acquired information convinced him of Kissner's guilt ("then I learned more") and that, without qualification or "cautionary terms," Kissner "was someone grooming kids." This statement is actionable defamation because it is false and injurious.

We know where McVoy came into the newly acquired information because he tells us in the next sentence: in the Decision, where "all the evidence points that way." This is actionable defamation because it is false and because it implies the evidence proved Kissner was guilty of grooming children.

McVoy admits he personally can't prove Kissner was grooming kids but this is a throwaway expression since whether he can prove it or not is beside the point; what matters is that "all the evidence points that way," not just *some* of the evidence, but *all* of it. This is a nugatory fact.

The "natural and probable effect on the reader" is to inculcate a sense of reliability and trustworthiness. The reader isn't being fed insults. McVoy can be trusted; *he believed in the guy*, after all. Only "the evidence" was powerful enough to turn him around. All the evidence. As if to suggest, "I read the Decision so you wouldn't have to."

To be clear, the dismissal order neither states nor suggests that Kissner was grooming kids or that evidence presented at the hearings yielded such a conclusion. So, by giving a "summary" of a legal document without identifying "the evidence" or outlining the bases for his assertions, in order to convince the reader of his report's trustworthiness, he would need to portray himself as a neutral observer, someone who (1) initially gave Kissner the benefit of the doubt, (2) cares about the welfare of children, (3) loves teachers ("The vast majority of teachers are awesome, they love their kids, they spend their own money on class supplys [sic], they protect those kids from crazy helicopter parents, or abusive parents, teachers rock. And should get paid more."), and (4) can't, as a humble layperson, independently prove these messy, complicated legal things. He would additionally need to point out that (1) he "read it all," and that (2) "all the evidence" leaves no room for doubting his defamatory assertion. Taking all of these factors into consideration, McVoy's post cannot be reasonably interpreted to constitute rhetorical hyperbole. He has framed his claims in the form of an objective, verifiable, trustworthy statement of fact. His statements of opinion imply a false assertion of fact and are therefore actionable. *See Gallagher v. Phillips*, *supra*, 563 F. Supp. 3d at 1086.  Under the "minimal merit" standard, Plaintiff has more than satisfied his burden of sufficiently alleging defamation per se.

1

2

### C.   <u>Ambiguous Statements Require The Factfinder To Determine Whether They Should Be Characterized As Factual Assertions Or Statements Of Opinion</u>

3

4

At best, *arguendo*, McVoy's statement is ambiguous because he mixes commentary with

5

reporting facts. This sometimes manifests itself as cognitive dissonance. He states, for instance, that

6

while *he* can't prove Kissner was grooming kids, "all the evidence points that way," suggesting that

7

proof of Kissner's culpability depends both on a subjective standard (his ability to prove it) and/or

8

an objective standard ("all the evidence"). In such a case, the Court must leave whether the

9

statement is one of fact or opinion to a factfinder. "[S]ome statements are ambiguous and cannot

10

be characterized as factual or nonfactual as a matter of law." *Kahn v. Bower*, 232 Cal. App. 3d

11

1599, 1608 (Cal. App. 1st Dist. 1991), reh'g denied and opinion modified (Sept. 6, 1991) (citations

12

omitted). And although "[t]he question whether the challenged statements convey the requisite

13

factual imputation is ordinarily a question of law for the court," ... "[i]n these circumstances, it is

14

for the jury to determine whether an ordinary reader would have understood the [statement] as a

15

factual assertion...." *Id*. Accordingly, whether ambiguous statements are assertions of fact or

16

opinion cannot be reviewed on a motion to dismiss or an anti-SLAPP motion to strike.

17

Quite obviously, whether McVoy can prove guilt is nugatory if "all the evidence" proves it,

18

and nothing McVoy states negates the observation that "all the evidence" proves Kissner was

19

grooming kids. Nor does McVoy attempt to qualify his statement in any particular way to suggest

20

he is offering his own interpretation of "all the evidence" (e.g., All the evidence "apparently" shows

21

Kissner to be a groomer;  My impression is that ...). *See Baker v. Los Angeles Herald Examr*., 42

22

Cal. 3d 254, 261–62 (1986) ("When one states a view in terms of an 'impression,' the listener or

23

reader is on notice that the maker is not vouching for its accuracy. A reasonable person would

24

25

understand that a statement of opinion rather than of fact was to follow.")

26

Contrary to Defendant's disingenuous argument (Def's Mot. 18:2-17), McVoy doesn't

27

28

bother to outline the factual basis for his conclusion to make it clear that the challenged statements

1    represent his own interpretation. *See Manufactured Home Communities, Inc. v. County of San*
2    *Diego*, 544 F.3d 959, 965 (9th Cir. 2008); *Partington v. Bugliosi*, 56 F.3d 1147, 1156 (9th Cir.
3    1995) ("[W]hen a speaker outlines the factual basis for his conclusion, his statement is protected
4    by the First Amendment."). Indeed, McVoy doesn't refer at all to content within the dismissal order
5    as the basis of an impression or interpretation he holds of the decision.

