William J. Becker, Jr., Esq. (SBN: 134545)
Bill@FreedomXLaw.com
Jeremiah D. Graham, Esq. (SBN: 313206)
JeremiahDGraham@gmail.com
**FREEDOM X**
11500 Olympic Blvd., Suite 400
Los Angeles, California 90064
Telephone: (310) 636-1018
Facsímile: (310) 765-6328

Counsel for *David M. Kissner*

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **DAVID M. KISSNER**, <br><br> Plaintiff, <br><br> vs. <br><br> **LOMA PRIETA JOINT UNION SCHOOL DISTRICT, et al.**, <br><br> Defendants. | Case No. 22-CV-00949-CRB <br><br> Hon. Charles R. Breyer <br><br> **PLAINTIFF DAVID M. KISSNER'S RESPONSE IN OPPOSITION AND NON-OPPOSITION TO SCHOOL DISTRICT DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF** <br><br> **Date:** August 12, 2022 <br> **Time:** 10:00 a.m. <br> **Location:** Videoconference Only <br><br> **SAC Filed:** March 20, 2022 |

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES……………………………………….....................ii

MEMORANDUM OF POINTS AND AUTHORITIES……………………………….1

I. INTRODUCTION ................................................................................... 1

II. STATEMENT OF NON-OPPOSITION ................................................ 1

III. RELEVANT FACTUAL BACKGROUND .......................................... 2

    A. Pleading History……………………………………. ............................ 2
    B. Nature of the Case…................................................................................ 2
    C. Civic Activity in 2020 and 2021…………………… ............................ 7
    D. Kissner Is Appealing Both His Layoff And Dismissal………. ............. 8
    E. Individual District Defendants Conspired To Defame Kissner In
       Retaliation for His Protected Speech……………………………. ........ 8
    F. Kissner Was Harmed By The District's Retaliatory Acts For His
       Political Speech…………………………………… ............................... 9

IV. ARGUMENT .......................................................................................... 9

    A. Plaintiff's Civil Rights Conspiracy Claim Is Not An
       Independent Cause Of Action……………………………… .............. 9
    B. Plaintiff's Civil Rights Defamation Claim Is Not Duplicative
       Of His Procedural Due Process Claim………………….. ................... 11
    C. Defendants' Argument Regarding Immunity From Liability For
       Disclosing Public Records In Connection With Three State Claims
       Is Moot For Purposes Of This Motion………………….. ................... 11
    D. Assuming The Court Grants Defendants' Motions, It Should
       Grant Plaintiff Leave To Amend The Complaint…………................... 11

V. CONCLUSION ...................................................................................... 12

# TABLE OF AUTHORITIES

**Cases**

*Adickes v. Kress & Co.*,
   398 U.S. 144 (1970) .................................................................................................... 9

*Comfort v. Town of Pittsfield*,
   924 F.Supp. 1219 (D.Me. 1996) ................................................................................ 10

*Crawford v. Geiger*,
   996 F. Supp. 2d 603 (N.D. Ohio 2014) ..................................................................... 10

*DCD Programs, Ltd. v. Leighton*,
   833 F.2d 183 (9th Cir. 1987) ..................................................................................... 11

*Dean Tarry Corp. v. Friedlander*,
   650 F.Supp. 1544 (S.D.N.Y. 1987) ........................................................................... 10

*Katz v. McVeigh*,
   931 F. Supp. 2d 311, (D.N.H. 2013), aff'd, (1st Circ. 13-1453, 13-1529) (Sept. 23, 2014) ...... 10

*Lopez v. Smith*,
   203 F.3d 1122 (9th Cir. 2000) ................................................................................... 12

*Quiroz v. Horel*,
   85 F. Supp. 3d 1115 (N.D. Cal. 2015) ................................................................. 10-11

**Statutes**

42 U.S.C. § 1983 ............................................................................................................ 1, 10

Fed. R. Civ. P. 12(b)(6) ....................................................................................................... 1

Fed. R. Civ. P. 15 .............................................................................................................. 11

**Other Authorities**

15 Am. Jur. 2d Civil Rights § 145 .................................................................................... 10

**MEMORANDUM OF POINTS AND AUTHORITIES**

Plaintiff David M. Kissner ("Plaintiff" or "Kissner"), by and through his undersigned attorneys, submits this Response in Opposition and Non-Opposition to School District Defendants Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(6) (the "Motion").

