**PORTER | SCOTT**
A PROFESSIONAL CORPORATION
Lindsay A. Goulding, SBN 227195
Tatiana M. Bush, SBN 343503
350 University Avenue, Suite 200
Sacramento, California 95825
lgoulding@porterscott.com
tbush@porterscott.com
TEL: 916.929.1481
FAX: 916.927.3706

Attorneys for Defendant
LAWRENCE MCVOY

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DAVID M. KISSNER, an individual, | CASE NO. 22-CV-00949-CRB |
| Plaintiff, | Assigned to: Hon. Charles R. Breyer |
| v. | **DEFENDANT'S REPLY TO PLAINTIFF'S OPPOSITION TO DEFENDANT'S NOTICE OF MOTIONS AND [1] SPECIAL MOTION TO STRIKE PURSUANT TO CALIFORNIA ANTI-SLAPP STATUTE, CAL. CODE OF CIV. PROC. § 425.16, OR, IN THE ALTERNATIVE, [2] MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. 12(b)(6)** |
| LOMA PRIETA JOINT UNION SCHOOL DISTRICT, a California public agency; LISA FRASER, former superintendent at Loma Prieta Joint Union School District, in her official and individual capacities; COREY KIDWELL, former superintendent at Loma Prieta Joint School District, in her official and individual capacities; KEVIN GRIER, successor superintendent at Loma Prieta Joint School District, in his official capacity; BILLY MARTIN, principal of CT English Middle School, in his official and individual capacities; DEANA A. ARNOLD, Loma Prieta Joint Union School District trustee, in her official and individual capacities; BEN ABELN, Loma Prieta Joint Union School District trustee, in his official and individual capacities; RON BOURQUE, Loma Prieta Joint Union School District trustee, in his official and individual capacities; CHARLOTTE KHANDELWAL, Loma Prieta Joint Union School District | [*Filed concurrently with [Proposed] Order*]<br><br>Date: August 12, 2022<br>Time: 10:00 a.m.<br>Ctrm.: 6, 17th Flr<br><br>Complaint Filed: 3/20/2022<br>Trial Date: Not Set |

{02729962.DOCX}

1  trustee, in her official and individual capacities; ERIN ASHEGHIAN, Loma Prieta Joint Union School District trustee, in her official and individual capacities; PATRICIA ELLIOT, an individual; JOIE GRIMMET, an individual; LAWRENCE MCVOY, and individual, and DOES 1 through 50, inclusive,

   Defendants.
   _____/

{02729962.DOCX}

**DEFENDANT'S REPLY TO PLAINTIFF'S OPPOSITION TO DEFENDANT'S NOTICE OF MOTIONS AND [1] SPECIAL MOTION TO STRIKE PURSUANT TO CALIFORNIA ANTI-SLAPP STATUTE, CAL. CODE OF CIV. PROC. § 425.16, OR, IN THE ALTERNATIVE, [2] MOTION TO DISMISS PURSUANT TO FED. R. CIV.P. 12(b)(6)**

PORTER | SCOTT
350 University Avenue, Suite 200
Sacramento, CA 95825
TEL: 916.929.1481
FAX: 916.927.3706

# TABLE OF CONTENTS

I. INTRODUCTION .................................................................................................................. 1

II. ARGUMENT ........................................................................................................................ 2

   A. Plaintiff Continues To Fail To Substantiate A Factual Showing Of Defamation Per Se Against Defendant ........................................................................ 2

   B. Plaintiff Cannot Make A Valid Factual Showing Of Causation As Relates To Defendant And The Allegedly Defamatory Statement ............................................. 2

   C. Plaintiff Meets The Criteria To Qualify As A Limited Purpose Public Figure For Purposes Of The Instant Litigation ......................................................................... 3

      1. Plaintiff Cannot Prove Actual Malice ................................................................. 5

      2. Plaintiff Cannot Meet The Clear and Convincing Evidence Standard ............... 5

   D. Plaintiff Has Failed To Show It Is More Likely Than Not That He will Prevail The Merits Of His Claims As Required Under The Second Prong Of The Anti-SLAPP Statute Thus His Claims Should Be Stricken As A Matter Of Law ..................... 6

      1. First Prong ......................................................................................................... 6

      2. Second Prong ..................................................................................................... 6

   E. Defendant's Statement Is A Nonactionable Opinion Under The Totality Of The Circumstances Test And Protected Under The Opinion Privilege ........................... 9

      1. Use Of Hyperlinks Decreases The Possibility Of Defamation Liability .......... 11

   F. Plaintiff Has Failed, Again, To State A Valid Claim For Defamation Per Se, False Light Invasion Of Privacy And Intentional Infliction Of Emotional Distress, Upon Which Relief Can Be Granted ...................................................... 13

   G. Defendant Is Entitled To Attorneys' Fees As A Matter of Law ............................. 13

III. CONCLUSION ................................................................................................................. 13

PORTER | SCOTT
350 University Avenue, Suite 200
Sacramento, CA  95825
TEL: 916.929.1481
FAX: 916.927.3706

{02729962.DOCX}                                                         i

**DEFENDANT'S REPLY TO PLAINTIFF'S OPPOSITION TO DEFENDANT'S NOTICE OF MOTIONS AND [1] SPECIAL MOTION TO STRIKE PURSUANT TO CALIFORNIA ANTI-SLAPP STATUTE, CAL. CODE OF CIV. PROC. § 425.16, OR, IN THE ALTERNATIVE, [2] MOTION TO DISMISS PURSUANT TO FED. R. CIV.P. 12(b)(6)**

