# EXHIBIT 2



www.FreedomXLaw.com

May 23, 2022

Lindsay A. Goulding, Esq.
PORTER SCOTT
350 University Avenue, Suite 200
Sacramento, CA 95825

    Re:    Mot. To Dismiss/Mot. To Strike Meet And Confer
    Case:    <u>David M. Kissner v. Loma Prieta Joint Union School District, et al</u>. (USDC-ND)
    Case No.:    22-CV-00949-VKD
    Our Client:    David M. Kissner
    Your Client:    Lawrence McVoy

Dear Ms. Goulding:

We have reviewed your correspondence of May 16, 2022, and thank you for presenting it to us for consideration. In the following discussion, we address your concerns, concluding that an anti-SLAPP motion to strike and a motion to dismiss will not succeed as to the defamation and false light claims. We agree to dismiss the remaining claims.

## I.    MOTION TO STRIKE (CODE CIV. PROC. § 425.16)

As you correctly point out, proof of an act made in furtherance of one's right to petition or free speech raises a rebuttable presumption that can be defeated by the plaintiff in order to avoid anti-SLAPP liability. Under the statute's burden-shifting scheme, the defendant need only establish that the challenged lawsuit arose from an act on the part of the defendant in furtherance of his right of petition or free speech. *Equilon*, *id*., quoting *Fox Searchlight Pictures, Inc. v. Paladino*, 89 Cal. App. 4th 294, 307 (Cal. App. 2d Dist. 2001). This is sufficient to raise a presumption of constitutionality.

Once the defendant has met his prima facie burden, "[i]t is then up to the plaintiff to rebut the presumption [of constitutionality] by showing a reasonable probability of success on the merits" of the challenged claim." *Id*. Plaintiff can succeed in meeting his burden by "demonstrat[ing] that the complaint is both legally sufficient and supported by a sufficient prima facie showing of facts to sustain a favorable judgment" *Wilson v. Parker, Covert & Chidester*, 28 Cal.4th 811, 821 (2002).

" 'Reasonable probability' in the anti-SLAPP statute has a specialized meaning" and "requires only a 'minimum level of legal sufficiency and triability.' " *Chaquico v. Freiberg*, 17-CV-02423-MEJ, 2018 WL 3368733, at *3 (N.D. Cal. July 10, 2018). "Indeed, the second step of the anti-SLAPP inquiry is often called the "minimal merit" prong." *Mindys Cosmetics, Inc. v. Dakar*, 611 F.3d 590, 598 (9th Cir. 2010). California courts have repeatedly emphasized that "[o]nly a cause

FREEDOM X

Lindsay A. Goulding, Esq.
PORTER SCOTT
May 23, 2022
Page 2 of 9

_____

of action that lacks even minimal merit constitutes a SLAPP." *Overstock.com, Inc. v. Gradient Analytics, Inc.*, 151 Cal.App.4th 688, 700 (2007). "To establish 'minimal merit,' the plaintiff need only 'state and substantiate a legally sufficient claim.' " *Id*. at 598–99. "This entails a "sufficient prima facie showing of facts to sustain a favorable judgment if the evidence submitted by the plaintiff is credited." *Davis v. Elec. Arts Inc*., 10-03328 RS, 2012 WL 3860819, at *11 (N.D. Cal. Mar. 29, 2012), aff'd, 775 F.3d 1172 (9th Cir. 2015). "In evaluating the parties' positions, the court is to consider 'the pleadings, and supporting and opposing affidavits stating the facts upon which the liability or defense is based.' " *Id*.; Code Civ. Proc. § 425.16(b)(2).

As I will explain, Kissner's complaint satisfies the plaintiff's burden as to the claims for defamation and false light.

## II.    DEFAMATION PER SE

### A.    Whether McVoy's Statement Asserts Facts Or Opinions Is A Question Of Fact To Be Determined By A Jury

As alleged, McVoy published the following statement: "… Fuck that guy. He's someone who was grooming kids. I can't prove that but all the evidence points that way." Compl., ¶ 283.

