Golnar J. Fozi (Cal. Bar No. 167674)
Daniel S. Modafferi (Cal. Bar No. 294510)
Fozi Dwork & Modafferi, LLP
5942 Priestly Drive, Suite 100
Carlsbad, California 92008
Tel: (760) 444-0039; Fax: (760) 444-0130
Email: gfozi@fdmattorneys.com
        dmodafferi@fdmattorneys.com

Attorneys for Defendants,
Lisa Fraser, Kevin Grier, Billy Martin, Deana
Arnold, Ben Abeln, Ron Bourque, Charlotte
Khandelwal, and Erin Asheghian

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DAVID M. KISSNER,<br><br>    Plaintiff,<br><br>v.<br><br>LOMA PRIETA JOINT UNION SCHOOL DISTRICT, et al.,<br><br>    Defendants. | **Case No.: 3:22-cv-00949-CRB**<br>**Assigned to: Hon. Charles R. Breyer**<br><br>**DEFENDANTS LISA FRASER, KEVIN GRIER, BILLY MARTIN, DEANA ARNOLD, BEN ABELN, RON BOURQUE, CHARLOTTE KHANDELWAL, AND ERIN ASHEGHIAN'S NOTICE MOTION AND MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT**<br><br>**Date: July 28, 2023**<br>**Time: 10:00 a.m.**<br>**Ctrm: 6**<br><br>**Case Filed: February 16, 2022**<br>**Trial Date: None Set** |

## TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

**PLEASE TAKE NOTICE** that, on July 28, 2023, at 10:00 a.m., or as soon thereafter as the matter may be heard, in Courtroom 6 of the United States District Court for the Northern District of California, in the courtroom of the Honorable Charles R. Breyer, Senior United States District Judge, located at 450 Golden Gate Avenue, 17th Floor, San Francisco, California 94102, defendants Lisa Fraser, Kevin

1

Grier, Billy Martin, Deana Arnold, Ben Abeln, Ron Bourque, Charlotte Khandelwal, and Erin Asheghian will, and hereby do, move the Court, pursuant to Federal Rule of Civil Procedure 56, for summary judgment against plaintiff David M. Kissner, and in favor of defendants, for costs of suit, and for such further relief as may be just. In the alternative, defendants respectfully request that the Court grant partial summary judgment as to individual claims, defenses, and/or issues, as detailed in the summary of argument and the memorandum of points and authorities attached hereto.

This motion is made on the grounds that there is no genuine dispute of material fact, and the defendants are entitled to judgment as a matter of law.

This motion will be based on this notice, the points and authorities in support, the declaration of Daniel S. Modafferi, all documentary evidence attached to the foregoing declarations, all matters of which the Court may take judicial notice, all pleadings and papers on file in this action, any reply or supplemental briefing allowed by the Court, any arguments which may be presented at the time of hearing on this motion, and such matters and arguments as may be presented at the time of the hearing.

Dated: June 23, 2023                    Fozi Dwork & Modafferi, LLP


                                        By:    /s/ Daniel S. Modafferi
                                               Golnar J. Fozi
                                               Daniel S. Modafferi
                                               Attorneys for Defendants,
                                               Lisa Fraser, Kevin Grier, Billy Martin,
                                               Deana Arnold, Ben Abeln, Ron Bourque,
                                               Charlotte Khandelwal, and Erin
                                               Asheghian

DEFENDANTS' MOTION FOR SUMMARY JUDGMENT        3:22-cv-00949-CRB

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ............................................................5

SUMMARY OF ARGUMENT ........................................................7

MEMORANDUM OF POINTS AND AUTHORITIES ........................9

    I.    INTRODUCTION ...........................................................9

    II.   SUMMARY OF RELEVANT FACTS AND PROCEDURAL HISTORY ..................................................................9

    III.  SUMMARY JUDGMENT STANDARD .......................12

    IV.  PLAINTIFF CANNOT MEET HIS BURDEN OF PROOF FOR A PROCEDURAL DUE PROCESS CLAIM, BECAUSE HE WAS AFFORDED ALL PROCESS REASONABLY DUE .........13

    V.   PLAINTIFF CANNOT MAINTAIN A SUBSTANTIVE DUE PROCESS CLAIM, BECAUSE THE MORE SPECIFIC FIRST AMENDMENT RETALIATION STANDARD APPLIES.............15

    VI.  PLAINTIFF'S EQUAL PROTECTION CLAIM FAILS, BECAUSE IT AMOUNTS TO A FIRST AMENDMENT RETALIATION CLAIM ....................................................16

    VII.  SEVERAL DEFENDANTS PLAYED NO ROLE IN THE LAYOFF DECISION, AND EVEN THOSE WHO DID PARTICIPATE IN THAT DECISION ARE ENTITLED TO ABSOLUTE IMMUNITY ..............................................19

        A.   Grier Was Not Employed at the District When the Layoff Took Place....................................................19

        B.   Khandelwal Was Not on the Board When the Layoff Was Approved..............................................20

        C.   Martin and Fraser Cannot Be Liable for the Board's Layoff Decision..............................................20

        D.   All of the Defendants Who Participated in the Layoff Are Entitled to Absolute Legislative Immunity............................21

    VIII. PLAINTIFF'S CLAIM FOR STIGMA-PLUS DEFAMATION FAILS, BECAUSE PLAINTIFF WAS AFFORDED DUE PROCESS ...................................................................23

        A.   Martin and the Board Member Defendants Cannot Be Liable for Stigma-Plus Defamation, Because They Did Not Participate in the Disclosure of the Allegedly Defamatory Materials............................24

DEFENDANTS' MOTION FOR SUMMARY JUDGMENT    3:22-cv-00949-CRB

B.   Plaintiff Cannot Maintain a Claim for Stigma-Plus
     Defamation against Any of the Defendants, Because He
     Was Afforded Due Process in the Course of the
     Termination Proceedings ........................................................ 24

IX.  PLAINTIFF'S FIRST AMENDMENT RETALIATION CLAIM
     IS BARRED UNDER *MOUNT HEALTHY* ..................................... 25

X.   PLAINTIFF CANNOT PRODUCE EVIDENCE SUFFICIENT
     TO CREATE A TRIABLE ISSUE OF FACT AS TO
     CONSPIRACY ................................................................................ 27

