**BEFORE THE
BOARD OF TRUSTEES OF THE
LOMA PRIETA JOINT UNION SCHOOL DISTRICT
STATE OF CALIFORNIA**

**In the Matter of the Reduction in Force of:**

**DAVID KISSNER, Respondent**

**OAH No. 2021040076**

**PROPOSED DECISION**

Danette C. Brown, Administrative Law Judge, Office of Administrative Hearings (OAH), State of California, heard this matter on April 26 and 27, 2021, by videoconference, from Sacramento, California.

Amanda Giorgino, Attorney at Law, Proactive Legal, The Bock Law Group, PC, represented the Loma Prieta Joint Union School District (District).

William J. Becker, Jr, Attorney at Law, Freedom X, and Jeremiah D. Graham, Attorney at Law, represented David Kissner (respondent).

Evidence was received, the record closed, and the matter was submitted for decision on April 27, 2021.

# FACTUAL FINDINGS

## Jurisdiction and District's Decision to Impose Layoffs

1.      Linda Fraser is the Superintendent of Loma Prieta Joint Union School District (District). The District has two schools and serves approximately 490 students. Loma Prieta Elementary School serves kindergarten through fifth grade students, and C.T. English Middle School serves students in grades six through eight. The actions of Superintendent Fraser, and those of the District's staff and Governing Board (Board) were taken solely in their official capacities.

2.      The District is facing a budget shortfall for the 2021-2022 school year and has projected declining middle school enrollment. The District's Budget Advisory Committee (BAC) is a broad-based group of certificated and classified staff, administrators, parents, and community members at-large, who advise the Superintendent on potential financial strategies, practice, and/or budgetary actions to help to ensure a sustainable, long-term financial model for the District. The BAC met on a monthly basis from September 2020 to February 2021. During the BAC's January 11, 2021 meeting, it discussed budget reductions, goals, and strategies. The BAC presented its recommendations to the Board on January 13, 2021, setting forth its goals for fiscal stability, strategic planning, current challenges, budget cuts, program impacts, and proposed program solutions. The BAC provided a final tally of potential budget cuts estimated to be $437,400.

3.      The BAC's recommended goals for the District's fiscal stability included maintaining a 12 percent reserve, balancing the budget, actively pursuing revenue-generating opportunities, and mitigating impacts of the recent Measure N defeat. Had Measure N passed, it would have authorized an annual parcel tax for seven years,

generating an estimated $328,000 for academic programs in the Loma Prieta Joint Union Elementary School District.

4.      The BAC included in its recommended solutions "[shifting] 6th grade programming to self-contained English/history and math/science cores with PE and music pullout." This shift in sixth grade programming directly affected respondent because he held a single subject credential in math.

Billy Martin, Ed.D, Principal of both schools in the District, testified that "the main reason for the programming change [for the sixth grade] is reduced enrollment," amounting to "at least a 0.2 [Full Time Equivalent (FTE)] reduction in the sixth grade" and a "reduction of 1.2 FTE over the whole system." Shifting to a core program requires a multiple subject credential. It allows teachers to teach a broad range of subjects and electives that a single subject-credentialed teacher cannot. "The driving force is that a core program is a better model for kids. [Teachers] are expected to be jacks of all trades in this core model." It provides "better support in transition from elementary [to] middle school." Dr. Martin conceded that there are no teachers more junior than respondent with more experience teaching sixth grade math and science. However, Dr. Martin emphasized that "this is about their licensing," not the amount of math teaching experience. The teachers that were skipped hold multiple subject teaching credentials, authorizing them to teach math despite having less experience than respondent.

Superintendent Fraser testified that a core program "is pretty common in middle school structures" and "allows the District extra flexibility" in utilizing multiple subject credentialed teachers. Furthermore, "we have a math teacher who is single subject [credentialed]; if you have two single subject math teachers, that would be 10

3

sections of math, but we don't have 10 sections of math, thus the ultimate layoff [of respondent]."

5.  Cathy Vance, the District's Chief Business Official (CBO) and BAC member, is responsible for preparing the District's budget. She testified that the District has known over the past two years that it would have to make budget cuts for the 2021-2022 school year because "the ongoing expenses exceed[ed] the ongoing revenues for the past couple of years, [extending] to the 2021-2022 and 2022-2023 [school years]." "Once the voters did not pass the extension of the parcel tax in November, the District knew that the cuts would have to be larger." Ms. Vance determined the FTE reductions needed and "took it to the BAC." The BAC worked through a prioritization process to determine "which cuts they thought were less painful and the things they did not want to cut." The BAC recommended to cut 2.7 FTE at Loma Prieta Elementary School, and 1.4 FTE at C.T. English Middle School, which included the 1.2 FTE for declining enrollment. In addition, "administrators and confidential staff took a one percent salary rollback, [and there were] some cuts to the consulting budget."

