William J. Becker, Jr., Esq. (SBN: 134545)
Bill@FreedomXLaw.com
Freedom X
11500 Olympic Blvd., Suite 400
Los Angeles, California 90064
Telephone: (310) 636-1018

Counsel for *David M. Kissner*

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **DAVID M. KISSNER**, | Case No. 22-CV-00949-CRB |
| Plaintiff, | *Hon. Charles R. Breyer* |
| vs. | **PLAINTIFFS' OPPOSITION TO MOTION FOR SUMMARY JUDGMENT AND STATEMENT OF NON-OPPOSITION; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF** |
| **LOMA PRIETA JOINT UNION SCHOOL DISTRICT, et al.,** | |
| Defendants. | |

**Date:** July 28, 2023
**Time:** 10:00 a.m.
**Ctrm.:** 6

**Compl. Filed:** February 16, 2022
**SAC Filed:** March 20, 2022
**Trial Date:** None set

1

Pl.'s Opp'n To Motion For Summ. J.      Case No. 22-CV-00949-CRB

FREEDOM X
11500 OLYMPIC BLVD, SUITE 400
LOS ANGELES, CA 90064

# TABLE OF CONTENTS

TABLE OF CONTENTS ............................................................................. i

TABLE OF AUTHORITIES ..................................................................... iii

SUMMARY OF ARGUMENT .................................................................... 1

MEMORANDUM OF POINTS AND AUTHORITIES ................................. 2

I.    INTRODUCTION ............................................................................... 2

II.   SUMMARY OF RELEVANT AND MATERIAL FACTS ...................... 2

    A.   An Anonymous Community Member, Upset At Kissner For Political Reasons, Opened The Door To False Allegations Of Grooming Against Kissner ......................... 2

    B.   The District Has Never Substantiated The False Allegations Of Grooming Yet Refused To Withdraw Them .................................................. 4

    C.   The District Ignored A Demand To Withdraw The False Allegations Of Grooming And Released Them To The Public .................................. 4

    D.   The District Knew Of Kissner's Political Activities Opposed To Its Funding Measure And Board Appointment .......................................... 6

    E.   Kissner's Layoff Had Nothing To Do With The District's Budget Priorities ...................... 6

    F.   The District Invented A Policy Basis To Punish Kissner ...................... 7

III.  ARGUMENT ..................................................................................... 7

    A.   Summary Judgment Cannot Be Granted If Evidence Supports Plaintiff's Causes Of Action ....................................................................... 7

    B.   District Board Defendants Do Not Enjoy Legislative Immunity ........... 8

    C.   Because The District Has Not Met Its Burden Of Producing Evidence Of Retaliation, Plaintiff Has No Obligation To Produce Any Evidence Of Retaliation For His Protected Actions ....................................... 11

    D.   Even Though Plaintiff Has No Burden To Produce Evidence, Should The Court Feel Otherwise, Plaintiff Can Establish That The District Was More Likely Than Not Motivated To Terminate Him In Retaliation For His Protected Actions ....................................................................... 14

    E.   Whether Plaintiff Has Suffered A Stigma-Plus Defamation Injury That Violates Procedural Due Process Presents A Triable Issue Of Fact .................................. 17

        1.   Introduction ............................................................................. 17

        2.   Plaintiff has properly alleged substantive due process claims against the District Defendants due to their arbitrary and wrongful conduct ......................... 17

        3.   Plaintiff has properly alleged facts demonstrating the District's violation of procedural due process ............................................. 18

        4.   Stigma-plus defamation implicates Plaintiff's liberty interest ............... 20

Pl.'s Opp'n To Motion For Summ. J.          Case No. 22-CV-00949-CRB

FREEDOM X
11500 OLYMPIC BLVD. SUITE 400
LOS ANGELES, CA 90064

    F. Grier and Khandelwal Do Not Have Absolute Immunity ....................................23

    G.   Whether Martin and Fraser Are Liable For Kissner's Layoff And Dismissal
        Presents A Triable Issue ....................................................................................24

IV.  STATEMENT OF NON-OPPOSITION ..............................................................25

V.   CONCLUSION ....................................................................................................25

**Pl.'s Opp'n To Motion For Summ. J.**          Case No. 22-CV-00949-CRB

# TABLE OF AUTHORITIES

**Cases**

*Ahearn v. City of Palos Verdes*
    2008 WL 1330461 (C.D. Cal. Apr. 9, 2008) ...................................................8

*Albright v. Oliver*
    510 U.S. 266 (1994) .........................................................................................17

*Bagley v. Blagojevich*
    646 F.3d 378 (7th Cir.2011) .............................................................................9

*Bakersfield City School Dist. v. Superior Court*
    118 Cal.App.4th 1041 (2004) .........................................................................19

*Bechard v. Rappold*
    287 F.3d 827 (9th Cir.2002) .............................................................................9

*British Airways Bd. v. Boeing Co.*
    585 F.2d 946 (9th Cir.1978) ...........................................................................12

*Canary v. Osborn*
    211 F.3d 324 (6th Cir.2000) ......................................................................10, 11

*Celotex Corp. v. Catrett*
    477 U.S. 317 (1986) .........................................................................................11

*Citizens for Better Forestry v. United States Dep't of Agric.*
    341 F.3d 961 (9th Cir 2003) ..............................................................................8

*Cleveland Board of Education v. Loudermill*
    470 U.S. 532 (1985) .........................................................................................20

*Consol. Elec. Co. v. U.S. for Use and Benefit of Gough Industries, Inc.*
    355 F.2d 437 (9th Cir. 1966) .............................................................................8

*Daniels v. Williams*
    474 U.S. 327 (1986) .........................................................................................17

*Dent v. West Virginia*
    129 U.S. 114 (1889) .........................................................................................17

*Doe v. Michigan Dept. of State Police*
    490 F.3d 491(6th Cir. 2007) ............................................................................20

*Endy v. County of Los Angeles*
    975 F.3d 757 (9th Cir. 2020) .....................................................................18, 22

*ERV, Inc. v. Superior Ct.*
    143 Cal.App.4th 742 (2006) ...........................................................................19

*Fikre v. Fed. Bureau of Investigation*
    35 F.4th 762 (9th Cir. 2022) ............................................................................21

FREEDOM X
11500 OLYMPIC BLVD, SUITE 400
LOS ANGELES, CA 90064

*Guidry v. Marine Engineers' Beneficial Ass'n,*
   2007 WL 707511 (N.D. Cal. Mar. 6, 2007) ........................................13

*Guz v. Bechtel Nat. Inc.*
   24 Cal.4th 317 (2000) ........................................14

*Hafer v. Melo*
   502 U.S. 21 (1991) ........................................8

*Hart v. Parks*
   450 F.3d 1059 (9th Cir. 2006). ........................................20

*Haskell v. Washington Twp.*
   864 F.2d 1266 (6th Cir. 1988) ........................................8

*HiRel Connectors, Inc. v. U.S.*
   2006 WL 3618012 (C.D. Cal. Sept. 15, 2006) ........................................12

*Humphries v. County of Los Angeles*
   554 F.3d 1170 (9th Cir. 2008) ........................................20, 21, 22

*In re Appeal of Woods*
   7 Ohio App.3d 226, 455 N.E.2d 13 (1982) ........................................10

*Kaahumanu v. County of Maui*
   315 F.3d 1215 (9th Cir.2003) ........................................9

*Kannan v. Apple Inc.*
   2020 WL 6135994 (N.D. Cal. Oct. 19, 2020) ........................................13

*Kentucky v. Graham*
   473 U.S. 159 (1985) ........................................8

*La Conner Associates LLC. v. Berg*
   73 Fed. Appx. 994 (9th Cir. 2003) ........................................9

*Llamas v. Butte Community College Dist.*
   238 F.3d 1123 (9th Cir.2001) ........................................21

*Lyons v. England*
   307 F.3d 1092 (9th Cir. 2002) ........................................14

*Marken v. Santa Monica-Malibu Unified School Dist.*
   202 Cal.App.4th 250 (2012) ........................................19

*Mathews v. Eldridge*
   424 U.S. 319 (1976) ........................................18, 23

*McRae v. Dept. of Corrections & Rehab.*
   142 Cal. App. 4th 377 (2006) ........................................14

*Miller v. California*
   355 F.3d 1172 (9th Cir.2004) ........................................22

Pl.'s Opp'n To Motion For Summ. J.       Case No. 22-CV-00949-CRB

FREEDOM X
11500 OLYMPIC BLVD, SUITE 400
LOS ANGELES, CA 90064

*Morgan v. Regents of U. of Cal.*
    88 Cal. App. 4th 52 (2000)..................................................................................14

*Nicanor–Romero v. Mukasey*
    523 F.3d 992 (9th Cir.2008)..............................................................................22

*Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Companies, Inc.*
    210 F.3d 1099 (9th Cir. 2000)....................................................................11, 13

*Paul v. Davis*
    424 U.S. 693 (1976)..........................................................................................21

*Peloza v. Capistrano Unif. Sch. Dist.*
    37 F.3d 517 (9th Cir.1994)...............................................................................21