6    ## V.    STANDARDS APPLICABLE TO MOTION TO DISMISS

7         A motion to dismiss for failure to state a claim should not be granted unless it appears
8    "beyond doubt the plaintiff can demonstrate no set of facts that supports his claim entitling him to
9    relief." *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957); *Dooley v. Reiss*, 736 F.2d 1392, 1394 (9th
10   Cir.), cert. denied, 469 U.S. 1038 (1984). It is only under extraordinary circumstances that dismissal
11   is proper under Rule 12(b)(6). *United States v. City of Redwood City*, 640 F.2d 963, 966 (9th Cir.
12   1981); *Duran v. Cisco Systems*, Inc., 2008 WL 4793486 *2 (C.D.Cal 2008). Plaintiff has alleged
13   "enough facts to state a claim for relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*,
14   550 I 544, 570 (2007). Dismissal is only proper where there is a "lack of cognizable legal theory or
15   the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police
16   Dept.*, 901 F.2d 696, 699 (9th Cir. 1990). In considering a motion to dismiss, the Court must accept
17   as true all material allegations in the Complaint, as well as reasonable inferences to be drawn from
18   them. *Pareto v. F.D.I.C.*, 139 F.3d 696, 699 (9th Cir. 1998). The Complaint must be read in the
19   light most favorable to the non-moving party, although the Court need not accept unreasonable
20   inferences or conclusory legal allegations. *Sprewell v. Golden State Warriors*. 266 F.3d 979, 988
21   (9th Cir. 2001). *See Parks Sch. Of Bus., Inc. v. Symington*, 51 F.3d 1480, 1484 (9th Cir. 1995).

22       Plainly, dismissal under Rule 12(b)(6) for failure to state a claim is not appropriate in this
23   case, because Plaintiff has alleged sufficient facts to state plausible claims for relief under state law
24   and has shown the existence of plausible, cognizable legal theories that compel the Court to refuse

1   to dismiss based on those facts, which the Court must accept as true for purposes of deciding a

2   motion to dismiss under Rule 12(b)(6).

3       **A.**    **Defendant's Motion To Dismiss Plaintiff's Fourth Claim For Relief Should Be**

4       **Denied Because Plaintiff Has Sufficiently Alleged Defamation Per Se**

5      "Defamation is an invasion of the interest in reputation." *Smith v. Maldonado*, 72 Cal. App.

6   4th 637, 645 (Cal. App. 1st Dist. 1999), as modified (June 23, 1999); Civ. Code §§ 45, 46; 5 Witkin,

7   Summary of Cal. Law (9th ed. 1988) Torts § 471, pp. 557-558. "The tort involves the intentional

8   publication of a statement of fact that is false, unprivileged, and has a natural tendency to injure or

9   which causes special damage." *Id*. In actions for defamation, by slander and/or libel, the burden of

10  proof is "falsity." *Brown v. Kelly Broadcasting Co*., 48 Cal.3d 711, 747 (1989). This is because the

11  traditionally intentional tort involves the intentional publication of a statement of fact that is false.

12  *Smith v. Maldonado* at 645. A statement is defamatory per se if "a defamatory meaning appears

13  from the language itself without the necessity of explanation or the pleading of extrinsic facts."

14  *Todd v. Lovecruft*, 19-CV-01751-DMR, 2020 WL 60199, at *15 (N.D. Cal. Jan. 6, 2020), citing

15  *Song fi Inc. v. Google, Inc*., 108 F. Supp. 3d 876, 888 (N.D. Cal. 2015) (quoting in turn *Palm*

16  *Springs Tennis Club v. Rangel*, 73 Cal. App. 4th 1, 15 (1999)).

17      Plaintiff has alleged sufficient facts to support the elements of a claim for defamation per

18  se. Defendant erroneously argues that Plaintiff has not alleged sufficient facts because McVoy's

19  statement constitutes non-actionable opinion. *See* Argument, *supra*. But McVoy's post specifically

20  declares that Kissner "was grooming kids" and that "all the evidence" proves it. These statements

21  require no explanation or the pleading of extrinsic facts, such as those Defendant has added. It is

22  reasonable to construe McVoy's statement as a statement of fact that he reported to the community.

23  Kissner has demonstrated that the statement is reasonably susceptible of a defamatory meaning,

24  and therefore has established a prima facie case that it constitutes defamation per se.