## I. INTRODUCTION

The School District Defendants <u>have not moved to dismiss</u> the following Claims for Relief ("CFR"): CFR 1 (First Amendment Free Speech Clause (42 U.S.C. § 1983); CFR 16 (Fourteenth Amendment Due Process (42 U.S.C. § 1983)); and CFR 17 (Fourteenth Amendment Equal Protection (42 U.S.C. § 1983)).

Plaintiff <u>opposes dismissal</u> of the following CFR: CFR 3 (Civil Rights Defamation (42 U.S.C. §1983)); and CFR 18 (Civil Rights Conspiracy (42 U.S.C. § 1983)) on the grounds they are not duplicative of other claims.

## II. STATEMENT OF NON-OPPOSITION

Plaintiff <u>does not oppose dismissal</u> of the state claims on the ground that Eleventh Amendment immunity applies to states claims brought in federal court under pendent (i.e., supplemental) jurisdiction and agrees to dismiss the following CFR without prejudice to refile in state court: CFR 2 (California Constitution Free Speech (Art. I, § 2)); CFR 4 (Defamation Per Se); CFR 5 (False Light Invasion of Privacy); CFR 6 (Public Disclosure of Private Facts); CFR 7 (Discrimination and Retaliation for Engaging in Protected Activity (Cal. Lab. Code §§ 98.6 & 1101)); CFR 8 (Discrimination and Retaliation for Engaging in Protected Activity (Cal. Lab. Code §§ 98.6 & 1102)); CFR 9 (Wrongful Termination); CFR 10 (Wrongful Termination in Violation of Public Policy); CFR 11 (Whistleblower Retaliation (Cal. Lab. Code § 1102.5)); CFR 12 (Civil Harassment (Cal. Code Civ. Proc. § 527.6);) CFR 13 (Intentional Infliction of Emotional Distress); CFR 14 (Negligence (Emotional Distress)); CFR 15 (Negligence); CFR 16 (California Constitution

Due Process (Art. I, § 7)); CFR 17 (California Constitution Equal Protection (Art. I, § 7)); CFR 19 (Breach of Contract).

Plaintiff has dismissed these claims for relief. (Dkt. No. 50.)

## III. RELEVANT FACTUAL BACKGROUND

### A. Pleading History

Plaintiff filed his initial Complaint (Dkt. No. 1) and his Motion to Proceed In Forma Pauperis (Dkt. No. 3) on February 16, 2022. The Court granted Plaintiff's Motion on March 17, 2022. (Dkt. No. 14.) Plaintiff filed a First Amended Complaint on March 8, 2022. (Dkt. No. 8.) The Second Amended Complaint ("SAC") was filed March 14, 2022. (Dkt. No. 13.)

### B. Nature of the Case

Until last year, Kissner was a tenured, certificated teacher employed by CT Middle, one of two schools within the Loma Prieta Joint Union School District in Los Gatos, CA. SAC, ¶ 30. Kissner had enjoyed full-time employment with the District for approximately nine years teaching math (for which he is certificated) and science while additionally volunteering to coach wrestling. *Id*. Kissner was fired after a three-year ordeal in which he was subjected to multiple investigations and falsely accused of immoral conduct involving minors. *Id*., ¶ 31.

Kissner is a family man with a wife and a young son; a combat veteran; a devout practicing Christian; a proud educator; and an active community member. *Id*., ¶¶ 34-40. He is also someone who devoted the early part of his post-military service career helping at-risk children. *Id*., ¶ 35. And every summer, he and his wife organize camping trips to various mountain wilderness locations where they provide opportunities for families and children to experience outdoor recreation. *Id*., ¶ 41.

Kissner simply does not fit the profile of a child predator or someone involved in child abuse. The *worst* that can be said about him is that he made a mistake once, a mistake that follows

him to this day and that gave his detractors an opportunity to falsely assert that he is a child "groomer." In 2016, while on a backpacking trip during one of his family group outdoor excursions, Kissner toasted a teenager's successful leadership accomplishments with him by sharing a single sip of alcohol. *Id.*, ¶¶ 50, 115. The single sip of alcohol was intended to celebrate a significant outdoor achievement. *Id.*, ¶ 115. The trip was neither school related nor involved any District students. *Id*. When the teenager's parent, Helen Odea, also a District teacher, learned about the incident, she sought a meeting with Kissner. *Id.*, ¶ 50. The matter was resolved when Kissner acknowledged the impropriety and took responsibility for exercising poor judgment. *Id*. That should have been the end of it. But two years later, under other circumstances, the incident surfaced in retaliation for Kissner's role in a school-related controversy. *Id.*, ¶ 119.