PORTER | SCOTT
350 University Avenue, Suite 200
Sacramento, CA 95825
TEL: 916.929.1481
FAX: 916.927.3706

# TABLE OF AUTHORITIES

Cases

Alpha & Omega Development, LP v. Whillock Contracting, Inc.,
  (2011) 200 Cal. App. 656 .................................................................................................. 8

Ampex Corp. v. Cargle,
  (2005) 128 Cal. App. 4th 1569 .......................................................................................... 3

Annette F. v. Sharon S.,
  (4th Dist. 2004) 119 Cal. App. 4th 1146 ........................................................................... 6

Balla v. Hall,
  (2021) 59 Cal. App. 5th 652 .............................................................................................. 5

Balzaga v. Fox News Network, L.L.C.,
  (2009) 173 Cal. App. 4th 1325 ........................................................................................ 10

Butte Fire Cases,
  (2018) 24 Cal. App. 5th 1150 ............................................................................................ 5

Chaker v. Mateo
  (2012) 209 Cal. App. 4th 1138 ........................................................................................ 12

Copp v. Paxton
  (1996) 45 Cal. App. 4th 829 .............................................................................................. 3

Daniel v. Wayans,
  (Cal. Ct. App., Jan. 31, 2020, No. B261814) 2020 WL 502623 ..................................... 13

DuPont Merck Pharmaceutical Co. v. Superior Ct.,
  (2000) 78 Cal. App. 4th 562 .............................................................................................. 7

Dwight R. v. Christy B.,
  (2013) 212 Cal. App. 4th 697 ............................................................................................ 8

Feld v. Conway,
  (D. Mass. 2014) 16 F. Supp. 3d 1 ............................................................................. 10, 11

Gilbert v. Sykes,
  (2007) 147 Cal. App. 4th 13 ......................................................................................... 3, 4

Hecimovich v. Encinal School Parent Teacher Organization,
  (1st Dist. 2012) 203 Cal. App. 4th 450 ............................................................................... 7

Metabolife Intern., Inc. v. Wornick,
  (9th Cir. 2001) 264 F. 3d 832 ............................................................................................. 8

Milkovich v. Lorain Journal Co.,
  (1990) 497 U.S. 1 ............................................................................................................... 9

Miller v. Filter,
  (3d Dist. 2007) 150 Cal. App. 4th 652 ............................................................................... 7

N.Y. Times Co. v. Sullivan,
  (1964) 376 U.S. 254 ......................................................................................................... 11

Navarro v. IHOP Properties, Inc.
(2005) 134 Cal. App. 4th 834 .......................................................................................... 7, 8

Navellier v. Sletten,
  (2002) 29 Cal. 4th 82 .......................................................................................................... 6

No Doubt v. Activision Publishing, Inc.,
  (2011) 192 Cal. App. 4th 1018 ........................................................................................... 7

Paulus v. Bob Lynch Ford, Inc.,
  (2006) 139 Cal. App. 4th 659 ............................................................................................. 7

Peregrine Funding, Inc. v. Sheppard Mullin Richter & Hampton LLP,
  (2005) 133 Cal. App. 4th 658 ............................................................................................. 7

Powertech Technology, Inc. v. Tessera, Inc.,
  (N.D. Cal. 2012) 872 F. Supp. 2d 924 ............................................................................... 8

Price v. Stossel,
  (C.D. Cal. 2008) 590 F. Supp. 2d 1262 ............................................................................. 7

Redmond v. Gawker Media, L.L.C.
  (Cal. Ct. App. Aug. 10, 2012) No. A132785, 2012 WL 3243507, at *4-*7 .................... 11

Traditional Cat Association, Inc. v. Gilbreath,
  (2004) 118 Cal. App. 4th 392 ............................................................................................. 7

PORTER | SCOTT
350 University Avenue, Suite 200
Sacramento, CA  95825
TEL: 916.929.1481
FAX: 916.927.3706

{02729962.DOCX}                                           iii
**DEFENDANT'S REPLY TO PLAINTIFF'S OPPOSITION TO DEFENDANT'S NOTICE OF
MOTIONS AND [1] SPECIAL MOTION TO STRIKE PURSUANT TO CALIFORNIA
ANTI-SLAPP STATUTE, CAL. CODE OF CIV. PROC. § 425.16, OR, IN THE ALTERNATIVE,
[2] MOTION TO DISMISS PURSUANT TO FED. R. CIV.P. 12(b)(6)**

Young v. CBS Broadcasting, Inc.,
(3d Dist. 2012) 212 Cal. App. 4th 551, (where the court dismissed ............................................ 6

Statutes

CAL. CODE OF CIV. PROC. § 425.16.......................................................................................... 1

Rules

FED. R. CIV. P. 12(b)(6) ........................................................................................... 1, 13
FRCP 32(a)(7)(A) ........................................................................................................ 1

Other Authorities

*Silencing John Doe: Defamation and Discourse in Cyberspace*,
49 DUKE L.J. 855, note 5 (2000) ........................................................................................ 9

PORTER | SCOTT
350 University Avenue, Suite 200
Sacramento, CA 95825
TEL: 916.929.1481
FAX: 916.927.3706