The dispositive question is whether a reasonable factfinder could conclude that McVoy's statement implies an assertion that Kissner is a "groomer" (i.e., child sexual predator). *See Milkovich v. Lorain J. Co*., 497 U.S. 1, 21 (1990). McVoy stated categorically that Kissner "was grooming kids" and that "all the evidence points that way." This is not the sort of "loose, figurative, or hyperbolic language which would negate the impression" that McVoy was seriously maintaining that Kissner committed the crime of grooming.[1] *See id*; *see also Baker v. Los Angeles Herald Examr*., 42 Cal. 3d 254, 261-262 (1986) (language indicating author's "impression" would lead "a reasonable person [to] understand that a statement of opinion rather than of fact was to follow."). Nor does the general tenor of the post ("Fuck that guy.") negate this impression. *See id*.

You argue the language "I can't prove that" implies the statement, taken in its entirety, transforms the categorical assertions of fact into opinion. But that is not at all obvious. Rather, taken as a

_____

[1] The federal government defines grooming, which is technically called "enticement," as "a method used by offenders that involves building trust with a child and the adults around a child in an effort to gain access to and time alone with them. In extreme cases, offenders may use threats and physical force to sexually assault or abuse a child. More common, though, are subtle approaches designed to build relationships with families." Section 2422 of the United States Criminal Code is the federal enticement law that makes it a crime to attempt or to knowingly persuade, induce, entice, or coerce any individual under age 18 to engage in prostitution or any criminal sexual activity.

FREEDOM X

Lindsay A. Goulding, Esq.
PORTER SCOTT
May 23, 2022
Page 3 of 9

_____

whole, McVoy's statement suggests ambiguously that proof of guilt depends both on a subjective standard (his ability to prove it) and/or an objective standard ("all the evidence"). "[S]ome statements are ambiguous and cannot be characterized as factual or nonfactual as a matter of law." *Kahn v. Bower*, 232 Cal. App. 3d 1599, 1608 (Cal. App. 1st Dist. 1991), reh'g denied and opinion modified (Sept. 6, 1991) (citations omitted). Although "[t]he question whether the challenged statements convey the requisite factual imputation is ordinarily a question of law for the court," "[i]n these circumstances, it is for the jury to determine whether an ordinary reader would have understood the [statement] as a factual assertion...." *Id*. Accordingly, whether ambiguous statements are assertions of fact or opinion cannot be reviewed on a motion to dismiss or an anti-SLAPP motion to strike.

Quite obviously, whether McVoy can prove guilt is nugatory if "all the evidence" proves it and nothing McVoy states negates the observation that "all the evidence" proves guilt. Nor does McVoy attempt to qualify his statement in any particular way to suggest he is offering his own interpretation of "all the evidence" (e.g., All the evidence "apparently" shows Kissner to be a groomer;  My impression is that …). *See Baker*, *supra*. In fact, McVoy doesn't bother to outline the facts available to him sufficient to make it clear that the challenged statements represent his own interpretation of express facts. *See Manufactured Home Communities, Inc. v. County of San Diego*, 544 F.3d 959, 965 (9th Cir. 2008); *Partington v. Bugliosi*, 56 F.3d 1147, 1156 (9th Cir. 1995) ("[W]hen a speaker outlines the factual basis for his conclusion, his statement is protected by the First Amendment."). Indeed, McVoy had no access to authenticated facts, even mischaracterizing a charging document as "evidence."[2]

McVoy's statement is ambiguous for the additional reason that it suggests he may have entertained serious doubts as to its truth ("I can't prove that"). Assuming, *arguendo*, Kissner is a limited public figure, proof of actual malice requires that he either knew of the falsity of the facts he asserted or entertained serious doubts about them. *See Burrill v. Nair*, 217 Cal. App. 4th 357, 390 (Cal. App. 3d Dist. 2013) ("[W]e must determine [at the anti-SLAPP stage] whether [the Plaintiff] has made a sufficient prima facie showing of facts to sustain her burden of demonstrating a high probability that [the Defendant] published the defamatory statements with knowledge of their falsity or while entertaining serious doubts as to their truth.")

Assuming the Court were to conclude that McVoy's statement is unambiguous, the Court would determine whether it is one of fact or opinion by looking to the "totality of the circumstances" and whether the average reader could have reasonably understood McVoy's statement to be one of fact. *Baker v. Los Angeles Herald Examr.*, 42 Cal. 3d at 260-261. "When one states a view in terms

---

[2] McVoy's apparent sources of information included the school district's statement of charges against Kissner in connection with its dismissal proceedings. The allegations McVoy is believed to have relied upon later were voluntarily withdrawn by the District and didn't even survive the prehearing stage of dismissal proceedings.