XI.  CONCLUSION ................................................................................. 28

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

DEFENDANTS' MOTION FOR SUMMARY JUDGMENT      3:22-cv-00949-CRB

# TABLE OF AUTHORITIES

**Cases**

*Albright v. Oliver* (1994) 510 U.S. 266 ................................................................ 15

*Anderson v. Liberty Lobby, Inc.* (1986) 477 U.S. 242 ........................................ 12

*Arizona Students' Assoc. v. Arizona Bd. of Regents* (9th Cir. 2016) 824 F.3d 858 16

*Ashcroft v. Iqbal* (2009) 556 U.S. 662 ................................................................ 20

*Barren v. Harrington* (9th Cir. 1998 152 F.3d 1193 .......................................... 17

*Bell Atlantic Corp. v. Twombly* (2007) 550 U.S. 544 ........................................ 27

*Bernheim v. Litt* (2d Cir. 1996) 79 F.3d 318 ...................................................... 18

*Bogan v. Scott-Harris* (1998) 523 U.S. 44 ..................................................... 8, 21

*Boyd v. Ill. State Police* (7th Cir. 2004) 384 F.3d 888 ....................................... 18

*Celotex Corp. v. Catrett* (1986) 477 U.S. 317 ................................................... 12

*Clements v. Airport Auth. of Washoe Cnty.* (9th Cir. 1995) 69 F.3d 321 ........ 7, 13

*Daniels v. Williams* (1986) 474 U.S. 327 .......................................................... 15

*Doe v. Pasadena Unif. Sch. Dist.* (9th Cir. 2020) 810 F'Appx. 500 ......... 7, 17, 18

*Doe v. Pasadena Unif. Sch. Dist.* (C.D. Cal. Sept. 26, 2018) 2018 WL 5880187 17, 18

*Garcia v. City of Newport Beach* (C.D. Cal. Apr. 7, 2020) 2020 WL 5778133 . 27

*Graham v. Connor* (1994) 490 U.S. 386 ............................................................ 15

*Harlow v. Fitzgerald* (1982) 457 U.S. 800 ........................................................ 19

*Ingraham v. Wright* (1977) 430 U.S. 651 .......................................................... 13

*Kirby v. City of Elizabeth City* (4th Cir. 2004) 388 F.3d 440 ............................ 18

*Lacey v. Maricopa Cnty.* (9th Cir. 2012) 693 F.3d 896 ...................................... 27

*Lal v. California* (9th Cir. 2014) 746 F.3d 1112 ................................................. 19

*Mount Healthy Sch. Dist. Bd. of Ed. v. Doyle* (1977) 429 U.S. 274 ................ 8, 25

*Nestor Colon Medina & Sucesores, Inc. Custodio* (1st Cir. 1992) 964 F.2d 32 . 18

*Papas v. Leonard* (D. Or. Apr. 25, 2012) 2012 WL 1445853 ............................ 18

*Paul v. Davis* (1976) 424 U.S. 693 .................................................................... 23

DEFENDANTS' MOTION FOR SUMMARY JUDGMENT       3:22-cv-00949-CRB

*Pearson v. Callahan* (2009) 555 U.S. 223 ............................................................. 19

*Ratliff v. Dekalb Cnty.* (11th Cir. 1995) 62 F.3d 338 ........................................ 18

*Schmidt v. Contra Costa Cnty.* (9th Cir. 2012) 693 F.3d 1122 .......................... 23

*Segal v. City of N.Y.* (2d Cir. 2006) 459 F.3d 207 ........................................ 8, 24

*Siegert v. Gilley* (1991) 500 U.S. 226 ................................................................. 23

*Tenney v. Brandhove* (1951) 341 U.S. 367 ......................................................... 21

*U.S. v. Raya-Vaca* (9th Cir. 2014) 771 F.3d 1195 ............................................. 13

*Webber v. First Student, Inc.* (D. Or. July 12, 2011) 2011 WL 3489882............ 18

DEFENDANTS' MOTION FOR SUMMARY JUDGMENT      3:22-cv-00949-CRB

**SUMMARY OF ARGUMENT**

Summary judgment is proper when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." (FRCP 56(c).) Defendants request summary judgment as to the following claims, defenses, and/or issues:

Defendants are entitled to judgment as a matter of law on plaintiff's procedural due process cause of action. Due process requires "*notice* and *an opportunity to respond*" (*Clements v. Airport Auth. of Washoe Cnty.* (9th Cir. 1995) 69 F.3d 321, 331-332), and the undisputed evidence establishes that plaintiff was afforded both.

Defendants are also entitled to judgment as a matter of law on any claim for substantive due process. "Where a particular amendment provides an explicit textual source of constitutional protection against a particular sort of government behavior, that Amendment, not the more generalized notion of substantive due process, must be the guide for analyzing [the plaintiff's] claims." (*Albright v. Oliver* (1994) 510 U.S. 266, 273.) Plaintiff's claims for free speech retaliation arise under the First Amendment, and therefore, they are not actionable under substantive due process.

Similarly, defendants are entitled to judgment as a matter of law on plaintiff's equal protection claim. Where the plaintiff's equal protection claim is based on being treated differently *because of* the plaintiff's engagement in speech and/or conduct protected under the First Amendment, that claim must be "analyzed under the rubric of the First Amendment," not as an equal protection claim. (*Doe v. Pasadena Unif. Sch. Dist.* (9th Cir. 2020) 810 F'Appx. 500, 503.)

Several of the defendants did not participate in the decision to lay plaintiff off from the District. Those who did are entitled to absolute legislative immunity, as "unlike the hiring or firing of a particular employee," the "termination of a position" has "prospective implications that reach well beyond the particular occupant of the office" and is therefore inherently legislative in nature. (*Bogan v. Scott-Harris* (1998)

523 U.S. 44, 56.)

Defendants are entitled to judgment as a matter of law on plaintiff's stigma-plus due process claim. As discussed above, plaintiff received adequate procedural protections before and after his termination and layoff took effect. "[T]he availability of adequate process defeats a stigma-plus claim." (*Segal v. City of N.Y.* (2d Cir. 2006) 459 F.3d 207, 213.)

Defendants are entitled to judgment as a matter of law on plaintiff's First Amendment Retaliation claim. The undisputed evidence establishes that the District would have terminated even in the absence of plaintiff's protected conduct, because the termination decision was made by an independent Commission on Professional Competence that was not influenced by any alleged political animus. (See *Mount Healthy Sch. Dist. Bd. of Ed. v. Doyle* (1977) 429 U.S. 274, 287.)