Consequently, the District determined that it must make significant budget reductions, and believes it is necessary to eliminate respondent's certificated position, among other things, to address this budget shortfall.

6.  On February 10, 2021, the Board adopted Resolution No. 21-XII, setting forth the criteria for the order of certificated layoff and reemployment for employees with equal seniority. The Board determined that, pursuant to Education Code section 44955, subdivision (b), the order of termination between employees who first rendered paid service to the District on the same date "shall be established on the basis of the following criteria in order to meet the needs of the District and students thereof:"

4

(1) Multiple Authorization Credentials;

(2) Experience teaching different subjects;

(3) Possession of a preliminary, clear, standard, or life teaching credential;

(4) Possession of a CLAD/BCLAD/CTEL certificate;

(5) Experience teaching at different grade levels;

(6) NCLB Teacher Requirement: Certificate of Compliance;

(7) Experience teaching in the District;

(8) Experience teaching outside the District[.]

The Board determined that the same criteria apply to determine the order of reappointment, and in the event of a tie.

7.     On March 10, 2021, the Board adopted Resolution No. 21-XIV, reducing or eliminating particular kinds of services (PKS) of the District, affecting 4.0 Full Time Equivalent (FTE) certificated positions. The Resolution states that it will be necessary to reduce the following PKS of the District, and to decrease a number of certificated employees in the District no later than the beginning of the 2021-2022 school year as follows: "4.0 FTE grades K-8 Classroom Teaching." The Board determined to retain the following PKS:

(1) Mild to Moderate and Moderate to Severe Special Education Services;

5

(2) Language, Speech and Hearing Special Education Services;

(3) Resource Specialist Special Education Services;

(4) Multiple Subject Teaching Credential.

8.      The services set forth in the PKS Resolution are "particular kinds of services" that may be reduced or discontinued within the meaning of Education Code section 44955. The Board "considered anticipated certificated employee attrition (resignation, retirement, non-reelection, temporary teacher release, etc.)," and still found it "necessary to terminate the above-referenced certificated positions." There was no evidence that the Board's decision to reduce or discontinue the identified services was arbitrary or capricious. However, this is disputed by respondent, discussed below. The Board concluded that the PKS reductions were in the best interests of the students. The reduction or elimination of the services set forth in the PKS Resolution constituted a proper exercise of the Board's discretion, within the meaning of section 44955.

9.      As a result of the above PKS reductions and/or eliminations, the Board determined that it was necessary to decrease 4.0 FTE positions for certificated employees in the District at the close of the 2020-2021 school year, in accordance with Education Code section 44955. On March 10, 2021, Superintendent Fraser gave the Board written notice of her recommendation that notice be given to respondent that his services would not be required for the ensuing school year, and the reasons therefor.

10.     On March 12, 2021, Superintendent Fraser timely served a letter entitled "Notice of Intent to Layoff" (Notice) on respondent, a certificated employee affected

6

by the PKS reductions and/or eliminations set forth in the Resolution. The Notice advised that it had been recommended to the Board that respondent be given the Notice that his services might not be required for the 2021-2022 school year. Respondent timely filed a Request for Hearing to determine whether there was cause for not reemploying him for the 2021-2022 school year.

11.     On March 23, 2021, Superintendent Fraser made and filed the District's Statement of Reduction in Force and caused it to be served on respondent. Respondent timely filed a Notice of Participation requesting a hearing in this matter.

12.     Respondent is a certificated permanent employee of the District. Jurisdiction for the subject proceeding exists pursuant to Education Code sections 44949 and 44955.

## Implementation of Layoff Procedure

13.     In anticipation of the PKS reduction, Superintendent Fraser began updating the District's seniority list. She notified all certificated teachers requesting that they confirm the accuracy of their seniority dates and credentials on file with the District and provided them with an opportunity to correct such information prior to finalizing the seniority list. Superintendent Fraser identified four individuals serving in the positions affected by the PKS reductions. She used the updated seniority list to identify vacant positions and to identify the least senior persons occupying the positions affected by the PKS reductions. She considered known attrition and existing vacancies.