*Pickering v. Board of Ed. of Tp. High School Dist. 205, Will County, Illinois*
    391 U.S. 563 (1968)..........................................................................................14

*Rateree v. Rockett*
    852 F.2d 946 (7th Cir. 1988).........................................................................9, 10

*Schechner v. KPIX–TV*
    686 F.3d 1018 (9th Cir. 2012)..........................................................................14

*Skinner v. Medivators, Inc.*
    2022 WL 4544701 (N.D. Cal. Sept. 28, 2022)................................................13

*So. Cal. Gas Co. v. City of Santa Ana*
    336 F.3d 885 (9th Cir.2003)............................................................................12

*Tolan v. Cotton*
    572 U.S. 650 (2014)............................................................................................8

*Trevino v. Gates*
    23 F.3d 1480 (9th Cir.1994)...............................................................................8

*Valmonte v. Bane*
    18 F.3d 992 (2d Cir.1994).................................................................................22

*Wenger v. Monroe*
    282 F.3d 1068 (9th Cir. 2002)..........................................................................21

*Wisconsin v. Constantineau*
    400 U.S. 433 (1971)..........................................................................................20

*Zamora v. Security Industry Specialists, Inc.*
    71 Cal.App.5th 1 (2021)...................................................................................14

*Zamsky v. Hansell*
    933 F.2d 677 (9th Cir.1991)...............................................................................9

*Zinerman v. Burch*
    494 U.S. 113 (1990)..............................................................................17, 18, 20

**Pl.'s Opp'n To Motion For Summ. J.**        Case No. 22-CV-00949-CRB

**Constitutional Provisions**

California Constitution, Art. 1, section 1 ..................................................................5

**Statutes**

42 U.S.C. § 1983 .................................................................................................passim

Cal. Educ. Code Ann. § 44956 .......................................................................7, 23

Cal. Lab. Code §§ 1101-1102.................................................................................15

Fed. R. Evid. 402 .....................................................................................................12

Fed. R. Evid. 802 .....................................................................................................12

Gov. Code § 6254 .......................................................................................................5

Gov. Code, § 6253 ....................................................................................................23

**Other Authorities**

Websters Third New Int'l Dictionary 26 (4th ed.1976) ....................................9

**Rules**

L.R. 7-3....................................................................................................................12, 25

Pl.'s Opp'n To Motion For Summ. J.                    Case No. 22-CV-00949-CRB

# SUMMARY OF ARGUMENT

The Defendants, Loma Prieta Joint Union School District administrators and board members (collectively referred to herein as "Defendants" or the "District") Motion for Summary Judgment ("Motion") presents solely questions of law and disputes none of the material facts in this case. Defendants are not entitled to summary judgment under any of their theories as a matter of law for the following reasons:

Defendants are not entitled to judgment as a matter of law on the ground of absolute legislative immunity because "stripped of all considerations of intent and motive," the dismissal and layoff decisions in substance were not essentially and clearly legislative, but administrative, involving a personnel matter affecting just one employee.

Defendants are not entitled to judgment as a matter of law on Plaintiff's First Cause of Action for First Amendment Retaliation because they have not satisfied their initial burden of either producing evidence that negates an essential element of Plaintiff's claims which would entitle them to a directed verdict if the evidence went uncontroverted at trial or showing that Plaintiff does not have enough evidence of an essential element to carry his ultimate burden of persuasion at trial.

Defendants are not entitled to judgment as a matter of law on Plaintiff's Third and Sixteenth Causes of Action for Civil Rights (Stigma-Plus) Defamation and violation of his right to Due Process under the Fourteenth Amendment because Kissner has raised a triable issue as to whether public records containing stigmatizing grooming charges released by the District to the public and the District's failure to withdraw the stigmatizing grooming charges from the public records deprived him of a constitutional liberty interest and therefore violated his procedural Due Process rights.

Defendants Martin and Fraser are not entitled to judgment as a matter of law because triable issues exist regarding their role in the decision to layoff and dismiss Plaintiff.

Defendants Grier and Khandewal are not entitled to judgment as a matter of law on the ground of absolute immunity because there are triable issues regarding their direct involvement in the decisions to terminate him and failure to restore his employment.

FREEDOM X
11500 OLYMPIC BLVD, SUITE 400
LOS ANGELES, CA 90064

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION

Plaintiff David Kissner ("Plaintiff" or "Kissner") was separately fired and laid off in early 2020 from his employment as a permanent, tenured 6th-grade math and science teacher with the Loma Prieta Joint Union School District ("District"), located in Los Gatos, California. In 2018, Kissner had objected to a school-endorsed political student protest. When three students failed to show up for a scheduled quiz so that they could attend the assembly, Kissner treated their unexcused absences as truancies and gave them failing grades on the quiz. His decision became national news, and the Defendants responded to it by commissioning two investigations into his conduct.

One of these investigations came in response to an anonymous letter falsely accusing Kissner of the stigmatizing act of child grooming. Though the accusation was never substantiated, and no cause was found to discipline him, in 2021 the Defendants included it in a Statement of Charges filed in connection with dismissal proceedings. It then released the Statement of Charges to the public in response to a public records request.

In late 2020, Kissner publicly campaigned against a Board measure seeking the extension of public financing for the district. He additionally publicly opposed the Board's decision to fill a Board vacancy by appointment, and led the petition campaign to force a special election. Both of Kissner's initiatives were successful. In early 2021, Kissner was notified that he was being both fired and laid off. Kissner alleges that his termination was in retaliation for his protected actions and that the publication of false allegations of child grooming in connection with the District's dismissal proceedings defamed him.

The Defendants have not shown that the material evidence is undisputed. Instead, they bring their challenge on the basis of questions of law alone. As demonstrated below, each of their arguments fails to satisfy their burden on summary judgment, and their motion must be denied.

## II.    SUMMARY OF RELEVANT AND MATERIAL FACTS

### A.    An Anonymous Community Member, Upset At Kissner For Political Reasons, Opened The Door To False Allegations Of Grooming Against Kissner

The District serves over 400 students in grades TK-8 and administers just two schools, Loma Prieta Elementary School (K-5) and CT Middle (6-8). Second Amended Complaint (Dkt. No. 16) ("SAC"), ¶ 29. Kissner was hired in 2012 specifically to teach 6th-grade math and science

in a "core" model at CT Middle (Exh. 1 (Hiring Contract)), and he continued to teach math and science as a tenured ("permanent") employee until February 12, 2021, when he was placed on administrative leave pending his dismissal proceedings. *Id*., ¶ 196.

Following the Parkland, Florida, school shootings in 2018, students across the nation staged political protests calling for stricter gun legislation. These protests were instigated by partisan groups cynically turning to the nation's impressionable youth to advance a political agenda. *Id*., ¶¶ 5, 61-62, 238. CT Middle administrators sought to join the national conversation by allowing students to cut class so they could attend school-sanctioned student assemblies calling attention to the need for stricter gun legislation. It was against this politically-animated and emotionally-charged backdrop that Kissner was drawn into a controversy involving his decision to comply with California truancy laws and disallow his students from attending the assembly without an excused absence. For his part, Kissner believed that a school-sanctioned student protest on any subject violated California's truancy laws and placed the school in a compromising position. *Id*., ¶¶ 54, 56-64, 69. His position was supported by legal guidance from two counties. *Id*., ¶ 59.

The first of two student assemblies was planned for March 14, 2018—"Pi Day"—a day Kissner had scheduled to give his annual quiz regarding the value of pi (expressed as 3.14 representing the ratio of the circumference of a circle to its diameter). *Id*., ¶¶ 74, 86. When three students elected to skip class to attend the assembly, Kissner gave them failing grades on the quiz. *Id*., ¶¶ 82-86. The parent of one of the students appeared on a Bay Area newscast to complain about the grade given to his child. The nationwide media attention devoted to the incident subsequently revealed Kissner's identity to the public. *Id*., ¶ 89. His action drew rancor from some members of the public, one of whom reacted to it by anonymously notifying the school that Kissner was a child "groomer." *Id*., ¶¶ 91-101, 110-112.

On the basis of the anonymous writer's false grooming accusation, the District launched an investigation into his conduct with children. *Id*., ¶¶ 110, 123, 125, 130. The District's investigator prepared a report quoting the anonymous grooming allegation but did not find it to be substantiated. *Id*., ¶ 148. The report additionally referred to a 2016 incident in which Kissner had given a 17-year-old a sip of alcohol. *Id*., ¶ 50. Relying on the report's reference to the anonymous writer's grooming allegation and the alcohol incident, the school's then-superintendent, Defendant Lisa Fraser ("Fraser") warned Kissner that any "reports" of similar misconduct in the future would

FREEDOM X
11500 OLYMPIC BLVD, SUITE 400
LOS ANGELES, CA 90064

be grounds for dismissal. Exh. 2 (Fraser Letter). Kissner responded to the letter denying any wrongdoing. Exh. 3. No further action was taken against Kissner regarding the matter. SAC ¶ 152.