### B.     Defendant's Motion To Dismiss Plaintiff's Fifth Claim For Relief Should Be Denied Because Plaintiff Has Sufficiently Alleged False Light Invasion Of Privacy

The substantive elements of the false light tort are similar to those of the tort of defamation; for both actions the matter publicized must be in fact false, it must be "published" or communicated to third parties, and the publication must be made with some degree of fault on the part of the originating party. The two torts differ, however, in three substantive ways.

First, the false light cause of action is not limited to matters actually defamatory, either on their face or in context, but may be brought for any "highly offensive" false portrayal before the public, based on the sensitivities of a "reasonable person." Restatement (Second) of Torts § 652E(b) comment b (1965). Second, any publication or revelation of the subject matter to a third party suffices to give rise to a defamation action (50 Am. Jur. 2d, Libel and Slander §§ 152 et seq.) while the subject matter of an actionable false light privacy invasion usually is required to come to the notice of at least a substantial portion of the general public, or at least to be of such character and subject to such dissemination as to be reasonably certain of such exposure. This rule comports with the requirement that the plaintiff be placed in a false light "before the public," or falsely be "given publicity" as to the matter at issue. Restatement (Second) of Torts § 652E comment a (1965), citing § 652C comment a. Finally, there is considerably less emphasis on proof of injury to public reputation in the false light tort than in defamation, the thrust of the false light action being towards the subjective "privacy" of the individual. The emphasis of the false light action, unlike an action for defamation, is on the subjective mental and emotional suffering of the victim, an element of damages which in defamation is either secondary to the loss of reputation, or even irrelevant, depending on the applicable law. 50 Am. Jur. 2d, Libel and Slander §§ 357, 358.

Whether, as Defendant argues, this claim is superfluous is irrelevant at the pleading stage because Plaintiff may meet his burden of proving one of the claims but not the other. This is true

because, as courts seem to recognize, the two torts do not always overlap. *See Fellows v. Natl. Enquirer, Inc.*, 42 Cal. 3d 234, 239 (1986) ("Although it is not necessary that the plaintiff be defamed, publicity placing one in a highly offensive false light will **in most cases** be defamatory as well.").

Plaintiff has alleged facts sufficient to state a claim for false light: (1) McVoy publicized information or material that showed Kissner in a false light; (2) the false light created by the publication would be highly offensive to a reasonable person in Kissner's position; (3) McVoy was negligent in determining the truth of the information or whether publishing it would create a false impression; (4) there is clear and convincing evidence that McVoy knew the publication would create a false impression about the plaintiff or acted with reckless disregard for the truth; (5) Kissner was harmed; and (5) McVoy's conduct was a substantial factor in causing that harm. *Vachani v. Yakovlev*, 15-CV-04296-LB, 2016 WL 7406434, at *6–7 (N.D. Cal. Dec. 22, 2016); *see* Cal. Civ. Jury Instructions (''CACI'') 1802.

**C.     Defendant's Motion To Dismiss Plaintiff's Thirteenth Claim For Relief Should Be Denied Because Plaintiff Has Sufficiently Alleged Intentional Infliction Of Emotional Distress**

Defendant contends that Plaintiff's Complaint should be dismissed for failure to state specific facts concerning Defendant's "extreme and outrageous conduct" and his "reckless disregard" for determining the truth of his claims against Kissner. "A cause of action for intentional infliction of emotional distress exists when there is (1) extreme and outrageous conduct by the defendant with the intention of causing, or reckless disregard of the probability of causing, emotional distress; (2) the plaintiff's suffering severe or extreme emotional distress; and (3) actual and proximate causation of the emotional distress by the defendant's outrageous conduct." *Hughes v. Pair*, 46 Cal. 4th 1035, 1050–51 (2009) (cleaned up; citations omitted). A defendant's conduct is "outrageous" when it is so "extreme as to exceed all bounds of that usually tolerated in a civilized

community." *Id*. (cleaned up; citations omitted). And the defendant's conduct must be "intended to inflict injury or engaged in with the realization that injury will result." *Id*. (cleaned up; citations omitted). "Liability for intentional infliction of emotional distress does not extend to mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities." *Id*. (listing examples) (cleaned up; citations omitted).

Kissner was driven out of his community by the falsehoods the District placed before the public by releasing the unfounded charge of grooming and made an involuntary target of derision by certain members of the community. McVoy's exploitation of the false allegation, referring specifically to "all the evidence" proving that Kissner "was grooming kids" compounded the sense of foreboding and alienation from which Kissner continues to suffer.