In March 2018, Kissner objected to his school taking part in a nationwide student walkout, *Id.*, ¶¶ 54-58. The school did not have a written policy concerning student walkouts, but the school administration was advised by municipal attorneys that it would be unlawful for students to miss class by attending such political demonstrations. *Id.*, ¶ 59. Kissner also understood that state law prohibited the school administration supporting political walkouts and taking sides in contentious political debates. *Id.*, ¶¶ 65-66.

Kissner's school superintendent at first publicly rejected the idea of allowing the walkout to take place, telling parents it was unlawful, but reversed that position just one day before it was set to occur. *Id.*, ¶¶ 75-81. Kissner was prepared to give a quiz on the day of the walkout and warned his class that anyone leaving class would be given a failing grade on the quiz. *Id.*, ¶¶ 82-85. Three students ignored the warning and received failing grades. *Id.*, ¶ 86. When one of the parents heard about it, he went to a Bay Area TV news channel and revealed the grading decision to the public. *Id.*, ¶ 89. The story spread quickly throughout California and soon Kissner was being approached by the media to explain his decision. *Id.*, ¶ 89. Kissner explained to a reporter he opposed the school

3

promoting the walkout because it was unconstitutional for a public school to take sides in disputed political issues. *Id*., ¶ 96.

On one side of the community debate, people were calling Kissner a hero. *Id*., ¶¶ 120-122. On the other side, he was being called something substantially less tame than a bum. *Id*., ¶¶ 89-95, 99-101. Community members and colleagues were calling for him to be fired. *Id*., ¶¶ 89-95, 101. The news of Kissner's decision caught the attention of a local community member who somehow knew about the 2016 alcohol sip incident. *Id*., ¶ 119. On March 20, 2018, just days after the walkout controversy took hold in the media, the individual wrote anonymously to the school district accusing Kissner of "grooming" children. *Id*., ¶¶ 110-111. In subsequent discovery, the anonymous letter writer was found to be (1) a disgruntled parent of former students of Kissner, (2) politically motivated by her own passionate support of the student walkouts, to the point that she used social media to organize participation in local marches, and (3) later expressed second thoughts about her false, salacious, and defamatory accusations. *Id*., ¶ 119.

The District, however, did not act on the anonymous letter immediately. *Id*., ¶ 111. In fact, the District has a policy of not accepting anonymous complaints. *Id*., ¶ 139. The District delayed acting on the anonymous letter for six weeks and then only after Kissner was quoted in a newspaper article mentioning the school's decision to not authorize a second student walkout scheduled preliminarily for April. *Id*., ¶¶ 111, 139.

The District placed Kissner on paid administrative leave on April 30, 2018, telling him only that it was investigating alleged "inappropriate interactions with minors." *Id*., ¶ 112. The District informed Kissner that he would be on leave "pending the completion of the investigation." *Id*. When Kissner asked what the basis was for such an investigation, he was neither told about the anonymous letter nor given any other reason for it. *Id*.

4

Kissner's forced leave of absence created a stir in the small local community. *Id.*, ¶ 120. At a May 4, 2018, board meeting, Kissner's supporters stepped forward to criticize the District's handling of the walkout events and what they perceived to be related examples of political indoctrination. His supporters, including students and parents, displayed signs along roadways and handed out stickers and petitions at school demanding his return. *Id.*, ¶ 120. On May 8, 2018, Board President Arnold and Superintendent Kidwell notified Kissner that "the investigation" was complete and that he could return to the classroom, and also notified the media and the school community of the same. *Id.*, ¶ 122. He returned to the classroom on May 10, 2018. But District officials had lied - the investigation was not complete. In fact, the allegations from the anonymous letter morphed into two investigations, one purporting to look into walkout policy irregularities and the other purporting to scrutinize Kissner's conduct with children. *Id.*

The seed of the 2016 incident, though dormant, had now been strategically planted with Kissner's employer, who seized on the opportunity to retaliate against Kissner for his opposition to their walkout policy by launching a full-scale investigation into his "conduct with children." *Id.*, ¶¶ 139-153. But the investigation seemingly led nowhere, and Kissner remained employed for another three years without ever learning its findings and conclusions. *Id.*, ¶¶ 152-153. When Kissner ultimately obtained the investigative report through discovery requests in his dismissal proceedings, the word "grooming" showed up only once and only in quoting the anonymous letter. *Id.*, ¶ 148. Nothing in the report substantiated culpability. *Id.*, ¶¶ 148, 152.