{02729962.DOCX}
iv
DEFENDANT'S REPLY TO PLAINTIFF'S OPPOSITION TO DEFENDANT'S NOTICE OF MOTIONS AND [1] SPECIAL MOTION TO STRIKE PURSUANT TO CALIFORNIA ANTI-SLAPP STATUTE, CAL. CODE OF CIV. PROC. § 425.16, OR, IN THE ALTERNATIVE, [2] MOTION TO DISMISS PURSUANT TO FED. R. CIV.P. 12(b)(6)

## I.

## INTRODUCTION

On May 26, 2022, DEFENDANT LAWRENCE MCVOY (hereinafter "Defendant") timely filed and served a Special Motion to Strike Pursuant to California's Anti-SLAPP Statue, California Civil Procedure ("CCP") Section 425.16, Or, In The Alternative, Motion To Dismiss Pursuant To Federal Rules of Civil Procedure ("FRCP") 12(b)(6) ("the Motions").  ECF No. 51. As the Motions explain, Plaintiff's claims against Defendant for defamation, per se, intentional infliction of emotional distress and false light invasion of privacy, are each meritless because Plaintiff cannot prove he is more likely than not to prevail on his claims against Defendant. Plaintiff's claims fail under both the Anti-SLAPP statue and Rule 12(b)(6).

Under Judge Breyer's Standing Orders, "Briefs or Memorandums of Points and Authorities in support of, or in Opposition to, any Motions filed in an action … may not exceed [fifteen]15 pages in length, exclusive of title pages, indexes of cases, table of contents, exhibits, affidavits and sums of arguments, including references to any important cases cited … Any party wishing to exceed this limit must request leave of the court and must show good cause."  Hon. Breyer's Standing Ord., § I(C).

On June 9, 2022, Plaintiff filed the Opposition to the Motions ("Opposition" or "ECF No. 51").  The Opposition, exclusive of title pages, indexes of cases, table of contents, exhibits, affidavits and summary of arguments is twenty-four (24) pages; nine (9) pages over the limit.

Under FRCP 32(a)(7)(A), the Court need not consider the arguments set fourth beyond page fifteen of the Opposition.  Plaintiff's failure to request leave permits the Court, as a matter of law, to disregard the Opposition all together.  Plaintiff has thus far failed to submit the requisite request for leave of the Court to exceed the page limit set in Judge's Standing Orders.

The Court may be tempted to disregard the last nine pages of the Opposition brief, but this will prejudice Defendant because Defendant will not know if the Court will proceed in that manner.  Thus, Defendant is forced to respond to all of the arguments raised in the entire twenty-four (24) pages and Defendant only has fifteen (15) pages to do so in Defendant's Reply.  Doing so would lead to Defendant being prejudiced as a result.

{02729962.DOCX} 1
**DEFENDANT'S REPLY TO PLAINTIFF'S OPPOSITION TO DEFENDANT'S NOTICE OF MOTIONS AND [1] SPECIAL MOTION TO STRIKE PURSUANT TO CALIFORNIA ANTI-SLAPP STATUTE, CAL. CODE OF CIV. PROC. § 425.16, OR, IN THE ALTERNATIVE, [2] MOTION TO DISMISS PURSUANT TO FED. R. CIV.P. 12(b)(6)**

## II.

## ARGUMENT

### A. Plaintiff Continues To Fail To Substantiate A Factual Showing Of Defamation Per Se Against Defendant

The Opposition makes no arguments proving defamation by Defendant. Instead, Plaintiff asserts the same conclusory allegations as previously asserted in the ninety-six-page Second Amended Complaint (hereinafter "SAC").

Plaintiff's new conclusory allegations that "McVoy was the only member posting that he [sic] had taken the time to read the decision and assimilate its content[,]" as well as the conclusion that "[Defendant] McVoy was the only person who asserted that Kissner 'was grooming kids' and that 'all the evidence points that way'" are simply not true. See Community Forum Thread, Reply Nos. 121744, 121746, 121757, 122554, 122566, 122567, 122568, 122573, 122589, 122650; and 122244, 122553, 122554, 122558, 122565, 122567, 122573, 122650, 122654, respectively.

### B. Plaintiff Cannot Make A Valid Factual Showing Of Causation As Relates To Defendant And The Allegedly Defamatory Statement

Plaintiff offers no evidence and pleads no facts establishing a direct link to Defendant's statement. Instead, Plaintiff merely offers conclusions without any foundation, as he did in the SAC.

Plaintiff fails to prove causation by any stretch of the imagination. Plaintiff admits in the Opposition that he "had been tormented by the District's false allegations of 'grooming,' even being brought to the point of tears during his testimony at the dismissal proceedings." ECF No. 51 at 7:25-26. These harms are not the result of Defendant's statement.

In the Opposition, Plaintiff now alleges that Defendant's "statement transformed unproved allegations into an authoritative distillation of evidence purportedly presented to the [Commission,]" Id. at 7:28-8:1, and "[Plaintiff] was forced to relocate his family out of the area in order to distance himself from the stigma he has been branded with[,]" Id. at 8:3-4. However, Plaintiff again fails to establish *how* any of the stigma he's been branded with is the direct result of Defendant's post rather than the result of his own actions, or the actions of the District (i.e.,

{02729962.DOCX}   2

**DEFENDANT'S REPLY TO PLAINTIFF'S OPPOSITION TO DEFENDANT'S NOTICE OF MOTIONS AND [1] SPECIAL MOTION TO STRIKE PURSUANT TO CALIFORNIA ANTI-SLAPP STATUTE, CAL. CODE OF CIV. PROC. § 425.16, OR, IN THE ALTERNATIVE, [2] MOTION TO DISMISS PURSUANT TO FED. R. CIV.P. 12(b)(6)**

investigations, discipline and subsequent termination).