**FREEDOM X**

Lindsay A. Goulding, Esq.
PORTER SCOTT
May 23, 2022
Page 4 of 9

_____

of an 'impression,' the listener or reader is on notice that the maker is not vouching for its accuracy. A reasonable person would understand that a statement of opinion rather than of fact was to follow." *Id*. at 261–262. In *Baker*, the writer began his message with the words, "[m]y impression is…." *Baker* cites other cases where the writer qualified his statement with the word "apparent" and its cognates. McVoy used no qualifying language.

McVoy could have used qualifying language to soften his assertions. He could have pointed out that the statement of charges is not the final word and that he would await the judgment of the legal tribunal hearing Kissner's dismissal case. Instead, he referred to mere allegations as "evidence." Not just some evidence but "all the evidence."

But even assuming the statement is unambiguous, it is motivated by such ill will and hatred for Kissner that it may reasonably be interpreted as a malicious statement of fact. Evidence of McVoy's hostility toward Kissner's partner in at least one political matter shows McVoy's intemperance to such a degree that he seeks to tactically destroy his political enemies, including using false information disguised as fact.

McVoy knew, for instance, that Kissner and his partner Sean Rokni were the two proponents of a petition against the county superintendent to seek a special board election. McVoy's unhinged hostility toward Rokni and, by association, Kissner is evident in emails he sent to Rokni around the same time he published his defamatory post:

> From: Larry McVoy <lm@mcvoy.com>
> Sent: Saturday, May 8, 2021 8:28 PM
> To: shahryarrokni@hotmail.com <shahryarrokni@hotmail.com>
> Subject: Re: [95033talk] Special Election
>
> I've had 24 hours to think about this.  I wanted to get in a place
> where I could somehow respect you.  And I've failed.
>
> You could have been a decent person and let things play out but instead
> you just poured your hate on the school district, you are fine with costing
> all of us $200-$600K.
>
> Fuck you.  If I saw you bleeding out and you needed my help to live,
> I'd let you bleed out.  You suck that much.
>
> And you can take me to court with my words, I will tell the judge all
> the times I have gone to help people, there are hundreds of times and
> all of those people will show up to back me up.

**FREEDOM X**

Lindsay A. Goulding, Esq.
PORTER SCOTT
May 23, 2022
Page 5 of 9

――――――――――――

> I'll tell the judge, judge, this guy is a piece of shit, here is what
> he did and here is why I said what I said.
>
> And you know what?  I'm 100% positive the judge will sigh and go
> I'm with Larry, I'm not with this asshole.
>
> You are just an awful person and you need to leave.  Go some place
> else, just leave.
>
> I saw the video of your son making a kid pass out today.  Awful parent,
> awful kid.  You are just an awful person, if a car hit you and you died
> today,  I'd be sorry for the loss of life, but I would not be sorry that
> you are gone.  You suck.
>
> Fuck you.
>
> And for the record, in my 59 years, I have never written an email like
> this, this is way over the top for me, if my wife saw this she would be
> pissed.  You are that awful.
>
> On Fri, May 07, 2021 at 10:14:29PM -0700, Larry McVoy wrote:
> > You are an asshole.  Please leave this place.
> >
> > I was willing to give you a chance if you had let it go but you doubled
> > down.  You are an ASSHOLE.  You are not welcome here, I can't believe
> > you want to live in this community, everyone hates you.
> >
> > Fuck you.  I help everyone when stuff goes wrong, I pull people out
> > of ditches, I remove trees, I put the deer down that you hit, I help.
> > I help *everyone*.  I lean hard left, I'm left off Bernie.  I help
> > people who lean hard right.
> >
> > You are the first person that I can say if you were in trouble I would
> > not come help you.  You suck that much.  I will help anyone but I won't
> > come help you.  You are an asshole.  Fuck you.

We have no doubt McVoy was not merely expressing an opinion but was driven by malice in purposely sabotaging his political adversary.