Finally, defendants are entitled to judgment as a matter of law on plaintiff's civil rights conspiracy claim. Plaintiff cannot present evidence sufficient to create a triable issue of fact as to whether the defendants conspired to violate his rights.

## MEMORANDUM OF POINTS AND AUTHORITIES

Defendants Lisa Fraser, Kevin Grier, Billy Martin, Deana Arnold, Ben Abeln, Ron Bourque, Charlotte Khandelwal, and Erin Asheghian respectfully submit the following points and authorities in support of their motion for summary judgment:

## I. INTRODUCTION

Plaintiff David Kissner was fired from his employment at Loma Prieta Joint Union School District in 2021, after a three-member Commission on Professional Competence concluded plaintiff was unfit for service. Plaintiff claims the District Board members and administrators who initiated his termination were actually motivated by a desire to retaliate against him due to plaintiff's political speech and activities, such as campaigning against a school-funding tax measure that the defendants supported and petitioning the Board to fill a vacant Board seat by special election rather than appointing a replacement. As demonstrated herein, however, the undisputed evidence in this case does not support plaintiff's claims. Instead, the law and facts dictate that judgment be entered in favor of defendants as a matter of law.

## II. SUMMARY OF RELEVANT FACTS AND PROCEDURAL HISTORY

Plaintiff was employed by the District as a middle school teacher from 2012 to 2021. (ECF No. 16, 3:18-19.) On March 14, 2018, in response to the high school shooting in Parkland, Florida, students nationwide participated in a walkout from schools to protest in favor of gun control legislation. (ECF No. 16, 14:23-15:2.) Plaintiff informed his students that any student who chose to participate in the walkout would be deemed absent without excuse and would not be permitted to make up the classwork missed. (ECF No. 16, 18:18-20.) Plaintiff's stance with respect to the walkout led to controversy within the District and the local community, with parents and community members taking sides for and against plaintiff. (ECF No. 16, 18:22-19:14.)

Shortly after the walkout controversy arose, the District received an anonymous letter, accusing plaintiff of engaging in inappropriate behavior with minors, which the

anonymous author of the letter described as "grooming." (ECF No. 16, 28:16-18.) The District retained outside counsel to conduct an investigation into the allegations of inappropriate behavior by plaintiff. (ECF No. 16, 37:1-4.) Through the investigation, the District discovered that plaintiff had furnished alcohol to at least one minor. (ECF No. 16, 29:11-15.) After several months of investigation, the District concluded that plaintiff's conduct had had a negative impact on students. The District did not terminate plaintiff as a result of the findings in the 2018 investigation (ECF No. 16, 39:11-12), but the then-Superintendent, Lisa Fraser, issued plaintiff a written letter of warning, advising him that any further instances of inappropriate behavior could result in disciplinary action, up to and including termination. (Kissner Depo., 68:10-17, Exh. 13 pp. PL000811-PL000812.)

Finally, on February 12, 2021, Fraser issued plaintiff a written Notice of Proposed Intent to Dismiss with Statement of Charges. (Kissner Depo., 68:10-17, Exh. 13.) The notice charged plaintiff with violations of the Education Code which the District alleged constituted grounds for termination. (*Ibid.*)

On March 25, 2021, the District Board of Trustees met in closed session to determine whether to proceed with termination proceedings against plaintiff. (Request for Judicial Notice, Exh. C.) Plaintiff and his counsel appeared at the Board meeting and presented their reasons why the Board should not move forward with termination. (*Id.*; Kissner Depo., 70:15-71:1.) At the conclusion, the Board voted to move forward with termination proceedings. (*Ibid.*)

Plaintiff then requested a hearing before a three-member Commission on Professional Competence. (Kissner Depo., 69:12-20.) In preparation for the hearing, plaintiff had the right to conduct formal discovery, subpoena witnesses, depose witnesses, request documents, and to be represented by counsel. (Kissner Depo., 71:7-20.) Then, during the multi-day hearing, plaintiff had the right to call witnesses to testify, to present evidence in his defense, and to be represented by counsel. (Kissner Depo., 71:21-72:6.)

After considering all of the evidence presented by both sides, as well as the arguments of counsel, the Commission on Professional Competence issued a written decision on December 7, 2021, directing the District to terminate plaintiff's employment, based on plaintiff's evident unfitness for service. (Request for Judicial Notice, Exh. E.)

In late 2020 and early 2021, the District's Budget Advisory Committee identified a budget shortfall and recommended that the District layoff four full-time teachers for the upcoming school year. (ECF No. 16, 49:23-50:2.) In deciding which teachers to layoff, the District prioritized retaining teachers with multiple subject credentials. (Request for Judicial Notice, Exh. A.) Because plaintiff held only a single subject credential, his position was identified for layoff. (Kissner Depo., Exh 12 pp. Z11-Z12.)

Plaintiff requested an administrative hearing before an Administrative Law Judge to determine whether the statutory grounds for layoff had been met. (Kissner Depo., 67:5-16.) Plaintiff was represented by counsel during that hearing. (Kissner Depo., 67:17-18.) At the conclusion of the hearing, the ALJ concluded that plaintiff's layoff was consistent with the Education Code. (Kissner Depo., 67:19-21; Request for Judicial Notice, Exh. D.)

On February 16, 2022, plaintiff filed this lawsuit. (ECF No. 1.) The operative second amended complaint originally alleged 19 causes of action, under both federal and state law. (ECF No. 16.) On June 9, 2022, however, plaintiff voluntarily dismissed all state law claims. (ECF No. 50.) Furthermore, on August 25, 2022, plaintiff voluntarily dismissed all remaining claims against the District. (ECF No. 66.) Therefore, the only remaining claims are: claim 1 for First Amendment retaliation; claim 3 for stigma-plus defamation; claim 16 for violation of the Fourteenth Amendment right to due process; claim 17 for violation of the Fourteenth Amendment right to equal protection; and claim 18 for civil rights conspiracy. Each of the moving defendants is a party to each of the remaining federal constitutional claims.

### III. <u>SUMMARY JUDGMENT STANDARD</u>

Summary judgment serves to isolate and dispose of factually unsupported claims. (*Celotex Corp. v. Catrett* (1986) 477 U.S. 317, 323-324.) Summary judgment is proper when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." (FRCP 56(c); *Celotex Corp. v. Catrett, supra*, 477 U.S. at p. 322.) The moving party is entitled to judgment as a matter of law when the nonmoving party fails to make a sufficient showing on an essential element of its case with respect to which the nonmoving party has the burden of proof. (*Id.* at pp. 322-23.) A party opposing summary judgment may not rest upon mere allegations or denials of pleadings, but must set forth specific facts showing that there is a genuine issue for trial. (*Anderson v. Liberty Lobby, Inc.* (1986) 477 U.S. 242, 248.)