14.     When the least senior persons occupying the positions affected by the PKS reductions were identified, Superintendent Fraser looked at everyone's credentials to determine whether she could displace any less senior certificated employees. On

7

March 12, 2021, Superintendent Fraser served a Notice on respondent, identifying him as the most junior employee affected by the PKS reduction.

## Respondent's Challenges to District's Layoff

15.     Respondent holds a single subject math credential. Respondent has taught at C.T. English Middle School since his date of hire on November 29, 2012. In the current school year, he taught "all of the sixth-grade math, two sections of seventh grade math, and one section of eighth grade science." He taught science under a "Consent to Teach" waiver, allowing him to teach outside of his credential area.

16.     On February 12, 2021, the District served respondent with a Notice of Proposed Intent to Dismiss with Statement of Charges. He believes that the District is attempting to remove him by first initiating dismissal proceedings, then by making him the only tenured certificated teacher to be subject to layoff. Respondent asserts that the District cannot justify its layoff under Education Code sections 44955 and 44955.5 because there is no fiscal impact. Next, respondent asserts that the layoff is pretextual, in that the District's layoff is an excuse for its retaliatory motive of attempting to terminate him for his political activity.

### FISCAL IMPACT

17.     Petitioner works with his father as a financial advisor and understands budgets. He has studied the District's budget very closely. Respondent does not dispute that the District must reduce its workforce due to declining enrollment and "deficit spending." However, respondent disputes that the sixth-grade shift from a single subject model to a core model results in any savings. He asserts that the sixth-grade schedule has always been the same dating back to when respondent was first hired and will not change for the upcoming year. Thus, there is no room to cut any

8

sixth-grade sections. Respondent presented the District's master schedule for the current year and next year, and his own charts to illustrate his point that "it is physically impossible to realize any budget savings in the sixth grade absent replacing a senior teacher with a junior teacher." He asserts that CBO Vance was not able to provide an explanation for any savings realized through the sixth-grade shift to core programming.

18.     Respondent asserts that there is a very clear preference for a single subject math instruction because such credential holders are in short supply in California, and because C.T. English Middle School is a "high performing school and feeds into a high performing high school." Students can follow a "math pipeline to accelerated math in high school." "Math has been a priority; it always has been." Moreover, respondent asserts that the "nature of our District is that teachers have to teach outside of their credential and experience." Respondent is concerned with the quality of math instruction that the students will get next year under the core model.

19.     In addition, respondent asserts that the sixth-grade shift to a core model was never mentioned in any of the BAC's materials and agendas until January 2021, after Measure N was certified as defeated, and after respondent called for a special election to fill a Board vacancy. If the special election occurs, respondent asserts that it will cost the District a large sum of money, and it has generated outrage in the school community.

20.     Respondent also asserts that at the Board's March 10, 2021 meeting, the budget reduction line item showing the sixth-grade shift to a core program "disappeared immediately" after the District decided instead to dismiss him. The line item then reappeared during the Board's March 10, 2021 meeting, showing a budget reduction of $12,000 for the "Electives at CT (6th grade self-contained)." Respondent's

9

assertion that Superintendent Fraser, CBO Vance, and the Board President had no explanation for this line-item discrepancy, and their failure to explain how the sixth-grade program shift results in savings, is proof that the District acted arbitrarily to eliminate respondent's position for reasons other than budget cuts or declining enrollment.

### LAYOFF A PRETEXT TO RETALIATION FOR POLITICAL ACTIVITIES

21.     Respondent asserts: (1) his constitutionally protected political speech related to C.T. English Middle School's walkout after the February 14, 2018 school shooting at Marjory Stoneman Douglas High School; (2) his vocal political stance against Measure N; and (3) his petition to force a special Board election to fill a Board vacancy, drove an ideological wedge between him and the District's administrators, faculty, staff, and the Board. His unpopular positions caused him to be "singled out" as the only tenured certificated teacher to be subject to layoff.

22.     In support of his pretext argument, respondent submitted an August 16, 2020 email from Sean Rokni, who worked with respondent on the No on Measure N campaign. Mr. Rokni did not testify at hearing, and his email was admitted as administrative hearsay. In his email, Mr. Rokni described a conversation with Board member Ben Abeln who made threats to everyone working on the campaign. Mr. Abeln's statements to Mr. Rokni are inadmissible hearsay and not sufficient to support a finding that respondent was retaliated against by the Board. Mr. Rokni's email is given little weight.