**B.    The District Has Never Substantiated The False Allegations Of Grooming Yet Refused To Withdraw Them**

On February 12, 2021, Kissner received a Notice of Intent to dismiss him based, in part, on allegations of "[p]otential grooming behavior, such as: singling out a minor and being alone with a minor … asking about sex/sexual encounters; and posting images of youth partially unclothed on the internet… failing to maintain professional boundaries, including via technology and sharing private texts/messages with minors/students." On March 22, 2021, Kissner's attorney sent a letter to District counsel demanding the unsubstantiated allegations be removed from the Statement of Charges:

> These slanderous charges lack any substance and are shamelessly based on nothing more than anonymous inadmissible hearsay. Accusations of "potential grooming," asking about sex, etc., are made with NO SOURCE, NO VICTIM, NO DETAILS, NO OFFICIAL COMPLAINT, NO REPORTS.… Should these accusations remain in these proceedings or otherwise find their way toward republication, we will not hesitate to hold the District and each person involved accountable.

Exh. 23 (Demand Letter). The District never responded to counsel's letter and did not remove the offensive allegations from either the initial Statement of Charges or an amended version of it.

Fraser has since admitted that she had no evidence to support the grooming allegations. Exh. 4 (Fraser Dep. 103:11-106:6, 110:2-6, 114:19-115:6, 121:11-123:18, 135:9-15, 135:24-136:3, 140:1-141:25, 142:1-143:19, 144:7-21); Exh. 5 (Elliot Dep. 154:25-155:11, 161:4-162:16, 173:8-24, 174:3-17).

**C.    The District Ignored A Demand To Withdraw The False Allegations Of Grooming And Released Them To The Public**

On April 16, 2021, the District received a California Public Records Act ("PRA") request seeking a copy of the initial Statement of Charges. Exh. 6. Defendant Fraser responded to the request in less than an hour by releasing the Statement of Charges containing the grooming allegations. *Id.* On July 6, 2021, the District received a PRA request seeking a copy of the amended Statement of Charges. Fraser's successor, Defendant Grier, responded to the request by releasing the Amended Statement of Charges containing the grooming allegations. Exh. 7. Both responses included a cover letter relating the following information:

- The District has determined that your request, as written and submitted, <u>does not meet the requirement for a proper PRA request</u> in that it fails to identify records with

FREEDOM X
11500 OLYMPIC BLVD, SUITE 400
LOS ANGELES, CA 90064

reasonable particularity.

- Moreover, the request is objected to on the grounds that <u>it would require potential information to be disclosed which is exempt from the PRA</u> based on: personnel, medical, or similar files, the disclosure of which would constitute an unwarranted invasion of personal privacy, attorney client privilege and attorney work product.
- Specifically, under Government Code section 6255, a public entity may withhold a record if, based on the facts of the particular case, <u>the public interest served by not disclosing the record clearly outweighs the public interest served by disclosing the record</u>.
- Additionally, the California Government Code excludes from disclosure other records, including "[r]ecords, the disclosure of which is exempted or prohibited pursuant to federal or state law, including, but not limited to, provisions of the Evidence Code relating to privilege." (Gov. Code § 6254(k).) In this regard, Article I, Section 1 of the California Constitution provides that:

    o All people are by nature free and independent and have inalienable rights. Among these are enjoying and defending life and <u>liberty</u>, acquiring, possessing, and protecting property, and pursuing and obtaining safety, happiness, and privacy.

- <u>The District is not able to produce records that are exempt from disclosure under the PRA and/or state and federal law</u>.
- Documents potentially responsive to your request may be exempt from production under the PRA's <u>pending litigation</u>, <u>preliminary drafts</u>, attorney-client privilege, attorney work product privilege, and/or <u>deliberative process privilege exemptions.</u>
- Furthermore, the District is not able to disclose records which may constitute an <u>unwarranted invasion of personal privacy</u> and employee privacy.
- Further, the California Court of Appeals held that records of complaints or investigations against a public employee can be disclosed only if the complaint is of a substantial nature and <u>there is reasonable cause to believe the complaint or charge of misconduct is well-founded</u>. However, in such instances, <u>a public agency's decision to release confidential documents under the PRA is reviewable by petition for writ of mandate in a "reverse-PRA" lawsuit.</u>

*Id*. (Emphasis added.)

The District voluntarily dropped the allegations of grooming and associated conduct before the dismissal proceedings began and the allegations did not appear in the heavily redacted statement of charges presented to the Commission. Dkt. No. 51-1 (Exh. 1). Nevertheless, the ALJ's decision included unfounded allegations concerning an incident that the public seized upon to further mischaracterize Kissner as a child groomer based on the District's release of the Statements of Charges. Dkt. No. 44-2 (pp. 45-61 (Email Thread)).

FREEDOM X
11500 OLYMPIC BLVD., SUITE 400
LOS ANGELES, CA 90064

**D. The District Knew Of Kissner's Political Activities Opposed To Its Funding Measure And Board Appointment**

During the 2019-2020 school year, the District struggled with budget deficits and declining reserves. Exh. 8 (Layoff Testimony, v.1, 16:7-18:18). Fraser convened a Budget Advisory Committee ("BAC") to assist in planning for program cuts for the following year. *Id.* As part of the strategy for addressing its budget woes, Fraser recommended to the Board that the District pursue a new parcel tax to replace one that was expiring. *Id.* The Board unanimously voted to pursue the ballot measure, Measure N. Exh 9 (Layoff Testimony, v. 2, 125:9-21). The measure was backed by district Board members and administrators who actively campaigned for its support. Exh. 8 (71:9-72:17).

Plaintiff led the campaign opposing the tax measure and advocated for transparency, accountability, and responsible use of public funds. *Id.* The District was aware of his efforts to publicly oppose the measure, *Id.,* and Kissner notified Fraser in December 2019 of his intent to campaign in opposition. Exh. 17 (Dismissal Tr., 52:4-15). The District suffered a major setback on December 1, 2020, when the measure was defeated, and it was forced to plan for much deeper budget cuts than it had hoped. Exh. 8 (71:9-72:17). But the District's chief business official (CBO) determined that the proposed budget cut purporting to implicate Kissner's position had no effect on teaching positions or budget savings. *Id.* (220:1-221:4, 223:7-224:2, 229:22-230:4, 238:13-15, 252:24-253:21, 257:10-12).

**E. Kissner's Layoff Had Nothing To Do With The District's Budget Priorities**

While at first the district had budgetary concerns and sought to reduce four positions district-wide, the CBO determined that Kissner's position could not be eliminated. Exh. 10 (Vance Email to Fraser). In fact, it wasn't eliminated. The resolution had not specified the reduction or elimination of any service related to 6th-grade math or science instruction. Exh. 11 (PKS Resolution). Fraser and Martin even reassured parents that there would be no significant changes to the 6th-grade curriculum (Exh. 28, Fraser and Martin email). And Martin has confirmed it. Exh. 9 (28:11-15) ("[T]he curriculum is not in flux, [but] who's teaching it is.").

On March 12, 2021, the District served Plaintiff with a layoff notice, which included the approved Board resolution to lay him off. Exh. 12 (Layoff Notice.) Kissner was replaced with a more junior teacher possessing less experience. Exh. 13 (Screenshot); Exh. 9 (55:7-56:3). In fact, he was the only teacher laid off. Exh. 14 (Martin's Supplementary Response to Interrogatories No. 5); Exh. 15 (Approved Personnel Report). By June, 2021, all of the noticed layoffs, except

FREEDOM
11500 OLYMPIC BLVD, SUITE 400
LOS ANGELES, CA 90064

Kissner's, were rescinded. *Id.* The District received unexpected funding in Spring 2021 and did not implement any budget cuts or reduce or eliminate teaching positions for the 2021-2022 school year. Exh. 16 (Board Presentation, Slide 2 (no budget cuts), Slide 23 (did not cut 4.0 FTE)). Kissner's layoff had nothing to do with the District's budget priorities or the Board resolution authorizing layoffs.

Because Kissner was not laid off due to budget priorities, he is entitled to be reappointed to his former job (Cal. Educ. Code Ann. § 44956), but the current superintendent, Grier, has failed to reappoint him.

### F. The District Invented A Policy Basis To Punish Kissner

Soon after notifying Fraser of his intent to oppose her parcel tax in December 2019 (Exh. 17 (Dismissal Tr., 52:4-15)), Fraser brought a new proposed amendment to Board Policy 4119.21 to the Board for approval in February 2021. Exh. 18 (Board Meeting Agenda and Minutes). The amended version (Exh. 19) added unconstitutionally vague language to the original version (Exh. 20), proscribing broadly-described conduct. Once the Amended Policy was approved, Fraser promptly wrote Kissner two unprecedented disciplinary letters, citing only the new policy, and inexplicably used the language for two different statutory causes for dismissal. Exh. 21 (March 31, 2020 Warning of Unprofessional Conduct); Exh. 22 (Warning of Unsatisfactory Performance). Neither of these charges were upheld by the commission. The District would cite this Amended Policy as the only policy basis for Kissner's dismissal in its lengthy Statement of Charges.