### D.      Plaintiff Had Agreed To Dismiss The Remaining Claims Against Defendant

Prior to the filing of Defendant's Motion, Plaintiff had advised Defendant that he would dismiss all claims other than defamation per se and false light. Decl. Becker, ¶ 6. Plaintiff's counsel subsequently notified counsel for the Defendant that he would retain only the claim for intentional infliction of emotional distress. Accordingly, Defendant should not have argued the negligence claim(s). See Decl. Becker, ¶¶ 7-12.

## VI.   ASSUMING THE COURT GRANTS DEFENDANT'S MOTIONS, IT SHOULD GRANT PLAINTIFF LEAVE TO AMEND THE COMPLAINT

If a defendant's anti-SLAPP motion challenges the legal sufficiency of the plaintiff's complaint, then federal pleading standards apply, including granting the plaintiff leave to amend. *Verizon Delaware, Inc. v. Covad Communications Co.*, 377 F.3d 1081, 1091 (9th Cir. 2004) ("granting a defendant's anti-SLAPP motion to strike a plaintiff's initial complaint without granting the plaintiff leave to amend would directly collide with FRCP 15(a)'s policy favoring liberal amendment"); *Rogers v. Home Shopping Network, Inc.,* 57 F. Supp. 2d 973, 982–83 (C.D. Cal. 1999) (a special motion to strike alleging legal deficiencies (i.e., "only identifies legal defects on

22

the face of the pleading") is analogous to a Rule 12(b)(6) motion to dismiss). "When a federal court is presented with this type of motion, it must decide the motion in a manner that complies with the standards set by Federal Rules 8 and 12." *Rogers* at 982. "Among others, these standards include the requirements that the complaint be read liberally, that all well-pleaded allegations be taken as true, and that dismissal generally be with leave to amend." *Id*. (Citations omitted.) Fed. R. Civ. P. 15(a) provides that leave to amend "shall be freely given when justice so requires," bearing in mind "the underlying purpose of Rule 15 ... which is to facilitate decision on the merits, rather than on the pleadings or technicalities." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000).

## VII.   PLAINTIFFS ARE ENTITLED TO RECOVER ATTORNEYS FEES

Plaintiffs as well as defendants may recover fees whenever a defendant's motion to strike is "frivolous or is solely intended to cause unnecessary delay." § 425.16, subd. (c); *Equilon Enterprises v. Consumer Cause, Inc*., 29 Cal.4th at 63. Defendant's motion is patently frivolous and Plaintiff is therefore entitled to recover his reasonable attorney's fees in having to respond to the motion. Plaintiff will file a motion to recover his reasonable attorney's fees and costs should he prevail in opposing Defendant's motions.

## VIII.   DEFENDANTS CANNOT RECOVER ATTORNEYS FEES

Kissner comes before this Court in forma pauperis. His lawsuit was not filed in bad faith or for an improper purpose. California law dictates that "[t]he trial court should … make findings as to the plaintiff's ability to pay attorney fees, and how large the award should be in light of the plaintiff's financial situation." *Alexis v. Rogers*, 15CV691-CAB-BLM, 2017 WL 3840341, at *2 (S.D. Cal. Sept. 1, 2017), aff'd, 735 Fed. Appx. 389 (9th Cir. 2018) (unpublished). Courts have held that any award of attorney's fees "should not subject the plaintiff to financial ruin." *Patton v. County of Kings*, 857 F.2d 1379 (9th Cir. 1988); *Alexis v. Rogers*, 15CV691-CAB-BLM, 2017 WL

3840341, at *2 (S.D. Cal. Sept. 1, 2017), aff'd, 735 Fed. Appx. 389 (9th Cir. 2018) (unpublished); *Garcia v. Santana*, 174 Cal. App. 4th 464, 481 (Cal. Ct. App. 2009) .

Any award of attorney's fees would be unduly burdensome and would impose an undue financial hardship on Kissner and his family. Decl. Kissner, ¶ 9. *see Gordon v. County of Alameda*, CV-06-02997-SBA, 2007 WL 2904281, at *2 (N.D. Cal. Oct. 4, 2007). For these reasons, he would be unable to satisfy an award of attorney's fees to Defendant (*see Chisholm v. Daniel*, 963 F.2d 378 (9th Cir. 1992) and Defendant's request for attorney's fees should therefore be denied.[6]

## IX.   CONCLUSION

For the reasons presented hereinabove, Kissner respectfully asks the Court to DENY both the motion to strike and the motion to dismiss as well as any award for attorney's fees and costs, Or, in the alternative, grant Kissner leave to amend the Complaint to assert any additional facts that may be required.

Date: June 9, 2022                    FREEDOM X

By:   /s/ William J. Becker, Jr.
William J. Becker, Jr.
Attorneys for Plaintiff, David M. Kissner

---

[6] Should Defendant prevail on his anti-SLAPP motion, Plaintiff will at that time justify his inability to satisfy an award with an accounting of his financial condition.