That didn't stop the school district from repeating the smear and other false claims in its Statement of Charges supporting Kissner's dismissal in 2021. *Id.*, ¶¶ 183-185. From an anonymous letter to an investigative report, the allegation of "grooming"—or, more precisely, "potential grooming"—found its way into the charging statement. *Id.*, ¶¶ 183-185. On or about March 22, 2021, Kissner's attorney, Becker, demanded the District dismiss the false statement accusing

5

Kissner of potential grooming behavior. The letter to District counsel Brian Bock ("Bock") stated in relevant part:

> These slanderous charges lack any substance and are shamelessly based on nothing more than anonymous inadmissible hearsay. Accusations of "potential grooming," asking about sex, etc., are made with NO SOURCE, NO VICTIM, NO DETAILS, NO OFFICIAL COMPLAINT, NO REPORTS.… Should these accusations remain in these proceedings or otherwise find their way toward republication, we will not hesitate to hold the District and each person involved accountable.

*Id*., ¶ 186.

Bock ignored the demand and never responded to it, never sought to meet and confer regarding it, and apparently authorized its release to the public. *Id*., ¶ 187.

Then, on April 16, 2021, an anonymous individual using a fictitious name submitted a public records act request for the charging statement to the school district. *Id*., ¶ 188. The district didn't hesitate to produce it, and within less than an hour the false charge of grooming was loosed into the community, where it grew into a beanstalk of vilification on social media. *Id*., ¶¶ 189-193. Then again, on July 6, 2021, another PRA request was made seeking the District's Amended Statement of Charges and once again the District hastily released it to the public. The release of the charge of grooming was unfounded and the District failed to provide Kissner with an opportunity to petition for a writ of mandate enjoining its release. *Id*., ¶¶ 189-192. Individual District defendants later testified that they were aware of the statutory protections preventing their publication, and released the defamatory charges anyway. *Id*., ¶ 195.

Subsequent to the release of the defamatory charges, Individual District Defendants testified during dismissal proceedings that they had no evidence supporting charges of "grooming," but that they relied exclusively on the investigative report for those charges. *Id*. But the investigative report contained no evidence of "grooming." *Id*., ¶¶ 148,152.

The road to inventing the fictional character *Kissner the child "groomer"* becoming urban legend began with an anonymous letter. The letter prompted an investigation. The investigation

6

produced a report quoting the anonymous false allegation. The allegation was borrowed from the investigative report and inserted as an allegation into a charging document released to the public. Circulated by community members online and in other forums, it gained mythical currency.

C. **Civic Activity in 2020 and 2021**

Prior to the release of the Statement of Charges and the dismissal proceedings in 2021, Kissner was politically active in school finance and election issues. *Id*., ¶¶ 159-182. As a concerned citizen, he participated in gathering signatures and opposing a tax measure that would have provided the District with additional funding. *Id*., ¶ 160. Kissner opposed the measure (Measure N) because the District had squandered revenue from a prior tax measure and the District refused to commit to identifying how the new funding would be applied. *Id*., ¶¶ 161-163.

Measure N was an extremely divisive issue in the small community of Los Gatos, generating hundreds of passionate social media posts and comments, letters to the board, and public debate. *Id*., ¶ 168. Kissner was personally and publicly targeted by many school employees and others for his opposition to Measure N. *Id*.

Every board trustee had reason to be bitter about Kissner's opposition. *Id*., ¶ 169. Indeed, Defendant Asheghian, a current trustee, led the Yes on N campaign. *Id*. Defendants Abeln, Arnold and Bourque, all District trustees at the time, openly campaigned for it. *Id*. And Defendant trustee Bourque had recommended the parcel tax as a member of the Superintendent's Budget Advisory Committee. *Id*. Defendant superintendent Fraser along with other school staff members and leadership personally attended community rallies in support of Measure N. *Id*.

The District's fixation with seeing the measure pass led Defendant Abeln to publicly threaten to "personally go after" anyone who opposed Measure N. *Id*., ¶ 170.