### C. Plaintiff Meets The Criteria To Qualify As A Limited Purpose Public Figure For The Purposes Of The Instant Litigation

"Copp v. Paxton (1996) 45 Cal. App. 4th 829, sets forth the elements that must be present in order to characterize a plaintiff as a limited purpose public figure. First, there must be a public controversy, which means the issue was debated publicly and had foreseeable and substantial ramifications for nonparticipants." Gilbert v. Sykes (2007) 147 Cal. App. 4th 13, 24, quoting Ampex Corp. v. Cargle (2005) 128 Cal. App. 4th 1569, 1577. Here, public controversy surrounds Plaintiff beginning with his political activism, social activism, religious involvement and inappropriate behavior with children. See generally, SAC.

"Second, the plaintiff must have undertaken some voluntary act through which [they] sought to influence resolution of the public issue. In this regard it is sufficient that the plaintiff attempts to thrust [them]self into the public eye." Gilbert 147 Cal. App. 4th at 24. Here, Plaintiff gave media interviews, created and posted a widely-viewed video sharing ongoing District investigations and his vehement displeasure with them, attended and gave speeches at town hall meetings and Board meetings, and undoubtedly more public engagements of which parties remain ignorant. See generally, SAC and the Motions.

"And finally, the alleged defamation must be germane to the plaintiff's participation in the community." Gilbert 147 Cal. App. 4th at 24. Here, the allegedly defamatory statement is made in a public forum detailing Plaintiff's social, political, religious activism, as well as his inappropriate behavior with children. See generally, Community Forum Thread. In this singular and textualized debate, community members are not able to divorce any one subject of Plaintiff's infamy as all are related to each other. Thus, the alleged defamatory statement is germane to Plaintiff's participation in the Community.

All of these very public matters of public concern are directly related to Plaintiff and his roles in the Community as a resident and well-known educator. Plaintiff has himself produced evidence that he "thrust himself" into these debates by making public these issues in various manners and through various mediums. See SAC, §§ I, V and VI.

{02729962.DOCX}
3
**DEFENDANT'S REPLY TO PLAINTIFF'S OPPOSITION TO DEFENDANT'S NOTICE OF MOTIONS AND [1] SPECIAL MOTION TO STRIKE PURSUANT TO CALIFORNIA ANTI-SLAPP STATUTE, CAL. CODE OF CIV. PROC. § 425.16, OR, IN THE ALTERNATIVE, [2] MOTION TO DISMISS PURSUANT TO FED. R. CIV.P. 12(b)(6)**

For example, Plaintiff's public and well-viewed video, which he released on his website, discusses Measure N, the District's ongoing investigations into him, the Board's actions towards dismissal, Plaintiff's desires and plans to fight all investigations and the results thereof, including investigations into his inappropriate behavior with children.  SAC, ¶¶ 166-167.  Plaintiff has also given voluntary interviews with media outlets, been the subject of media articles and made public speeches about all of the aforementioned during very contentious and very public Board meetings in which Community members attended in droves.  SAC, ¶¶ 89, 96 and 106.  While Plaintiff prefers to focus solely on one subject to deny his public figure status, these issues are not, should not and cannot be wholly divorced from the whole of the public controversy.  As a well-known educator, vocal Community activist and active church member, "[t]hese facts provide compelling proof that [Plaintiff] 'undertook "some voluntary act[s] through which he s[ought] to influence the resolution of the public issues involved,"' and took "'affirmative actions' to thrust himself into the 'forefront of [a] particular public controvers[y] [on several occasions].'"  It is not even necessary to show that [Plaintiff] actually achieved prominence in the public debate.  It is sufficient that [Plaintiff] 'attempt[ed] to thrust himself into the public eye' or to influence a public decision."  Gilbert 147 Cal. App. 4th at 25; citations omitted.

Here, Plaintiff succeeded in thrusting himself into the public eye on multiple occasions, all relating to his various roles in the Community.  Additionally, Plaintiff also tried in earnest to influence public decisions regarding Measure N, the national student walk-out, his non-District approved math camps, and how the Community perceived him regarding his inappropriate behavior with children.

Defendant's allegedly defamatory post is "germane to [ ] [P]laintiff's participation in the controvers[ies]" detailed above.  "Here, [Plaintiff]'s sought-after prominence as a[] public influencer] as a means of personal enhancement transformed him into a limited purpose public figure" for the purposes of the instant litigation.  Gilbert 147 Cal. App. 4th at 26.  "As such, statements alleging that his [behavior in these roles and public opinions regarding the same] are entitled to constitutional protection."  Id.

It is clear from the SAC, Opposition, accompanying Declaration and his voluntary conduct

thrusting himself into the public eye, that Plaintiff also sees these public issues as one ongoing, public controversy. Even now in the Opposition, Plaintiff spends the first seven pages detailing his experiences as a limited purpose public figure in the public controversy. Thus, it would now be hypocritical for Plaintiff to attempt to divorce these issues of public concern for selfish purposes.