**FREEDOM X**

Lindsay A. Goulding, Esq.
PORTER SCOTT
May 23, 2022
Page 6 of 9

_____

      **B.**      **Private or Limited Public Figure**

We disagree that Kissner qualifies as a limited public figure. Kissner was a school teacher targeted for dismissal at the time McVoy published his statement. A limited purpose public figure is defined as "an individual [who] voluntarily injects himself or is drawn into a particular public controversy and thereby becomes a public figure for a limited range of issues." *Gertz v. Robert Welch, Inc*., 418 U.S. 323, 351 (1974). However, "[a]bsent **clear evidence** of general fame or notoriety in the community, and pervasive involvement in the affairs of society, an individual should not be deemed a public personality for all aspects of his life. It is preferable to reduce the public-figure question to a more meaningful context by looking to the nature and extent of an individual's participation **in the particular controversy giving rise to the defamation**." *Id*. at 352. (Emphasis added.)

"A private individual is not automatically transformed into a public figure just by becoming involved in or associated with a matter that attracts public attention." *Wolston v. Reader's Dig. Ass'n, Inc.*, 443 U.S. 157, 167 (1979). The "controversy" surrounding Kissner's conduct with children was not something Kissner sought to initiate or exploit. He gave no media interviews concerning it, nor, as you claim, was he the subject of various news articles concerning it. Nor was the separate controversy relating to the 2018 walkouts, where a parent invited media attention to the controversy, Kissner's doing.

The fact that Kissner had an "active presence within the community" participating in civic matters as a concerned citizen, coaching wrestling, participating in church activities, and organizing camping trips, does not thrust him into the ether of fame and notoriety for purposes of this controversy any more than your involvement in civic and social affairs would. *See Gertz v. Robert Welch, Inc*., 418 U.S. 323, 352 (1974). As the Supreme Court stated in *Time, Inc. v. Firestone*, 424 U.S. 448, 457 (1976) and repeated with emphasis in *Wolston*:

> [W]hile participants in some litigation may be legitimate 'public figures,' either generally or for the limited purpose of that litigation, the majority will more likely resemble respondent, drawn into a public forum largely against their will in order to attempt to obtain the only redress available to them or to defend themselves against actions brought by the State or by others. There appears little reason why these individuals should substantially forfeit that degree of protection which the law of defamation would otherwise afford them simply by virtue of their being drawn into a courtroom. The public interest in accurate reports of judicial proceedings is substantially protected by *Cox Broadcasting Co.* [*v. Cohn*, 420 U.S. 469, 95 S.Ct. 1029, 43 L.Ed.2d 328 (1975)]. As to inaccurate and defamatory reports of facts, matters deserving no First Amendment protection . . . , we think *Gertz* provides an adequate safeguard for the constitutionally protected interests of the press and affords it a tolerable margin for error by requiring some type of fault."

**FREEDOM X**

Lindsay A. Goulding, Esq.
PORTER SCOTT
May 23, 2022
Page 7 of 9

_____

*Wolston* at 168–69 (1979).

Teachers, in particular, are not held to be public figures. "The governance or control which a public classroom teacher might be said to exercise over the conduct of government is at most remote and philosophical: Far too much so, in our view, to justify exposing each public classroom teacher to a qualifiedly privileged assault upon his or her reputation." *Franklin v. Benv. etc. Or. of Elks*, 97 Cal. App. 3d 915, 924 (Cal. App. 1st Dist. 1979) (holding that public school teachers do not assume the risk of nonmalicious defamation, characterizing such a rule as a "real and intolerable danger to the freedom of intellect and of expression which the teacher must have to teach effectively.")

    C.    **Actual Malice**

If, *arguendo*, Kissner is deemed a limited public figure, then proof of defamation requires application of the actual malice standard. In such cases, where a statement reasonably implies false and defamatory facts regarding public figures, the plaintiff must show that such statements were made with knowledge of their false implications **or with reckless disregard of their truth**." *Manzari v. Associated Newspapers Ltd.*, 830 F.3d 881, 891 (9th Cir. 2016), citing *Milkovich v. Lorain Journal Co.*, 497 U.S. 1, 20 (1990) (emphasis added). "[R]eckless conduct is not measured by whether a reasonably prudent man would have published, or would have investigated before publishing. There must be sufficient evidence to permit the conclusion that the defendant in fact entertained serious doubts as to the truth of his publication." *Id.*, citing *Time, Inc. v. Pape*, 401 U.S. 279, 291–92 (1971). "This standard ensures that publishers are not held liable for unintentional misstatements or implications, which public figures later claim are defamatory." *Id*.