The moving party may satisfy its initial burden in two ways: (1) by presenting evidence to negate an essential element of the nonmoving party's case; or (2) by demonstrating that the nonmoving party failed to make a showing sufficient to establish an element of its claim on which that party will bear the burden of proof at trial. (*Celotex Corp. v. Catrett, supra,* 477 U.S. at pp. 322-23.) If the moving party meets the initial burden, the burden shifts to the nonmoving party to "set forth specific facts showing there is a genuine issue for trial." (*Anderson v. Liberty Lobby, Inc., supra*, 477 U.S. at p. 256.) A fact is material only if proof of that fact would establish or refute one of the elements of a claim or affirmative defense at issue, and only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. (*Ibid.*)

///

///

///

///

IV. **PLAINTIFF CANNOT MEET HIS BURDEN OF PROOF FOR A PROCEDURAL DUE PROCESS CLAIM, BECAUSE HE WAS AFFORDED ALL PROCESS REASONABLY DUE**

The 16th cause of action in plaintiff's operative complaint alleges that defendants deprived plaintiff of his right to due process of law under the Fourteenth Amendment. Plaintiff's complaint does not specify whether he is alleging violations of procedural due process, substantive due process, or both. To the extent plaintiff claims he was deprived of procedural due process, however, he cannot meet his burden of proof, because he was afforded all process reasonably due.

The Due Process Clause prohibits the government from depriving an individual of life, liberty, or property without providing "notice and an opportunity to respond," or, in other words, the opportunity to present reasons not to proceed with the deprivation and have them considered. (*U.S. v. Raya-Vaca* (9th Cir. 2014) 771 F.3d 1195, 1204.) "Application of this prohibition requires the familiar two-stage analysis: We must first ask whether the asserted individual interests are encompassed within the Fourteenth Amendment's protection of 'life, liberty or property'; if protected interests are implicated, we then must decide what procedures constitute 'due process of law.'" (*Ingraham v. Wright* (1977) 430 U.S. 651, 672.)

"It is well settled that the root requirement of the Due Process Clause is that an individual be given an opportunity for a hearing *before* he is deprived of any significant property interest." (*Clements v. Airport Auth. of Washoe Cnty.* (9th Cir. 1995) 69 F.3d 321, 331 (quotes, cites, and brackets omitted) (emphasis in original).) "Although the pre-termination hearing need not be elaborate, "some kind of hearing" must be afforded the employee prior to termination. The essential requirements of this pre-termination process are *notice* and *an opportunity to respond*." (*Id.* at pp. 331-332 (quotes and cites omitted) (emphasis in original).)

In this case, it is undisputed that, prior to his termination, plaintiff received written notice of the District's intent to terminate him. (Kissner Depo., 68:10-17, 69:3-

11, Exh. 13 pp. PL000778-PL000779.) It is also undisputed that plaintiff was afforded the opportunity to respond to the notice of intent to terminate in a meeting with the Board. (Kissner Depo., 69:12-16, 70:19-71:1; Request for Judicial Notice, Exh. C.) Plaintiff was represented by counsel at the Board meeting, and he and his counsel presented their responses to the charges on which the District proposed to terminate plaintiff's employment. (*Ibid.*) Nevertheless, the Board voted to allow the termination proceedings to move forward. (*Ibid.*)

It is undisputed that, during the course of the termination proceedings, plaintiff was represented by counsel, conducted formal discovery, deposed opposing witnesses, and subpoenaed favorable witnesses. (Kissner Depo., 71:7-20.) Plaintiff was then afforded a full evidentiary trial before a three-member administrative panel, at which he was again represented by counsel, called witnesses to testify, presented documentary evidence, and cross-examined the District's witnesses. (Kissner Depo., 71:21-72:6; Request for Judicial Notice, Exh. E.) Plaintiff's termination took effect only *after* the administrative panel concluded the District had met its burden of proof to establish statutory grounds for termination. (Kissner Depo., 72:10-14; Request for Judicial Notice, Exh. E.) Then, once his termination took effect, plaintiff had the right to appeal the administrative panel's decision, which he did by filing a petition for writ of administrative mandate in state court. (Kissner Depo., 72:15-25.) These pre- and post-termination procedures were more than adequate to satisfy the requirements of the Due Process Clause.

Similarly, prior to the layoff taking effect, it is undisputed that plaintiff received written notice of the District's intent to lay him off. (Kissner Depo., 64:24-65:8, Exh. 12 pp. Z11-Z12.) It is also undisputed that plaintiff was afforded the right to a hearing before an administrative law judge to determine whether the statutory grounds for layoff had been met. (Kissner Depo., 67:5-16.) Plaintiff was represented by counsel during that hearing. (Kissner Depo., 67:17-18.) At the conclusion of the hearing, the ALJ concluded that plaintiff's layoff was consistent with the Education Code.

14

(Kissner Depo., 67:19-21; Request for Judicial Notice, Exh. D.) Thereafter, plaintiff had the right to appeal the ALJ's decision, which he did by filing a petition for writ of administrative mandate in state court. (Kissner Depo., 67:22-68:9.) As with the termination, these pre- and post-layoff procedures were more than adequate to satisfy the requirements of the Due Process Clause.

Because plaintiff was afforded notice, multiple opportunities to respond, and the right to appeal *both* his termination *and* his layoff, he has no claim for deprivation of the right to procedural due process.

## V. PLAINTIFF CANNOT MAINTAIN A SUBSTANTIVE DUE PROCESS CLAIM, BECAUSE THE MORE SPECIFIC FIRST AMENDMENT RETALIATION STANDARD APPLIES

To the extent plaintiff's due process claim is based on a deprivation of substantive due process, defendants are entitled to summary judgment, because the more specific First Amendment retaliation standard applies. The courts have long held that the Due Process Clause "contains a substantive component, sometimes referred to as substantive due process, which bars certain arbitrary government actions regardless of the fairness of the procedures used to implement them." (*Daniels v. Williams* (1986) 474 U.S. 327, 337 (Stevens, J., concurring in the judgments) (quotes and cites omitted).) However, "[w]here a particular amendment 'provides an explicit textual source of constitutional protection' against a particular sort of government behavior, 'that Amendment, not the more generalized notion of substantive due process, must be the guide for analyzing [the plaintiff's] claims.'" (*Albright v. Oliver* (1994) 510 U.S. 266, 273 (quoting *Graham v. Connor* (1994) 490 U.S. 386, 395).) In this case, plaintiff's claim of termination in retaliation for his political speech and activities arises under the First Amendment and therefore is not actionable under a Fourteenth Amendment substantive due process theory.