23.     Respondent also asserts that he is protected from viewpoint discrimination under the Federal Civil Rights Act (42 U.S.C. § 1983). He also relies upon Labor Code section 1101, which prohibits an employer to make, adopt, or enforce any

rule, regulation, or policy forbidding employees from engaging or participating in political activities, or controlling or directing the political activities of employees. In addition, Labor Code section 1102 prohibits employers from coercing or influencing employees through threats of discharge or loss of employment to follow or refrain from following any particular course of political activity. Respondent argues that his political activities are protected under the Federal Civil Rights Act, and that the District has violated Labor Code sections 1101 and 1102 by attempting to quash his political activities through loss of employment.

24.    Respondent also questioned the timing of the Notice of Intent to Dismiss with Statement of Charges, and the layoff notice, asserting that both occurred immediately after Measure N failed, and after respondent called for a special Board election. Respondent believes that his unpopular political advocacy created resentment and indignation "of the District political class," who retaliated against him by instituting his layoff.

### IMPROPER SKIPPING OF JUNIOR TEACHERS

25.    Respondent asserts that the District improperly "skipped over" junior teachers with less training and experience to lay him off. Citing *Bledsoe v. Biggs Unified School District* (2008) 170 Cal.App.4th 127, 138, (*Bledsoe*) "a district must not only establish a specific need for personnel to teach a specific course of study, but establish the certificated employee it proposes to retain 'has special training and experience necessary to teach' that course or course of study or to provide those services[.]" Respondent asserts that none of the prospective teachers who have been retained to teach sixth-grade math next year have the experience to do so, and they are junior to him on the seniority list. He identified teachers Van Zante, Riccomini, and

11

Dudley, who are multiple subject teaching credential holders, as not qualified or experienced to teach middle school math.

## Analysis

### LAYOFF IS RELATED TO BUDGET REDUCTIONS AND REDUCED ENROLLMENT

26.     Respondent's keen observations into BAC's budget discussions dating back to September 2020 shed light on the BAC's active efforts to balance the budget, pursue revenue-generating opportunities, and mitigate the budgetary impacts of the Measure N defeat. He conceded that the District must reduce its workforce due to declining enrollment and "deficit spending." While respondent may disagree with the BAC and the District regarding their budgetary decisions and management of the deficit, there was no evidence presented, other than respondent's sole testimony and self-generated notes and charts, to show that his layoff was not directly related to budget reductions and reduced enrollment.

Although respondent works with his father as a financial advisor, the job is substantially different from that of a budget analyst or Chief Business Officer in charge of a school district budget. Respondent did not call an expert to opine on the implementation of school budgets, decisions to consider when weighing budget cuts, the establishment of budget cuts, and analysis of the District's FTE reductions and dollar figures. He was not privy to any of the BAC's discussions, including the decision to shift sixth grade to a core program for the welfare of the District and its students. Respondent's mere suspicions that the sixth-grade shift to a core program was never raised until after respondent was served with the Notice of Intent and Statement of Charges, that the District somehow hid this information, and that the District failed to

12

explain how the sixth grade shift to a core program would result in savings, is unpersuasive and not supported by the evidence.

## LAYOFF WAS NOT A PRETEXT FOR RETALIATION

27.    There is no question that respondent is entitled to engage in constitutionally-protected political speech. He believes that he was "singled out" for layoff resulting from his political speech activities. He called no witnesses to support this assertion and presented a hearsay document purporting to establish that a Board member made threats against him. Other than respondent's sole testimony, he presented no evidence to support his assertions that the District retaliated against him for opposing Measure N and calling for a special Board election. In addition, he presented no evidence, other than his sole testimony, that the Board engaged in viewpoint discrimination against him. Retaliation and viewpoint discrimination present legal standards that respondent must establish. Respondent's sole subjective and biased testimony is not enough. Respondent failed to establish that the layoff was a pretext to retaliation by the District.

## JUNIOR TEACHERS PROPERLY RETAINED

28.    The District presented the seniority list and the persuasive testimonies of Superintendent Fraser, CBO Vance, and Dr. Martin that support a finding that teachers Van Zante, Riccomini, Dudley, and others similarly situated, who are junior to respondent, possess the "special training and experience necessary to teach" in accordance with *Bledsoe*, despite having less experience than respondent. Their multiple subject teaching credentials authorize them to teach a broad range of subjects that respondent cannot. The evidence supports a finding that respondent

13

does not possess the special training and experience that the junior multiple credentialed teachers possess.