## III. ARGUMENT

### A. Summary Judgment Cannot Be Granted If Evidence Supports Plaintiff's Causes Of Action

The District's Motion must be denied for every cause of action upon which Plaintiffs offer sufficient evidence to establish the prima facie case. "The judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial … Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions …" *Anderson v. Liberty Lobby, Inc.*, 477 U.S., *supra*, at 249-255. Summary judgment is a drastic remedy and must therefore only be granted "with caution." *Id*. at 255. Summary judgment cannot be granted when there is a "genuine dispute" as to any "material fact." Fed. R. Civ. P. 56(a).

In determining whether a case presents any questions of material fact under the applicable substantive law, the trial court must view the evidence in the light most favorable to the nonmoving

party. *Citizens for Better Forestry v. United States Dep't of Agric.*, 341 F.3d 961, 969 (9th Cir 2003); *see also Tolan v. Cotton*, 572 U.S. 650, 656-657 (2014) (courts may not resolve genuine disputes of fact in favor of the party seeking summary judgment). This requires the trial court to believe the evidence of the opposing party, and to draw all reasonable inferences that may be drawn from the facts before the court in favor of the opposing party. *Anderson v. Liberty* Lobby, Inc., *supra*, 477 U.S. at 255. "An issue of fact may arise from inferences to be drawn from the evidence, and all doubts as to the existence of a genuine issue as to a material fact must be resolved against the party moving for a summary judgment." *Consol. Elec. Co. v. U.S. for Use and Benefit of Gough Industries, Inc*., 355 F.2d 437, 440, n. 11 (9th Cir. 1966).

## B. District Board Defendants Do Not Enjoy Legislative Immunity

Personal-capacity suits seek to impose individual liability upon a government officer for actions taken under color of state law. *Hafer v. Melo*, 502 U.S. 21, 25 (1991). Thus, on the merits, to establish personal liability in a § 1983 action, it is enough to show that the official, acting under color of state law, caused the deprivation of a federal right. *Kentucky v. Graham*, 473 U.S. 159, 166 (1985). While the plaintiff in a personal-capacity suit need not establish a connection to governmental "policy or custom," officials sued in their personal capacities, unlike those sued in their official capacities, may assert personal immunity defenses such as objectively reasonable reliance on existing law. *Id*., at 166–167.

Individual members of local governmental bodies, such as the school Board Defendants, are absolutely immune from suit for damages under § 1983 when conducting "legitimate legislative activity." *Bogan v. Scott-Harris*, 523 U.S. 44, 54 (1951). "Absolute legislative immunity attaches to all actions taken in the sphere of <u>legitimate legislative activity</u>." *Id.* (Emphasis added.) However, not all governmental acts by local government bodies are necessarily legislative in nature, and "[t]he various activities of most local or municipal officials cannot be characterized as only administrative, legislative, or judicial." *Haskell v. Washington Twp*., 864 F.2d 1266, 1277-78 (6th Cir. 1988). "[L]egislators performing administrative or executive functions involving decisions directed at one or a few individuals are not entitled to legislative immunity." *Ahearn v. City of Palos Verdes*, CV 07-2029-AHS-RNB, 2008 WL 1330461, at *9 (C.D. Cal. Apr. 9, 2008); citing *Trevino v. Gates*, 23 F.3d 1480, 1481 (9th Cir.1994) ("city council members who vote to pay a punitive damage award" for an individual "perform an administrative, not a legislative, act; therefore, they are not entitled to absolute immunity"); *Zamsky v. Hansell*,

933 F.2d 677, 679 (9th Cir.1991) (local officials are not entitled to legislative immunity for "an action against a specific individual enforcing the general zoning ordinance"). "Whether an act is legislative turns on the nature of the act, rather than on the motive or intent of the official performing it." *Bogan*, 523 U.S. at 54.

In *Kaahumanu v. County of Maui*, 315 F.3d 1215 (9th Cir.2003), the Ninth Circuit summarized the factors that should be considered in determining whether a local legislator is entitled to absolute immunity as follows:

> We determine whether an action is legislative by considering four factors: (1) whether the act involves ad hoc decision making, or the formulation of policy; (2) whether the act applies to a few individuals, or to the public at large; (3) whether the act is formally legislative in character; and (4) whether it bears all the hallmarks of traditional legislation.

*Id.* at 1220 (internal quotation marks and citations omitted). The court also noted in *Kaahumanu* that these factors are not mutually exclusive. *Id.* "Whether an act is ad hoc can depend on whether it is aimed at a few people or many, and whether an act bears all the hallmarks of traditional legislation can depend on whether it is ad hoc." *Id*. at 1220, n. 4 (citing *Bechard v. Rappold*, 287 F.3d 827, 829–32 (9th Cir.2002)). "An 'ad hoc' decision is one made 'for the particular end or purpose at hand and without reference to wider application.' " *La Conner Associates LLC. v. Berg*, 73 Fed. Appx. 994, 996 (9th Cir. 2003) (unpublished), quoting Websters Third New Int'l Dictionary 26 (4th ed.1976).

The question before the Court is whether the school Board Defendants' layoff and dismissal resolutions, when "stripped of all considerations of intent and motive," were legislative rather than administrative or executive. *Bogan v. Scott-Harris*, 523 U.S. at 55. Employment decisions generally are administrative. *Rateree v. Rockett*, 852 F.2d 946, 950 (7th Cir. 1988). In *Bogan*, the Supreme Court held that a decision by local legislators to eliminate an employment position from local government was clearly a legislative act. *Id*. at 55-56. The Court contrasted that situation with "the hiring or firing of a particular employee," which the Court implied was not a legislative act. *Id*. The distinction, according to the Court, was that the former activity "may have prospective implications that reach well beyond the particular occupant of the office." *Id*. at 56.

In *Bagley v. Blagojevich*, 646 F.3d 378, 392 (7th Cir.2011), the Seventh Circuit cited substantial precedent that "supports the distinction between the firing of an employee," which is administrative, "and the elimination of a position," which is legislative. *Id*.; *see also Bogan*, 523

FREEDOM X
11500 OLYMPIC BLVD, SUITE 400
LOS ANGELES, CA 90064

U.S. at 56; *Rateree v. Rockett*, 852 F.2d at 950 (distinguishing between employment decisions and budget decisions that "have an effect on employment by either creating or eliminating positions or by raising or lowering salaries").

A Sixth Circuit case, *Canary v. Osborn*, 211 F.3d 324, 330–31 (6th Cir.2000), stands practically on all fours with the present case. In *Canary*, the court found legislative immunity inapplicable to a vote by the defendant school board members against the renewal of the plaintiff's contract as an assistant principal. The plaintiff sued them individually and alleged that they had retaliated against him in violation of his First Amendment rights. The court determined that even though the board's minutes referred to the vote as based on the school district's financial status and implicated the board's budgetary priorities, the record did not otherwise reflect that this was a budgetary decision. *Id*. at 330. The resolution did not involve the termination of a position, and the decision did not have prospective application beyond the plaintiff because the board thereafter created a similar new position and hired someone else to fill it.

There is no indication in the Board minutes that Kissner was dismissed or laid off because the Board no longer needed or wanted a 6th-grade math and science teacher. *See Id*. Unlike in *Bogan*, but analogous to *Canary*, the record reflects that the alleged action in this case did not have prospective implications that reached well beyond the particular occupant of the office. *Id*. at 330-331. Shortly after Kissner was terminated (by both layoff and dismissal), the District hired a teacher other than Kissner to fill the same position (6th-grade math and science). *See id*.; cf. *Rateree*, 852 F.2d at 950 (noting, in support of a finding that certain budget cuts were indeed legislative in nature, that "the plaintiffs' positions were eliminated altogether and no one was hired to replace them").

Here, the District is careful not to mention the board's decision to dismiss Kissner—only its decision to lay him off—because the dismissal decision is plainly administrative, not legislative, and thus completely undercuts its argument. But the layoff decision fairs no better because Kissner's position—teaching 6th-grade math and science—was not eliminated, only his employment. The District retained teachers to replace him in the identical position. "A job is not abolished under circumstances where the appointing authority simply transfers that job's duties to a new employee to perform." *In re Appeal of Woods*, 7 Ohio App.3d 226, 455 N.E.2d 13, 15 (1982). Although the District claims Kissner's job was eliminated due to budget considerations, it was neither targeted for budgetary reductions nor resulted in any. Exh. 8 (220:1-221:4, 223:7-

FREEDOM X
11500 OLYMPIC BLVD, SUITE 400
LOS ANGELES, CA 90064

224:2, 229:22-230:4, 238:13-15, 252:24-253:21, 257:10-12). In fact, the District has admitted that any reduction of 6th-grade math and science curricula could never be achieved. Exh. 10 (Vance Email to Fraser). Kissner was replaced in his position unrelated to budgetary needs. As such, his layoff was an ad hoc decision affecting him alone.

It is evident that the Board Defendants in the present case are not entitled to summary judgment on their claim of legislative immunity. Even "stripped of all considerations of intent and motive," the dismissal and layoff decisions in substance were not essentially and clearly legislative. Unlike the ordinance in *Bogan*, the District's resolutions proposed by Fraser and adopted by the Board to terminate Kissner did not "bear all the hallmarks of traditional legislation." *See Canary v. Osborn*, 211 F.3d at 330.