In addition to actively volunteering to help defeat the tax measure, Kissner opposed the District's effort to fill a board vacancy with a political crony and organized a petition calling for a

7
Pl.'s Opp'n & Non-Opp'n To School District Defs' Mot. To Dismiss                    Case No. 22-CV-00949-CRB

special election authorizing the community to vote on the position. *Id.*, ¶¶ 174-175. Kissner's efforts were an afront to the board members and threatened to invalidate their vacancy appointment and force them to hold an election at a cost to the District. *Id.*, ¶ 175.

Kissner's actions once again drew the rage of factions, including the District Defendants, within the school community. *Id.*, ¶ 177. Kissner and his allies were bombarded with profanity laced attacks on social media platforms. *Id.* Some of those posting on social media wished death on them. *Id.* One individual anonymously threatened to spread false information about Kissner claiming him to be a child molester unless the petition was withdrawn. *Id.*

### D. **Kissner Is Appealing Both His Layoff And Dismissal**

Kissner is the only teacher to ever be simultaneously laid off and dismissed the same year in the District (perhaps anywhere). He was the only tenured teacher subject to the reduction in force in 2021. Decl. Becker, ¶ 5. He was the only teacher dismissed. *Id.* These are no mere coincidences. *Id.* Both the layoff and dismissal are being appealed. *Id.*

### E. **Individual District Defendants Conspired To Defame Kissner In Retaliation for His Protected Speech**

The District's public release of the statement of charges alleging that Kissner has engaged in "potential grooming behavior" and the underlying false allegations associated with that charge are false. This is confirmed both by the CPC's Decision, which neither discusses nor considers any evidence of "grooming" nor reaches a judgment regarding the allegation of "grooming," and by the District's decision to withdraw the charge of "grooming" prior to the dismissal hearings. SAC, ¶¶ 32, 33, 201, 266; Decl. Becker, ¶ 4, Exh. 1.

On or about April 16, 2021, at or about 10:43 a.m., just 54 minutes after receiving the request, Defendant District and Individual District Defendants responded to the request by attaching the Statement to an email. The response additionally included a letter, which stated in relevant part:

8

> [T]he California Court of Appeals held that records of complaints or investigations against a public employee can be disclosed only if "the complaint is of a substantial nature and there is reasonable cause to believe the complaint or charge of misconduct is well founded." (*See, Bakersfield City School Dist. v. Superior Court* (2004) 118 Cal.App.4th 1041 at 1044; *see also, ERV, Inc. v. Superior Ct.* (2006) 143 Cal.App.4th 742.) **However, in such instances, a public agency's decision to release confidential documents under the PRA is reviewable by petition for writ of mandate in a "reverse-PRA" lawsuit. (*See, Marken v. Santa Monica-Malibu Unified School Dist.* (2012) 202 Cal.App.4th 250.)**
>
> \*\*\*
>
> [T]he District is unable to produce privileged document(s) or information encompassed by an exemption under the PRA or any state or federal law. (See e.g., Gov. Code 6254 and 6255.) Accordingly, the District will segregate and/or redact privileged and/or exempt information as needed.

(Emphasis added.)

*Id*., ¶ 189. By the letter's express language, Defendant District and Individual District Defendants knew and understood that they were obligated to consult with Kissner to determine whether he intended to object to the release of the false and defamatory Statement on the basis of any privacy concerns by filing a petition for writ of mandate to enjoin the false and defamatory Statement's release to the public. *Id*., ¶ 190. Additionally, by the letter's express language, Defendant District and Individual District Defendants knew and understood that they were prohibited from producing information encompassed by an exemption under the PRA or any state or federal law. *Id*., ¶ 191.

### F. Kissner Was Harmed By The District's Retaliatory Acts For His Political Speech

The District Defendants acted under color of state law by targeting Kissner for adverse employment action in retaliation for his protected political speech. *Id*., ¶ 241.