Plaintiff's may not annul the issues to create a fictitious, microscopic view of the public controversy. Plaintiff has been a vocal and public force in revealing his personal and professional views on the issues, as well as publicly disclosing his attempts to persuade the Community to his positions relating to these ongoing matters of public concern.

He should reap the benefits and burdens of his conduct and be identified as the public figure he worked so hard to become. Because of this standing, Plaintiff is required to prove, with evidence, that Defendant made the allegedly defamatory statement with actual malice.

### 1. Plaintiff Cannot Prove Actual Malice

"To prove actual malice, a plaintiff must show that statements were made with "knowledge that [they were] false or with reckless disregard of whether [they were] false or not. 'There must be sufficient evidence to permit the conclusion that the defendant in fact entertained serious doubts as to the truth,' and the evidence must be clear and convincing. The burden of proof by clear and convincing evidence 'requires a finding of high probability' [and] must 'leave no substantial doubt.'" Balla v. Hall (2021) 59 Cal. App. 5th 652, 682–683; citations and quotations omitted.

### 2. Plaintiff Cannot Meet The Clear and Convincing Evidence Standard

"Under the clear and convincing standard, the evidence must be 'so clear as to leave no substantial doubt' and 'sufficiently strong to command the unhesitating assent of every reasonable mind.'" Butte Fire Cases (2018) 24 Cal. App. 5th 1150, 1158–1159, as modified on denial of rehearing (July 26, 2018); citations omitted.

"Considerations such as 'anger and hostility toward the plaintiff,' 'reliance upon sources known to be unreliable or known to be biased against the plaintiff,' and 'failure to investigate' may, 'in an appropriate case, indicate that the publisher himself had serious doubts regarding the truth of his publication.' Such evidence is relevant 'to the extent that it reflects on the subjective attitude of the publisher,' and failure to investigate, without more, generally is insufficient." Balla 59 Cal.

App. 5th at 683; citations and quotations omitted.

"[A] plaintiff's failure to present evidence of 'actual malice' where a libel matter involved a public figure or public controversy is a frequent basis for dismissal using the anti-SLAPP statute." Annette F. v. Sharon S. (4th Dist. 2004) 119 Cal. App. 4th 1146, 1162–1172 (where the court dismisses limited purpose public figure libel action when the plaintiff, a participant in a "highly publicized and controversial" second-parent adoption proceeding failed to prove that allegedly libelous statements about the plaintiff's former partner were published with clear and convincing evidence of actual malice); see also, Young v. CBS Broadcasting, Inc. (3d Dist. 2012) 212 Cal. App. 4th 551, 562–566, (where the court dismissed the libel action where plaintiff, a professional fiduciary, was treated as a public official and failed to show that defendants acted with actual malice in news reporting critical of plaintiff's conduct as a court appointed conservator).

Here, Plaintiff offers no evidentiary support to make a showing of fact proving Defendant acted with actual malice by any of the factors considered by courts in making its determination. Thus, Plaintiff fails to state and substantiate actual malice as pertains to Defendant's allegedly defamatory statement.

**D.  Plaintiff Has Failed To Show It Is More Likely Than Not That He Will Prevail On The Merits Of His Claims, As Required Under The Second Prong Of The Anti-SLAPP Statute Thus His Claims Should Be Stricken As A Matter Of Law**

### 1. First Prong

"Plaintiff does not dispute that Defendant has met his prima facie burden and that his [allegedly] defamatory statement was made in connection with a public issue" because "the welfare of children is a matter of serious concern to the public." ECF No. 51 at 11:14-16. Thus, the first prong of the anti-SLAPP statute is met and the burden shifts to Plaintiff.

### 2. Second Prong

The California Supreme Court and other appellate courts characterize the required showing that a plaintiff must make under prong two as involving "minimal merits." Navellier v. Sletten (2002) 29 Cal. 4th 82, 95 note 11 ("claims with the requisite minimal merits may proceed"). However, plaintiffs should not be lulled into the "myth of minimal merits" by assuming

{02729962.DOCX}  6
**DEFENDANT'S REPLY TO PLAINTIFF'S OPPOSITION TO DEFENDANT'S NOTICE OF MOTIONS AND [1] SPECIAL MOTION TO STRIKE PURSUANT TO CALIFORNIA ANTI-SLAPP STATUTE, CAL. CODE OF CIV. PROC. § 425.16, OR, IN THE ALTERNATIVE, [2] MOTION TO DISMISS PURSUANT TO FED. R. CIV.P. 12(b)(6)**

that prong two is *easily* satisfied by merely offering a threadbare recitation of the elements. "While plaintiff's burden may not be 'high,' [they] must demonstrate that [the] claim is legally sufficient." Hecimovich v. Encinal School Parent Teacher Organization (1st Dist. 2012) 203 Cal. App. 4th 450, 469. Where a defendant's anti-SLAPP motion asserts a privilege or a statute of limitations defense based on undisputed facts, it may be extremely difficult for the plaintiff to overcome the anti-SLAPP motion. See Miller v. Filter (3d Dist. 2007) 150 Cal. App. 4th 652, 666–671 (anti-SLAPP motion granted where de facto district attorneys enjoyed government immunity); see also, Traditional Cat Association, Inc. v. Gilbreath (2004) 118 Cal. App. 4th 392, 398–404 (anti-SLAPP motion granted based on single publication rule and statute of limitations bar). "In opposing a motion to strike under the anti-SLAPP statute, the plaintiff may not rely solely on its complaint, even if verified; instead, proof must be made upon competent admissible evidence." Paulus v. Bob Lynch Ford, Inc. (2006) 139 Cal. App. 4th 659, 672-673.