To be sure, portions of McVoy's statements are aggressively assertive and leave the reader with no doubt that he believes unreservedly that Kissner is a groomer (e.g., "He's someone who was grooming kids."). But as already argued, McVoy inserts an ambiguous tincture of doubt that leaves open the possibility of error ("I can't prove that but…"). McVoy's apparent sources of information included statements posted by other individuals and the school district's statement of charges against Kissner in connection with its dismissal proceedings. McVoy knew or should have known that a statement of "charges" is not a statement of "evidence."

In short, McVoy relied upon a poorly drafted indictment. But he additionally relied upon the indoctrinating influence of other individuals spreading their "confirmation bias" or "anchor bias" via the phenomenon of online social media. *See, e.g.*, *Duncan v. Bonta*, 19 F.4th 1087, 1122 (9th Cir. 2021) ("Confirmation bias refers to the tendency to interpret new information as confirmation of one's pre-existing assumptions or theories. Anchoring bias refers to the tendency to over-rely on the initial evidence we discover as we learn about a given topic."). These phenomena, though not restricted to social media, tend to flourish there, leaving the truth to be orphaned and the "received truth" (the consensus view of a subject) to proliferate. As one commentator has noted:

**FREEDOM X**

Lindsay A. Goulding, Esq.
PORTER SCOTT
May 23, 2022
Page 8 of 9

_____

"There's a tenet of journalism: 'If your mother says she loves you, check it out.' In an age when a lie can spread much faster than the truth, the rest of us should check our facts before inflicting them on others."[3] McVoy not only failed to qualify his harmful assertions but acted with reckless disregard for the truth or falsity of the implication that Kissner is a child groomer and the certain damage to Kissner's reputation such an odious claim would naturally breed.

Kissner therefore meets the "minimal merit" threshold to withstand a motion to strike and has sufficiently alleged facts necessary to support the defamation claim.

### III.   FALSE LIGHT INVASION OF PRIVACY

The substantive elements of the false light tort are similar to those of the tort of defamation; for both actions the matter publicized must be in fact false, it must be "published" or communicated to third parties, and the publication must be made with some degree of fault on the part of the originating party. The two torts differ, however, in three substantive ways.

First, the false light cause of action is not limited to matters actually defamatory, either on their face or in context, but may be brought for any "highly offensive" false portrayal before the public, based on the sensitivities of a "reasonable person." Restatement (Second) of Torts § 652E(b) comment b (1965).

Second, any publication or revelation of the subject matter to a third party suffices to give rise to a defamation action,(50 Am. Jur. 2d, Libel and Slander §§ 152 et seq.), while the subject matter of an actionable false light privacy invasion usually is required to come to the notice of at least a substantial portion of the general public, or at least to be of such character and subject to such dissemination as to be reasonably certain of such exposure. This rule comports with the requirement that the plaintiff be placed in a false light "before the public," or falsely be "given publicity" as to the matter at issue. Restatement (Second) of Torts § 652E comment a (1965), citing § 652C comment a.

Finally, there is considerably less emphasis on proof of injury to public reputation in the false light tort than in defamation, the thrust of the false light action being towards the subjective "privacy" of the individual. The emphasis of the false light action, unlike an action for defamation, is on the subjective mental and emotional suffering of the victim, an element of damages which in defamation is either secondary to the loss of reputation, or even irrelevant, depending on the applicable law. 50 Am. Jur. 2d, Libel and Slander §§ 357, 358.

_____

[3] Andrew Kleske, *When fake news travels fast, everyone should become fact-checkers*, San Diego Union-Tribune (2/5/2022); https://www.sandiegouniontribune.com/opinion/commentary/story/2022-02-05/opinion-andrew-kleske-when-fake-news-travels-fast-news-consumers-should-check-their-facts

Lindsay A. Goulding, Esq.
PORTER SCOTT
May 23, 2022
Page 9 of 9

_____

For these reasons and those made in connection with the defamation claim, unless you can present a compelling argument for dismissing this cause of action, we intend to retain it.

### IV. CIVIL HARASSMENT/INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS/CIVIL RIGHTS CONSPIRACY

We agree to dismiss these causes of action with prejudice.

**FREEDOM X**

Sincerely,

William J. Becker, Jr., Esq.