Plaintiff's due process claim alleges that he was terminated and laid off "in retaliation for his political advocacy." (ECF No. 16, 86:3-4.) Plaintiff further alleges

that his "(1) political opposition to the student walkouts and (2) opposition to Measure N, (3) advocacy for a special trustee board election, and (4) promoting board reform were protected activities," that the defendants "were aware of the protected activities," and that "the adverse actions of layoff and dismissal followed within a relatively short time thereafter." (ECF No. 16, 86:5-9.) According to plaintiff, "[b]ut for his unpopular views regarding the student walkouts, Measure N, the trustee board special election, and budget reform, Kissner would have remained a teacher employed by the District." (ECF No. 16, 86:11-13.)

The right to engage in political speech and/or activity free from government retaliation is wholly protected under the First Amendment. (See *Arizona Students' Assoc. v. Arizona Bd. of Regents* (9th Cir. 2016) 824 F.3d 858, 868 (collecting cases).) Therefore, plaintiff cannot use the more general standard of substantive due process to vindicate his rights. If plaintiff has any constitutional claim arising from alleged retaliation for his political speech and activity, the claim arises exclusively under the First Amendment.

## VI.  PLAINTIFF'S EQUAL PROTECTION CLAIM FAILS, BECAUSE IT AMOUNTS TO A FIRST AMENDMENT RETALIATION CLAIM

The 17th cause of action in plaintiff's operative complaint alleges that defendants deprived plaintiff of his right to equal protection of law under the Fourteenth Amendment. Plaintiff alleges that, "[a]fter [he] engaged in political speech, the Individual District Defendants discriminated against him because of the content of that speech." (ECF No. 16, 87:13-14.) More specifically, plaintiff alleges that defendant "sought to punish [him] because of his opposition to the student walkouts and Measure N, his support for a special trustee board election, and political pressure he brought to bear on the Individual District Defendants to balance their budget and comply with the law." (ECF No. 16, 88:10-14.) Plaintiff claims that defendants "have treated [him] differently from other teachers, staff, faculty, and administrative employees, who" express political views different from plaintiff's.

16

1  (ECF No. 16, 88:19-22.)

2       "To state a claim under 42 U.S.C. § 1983 for a violation of the Equal Protection

3  Clause of the Fourteenth Amendment a plaintiff must show that the defendants acted

4  with an intent or purpose to discriminate against the plaintiff based upon membership

5  in a protected class." (*Barren v. Harrington* (9th Cir. 1998 152 F.3d 1193, 1194.)

6  However, where the plaintiff's equal protection claim is based on being treated

7  differently *because of* the plaintiff's engagement in speech and/or conduct protected

8  under the First Amendment, that claim must be "analyzed under the rubric of the First

9  Amendment," not as an equal protection claim. (*Doe v. Pasadena Unif. Sch. Dist.* (9th

10  Cir. 2020) 810 F'Appx. 500, 503.)

11       The plaintiff in *Doe* alleged that she met with the principal of her children's

12  elementary school to complain about the school's policy of throwing away students'

13  lunches if the students did not finish them in a short period of time. (*Doe v. Pasadena

14  Unif. Sch. Dist.* (C.D. Cal. Sept. 26, 2018) 2018 WL 5880187, *1.) The plaintiff told

15  the principal she would file a complaint against him with the school board if he

16  continued to enforce the policy. (*Ibid*.) According to the plaintiff, the principal

17  responded by threatening to contact federal immigration enforcement against the

18  plaintiff if she made a complaint about the principal to the school board. (*Ibid*.) The

19  plaintiff brought suit, alleging both First Amendment retaliation and an equal

20  protection claim. (*Ibid*.)

21       The District Court granted summary judgment in favor of the principal on the

22  equal protection claim, holding that her complaint of retaliation for engaging in

23  protected speech "is not an equal protection claim, but a First Amendment retaliation

24  claim." (*Id.* at p. *4.) The court explained, "Although the Ninth Circuit has not

25  considered the issue, the First, Second, Fourth, Seventh, and Eleventh Circuits have

26  all concluded that allegations that a plaintiff was treated differently in retaliation for

27  the exercise of First Amendment rights do not implicate the Equal Protection Clause."

28  (*Id.* (citing *Nestor Colon Medina & Sucesores, Inc. Custodio* (1st Cir. 1992) 964 F.2d

32, 45; *Bernheim v. Litt* (2d Cir. 1996) 79 F.3d 318, 323; *Kirby v. City of Elizabeth City* (4th Cir. 2004) 388 F.3d 440, 447; *Boyd v. Ill. State Police* (7th Cir. 2004) 384 F.3d 888, 898; *Ratliff v. Dekalb Cnty.* (11th Cir. 1995) 62 F.3d 338, 340-341; *Papas v. Leonard* (D. Or. Apr. 25, 2012) 2012 WL 1445853, *14-15; *Webber v. First Student, Inc.* (D. Or. July 12, 2011) 2011 WL 3489882).) The court concluded that the plaintiff could not "simply recharacterize [her] First Amendment retaliation claim as a violation of the Equal Protection Clause." (*Ibid.*)

On appeal, the Ninth Circuit affirmed the summary judgment in favor of the principal as to the equal protection claim, concluding that the parent's "Equal Protection claim also fails because it amounts to a First Amendment retaliation claim, not an Equal Protection claim." (810 F'Appx. at p. 502.) Because the principal's threat was in retaliation for the parent's protected speech, and not because of her immigration status, the Ninth Circuit held that the complaint must be brought under the First Amendment, not the Equal Protection Clause. (*Id.* at pp. 502-503.)

Similarly, in this case, plaintiff's equal protection cause of action is premised entirely on alleged retaliation for speech and/or conduct protected under the First Amendment. Plaintiff does not allege, and cannot prove, that any of the defendants discriminated against him on the basis of race, sex, or any characteristic protected under the Equal Protection Clause. Therefore, defendants are entitled to summary judgment as to the equal protection claim, because it amounts to a claim for First Amendment retaliation, not an equal protection violation.