## Welfare of the District and Its Students

29.     The District's layoff was not implemented for purpose of infringing on the private political views and activities of respondent. Rather, the layoff was implemented for the welfare of the District and its students. The Superintendent correctly identified the certificated employees providing the particular kinds of services that the Board directed to be reduced or discontinued. No junior certificated employees are scheduled to be retained to perform services which a more senior employee is certificated and competent to render.

## LEGAL CONCLUSIONS

1.     Jurisdiction for this proceeding exists pursuant to Education Code sections 44949 and 44955. All notices and other jurisdictional requirements of sections 44949 and 44955 were met.

2.     The anticipation of receiving less money from the state for the next school year is an appropriate basis for a reduction in services under section 44955. As stated in *San Jose Teachers Assn v. Allen* (1983) 144 Cal.App.3d 627, 638-639, the reduction of PKS on the basis of financial considerations is authorized under that section, and "in fact, when adverse financial circumstances dictate a reduction in certificated staff, section 44955 is the only statutory authority available to school districts to effectuate that reduction." The District must be solvent to provide educational services, and cost savings are necessary to resolve its financial crisis. The Superintendent's decision to reduce PKS was a proper exercise of her discretion.

14

3.    A District may reduce services within the meaning of Education Code section 44955, subdivision (b), "either by determining that a certain type of service to students shall not, thereafter, be performed at all by anyone, or it may 'reduce services' by determining that proffered services shall be reduced in extent because fewer employees are made available to deal with the pupils involved." (*Rutherford v. Board of Trustees* (1976) 64 Cal.App.3d 167, 178-179.) The burden is on the District to demonstrate that the reduction or elimination of the particular kinds of services is reasonable and that the District carefully considered its needs before laying off any certificated employee. (*Campbell Elementary Teachers Association v. Abbott* (1978) 76 Cal.App.3d 796, 807-808.)

4.    The layoff notice sent to respondent indicated the statutory basis for the elimination of services and, therefore, were sufficiently detailed to provide him due process. (*San Jose Teachers Assn. v. Allen* (1983) 144 Cal.App.3d 627; *Santa Clara Federation of Teachers v. Governing Bd.* (1981) 116 Cal.App.3d 831.) The services identified in PKS Resolution No. 21-XIV are particular kinds of services that may be reduced or discontinued pursuant to Education Code sections 44949 and 44955. The description of services to be reduced, both in the Board's Resolution and in the layoff notice, adequately described particular kinds of services. (*Zalac v. Ferndale USD* (2002) 98 Cal.App.4th 838; see, also, *Degener v. Governing Board* (1977) 67 Cal.App.3d 689.)

5.    Education Code section 44955 provides that when certificated employees face layoffs due to reduction or elimination of PKS, the District has an affirmative obligation to reassign senior teachers who are losing their positions into positions held by junior teachers, if the senior teachers have both the credentials and competence to occupy such positions. The clear intent of the statute is to prevent

15

school districts from laying off senior teachers while retaining junior teachers. Section 44955, subdivision (c) provides in pertinent part:

> Services of such employees shall be terminated in the
> inverse of the order in which they were employed . . . . The
> governing board shall make assignments and
> reassignments in such a manner that employees shall be
> retained to render any service which their seniority and
> qualifications entitle them to render . . . .

6.  The District appropriately considered all positively assured attrition that occurred during the computation period prior to submitting the PKS Resolution to the Board for its approval. In addition, the District appropriately applied bumping and skipping rules, and allowed bumping/skipping based upon the more senior employee's competency (e.g., credential or authorization) to teach the assignment of the less senior teacher.

7.  Legal cause exists to reduce or eliminate 4.0 FTE of particular kinds of services offered by the District as set forth in detail in the Factual Findings. The Board's decision to reduce or discontinue the identified services was neither arbitrary nor capricious and was a proper exercise of its discretion. Cause for the reduction or discontinuance of services relates solely to the welfare of the District's schools and pupils within the meaning of Education Code section 44949. No employee with less seniority than respondent is being retained to render a service that respondent is certificated and competent to render. The District may give final notice to respondent that his services will not be required for the ensuing school year, 2021-2022.

16

## RECOMMENDATION

Cause exists for the reduction of 4.0 full-time equivalent certificated positions at the end of the 2020-2021 school year. Notice shall be given to respondent David Kissner that his services will not be required for the 2021-2022 school year, because of the reduction and/or discontinuance of particular kinds of services.

DATE: May 3, 2021

*Danette C. Brown*
Danette C. Brown (May 3, 2021 14:31 PDT)

DANETTE C. BROWN

Administrative Law Judge

Office of Administrative Hearings