### C. Because The District Has Not Met Its Burden Of Producing Evidence Of Retaliation, Plaintiff Has No Obligation To Produce Any Evidence Of Retaliation For His Protected Actions

Plaintiff alleges that his protected conduct caused the District to terminate him and that the District's stated reasons for his termination were pretextual. A triable issue exists as to whether the District violated Kissner's First Amendment right to engage in protected speech by terminating him in retaliation for that speech. Framing the issue more specifically, the question on summary judgment is whether a triable issue of fact exists that the District Defendants' reasons for terminating Kissner were mere pretext and unworthy of credence.

The party moving for summary judgment always bears the initial burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "The initial burden of production refers to the burden of producing evidence, or showing the absence of evidence, on the motion for summary judgment; the ultimate burden of persuasion can refer either to the burden of persuasion on the motion or to the burden of persuasion at trial." *Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Companies, Inc*., 210 F.3d 1099, 1102 (9th Cir. 2000). "A moving party without the ultimate burden of persuasion at trial—usually, but not always, a defendant—has both the initial burden of production and the ultimate burden of persuasion on a motion for summary judgment." *Id.*

Here, the District has not met its burden of showing the absence of evidence demonstrating retaliation. It has offered only the conclusory decision of "a disinterested, three-member administrative panel" to show that "[p]laintiff can present no evidence that any of the panel members had a retaliatory motive to recommend plaintiff's termination." Motion, 25:22-25. This

FREEDOM X
11500 OLYMPIC BLVD, SUITE 400
LOS ANGELES, CA 90064

Pl.'s Opp'n To Motion For Summ. J.                    Case No. 22-CV-00949-CRB

argument fails, first, because an administrative law decision is not evidence. "The court must be directed to 'specific, triable facts.' " *HiRel Connectors, Inc. v. U.S.,* CV01-11069DSFVBKX, 2006 WL 3618012, at *2 (C.D. Cal. Sept. 15, 2006), quoting *So. Cal. Gas Co. v. City of Santa Ana*, 336 F.3d 885, 889 (9th Cir.2003); *see id.*, quoting *British Airways Bd. v. Boeing Co.*, 585 F.2d 946, 952 (9th Cir.1978), cert. denied, 440 U.S. 981 (1979) ("[L]egal memoranda and oral argument are not evidence, and they cannot by themselves create a factual dispute sufficient to defeat a summary judgment motion where no dispute otherwise exists.")

The District's argument fails as well for two additional reasons. First, it depends on a peculiarly misplaced understanding of the Supreme Court's *Mount Healthy* decision suggesting that the motives of administrative law adjudicators supersede those of the employer in the process of dismissing an employee. *See* Motion, 25:9-27:8.[1] Such impenetrable reasoning would impermissibly and somewhat preposterously place factfinders in the shoes of defendants. Nor did *Mount Healthy* reach such a clearly unsound holding. As applicable to the present case, *Mount Healthy* determined only that a school district will not run afoul of a teacher's constitutional rights if, by a preponderance of the evidence, the district demonstrates that it would have terminated the teacher even in the absence of protected conduct. No attempt to present such evidence has been made because, unlike the *Mount Healthy* school district, the District has never claimed to have terminated Kissner, in part or in whole, because of his protected actions. The *Mount Healthy* analysis scrutinized a plaintiff's evidentiary burden at trial, not a non-moving party's burden on summary judgment, where the school board's termination of a teacher based in part on his protected actions was undisputed. The only question in *Mount Healthy* was whether the board could terminate the teacher for reasons apart from his protected speech even though it had violated his constitutional right.

The question in this case is not whether the District would have terminated Kissner <u>but for</u> his protected conduct. Rather, the question is whether the District's stated reasons for terminating Kissner were "false or pretextual" or whether evidence can show that the District "acted with discriminatory animus" or whether evidence of each exists such that a reasonable trier of fact could conclude the District intentionally discriminated. *Skinner v. Medivators, Inc.*, 20-CV-06979-JSW,

---

[1] Plaintiff hereby objects to Defendants' Request for Judicial Notice, Exh. E, pp. 36-37, cited at Motion, 26:10-11, 21, 24, 26-27 as irrelevant (Fed. R. Evid. 402; LR 7-3(a)) and as inadmissible hearsay to prove the truth asserted therein (Fed. R. Evid. 802).

FREEDOM X
11500 OLYMPIC BLVD, SUITE 400
LOS ANGELES, CA 90064

2022 WL 4544701, at *3 (N.D. Cal. Sept. 28, 2022); *Kannan v. Apple Inc*. 5:17-CV-07305-EJD, 2020 WL 6135994, at *3 (N.D. Cal. Oct. 19, 2020), aff'd, 20-17211, 2022 WL 3973918 (9th Cir. Aug. 31, 2022). The District has not offered evidence negating Plaintiff's allegations that its reasons were false or pretextual or that it did not act with discriminatory animus.[2] Nor has it demonstrated that Kissner cannot show evidence of pretext or discriminatory animus.

In *Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Companies, Inc*., *supra*, 210 F.3d, the Ninth Circuit explained the burden-shifting requirement on summary judgment:

> A moving party without the ultimate burden of persuasion at trial—usually, but not always, a defendant—has both the initial burden of production and the ultimate burden of persuasion on a motion for summary judgment. In order to carry its burden of production, the moving party must either produce evidence negating an essential element of the nonmoving party's claim or defense or show that the nonmoving party does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial. In order to carry its ultimate burden of persuasion on the motion, the moving party must persuade the court that there is no genuine issue of material fact.
>
> <u>If a moving party fails to carry its initial burden of production, the nonmoving party has no obligation to produce anything, even if the nonmoving party would have the ultimate burden of persuasion at trial. In such a case, the nonmoving party may defeat the motion for summary judgment without producing anything.</u> If, however, a moving party carries its burden of production, the nonmoving party must produce evidence to support its claim or defense. If the nonmoving party fails to produce enough evidence to create a genuine issue of material fact, the moving party wins the motion for summary judgment.

*Id*. at 1102-03; *accord Guidry v. Marine Engineers' Beneficial Ass'n*, C 05-03960 CRB, 2007 WL 707511, at *6 (N.D. Cal. Mar. 6, 2007). (Emphasis added; citations omitted.)

The District has submitted no admissible evidence meeting its burden. It has relied exclusively on the opinions expressed by an administrative law commission, which are, themselves, not evidence, which do not cite to evidence, and which the District has not identified evidence cited by the commission. The District has not satisfied its initial burden of either producing evidence that negates an essential element of Plaintiff's claims which would entitle it to a directed verdict if the evidence went uncontroverted at trial or showing that Plaintiff does not have enough evidence of an essential element to carry his ultimate burden of persuasion at trial.

---

[2] Such evidence, were it to exist, might take the shape of an email to Kissner congratulating him on his campaign efforts to defeat Measure N and expressing no hard feelings.

Pl.'s Opp'n To Motion For Summ. J.                    Case No. 22-CV-00949-CRB

FREEDOM X
11500 OLYMPIC BLVD, SUITE 400
LOS ANGELES, CA 90064

Accordingly, Plaintiff has no obligation to produce anything and summary judgment must be denied.

**D.** **Even Though Plaintiff Has No Burden To Produce Evidence, Should The Court Feel Otherwise, Plaintiff Can Establish That The District Was More Likely Than Not Motivated To Terminate Him In Retaliation For His Protected Actions**

Plaintiff would prefer to rest on this argument, but cannot risk the chance that the Court might find the District's erroneous reference to administrative decisions sufficient to meet its burden. Nevertheless, "[t]he burden of establishing a prima facie case of disparate treatment is not onerous." *See Lyons v. England*, 307 F.3d 1092, 1112 (9th Cir. 2002). On summary judgment, the degree of proof necessary to establish a prima facie case "is minimal and does not even rise to the level of a preponderance of the evidence." *See Schechner v. KPIX–TV*, 686 F.3d 1018, 1025 (9th Cir. 2012).

A case of employment discrimination and retaliation may be built on direct or circumstantial evidence, or both. *Morgan v. Regents of U. of Cal.*, 88 Cal. App. 4th 52, 67 (2000). A "plaintiff may establish pretext either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence." *Id*. at 68 (cleaned up; citations omitted); *see also Zamora v. Security Industry Specialists, Inc.*, 71 Cal.App.5th 1, 34 (2021). "Proof that an employer's proffered reasons for adverse employment action are unworthy of credence may considerably assist a circumstantial case of discrimination, because it suggests the employer had cause to hide its true reasons." *Guz v. Bechtel Nat. Inc.*, 24 Cal.4th 317, 361 (2000). (Internal quotation marks omitted; citation omitted.) "For purposes of making a prima facie showing, the causal link element may be established by an inference derived from circumstantial evidence." *McRae v. Dept. of Corrections & Rehab.*, 142 Cal. App. 4th 377, 388 (2006). *Id*.