## IV. ARGUMENT

### A. Plaintiff's Civil Rights Conspiracy Claim Is Not An Independent Cause Of Action

Alleging a civil rights conspiracy cause of action results in no prejudice to Defendants, whose motion is really based on a matter of form over substance. Citing *Adickes v. Kress & Co*.,

9

398 U.S. 144, 150-152 (1970), Defendants futilely argue that a claim for civil rights conspiracy under 42 U.S.C. § 1983 cannot be independently alleged as a cause of action separate from other § 1983 claims because " '[c]onspiracy is merely the mechanism by which to obtain the necessary state action…." (Defs' Mot. 11:27.) Interestingly, this statement begins with an opening quotation mark but does not close with one. Indeed, nothing in the *Adickes* decision makes this statement or even implies it. Defendants' citation to *Comfort v. Town of Pittsfield*, 924 F.Supp. 1219, 1229 (D.Me. 1996) fares no better. Defendants quote that decision to state, "[c]onspiracy merely provides the mechanism by which to plead or prove the constitutional or statutory violation." But that line, selectively plucked from the decision, omits the larger context of the court's analysis, which, incidentally, just a few lines before, states somewhat categorically that "[c]onspiracy claims are actionable under § 1983." *Id*. Then finally, and a bit desperately while misunderstanding it, Defendants resort to a footnote in a 1987 New York district court decision stating, "[t]here is… no cause of action for conspiracy *per se* under section 1983.… Plaintiff must provide the deprivation of a specifically-protected constitutional right to sustain the conspiracy claim." *Dean Tarry Corp. v. Friedlander,* 650 F.Supp. 1544, 1553, fn. 15 (S.D.N.Y. 1987). It is the second half of that quote Defendants misunderstand. In essence, the claim doesn't exist without the deprivation element.

"A conspiracy is not a necessary element of a claim under § 1983, although proof of a civil conspiracy may broaden the scope of liability under § 1983 to include persons who were part of such conspiracy but did not act directly to deprive a plaintiff of the plaintiff's rights." 15 Am. Jur. 2d Civil Rights § 145, citing *Katz v. McVeig*h, 931 F. Supp. 2d 311, (D.N.H. 2013), aff'd, (1st Circ. 13-1453, 13-1529) (Sept. 23, 2014); and *Crawford v. Geiger*, 996 F. Supp. 2d 603 (N.D. Ohio 2014). Clearly, the broader contours of a civil rights conspiracy claim brought under § 1983 (i.e., "A civil conspiracy is a combination of two or more persons who, by some concerted action, intend to accomplish some unlawful objective for the purpose of harming another which results in

damage." *Quiroz v. Horel*, 85 F. Supp. 3d 1115, 1147 (N.D. Cal. 2015)) justify Plaintiff alleging it as an independent cause of action.

### B. Plaintiff's Civil Rights Defamation Claim Is Not Duplicative Of His Procedural Due Process Claim

Once again, Defendants' attempt to lift form over substance results in no prejudice to them. Defendants struggle just as unnecessarily with their argument for dismissing Plaintiff's civil rights defamation claim for relief. They argue simply that because "stigma-plus" defamation applies only to alleged violations of due process, it is subsumed within the procedural due process claim for relief. (Def. Mot. 15:18-25.) Case law neither bars a separate cause of action for civil rights defamation nor requires it to be alleged within a due process cause of action. The significance of alleging civil rights defamation separately is necessary to distinguish it from other due process violations.

### C. Defendants' Argument Regarding Immunity From Liability For Disclosing Public Records In Connection With Three State Claims Is Moot For Purposes Of This Motion

Defendants argue that the District is immune from liability for disclosing public records only as it relates to three state causes of action (defamation per se, false light invasion of private facts, and public disclosure of private facts). (Def. Mot. 12:21-15:2.) Inasmuch as Plaintiff has dismissed those causes of action, Defendants' argument is moot and need not be addressed by the Court.

### D. Assuming The Court Grants Defendants' Motions, It Should Grant Plaintiff Leave To Amend The Complaint

This Circuit has noted "on several occasions that the Supreme Court has instructed the lower federal courts to heed carefully the command of Rule 15(a), Fed. R. Civ. P. by freely granting leave to amend when justice so requires." *DCD Programs, Ltd. v. Leighton*, 833 F.2d 183, 186 (9th Cir. 1987). (Cleaned up; citations omitted.) Fed. R. Civ. P. 15(a) instructs that "leave shall be freely

given when justice so requires." *Id*. The underlying purpose of Rule 15 is to "facilitate decision on the merits, rather than on the pleadings or technicalities." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000). Amending the SAC would not be futile. Therefore, if necessary, Plaintiff should be granted leave to amend.

## V. CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that Defendants' motion to dismiss be denied.

Date: June 9, 2022   FREEDOM X

By: <u>/s/ William J. Becker, Jr.</u>
William J. Becker, Jr.
Attorneys for Plaintiff, David M. Kissner