"Generally, 'plaintiffs' burden in opposing an anti-SLAPP lawsuit against an anti-SLAPP motion [is] to substantiate each element of their cause of action and not merely to counter the defendant's affirmative defenses. No Doubt v. Activision Publishing, Inc. (2011) 192 Cal. App. 4th 1018, 1028. A defendant seeking the protection of California's anti-SLAPP statute may defeat a cause of action by showing the plaintiff cannot establish an element of its cause of action or by showing there is a complete defense to the cause of action. Peregrine Funding, Inc. v. Sheppard Mullin Richter & Hampton LLP (2005) 133 Cal. App. 4th 658, 676.

It is not sufficient that plaintiff's complaint can and may survive a demurrer, plaintiff must also "substantiate" the legal sufficiency of their claim. DuPont Merck Pharmaceutical Co. v. Superior Ct. (2000) 78 Cal. App. 4th 562, 568, as modified (Jan. 25, 2000). In responding to a special anti-SLAPP motion, a plaintiff cannot rely solely on the allegations set forth in his pleadings, nor may the court simply accept those allegations. Price v. Stossel (C.D. Cal. 2008) 590 F. Supp. 2d 1262, 1266.

In Navarro v. IHOP Properties, Inc. (2005) 134 Cal. App. 4th 834, 845, after defendant filed anti-SLAPP motion, plaintiff failed to demonstrate probability of prevailing inasmuch as she failed to establish a prima facie case for the cause of action so her claim was subject to strike.

Specifically, plaintiff offered nothing to dispute compelling evidence that the losses plaintiff suffered were not the result of any false promise by defendant, but rather plaintiff's own failure to meet the obligations set forth in the stipulate judgment." Id.

Similarly here, Plaintiff has failed to offer *any* competent and admissible evidence to demonstrate *any* probability of prevailing on *any* claim alleged against Defendant. In determining whether plaintiff has made a prima facie evidentiary showing on the second prong, courts disregard declarations lacking in foundation or personal knowledge, or that are argumentative, speculative, impermissible opinion, hearsay, or conclusory. Dwight R. v. Christy B. (2013) 212 Cal. App. 4th 697, 714; see also Alpha & Omega Development, LP v. Whillock Contracting, Inc. (2011) 200 Cal. App. 656, 664. Defendant has shown through argument in brief and evidence submitted, that Plaintiff cannot prevail as a matter of law because Plaintiff has failed to prove all elements of his claims and the only evidence submitted is his own conclusory declaration, conclusory Opposition and conclusory SAC. Thus, Plaintiff's conclusory declaration, conclusory SAC, and conclusory Opposition which are all conclusory because they fail to make a factual showing of any kind, are far from sufficient for him to prevail on prong two.

Contrast Plaintiff's failure to prove *any* prima facie claims with Powertech Technology, Inc. v. Tessera, Inc. (N.D. Cal. 2012) 872 F. Supp. 2d 924. There, plaintiff met its burden to establish minimum legal sufficiency and factual triability of its damages claim to overcome defendant's anti-SLAPP motion by alleging harm by proving that if defendant has complied with terms of the license agreement and had terminated the agreement before initiating patent infringement investigation then plaintiff would not have been forced to continue to pay royalty to its customers while plaintiff was being sued by defendant. Id. at 935-936.

Here, Plaintiff has not and cannot show that "but for" Defendant's single post in a public forum, then Plaintiff would not have suffered the alleged harms concluded in the SAC and Opposition. As such, dismissal of each of Plaintiff's causes of action is the only appropriate result as a matter of law because no reasonable jury could find for him with the conclusory evidence he has submitted. See Metabolife Intern., Inc. v. Wornick (9th Cir. 2001) 264 F. 3d 832, 840.

As stated in the Opposition, "[t]o establish 'minimum merit,' the plaintiff need only 'state

{02729962.DOCX}                                  8
**DEFENDANT'S REPLY TO PLAINTIFF'S OPPOSITION TO DEFENDANT'S NOTICE OF MOTIONS AND [1] SPECIAL MOTION TO STRIKE PURSUANT TO CALIFORNIA ANTI-SLAPP STATUTE, CAL. CODE OF CIV. PROC. § 425.16, OR, IN THE ALTERNATIVE, [2] MOTION TO DISMISS PURSUANT TO FED. R. CIV.P. 12(b)(6)**

and substantiate a legally sufficient claim." ECF No. 51 at 12:10-11. But as is revealed in case law and brief, Plaintiff has repeatedly failed to submit any competent evidence which actually substantiates any of his claims against Defendant. Thus, Plaintiff has failed to meet his burden at prong two and the SAC must be stricken.