At minimum, defendants are entitled to qualified immunity with regard to the equal protection claim, because it was not clearly established, as of February 2021 when plaintiff's termination was initiated, that public employees had a right under the Equal Protection Clause to be free from political retaliation. "The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" (*Pearson v. Callahan* (2009) 555

U.S. 223, 231 (quoting *Harlow v. Fitzgerald* (1982) 457 U.S. 800, 818.) "In determining whether an officer is entitled to qualified immunity, we consider (1) whether there has been a violation of a constitutional right; and (2) whether that right was clearly established at the time of the officer's alleged misconduct." (*Lal v. California* (9th Cir. 2014) 746 F.3d 1112, 1116.) As of February 2021, no Ninth Circuit case had held that political retaliation claims were actionable under the Equal Protection Clause. On the contrary, less than a year before the District initiated plaintiff's termination, the Ninth Circuit had held in *Doe*, *supra*, that such claims *were not* actionable. Numerous other circuits had reached similar conclusions, as noted by the district court in *Doe*. Therefore, there was no clearly established right under the Equal Protection Clause to be free from political retaliation. Defendants are entitled to qualified immunity.

## VII. <u>SEVERAL DEFENDANTS PLAYED NO ROLE IN THE LAYOFF DECISION, AND EVEN THOSE WHO DID PARTICIPATE IN THAT DECISION ARE ENTITLED TO ABSOLUTE IMMUNITY</u>

Each of plaintiff's causes of action arises, in whole or in part, from the reduction in force which resulted in plaintiff being laid off from the District in 2021. As detailed herein, however, several of the defendants played no role in the layoff decision, and even those who did participate in that decision cannot be liable for it as a matter of law. Therefore, defendants are entitled to summary judgment as to all claims arising from the layoff.

### A. <u>Grier Was Not Employed at the District When the Layoff Took Place</u>

Defendant Kevin Grier is the current Superintendent of the District. (ECF No. 16, 6:4.) Grier took over as Superintendent in July 2021, after Lisa Fraser retired. (Fraser Depo., 8:9-20.) By the time Grier joined the District, the Board had already adopted Resolution No. 21-XII on February 10, 2021, approving the procedure for determining the order of seniority of the District's employees during the layoff process (Request for Judicial Notice, Exh. A); the Board had also already adopted

Resolution No. 21-VIV on March 10, 2021, recommending a reduction in particular kinds of services (Request for Judicial Notice, Exh. B); and the ALJ had already issued the decision recommending plaintiff's layoff on May 3, 2021. (Request for Judicial Notice, Exh. D.) Even plaintiff admits that Grier was not Superintendent at the time plaintiff was laid off (Kissner Response to Request for Admission No. 7), was not employed at the District at the time plaintiff was laid off (Kissner Response to Request for Admission No. 8), and was not employed at the District at any time between the date plaintiff was hired by the District and the date plaintiff was laid off (Kissner Response to Request for Admission No. 9). As a matter of law, no person can be held liable under section 1983 unless he or she personally participates in the deprivation of the plaintiff's rights. (*Ashcroft v. Iqbal* (2009) 556 U.S. 662, 676 ("Because vicarious liability is inapplicable to… § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution.").) Because Grier did not personally participate in the layoff decision, he cannot be liable for any constitutional claim arising from that decision.

**B.**  **Khandelwal Was Not on the Board When the Layoff Was Approved**

Defendant Charlotte Khandelwal is a current member of the School Board. (ECF No. 16, 6:23-24.) However, Khandelwal did not join the Board until *after* the layoff resolutions had been adopted. (Kissner Depo., 49:8-11.) In particular, plaintiff concedes that Khandelwal was not on the Board at the time that the Board adopted Resolutions 21-XII (Kissner Depo., 64:3-7; see also Request for Judicial Notice, Exh. A) and 21-XIV (Kissner Depo., 64:8-11; see also Request for Judicial Notice, Exh. B.) Therefore, Khandelwal cannot be liable for any constitutional claim arising from the layoff decision, which predated her membership on the Board.

**C.**  **Martin and Fraser Cannot Be Liable for the Board's Layoff Decision**

Defendant Billy Martin is the former principal of the school. (ECF No. 16, 6:9.) Defendant Lisa Fraser is the former Superintendent of the District. (ECF No. 16, 5:23.) Neither Martin nor Fraser was a member of the Board, at any time. The layoff

was effected by means of two legislative actions adopted by the Board: Resolution No. 21-XII on February 10, 2021, approving the procedure for determining the order of seniority of the District's employees during the layoff process (Request for Judicial Notice, Exh. A); and Resolution No. 21-VIV on March 10, 2021, recommending a reduction in particular kinds of services (Request for Judicial Notice, Exh. B). Because neither Martin nor Fraser had the power to adopt the layoff resolutions or the authority to rescind the resolutions following adoption by the Board, they cannot be liable for any constitutional claim arising from the Board's layoff decision.

**D.** **All of the Defendants Who Participated in the Layoff Are Entitled to Absolute Legislative Immunity**

As detailed above, the layoff was effected by means of the Board's adoption of two legislative resolutions. Because the adoption of a reduction in force is inherently legislative in character, any and all defendants who participated in the layoff decision are entitled to absolute legislative immunity. Therefore, all claims arising from the layoff must be summarily adjudicated in favor of defendants.

"Absolute legislative immunity attaches to all actions taken 'in the sphere of legitimate legislative activity.'" (*Bogan v. Scott-Harris* (1998) 523 U.S. 44, 54 (quoting *Tenney v. Brandhove* (1951) 341 U.S. 367, 376).) Whether an action is legislative "turns on the nature of the act, rather than on the motive or intent of the official performing it." (*Ibid.*) "The privilege of absolute immunity would be of little value if legislators could be subjected to the cost and inconvenience and distractions of a trial upon a conclusion of the pleader, or to the hazard of a judgment against them based upon a jury's speculation as to motives." (*Id.* (quotes and brackets omitted).) "[I]t simply is not consonant with our scheme of government for a court to inquire into the motives of legislators." (*Id.* at p. 55 (quotes omitted).)