The U.S. Supreme Court has recognized that teachers must be free from retaliatory adverse employment actions by school boards when speaking as citizens on matters of public concern. *Pickering v. Board of Ed. of Tp. High School Dist. 205, Will County, Illinois*, 391 U.S. 563, 572 (1968). "Teachers are, as a class, the members of a community most likely to have informed and definite opinions as to how funds allotted to the operations of the schools should be spent. Accordingly, it is essential that they be able to speak out freely on such questions without fear of retaliatory dismissal." *Id*. at 571-572. Conforming to this principle, the rights of District employees

FREEDOM X
11500 OLYMPIC BLVD, SUITE 400
LOS ANGELES, CA 90064

14

are protected by the Loma Prieta Teacher's Association's Collective Bargaining Agreement. SAC, ¶ 52, *id.*, Exh. 1). Under this agreement, the District is prohibited from retaliating against a teacher over his protected speech. *Id.* at ¶ 53. California law also prohibits such retaliation in employment generally. *See* Cal. Lab. Code §§ 1101-1102. The District is not likely to admit that it was primarily motivated to terminate Kissner based on his protected actions. Thus, circumstantial evidence of pretext is required. Evidence of pretext in this case includes, but is not limited to, the following:

1. **Proximity To Protected Actions**: "A plaintiff can satisfy his or her initial burden under the [*McDonnell-Douglas*] test by producing evidence of nothing more than the employer's knowledge that the employee engaged in protected activities and the proximity in time between the protected action and the allegedly retaliatory employment decision." *Id.*

Kissner participated in the campaign to defeat Measure N and notified the Board that he sought a special election to fill a Board vacancy in December 2020 and January 2021. In February 2021, roughly one month after these activities and after the defeat of Measure N, the District notified him of its intent to dismiss him. Statutorily, the District could not have notified Kissner any later than March 2021 that it planned to lay him off. During the early months of 2021, and having lost the revenue anticipated from Measure N, the District set about to formulate its reduction in force needs. The revenue expected from the passage of Measure N was a critical factor in developing a budget for the prospective school year. Exh. 8 (18:5-13) (Fraser: "[O]ur budget advisory committee was guiding the Measure N parcel tax as a means of … revenue. And so when we … were budgeting, we were budgeting in two different scenarios: One would be if Measure N passed, and one would be if Measure N did not pass. Either way, we needed to make $100,000 budget cuts if Measure N were to pass, and approximately $400,000 in cuts were it to fail…. [B]oth of those factors played into the need for layoffs.")

The Defendants knew that Kissner engaged in protected activities at the end of 2020. The close proximity in time between Kissner's activities and the employment decisions raises a reasonable inference, and therefore, a triable issue of fact that the District's proffered reasons are unworthy of credence and therefore pretextual.

2. **The Unprecedented Simultaneous Dismissal And Layoff**: The District dismissed (for cause) and laid off (ostensibly for financial reasons) Kissner within a short few months of each other. This fact creates a reasonable inference, and therefore, a triable issue of fact, that the District's proffered reasons are unworthy of credence and therefore pretextual, because (1) Kissner

FREEDOM X
11500 OLYMPIC BLVD, SUITE 400
LOS ANGELES, CA 90064

was tenured and held a permanent position, (2) Kissner had been employed for nine years, a lengthy stretch of time to suddenly be found unfit to teach and incapable of teaching 6th-grade math and science, (3) it is indisputable that prior to Kissner, no employee had ever been terminated through both the dismissal and layoff processes; and (4) it is indisputably unprecedented that an employee is dismissed and laid off within the same year. Indeed, the likelihood of such an unprecedented disruption of a permanent teacher's employment through both approaches to terminate his employment cannot help but yield to a deep suspicion that his termination was more likely than not motivated by retaliatory and discriminatory animus.

3. **Amended Board Policy**: For the first time in 10 years (Exh. 27, 31:11-23 (District Opp. To Writ in Dismissal Case)), in early 2020 the District amended a Board policy addressing employee misconduct. Fraser proposed the new policy to the Board shortly after Kissner notified her of his intent to oppose the parcel tax measure she had recommended to the Board, Measure N. Using broad language that could not be expected to withstand constitutional scrutiny, the amended policy proscribes conduct in the kind of suspicious detail as to appear to be written to support unproven allegations against Kissner. Predictably, it became the sole policy basis for charges brought in 2021 against him, coincidentally just after the defeat of Measure N.

The language added to the amended board policy appears suspiciously tailored to apply to Kissner based on alleged misconduct—later proved to be unfounded—made around that time and which could trigger administrative action on the basis of Fraser's 2018 letter to Kissner warning that any "reports" of misconduct, whether or not substantiated, would have adverse employment consequences. The timing of Fraser's proposed amended Board policy raises a reasonable inference, and therefore, a triable issue of fact, as to whether Fraser sought to create a policy basis supporting Kissner's termination and whether the District's proffered reasons are unworthy of credence and therefore pretextual.

4. **Reliance On Stale Allegations Of Misconduct**: The District relied upon a five-year-old accusation (2016) of misconduct, a three-year-old anonymous letter (early 2018), and a two-and-a-half-year-old report (late 2018) prepared in reaction to Kissner's opposition to the 2018 walkout and grading decision as bases for dismissal charges brought against him in 2021 conspicuously just after his protected political activity. By basing dismissal charges on belated allegations that had not resulted in disciplinary or other adverse employment action in the past, a

reasonable inference, and therefore, a triable issue of fact, exists as to whether the 2021 allegations used to justify Kissner's dismissal served as a pretextual basis for his termination.

5. **Shifting Reasons For Layoff**: The District gave conflicting, contradictory, and implausible reasons for Kissner's layoff, abandoning claims based on budget savings or declining enrollment in favor of unclear claims of program benefits and potential future flexibility. Exh. 8 (23:21-24:18, 50:15-51:15, 120:18-122:4, 143:10-145:7).

**E.** **Whether Plaintiff Has Suffered A Stigma-Plus Defamation Injury That Violates Procedural Due Process Presents A Triable Issue Of Fact**

1. <u>Introduction</u>

The complaint alleges that the release of false allegations of grooming damaged Plaintiff's professional reputation and employment. The evidence in this case demonstrates that Plaintiff was deprived of property and liberty interests in employment and a liberty interest in his professional reputation in violation of 42 U.S.C. § 1983.

2. <u>Plaintiff has properly alleged substantive due process claims against the District Defendants due to their arbitrary and wrongful conduct</u>

The Due Process Clause was intended to secure an individual from an abuse of power by government officials. *See Daniels v. Williams*, 474 U.S. 327, 330 (1986). "The touchstone of due process is protection of the individual against arbitrary action of government." *Dent v. West Virginia*, 129 U.S. 114, 123 (1889). The U.S. Supreme Court has identified three kinds of § 1983 claims that may be brought against the State under the Due Process Clause of the Fourteenth Amendment. "First, the Clause incorporates many of the specific protections defined in the Bill of Rights. A plaintiff may bring suit under § 1983 for state officials' violation of his rights to, e.g., freedom of speech or freedom from unreasonable searches and seizures." *Zinermon v. Burch*, 494 U.S. 113, 125 (1990). This is the category of due process claims the District correctly argues finds in Plaintiff's First Amendment claim "an explicit textual source of constitutional protection." Motion, 7:11-16, citing *Albright v. Oliver*, 510 U.S. 266, 273 (1994). But there is an additional substantive due process category Plaintiff has sufficiently alleged.

"Second, the Due Process Clause contains a substantive component that bars certain arbitrary, wrongful government actions "regardless of the fairness of the procedures used to implement them." *Zinermon v. Burch*, 494 U.S. at 125, citing *Daniels v. Williams*, 474 U.S. at 331 ("[B]y barring certain government actions regardless of the fairness of the procedures used to implement them, [citation] it serves to prevent governmental power from being 'used for purposes

of oppression.' ''). This provides a basis for alleging a due process violation separate from and <u>in addition to</u> a due process violation where an explicit source of constitutional protection is found in a more specific amendment.

Regardless of the fairness of the procedures the District may have used to comply with the California Public Records Act, Defendants Fraser and Grier <u>arbitrarily and wrongfully</u> (1) included the unsubstantiated, unfounded grooming allegations in the Statement of Charges, (2) refused to withdraw the unsubstantiated, unfounded grooming allegations after Plaintiff demanded it to do so, and (3) released the unsubstantiated, unfounded grooming allegations to the public. These arbitrary and wrongful acts and omissions constitute a permissible due process claim.