### E. Defendant's Statement Is A Nonactionable Opinion Under The Totality Of The Circumstances Test And Protected Under The Opinion Privilege

Contrary to Plaintiff's baseless assertion that "Defendant's incomplete analysis fails to consider other factors courts must consider bearing on 'the natural and probable effect upon the mind of the average reader[,]" Defendant *clearly* discusses "the language of the statement itself [in order] to determine whether the words are understood in a defamatory sense," see the Motions at 15:19-17:2; "the context in which the statement was made[,]" see the Motions at 16:2-17:2; "the medium by which the statement is disseminated[,]" see the Motions, 16:8-19; "and the audience to which it is published[,]" see the Motions at 16:8-17:12 and 17:17-18:21.

The central question in all defamation cases is whether the defendant's published or posted statement was false and defamatory. When addressing this question, the Supreme Court has directed lower courts that the First Amendment bars holding speakers liable for defamation when they publish or post statements about matters of public concern that are unverifiable (i.e., not provable as false) or cannot reasonably be interpreted as stating actual facts about the plaintiff.

To correctly determine whether a statement is a nonactionable opinion, courts sometimes must consider the conventions of discourse within social-media environments. Internal, verbal clues within a text, such as poor grammar and profanity, often signal something about the intended meaning an individual speaker wishes to convey.

The opinion privilege requires courts to place themselves in the shoes of reasonable readers of the allegedly defamatory statement to determine whether a defendant's allegedly defamatory statement is capable of being proven false, or whether it might be construed as satire, parody, hyperbole, or another type of figurative speech. Milkovich v. Lorain Journal Co. (1990) 497 U.S. 1, 20; see also Lyrissa Lidskey, *Silencing John Doe: Defamation and Discourse in Cyberspace*, 49 DUKE L.J. 855, note 5 at 926 (2000) ("*Silencing John Doe*") (discussing the scope of the opinion

1  privilege). Determining whether a published statement falls into one of these categories and is a
2  nonactionable opinion requires analyzing the exact language, as well as the internal context (i.e., the
3  entire thread of the subject discussion, debate or comment-thread) and external context (i.e., the
4  social, philosophical, and political atmosphere in which the post was made).

5  Some courts have begun to recognize that the comment-thread infrastructure of many social-
6  media platforms can offer an important contextual clue on the question of whether a statement
7  constitutes an assertion of defamatory fact or an expression of protected opinion. See <u>Feld v.
8  Conway</u> (D. Mass. 2014) 16 F. Supp. 3d 1 (where the court held the subject posting was not
9  defamatory; court noted in social media setting "tweet[s] cannot be read in isolation, but [instead
10 should be read and analyzed] in the context of the entire discussion[,]" Id. at 4, because the larger
11 thread of tweets of which the allegedly defamatory posting was made was part of an extensive,
12 emotional debate about the plaintiff's potential responsibility for a thoroughbred horse's
13 disappearance thus the statement," when viewed in that context, [could not] reasonably be
14 understood to state actual facts about the plaintiff's mental state, Id. Instead, it was "obviously
15 intended as criticism—that is, an opinion" about the larger discussion on the matter and debate
16 within the entire thread. The court suggested that refusing to read the words of the individual post
17 literally and instead consulting the full thread to lend context, is the "way in which a reasonable
18 person would interpret it." Id. In other words, the court interpreted the individual post within the
19 full context of the entire discussion and debate included in the entire thread (i.e., full internal
20 context).

21 Just as the court in <u>Feld</u> determined defendant's statement was not defamatory after a
22 complete analysis of the internal context, Defendant is confident this Court will come to the same
23 conclusion here as in <u>Feld</u> as the instant matter shares more similarities than not. Such as: internet
24 and social media postings made by a speaker engaged in an ongoing, emotional and very public
25 debate in which many other members of the communities were also engaged.

26 Courts examine the totality of the circumstances of publication, including the "nature and
27 full content of the communication [and] the knowledge and understanding of the audience to whom
28 the publication was directed." <u>Balzaga v. Fox News Network, L.L.C.</u> (2009) 173 Cal. App. 4th

{02729962.DOCX}  10
**DEFENDANT'S REPLY TO PLAINTIFF'S OPPOSITION TO DEFENDANT'S NOTICE OF MOTIONS AND [1] SPECIAL MOTION TO STRIKE PURSUANT TO CALIFORNIA ANTI-SLAPP STATUTE, CAL. CODE OF CIV. PROC. § 425.16, OR, IN THE ALTERNATIVE, [2] MOTION TO DISMISS PURSUANT TO FED. R. CIV.P. 12(b)(6)**

1325, 1338.  This contextual approach whereby courts examine the totality of the circumstances surrounding the publication may leave some reputation harm uncompensated, at least where a portion of the audience unreasonably interprets the defendant's online publication outside its full internal context.  However, this approach is necessary if freedom of expression in social media is to be "uninhibited, robust, and wide open."  N.Y. Times Co. v. Sullivan (1964) 376 U.S. 254, 270.

### 1. Use Of Hyperlinks Decreases The Possibility Of Defamation Liability

In Redmond v. Gawker Media, L.L.C., 2012 WL 3243507, at *4-*7, (Cal. Ct. App. Aug. 10, 2012) No. A132785, the court concluded that the allegedly defamatory post contained only statements of opinion because it was "completely transparent," revealing all the "sources upon which the authors rel[ied] for their conclusions" and containing "active links to many of the original sources."  (.  Thus, the article "put [readers] in a position to draw their own conclusion about [the CEO] and his ventures" there, just as the articles and links here allowed online Community forum members to do the same here.  Id. at 6.  In reaching this conclusion, the court placed heavy emphasis on the presence of hyperlinks throughout the blog post.  Id. at *1 and *6.  As a result, the court concluded that defendant's post "c[ould] not provide the basis for a successful libel suit."  Id. at *7.  For the same reason, the court held that plaintiff's false light action failed there.  Similarly, Plaintiff's false light claim should face the same result here.