The Supreme Court's decision in *Bogan* dictates that the reduction in force decision in this case was legislative in nature, and therefore, absolute legislative immunity applies in this case. The *Bogan* case arose from a similar internal dispute

within a local government entity. Janet Scott-Harris was employed by the City of Fall River, Massachusetts, as administrator of the city's Department of Health and Human Services (DHHS). (*Id.* at p. 46.) Scott-Harris brought termination charges against a subordinate employee for allegedly making racial and ethnic slurs about her colleagues. (*Ibid.*) The subordinate used her political connections with members of the City Council to fight the termination, and ultimately, the Mayor, Daniel Bogan, substantially reduced the charges against the subordinate. (*Id.* at p. 47.)

While the charges against the subordinate were pending, Bogan prepared a budget proposal for the following fiscal year, calling for the elimination of DHHS, which would relate in Scott-Harris being laid off. (*Ibid.*) The City Council approved an ordinance eliminating DHHS, and Bogan signed the ordinance into law. (*Ibid.*)

Scott-Harris alleged that the elimination of her position violated her rights to equal protection and free speech, as the decision was motivated by racial animus and a desire to retaliate against her for exercising her First Amendment rights in filing the complaint against the subordinate. (*Ibid.*) However, the Supreme Court held that the city councilmembers and the Mayor were all protected by absolute legislative immunity, and therefore, Scott-Harris's claims were barred.

"[U]nlike the hiring or firing of a particular employee," the "termination of a position" has "prospective implications that reach well beyond the particular occupant of the office." (*Id.* at p. 56.) Thus, the Supreme Court held that the ordinance eliminating DHHS "reflected a discretionary, policymaking decision implicating the budgetary priorities of the city and the services the city provides to its constituents." (*Id.* at pp. 55-56.) The Court held that the alleged unconstitutional motives for the ordinance could not even be taken into account. Because the elimination of a position is legislative in nature, absolute immunity applies, irrespective of the alleged motive.

Furthermore, "officials outside the legislative branch are entitled to legislative immunity when they perform legislative functions." (*Id.* at p. 55.) For example, in *Bogan*, the Mayor's acts of proposing the budget to the city council which eliminated

1  DHHS and signing the ordinance into law were both protected, because they were
2  "integral steps in the legislative process." (*Ibid*.) Therefore, even if there were a
3  dispute of fact regarding Martin or Fraser's (or any other defendant's) participation in
4  the layoff by proposing the layoff criteria to the Board, they are each entitled to
5  absolute legislative immunity to the same extent as the Board member defendants are.

6  Finally, legislative immunity bars *all* claims under section 1983 – not just
7  claims for damages. (*Schmidt v. Contra Costa Cnty.* (9th Cir. 2012) 693 F.3d 1122,
8  1132.) Therefore, even plaintiff's claims for injunctive relief are barred to the extent
9  they arise from the layoff. Defendants are entitled to summary judgment as to all
10 claims for damages and injunctive relief which arise from the decision to lay plaintiff
11 off from his employment.

12 ## VIII. <u>PLAINTIFF'S CLAIM FOR STIGMA-PLUS DEFAMATION FAILS,</u>
13 <u>BECAUSE PLAINTIFF WAS AFFORDED DUE PROCESS</u>

14 The 3rd cause of action in plaintiff's operative complaint alleges "civil rights
15 defamation" under section 1983. "Defamation, by itself, is a tort actionable under the
16 laws of most States, but not a constitutional deprivation." (*Siegert v. Gilley* (1991)
17 500 U.S. 226, 233.) However, if a government official's act of defamation results in
18 a plaintiff being deprived of a previously held constitutionally protected right, a
19 plaintiff may be able to state a claim for defamation under section 1983 on the theory
20 that he or she has been deprived of a constitutionally protected right without the
21 procedural guarantees of the Fourteenth Amendment. (See *Paul v. Davis* (1976) 424
22 U.S. 693, 708-709.) To establish a "stigma-plus" due process claim, "a plaintiff must
23 show: (1) the public disclosure of a stigmatizing statement by the government; (2) the
24 accuracy of which is contested; (3) *plus* the denial of some more tangible interest such
25 as employment. (*Chaudry v. Aragon* (9th Cir. 2023) 68 F.4th 1161, 1170 (quotes,
26 cites, and brackets omitted) (emphasis in original).)

27 ///
28 ///

### A. Martin and the Board Member Defendants Cannot Be Liable for Stigma-Plus Defamation, Because They Did Not Participate in the Disclosure of the Allegedly Defamatory Materials

The "stigma" alleged by plaintiff arises from the District's disclosure of the original and amended statements of charges. Both statements of charges included references to the "potential grooming behavior" which was the subject of the anonymous letter and for which plaintiff was investigated in 2018. By disclosing the statements of charges in response to public records requests in 2021, plaintiff alleges the defendants defamed him. (ECF No. 16, 59:12-15.)

However, plaintiff concedes that only the Superintendents actually participated in the decisions to disclose the statements of charges in response to the public records requests. Plaintiff *does not contend* that former Principal Billy Martin or Board members Deana Arnold, Ben Abeln, Ron Bourque, Charlotte Khandelwal, or Erin Asheghian participated in the disclosure of the statements of charges. (Plaintiff's Responses to Abeln's Interrogatories Nos. 6 & 8, Arnold's Interrogatories Nos. 6 & 8, Asheghian's Interrogatories Nos. 17 & 19, Bourque's Interrogatories Nos. 6 & 8, Khandelwal's Interrogatories Nos. 6 & 8, and Martin's Interrogatories Nos. 6 & 8.) Therefore, none of these defendants can be liable under the 3rd cause of action.

### B. Plaintiff Cannot Maintain a Claim for Stigma-Plus Defamation against Any of the Defendants, Because He Was Afforded Due Process in the Course of the Termination Proceedings

Even to the extent plaintiff can establish that any of the defendants participated in the disclosure of the statements of charges, his stigma-plus claim fails, because he cannot meet his burden to establish that he was deprived of his right to public employment *without procedural due process*. "[T]he availability of adequate process defeats a stigma-plus claim." (*Segal v. City of N.Y.* (2d Cir. 2006) 459 F.3d 207, 213.)

As detailed above, it is undisputed that plaintiff received notice, hearings, the right to counsel, the right to conduct discovery, the right to call witnesses, and the

right to appeal, in connection with the termination and layoff proceedings against him. Indeed, at the conclusion of the administrative hearing, the administrative panel concluded that the evidence *was not sufficient to support a finding of immoral conduct* against plaintiff. (ECF No. 16, 59:18-21.) Thus, plaintiff *was not* deprived of his right to due process of law under the Fourteenth Amendment. Defendants are entitled to judgment as a matter of law with regard to the stigma-plus defamation claim.