> 3. <u>Plaintiff has properly alleged facts demonstrating the District's violation of procedural due process</u>

The third type of protection encompassed under the Due Process Clause is "a guarantee of fair procedure." *Id.* The court assesses procedural due process claims under § 1983 by searching whether the State deprived the plaintiff of a constitutional liberty interest, and if so, whether the deprivation's attendant procedures were constitutionally insufficient." *Endy v. County of Los Angeles*, 975 F.3d 757, 764 (9th Cir. 2020). "Due process … is a flexible concept that varies with the particular situation." *Zinermon v. Burch*, *supra*, 494 U.S. at 127. The court weighs several factors in determining what procedural protections the Constitution requires in a particular case: (1) the private interest that will be affected by the official action; (2) the risk of an erroneous deprivation of such interest through the procedures used, (3) the probable value, if any, of additional or substitute procedural safeguards; and (4) the government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail. *Id.*, citing *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976). "Applying this test, the Court usually has held that the Constitution requires some kind of a hearing before the State deprives a person of liberty or property." *Id.*

The first two factors—Plaintiff's employment and his deprivation of it—are well established. As to the third factor, unutilized procedural safeguards were both available to the District and known to them. The most practical safeguard would have been to comply with Plaintiff's demand to withdraw the unfounded charges until such time as evidence could substantiate them and, if found, amend the charges at a later time. Prior to the publication of the PRA responses, Kissner's attorney demanded that the Defendants withdraw the defamatory allegations or face legal consequences ("Should these accusations remain in these proceedings or

FREEDOM X
11500 OLYMPIC BLVD, SUITE 400
LOS ANGELES, CA 90064

otherwise find their way toward republication, we will not hesitate to hold the District and each person involved accountable."). The District failed to respond to the demand. Plaintiff could not have known that public records requests seeking the statement of charges against him in his dismissal proceedings would be made or that the District would release the false information. Without the knowledge of the records request, Plaintiff would not have known to file a reverse PRA lawsuit to enjoin its release. And once the allegations were made public, a reverse PRA lawsuit would have been futile. In short, no procedural safeguards protected Plaintiff from the release of the allegations to the public.

Additionally, the District understood and recognized the danger of unleashing unfounded allegations on the public and recognized a duty to grant Plaintiff an opportunity to challenge their publication. *See* Exhs. 6 & 7 (Cover Letters to PRA Recipients). The District inconsistently told the PRA requesting parties that it had determined their requests, "as written and submitted," did not meet the requirement for a proper PRA request because they failed to identify records with reasonable particularity, yet produced the records anyway. *Id*.

The District further advised that the requests would require potentially exempt information to be disclosed, including (1) information that would not serve the public interest, (2) information that implicates a person's liberty interest, (3) where there is pending litigation, (4) where the records sought are in the form of preliminary drafts, and (5) where the records are protected by the deliberative process privilege. *Id*. Any one of these rationales would have justified the District's refusal to disclose the unfounded grooming allegations.

In addition, the grooming allegations were not "well-founded" and the District had no reasonable cause to believe they were. *Id*., citing *Bakersfield City School Dist. v. Superior Court*, 118 Cal.App.4th 1041, 1044 (2004); *ERV, Inc. v. Superior Ct.*, 143 Cal.App.4th 742 (2006) ("[R]ecords of complaints or investigations against a public employee can be disclosed only if "the complaint is of a substantial nature and there is reasonable cause to believe the complaint or charge of misconduct is well founded."). And in such a case, the District understood that its "decision to release confidential documents under the PRA is reviewable by petition for writ of mandate in a 'reverse-PRA' lawsuit." *Id*., citing *Marken v. Santa Monica-Malibu Unified School Dist.* (2012) 202 Cal.App.4th 250.

Significantly, no post-deprivation remedy—such as a reverse-PRA lawsuit brought <u>after</u> publication or adjudication of the allegations in dismissal proceedings—would have protected

FREEDOM X
11500 OLYMPIC BLVD, SUITE 400
LOS ANGELES, CA 90064

Plaintiff's liberty and property interest. *See Zinermon v. Burch*, *supra*, 494 U.S. at 127 (citing cases) ("Applying this test, the Court usually has held that the Constitution requires some kind of a hearing before the State deprives a person of liberty or property."); *id*., quoting *Cleveland Board of Education v. Loudermill,* 470 U.S. 532, 542 (1985). "The root requirement of the Due Process Clause is that an individual <u>be given an opportunity for a hearing</u> before he is deprived of any significant protected interest." (emphasis added; cleaned up).)

Addressing the fourth factor, no administrative burden or hardship would have befallen the District by implementing these safeguards. Indeed, the District was practiced in withholding responses to PRA requests entirely. Exh. 24 (Kissner PRA Requests and Denials). Under the circumstances, the District did not make available a tort remedy that could have adequately redressed the loss to Plaintiff's reputation and given him the process he was due. The District cannot escape § 1983 liability by characterizing its conduct as reasonable when it deprived Plaintiff of pre-deprivation remedies demanded of it and known to it. The deprivation of Plaintiff's liberty was predictable because it was obvious that publication of unfounded allegations of child grooming was likely to seriously damage Plaintiff's standing and associations in the community and employment prospects as a teacher.

### 4. Stigma-plus defamation implicates Plaintiff's liberty interest

"A liberty interest may be implicated 'where a person's good name, reputation, honor, or integrity is at stake because of what the government is doing to him.' " *Id.*, quoting *Wisconsin v. Constantineau*, 400 U.S. 433, 437 (1971) ("Where a person's good name, reputation, honor, or integrity is at stake because of what the government is doing to him, <u>notice and an opportunity to be heard are essential.</u>" (Emphasis added.).) "However, 'procedural due process protections apply to reputational harm only when a plaintiff suffers stigma from governmental action plus alteration or extinguishment of 'a right or status previously recognized by state law.' " *id.* citing *Humphries v. County of Los Angeles*, 554 F.3d 1170, 1185 (9th Cir. 2008), as amended (Jan. 30, 2009), rev'd and remanded sub nom. *Los Angeles County, Cal. v. Humphries*, 562 U.S. 29 (2010) (*Humphries*) (quoting *Paul*, 424 U.S. at 711). "We have described this standard as the 'stigma-plus test.' " *Id.*; *see also Hart v. Parks*, 450 F.3d 1059, 1070 (9th Cir. 2006).

The stigma-plus test is used to determine whether state action violates an individual's procedural due process rights. *Paul v. Davis*, 424 U.S. 693, 710, n. 5 (1976). To state a procedural due process claim, a plaintiff must allege (1) a liberty or property interest protected by the

FREEDOM X
11500 OLYMPIC BLVD, SUITE 400
LOS ANGELES, CA 90064

Constitution; (2) a deprivation of the interest by the government; [and] (3) lack of process. *Fikre v. Fed. Bureau of Investigation*, 35 F.4th 762, 776 (9th Cir. 2022). Under this test, "a plaintiff who has suffered reputational harm at the hands of the government may assert a cognizable liberty interest for procedural due process purposes if the plaintiff "suffers stigma from governmental action plus alteration or extinguishment of a right or status previously recognized by state law." *Id.* (Cleaned up; citations omitted.)

"[An] injury to reputation standing alone does not violate the Due Process Clause of the Fourteenth Amendment." *Wenger v. Monroe*, 282 F.3d 1068, 1074 (9th Cir. 2002), as amended on denial of reh'g and reh'g en banc (Apr. 17, 2002), citing *Paul v. Davis*, 424 U.S. at 712; *see also Siegert v. Gilley*, 500 U.S. 226, 234 (1991; *Peloza v. Capistrano Unif. Sch. Dist.*, 37 F.3d 517, 523 (9th Cir.1994). "Rather, due process protections apply only if a plaintiff is subjected to 'stigma plus'; i.e., if the state makes a charge against a plaintiff that might seriously damage his standing and associations in the community, and 1) the accuracy of the charge is contested, 2) there is some public disclosure of the charge, and 3) it is made in connection with the termination of employment or the alteration of some right or status recognized by state law." *Wenger* at 1074, citing *Llamas v. Butte Community College Dist.*, 238 F.3d 1123, 1129 (9th Cir.2001) (cleaned up). Under the *Wegner* test, the District's allegations of grooming against Plaintiff posed serious damage to his standing and associations in the community. He contested the accuracy of the allegations and demanded they be withdrawn. And the allegations were disclosed to the public in connection with the termination of Kissner's employment.

*Humphries* is particularly apposite to the facts of the present case. There, parents who had been arrested on charges of child abuse and felony torture, but subsequently found "factually innocent" after charges were dismissed, brought a § 1983 action against state and county defendants alleging that their continued listing in California's Child Abuse Central Index (CACI), pursuant to the Child Abuse and Neglect Reporting Act (CANRA), violated due process. Although two California courts had found that the Humphries were "factually innocent" and the charges "not true," they were nevertheless classified as "substantiated" child abusers and placed on the CACI index. *Id*. at 1175.

On the "stigma" side of the "stigma-plus" requirement for determining a Due Process violation, the court had no difficulty finding that being labeled a child abuser is "unquestionably stigmatizing." *Id*. at 1186. Indeed:

FREEDOM X
11500 OLYMPIC BLVD, SUITE 400
LOS ANGELES, CA 90064

> We have observed that there is "[n]o doubt ... that being falsely named as a suspected child abuser on an official government index is defamatory." *Miller v. California*, 355 F.3d 1172, 1178 (9th Cir.2004); *see also Valmonte v. Bane*, 18 F.3d 992, 1000 (2d Cir.1994) (finding it beyond dispute that inclusion on a child abuse registry damages reputation by "branding" an individual as a child abuser). <u>Indeed, "no conduct so unequivocally violates American ethics as ... sexual predation upon the most vulnerable members of our society."</u> *Nicanor–Romero v. Mukasey*, 523 F.3d 992, 999 (9th Cir.2008) (citation omitted).