Here, as in Redmond, Defendant is responding to an initial post which includes a hyperlink to the Commission's Decision.  Later and throughout the entire thread in which Defendant's post is made, Defendant, as well as many other members, include hyperlinks to various web sites, including, but not limited to, media articles about Plaintiff, pederasty in schools, generally, previous lawsuits initiated by Plaintiff, Plaintiff's interviews with media and more.  See generally, Community Forum Thread.

It is clear from case law and the manner in which courts have been handling these matters that hyperlinking signals what an author has relied on, thereby identifying underlying facts the author depends on, which are themselves subject to multiple interpretations, and invites the reader to test the reasonableness of the authors' interpretations, rather than accepting it as gospel.

Moreover, different social media platforms have different conventions, and those

conventions form part of the external context that courts consider in determining the meaning of statements posted therein.  Chaker v. Mateo (2012) is a good illustration of this reality.  209 Cal. App. 4th 1138.  There, the California appellate court held that harshly negative comments about plaintiff posted by his child's maternal grandmother on Ripoffreport.com and Topix.com were not actionable defamation.  In concluding that the statements were nonactionable opinion, the court focused largely on: (i) the nature of the sites where the grandmother posted, and (ii) the fact that the plaintiff was embroiled in a paternity and child support dispute with defendant's daughter.  Id. at 1149.

The court explained that "all [statements] were made on Internet Web sites which plainly invited the sort of exaggerated and insulting criticisms of businesses and individuals which occurred here."  Id.  The "overall thrust" of the defendant's statements portrayed the plaintiff as "a dishonest and scary person."  Id.  Given the context, however, the "average Internet reader" would not view the defendant's embellishments" (i.e., defendant's statements about plaintiff being homeless and picking up streetwalkers) "as anything more than insulting name calling."  Id.  The only potentially actionable statement made by the grandmother, according to the court, was the statement that plaintiff was a criminal, but that statement was true.  Consequently, the court affirmed the trial courts' decision to strike plaintiff's complaint.

Similarly here, the only potentially actionable statement made by Defendant was the statement that Plaintiff was terminated for evident unfitness for service, but as is undisputed, that statement is true.  Thus, just as plaintiff's complaint in Chaker was dismissed, so too should the SAC be stricken here.

As the Chaker court recognized, the prevalence of emotional, hyperbolic discourse within a particular social-media forum affects whether readers will interpret statements as asserting facts or merely opinion.  Yet, accepting this principle means that to interpret an allegedly defamatory statement, the interpreter, meaning the judge, must examine the exact nature of the social-media forum.  The examination should take into account where the defendant posted the statement and the nature of the language employed by publisher.

Here, Defendant posted to the online Community forum used by members to discuss

Community events and issues of public significance.  He entered the thread in the midge of an ongoing public debate and posted to a public forum.  Under the anti-SLAPP law, "Web sites accessible to the public[, such as the online Community forum Defendant posted to,] are 'public forums.'"  Daniel v. Wayans (Cal. Ct. App., Jan. 31, 2020, No. B261814) 2020 WL 502623, at *5.  Members shared their opinions, offered anecdotes or personal knowledge and experiences, hyperlinks with information, and more, all in an attempt to spread knowledge, engage the debate, and persuade other members to their side.

**F.  Plaintiff Has Failed, Again, To State A Valid Claim For Defamation Per Se, False Light Invasion Of Privacy And Intentional Infliction Of Emotional Distress, Upon Which Relief Can Be Granted**

For the reasons previously explained in the Motions, Plaintiff again fails to state any viable claims upon which relief may be granted. See the Motions, § Motion To Dismiss.  Thus, Plaintiff's claims must be dismissed pursuant to FRCP 12(b)(6).

**G.  Defendant Is Entitled To Attorneys' Fees As A Matter Of Law**

Defendant is entitled to attorneys' fees under California's anti-SLAPP statute.  Additionally, Defendant is entitled to attorneys' fees for the causes of action Plaintiff voluntarily dismissed *after* Defendant filed the Motions because the Motions *caused* Plaintiff to dismiss the claims.

## III.
## CONCLUSION

For the reasons stated above, and previously explained in the Motions, Defendant respectfully asks the Court to deny Plaintiff's Opposition to the Motions and grant the Special Anti-SLAPP Motion, or, in the alternative, the Motion to Dismiss.

Dated:  June 16, 2022

PORTER SCOTT
A PROFESSIONAL CORPORATION

By _____
Lindsay A. Goulding
Tatiana M. Bush
Attorneys for Defendant Lawrence McVoy

{02729962.DOCX}

13

**DEFENDANT'S REPLY TO PLAINTIFF'S OPPOSITION TO DEFENDANT'S NOTICE OF MOTIONS AND [1] SPECIAL MOTION TO STRIKE PURSUANT TO CALIFORNIA ANTI-SLAPP STATUTE, CAL. CODE OF CIV. PROC. § 425.16, OR, IN THE ALTERNATIVE, [2] MOTION TO DISMISS PURSUANT TO FED. R. CIV.P. 12(b)(6)**