## IX. PLAINTIFF'S FIRST AMENDMENT RETALIATION CLAIM IS BARRED UNDER *MOUNT HEALTHY*

The 1st cause of action in plaintiff's operative complaint alleges First Amendment retaliation. A section 1983 action based upon alleged retaliation for exercising the First Amendment right to free speech is evaluated under the standard enunciated by the Supreme Court in *Mount Healthy Sch. Dist. Bd. of Ed. v. Doyle* (1977) 429 U.S. 274, 287. *Mount Healthy* establishes a three-step inquiry for retaliation claims. First, the plaintiff must establish that his conduct was entitled to constitutional protection. (See *Gillette v. Delmore* (9th Cir. 1989) 886 F.2d 1194, 1197.) Second, the plaintiff must demonstrate that his conduct, if protected, was a "substantial" or "motivating" factor in the defendants' decision to take adverse action against him. (*Alpha Energy Savers, Inc. v. Hansen* (9th Cir. 2004) 381 F.3d 917, 923.) Once the plaintiff has met this burden, the burden shifts to the defendants to show by a preponderance of the evidence that they would have reached the same decision even in the absence of the protected conduct. (*Mount Healthy*, *supra*, 429 U.S. at p. 287.)

In this case, the matter of plaintiff's termination was decided by a disinterested, three-member administrative panel. Plaintiff can present no evidence that any of the panel members had a retaliatory motive to recommend plaintiff's termination. Indeed, the administrative panel's written decision explicitly disclaims any such motive: "The Commission does not direct the District to dismiss respondent from employment to punish him, or to retaliate against him for having exercised his rights to express his opinions and to participate in the community's political life." (Request for Judicial

Notice, Exh. E, p. 37.) Rather, the panel members heard evidence presented by both the District and plaintiff and decided whether that evidence was sufficient to demonstrate cause for plaintiff's termination in accordance with the Education Code: "The Commission directs the District to dismiss respondent from employment because a preponderance of the evidence before the Commission establishes his evident unfitness to continue teaching District students." (*Ibid*.)

Plaintiff alleged in the administrative proceeding that "the District's effort to dismiss him from employment constitutes unlawful retaliation against him for exercising his rights under the California and United States Constitutions to express his personal views and to participate in his community's political life. (Request for Judicial Notice, Exh. E, p. 35.) The administrative panel *rejected* that contention:

> The totality of evidence in this matter does not establish an effort by the Board or by District administrators to discipline or to dismiss respondent because of his opinions or political activity. To the contrary, all evidence in this matter shows that after significant conflict within the District in March and April 2018, the District in October 2018 offered respondent the opportunity to save face and move on. Respondent emphatically rejected this opportunity. Instead, between October 2018 and the hearing, respondent made repeated efforts to reopen and revisit the 2018 conflicts. He also responded to new potential and minor conflicts by amplifying them into major conflicts; he became increasingly insubordinate and uncommunicative regarding school activities, even during the novelty and uncertainty of the COVID-19 pandemic; and he continued to exercise very poor judgment outside school in circumstances involving his supervision of teenagers.

(Request for Judicial Notice, Exh. E, p. 37.) The panel noted that, under the Education Code, it held the sole discretion whether or not to direct the District to dismiss plaintiff, independent of any alleged political animus on the part of the defendants. (Request for Judicial Notice, Exh. E, pp. 36-37.) The panel ordered plaintiff's termination based on its conclusion that plaintiff was unfit for service, as defined by Education Code, section 44932, subdivision (a)(7). (Request for Judicial Notice, Exh. E, pp. 30-35.)

///

DEFENDANTS' MOTION FOR SUMMARY JUDGMENT        3:22-cv-00949-CRB

Because the ultimate termination decision was made by a disinterested administrative panel, and the undisputed evidence clearly establishes that the panel members were not motivated by political animus against plaintiff, but rather, by their own conclusion that plaintiff was unfit for service, defendants are entitled to summary judgment, *even if there is a triable issue of fact as to whether or not defendants initiated the termination out of political animus*. Pursuant to *Mounty Healthy*, the panel's direction that the District terminate plaintiff due to evident unfitness for service was wholly sufficient to support the termination.

## X. PLAINTIFF CANNOT PRODUCE EVIDENCE SUFFICIENT TO CREATE A TRIABLE ISSUE OF FACT AS TO CONSPIRACY

Separate and apart from his substantive constitutional claims, the 18th cause of action in plaintiff's operative complaint alleges the defendants conspired to violate plaintiff's rights. "Conspiracy is not itself a constitutional tort under 21 1983." (*Lacey v. Maricopa Cnty.* (9th Cir. 2012) 693 F.3d 896, 935.) Conspiracy cannot "enlarge the nature of the claims," but can "enlarge the pool of responsible defendants by demonstrating their causal connections to the violation." (*Ibid*.) Because plaintiff's substantive constitutional claims fail, so, too, does his conspiracy claim.

Even if plaintiff can establish a triable issue of fact as to any of his claims against any of the defendants, however, he cannot present admissible evidence sufficient to establish a triable issue of fact as to the existence of a conspiracy between the defendants. "Without more, parallel conduct does not suggest conspiracy." (*Bell Atlantic Corp. v. Twombly* (2007) 550 U.S. 544, 556-557.) "The mere fact that [plaintiff contends his] constitutional rights were violated by more than one wrongdoer does not support a plausible inference of conspiracy." (*Garcia v. City of Newport Beach* (C.D. Cal. Apr. 7, 2020) 2020 WL 5778133, *8.) Because plaintiff cannot present admissible evidence of a "meeting of the minds" between the defendants, no reasonable jury could draw an inference that the defendants conspired to violate plaintiff's rights. Therefore, the conspiracy claim must be adjudicated in

favor of defendants.

## XI.  **CONCLUSION**

For all of the foregoing reasons, defendants are entitled to summary judgment or, alternatively, partial summary judgment on individual claims, defenses, and issues.

Dated: June 23, 2023                    Fozi Dwork & Modafferi, LLP


By:    /s/ Daniel S. Modafferi
        Golnar J. Fozi
        Daniel S. Modafferi
        Attorney for Defendants,
        Lisa Fraser, Kevin Grier, Billy Martin,
        Deana Arnold, Ben Abeln, Ron Bourque,
        Charlotte Khandelwal, and Erin
        Asheghian