*Id*. (Emphasis added.) *see also Endy v. County of Los Angeles*, 975 F.3d at 764 ("An accusation of child sexual abuse, in particular, is far more damning to a person's reputation in our society than perhaps any other kind of accusation."); *Miller v. California*, 355 F.3d 1172, 1178 (9th Cir. 2004) ("No doubt the Millers raised a triable issue of fact that being falsely named as a suspected child abuser on an official government index is defamatory.") And, "[t]he Court has identified stigma on the basis of lesser accusations." *Humphries*, 554 F.3d at 1186 (citing cases).

In determining whether the Humphries had satisfied the "plus" criterion of the "stigma-plus" test for determining whether reputational harm qualifies as a liberty interest protected under the Due Process Clause, the court noted certain compelling factors that imposed a tangible burden on the Humphries' ability to obtain rights or status recognized by state law. *Id.* at 1187-88. For one, California offered no procedure to remove the Humphries' listing as suspected child abusers from the database, and thus no opportunity to clear their names. *Id*. at 1175-76. Additionally, it made the database available to a broad array of government agencies, employers, and law enforcement entities. *Id*. Finally, one parent was adversely affected in her ability to renew her teaching credentials. *Id*.

Kissner easily meets the "plus" standard under these factors. To start, analogous to the CACI database, the information contained in a PRA response is accessible to everyone, including potential employers. Second, the District contends that it had no procedure for removing the defamatory allegations from the Statement of Charges. That, of course, is a smokescreen. It could have redacted or withdrawn them in response to Plaintiff's demand. But it is caught in a nest of contradiction it can't escape from. If it commits to this rationale, it will have trouble explaining why its letter citing relevant law permitting it to withhold unfounded allegations misrepresented the truth. If it admits it could have redacted or withheld the allegations, it confesses to wrongdoing. Additionally, the District could have notified Plaintiff that it was planning to publish the allegations and given him an opportunity to challenge it prior to their publication in a reverse-PRA

lawsuit.[3] And, finally, the allegations have predictably and adversely affected his employment desirability.

Defendant Fraser testified contradictorily that she had no choice but to respond to the PRA request. The District has asserted this rationale elsewhere relating to both Fraser's and Grier's publications. Exh. 25 (District's Anti-SLAPP Motion) ("During the pendency of the termination proceedings …, the District received two separate public records requests, in which members of the public requested copies of the statements of charges against plaintiff. Because both the original and amended statements of charges constituted public records, as defined by the Public Records Act, the District had an affirmative statutory obligation to "make the records promptly available" upon request. (Gov. Code, § 6253, subd. (b).) Accordingly, the Superintendent's office disclosed the original and amended statements of charges, in response to the respective PRA requests.") Thus, even while citing law in its responses to PRA requests acknowledging circumstances in which disclosure is not required, the District inconsistently contends that, at least in Plaintiff's case, it had no choice but to divulge the unfounded defamatory allegations to the public, making them available to everyone.

Kissner has raised a triable issue as to whether the PRA release and failure to withdraw the stigmatizing grooming charges deprived him of a constitutional liberty interest and therefore violated his procedural Due Process rights.

### F.    Grier and Khandelwal Do Not Have Absolute Immunity

The District erroneously contends that Defendants Grier and Khandelwal enjoy absolute immunity because they had no hand in terminating Kissner. Grier was employed at the time he released the response to the PRA request on July 6, 2021, and his signature is affixed to the letter accompanying the released records. As successor to Fraser and as the administrator responsible for implementing the layoff process, Grier failed to reappoint Kissner as required by law. Cal. Educ. Code Ann. § 44956, subd. (a) provides that the District had a duty to reappoint Kissner to his teaching position:

> For the period of 39 months from the date of the termination, any employee who in the meantime has not attained the age of 65 years shall have the preferred right to reappointment, in the order of original employment as determined by the board in

---

[3] Anticipating the District's reply argument, it is irrelevant whether the law requires it not. *See Mathews v. Eldridge, supra*, 424 U.S. at 335 ("the Constitution requires some kind of a hearing before the State deprives a person of liberty or property.").

FREEDOM
11500 OLYMPIC BLVD, SUITE 400
LOS ANGELES, CA 90064

FREEDOM X
11500 OLYMPIC BLVD, SUITE 400
LOS ANGELES, CA 90064

accordance with Sections 44831 to 44855, inclusive, if the number of employees is increased or the discontinued service is reestablished, with no requirements that were not imposed upon other employees who continued in service; provided, that no probationary or other employee with less seniority shall be employed to render a service that the employee is certificated and competent to render.

Kissner had been teaching 6th-grade math and science for nine years and was competent and credentialed to continue teaching it. Grier was responsible for Kissner's reappointment when the District acquired unexpected funding and rescinded its budget and staff cuts for the 2021-2022 school year. Additionally, the 6th-grade math and science position remained the same and was neither reduced nor eliminated. For the 2021-2022 school year, Kissner was replaced by a teacher who lacked experience, specialized training, and prior experience teaching 6th-grade math or science. In the 2022-2023 school year, Grier replaced Kissner with two teachers. That teacher was issued an emergency substitute teaching permit and an intern credential within days prior to being hired and was clearly not more senior or more qualified than Kissner, and yet Grier still failed to reappoint Kissner. To this date, not more than 39 months has elapsed since Kissner's layoff, and Grier has the statutory obligation to reappoint Kissner, remove his layoff status, and provide him with backpay for the time of his rightful employment up until the date of his dismissal on December 7, 2021.

It is indisputable that Defendant Khandelwal, similar to Grier, has approved multiple personnel reports since Kissner's layoff, and has failed to reappoint Kissner to his rightful position. Additionally, Khandelwal was a member of the Board who voted to dismiss Kissner. Exh. 26 (Email to Dddtt's Counsel). Accordingly, there are triable issues regarding Grier's and Khandelwal's roles involving Kissner's layoff. Additionally, the District has not addressed whether Grier and Khandelwal are liable for Kissner's dismissal. Therefore, a triable issue exists regarding their role in Kissner's dismissal in addition to their role in his layoff.

### G. Whether Martin and Fraser Are Liable For Kissner's Layoff And Dismissal Presents A Triable Issue

The District argues that Martin and Fraser cannot be liable for the layoff decision because they were not Board members ("Because neither Martin nor Fraser had the power to adopt the layoff resolutions or the authority to rescind the resolutions following adoption by the Board, they cannot be liable for any constitutional claim arising from the Board's layoff decision."). Motion, 21:6-8. But the evidence shows that (1) the only board resolution purportedly relevant to Kissner's layoff (21-XIV) reducing four unspecified full-time positions was demonstrably unrelated to

Kissner's position, which was not considered for reduction, could not be reduced, and had no connection to reduced staffing, and (2) that Fraser and Martin were in fact the architects of Kissner's layoff ("Q: So in your capacity as a district superintendent, were you the person who was primarily responsible for the layoff procedures and process? A: (Fraser) Yeah. My job would be to make sure that we follow process with the assistance of clerical assistance, but, yes, that would be my responsibility."). Exh. 8 (16:7-13). Martin affirmed his role in the layoff process when he testified that Kissner was qualified and able to continue to teach in the 6th-grade core math and science block, but having Kissner in that role wouldn't fit <u>his</u> "core vision" of the 6th-grade model. Exh. 9 (53:5-8). Clearly, a triable issue exists as to Fraser's and Martin's responsibility for the decision to lay off Kissner.

Additionally, the District has failed to address whether Martin and Fraser are liable for Kissner's dismissal. Therefore, a triable issue exists regarding their role in Kissner's dismissal in addition to their role in his layoff.

## IV.    STATEMENT OF NON-OPPOSITION

Pursuant to L.R. 7-3(b), Plaintiff does not oppose Defendants' motion as to the Seventeenth Cause of Action for Violation of the Fourteenth Amendment Equal Protection Clause and the Eighteenth Cause of Action for Civil Rights Conspiracy.

Additionally, Plaintiff does not oppose dismissal of Defendants former Principal Billy Martin or Board members Deana Arnold, Ben Abeln, Ron Bourque, Charlotte Khandelwal, or Erin Asheghian as to Plaintiff's Third Cause of Action for Civil Rights Defamation <u>only</u>.

## V.    CONCLUSION

For the foregoing reasons, Defendants have failed to show, as a matter of law, that they are entitled to summary judgment on Plaintiff's claims or that there are no triable issues. Accordingly, the Court is respectfully asked to deny their motion with the exception of those items stated in Plaintiff's Statement of Non-Opposition.

Date: July 7, 2023

Respectfully submitted,

FREEDOM X

By:    <u>/s/ *William J. Becker, Jr.*</u>
William J. Becker, Jr.

FREEDOM X
11500 OLYMPIC BLVD, SUITE 400
LOS ANGELES, CA 90064