28 October, 2018

From: David Kissner, Teacher, CT English Middle School
To: Lisa Fraser, Superintendent, Loma Prieta Joint Union School District
CC: Board of Trustees, Loma Prieta Joint Union School District

Subject: RESPONSE TO LETTER DATED 18 OCTOBER, 2018

Encl: (1) Detailed response to letter, by paragraph

1. The following is submitted as a response to the letter which is to be placed in my file, dated 18 October, 2018, and as discussed with Lisa Fraser and Deana Arnold on October 3, and during a follow up conversation with Lisa on October 23rd.

2. The contents of this disciplinary letter are the result of a personal character attack perpetrated by anonymous cowards who sought retribution for my stance in the March 14th, 2018 walkout. I am surprised that the district would like to go on record here that it is giving credence to an anonymous letter full of false and unsubstantiated accusations. Does the timing of such allegations, the unprincipled broadening of the district's investigation, and now this disciplinary letter not show evidence of retaliation for my position during the school-sponsored political walkout?

   This investigation was conducted without any regard to the stated scope (the walkout and the anonymous letter), and pursued lines of questioning that were completely irrelevant to the matters at hand. These issues included my classroom bathroom procedures, personal stories I have shared in class for years, and math and science problems I have used for years. In addition, the school district investigated recreational activities I conduct with youth and families outside of school, my faith and science-based beliefs about the origins of life, my Marine Corps career, and other completely irrelevant subjects.

   This free-wheeling investigation of every aspect of my personal life and how I perform my professional responsibilities is the very definition of a witch-hunt – a campaign against a person holding unpopular views. It is both unethical and illegal to retaliate against an employee in this way.

   It is telling that an investigation of this breadth failed to discover any noteworthy evidence of wrong-doing. As such, this letter makes note of a number of "significant concerns" which lack specific detail and describe situations that are completely innocuous, while implying that something nefarious is going on. It is disingenuous, and betrays an effort to lay the groundwork for future disciplinary action, seeing as none is possible from the walkout controversy.

3. I am saddened by the fact that the district leadership has apparently joined in the same nasty, personal, divisive political fray that consumes our nation in this era. A different view in a political discourse does not merit an invasive assault on a person's character and life. To use baseless accusations leveled by anonymous cowards in the heat of a political conflict as a pretense for a limitless investigation into a person's life and work is shameful. To then take the empty results of said investigation and craft a disciplinary letter that insinuates that there is some merit to the accusations is all the more shameful. To direct these attacks against someone who has proven over years to be a tireless servant of kids and families in the community is reprehensible.

*David Kissner*
David Kissner
Teacher, CT English Middle School

Enclosure (1): Detailed response to letter, by paragraph

1. Paragraph 1. *"It was determined that you knowingly, and admittedly, provided alcohol to a minor during a non-school sponsored camping trip."* This is true. It is worth noting that this took place some years ago, and that when brought up at the time, I acknowledged it openly and honestly and it was dealt with appropriately. The matter was considered closed by all parties at the time. It is also worth noting that the incident involved a single sip of an alcoholic beverage as a toast after a significant outdoor achievement, with a high school aged person. It is also worth noting that these allegations were brought forward anonymously, over two years after the fact, in the immediate aftermath of a huge political conflict on campus and in our community where I was a central figure. It is further worth noting that the offense in question is the legal equivalent of a traffic ticket – at most - but that law enforcement agencies would generally decline to pursue such a minor issue.

    While I acknowledge that my decision years ago to share a toast with a teenager was poorly considered, I must point out that this most certainly does not make me a villain or a threat to children. Emphatically, it does not make me a sexual predator as is implied elsewhere in this letter.

2. Paragraph 2. *"Maintaining professional boundaries."* As is well known, I wear many hats in the community. I am not simply a teacher and coach for some students. I am active in the church and in youth ministry. I lead outdoor adventures for kids and families all the time. My family vacations with other families in the community who have or have had students in my class or at school. We go to each other's homes for meals. We worship and recreate together. There are appropriate boundaries and relationships in all of these contexts, which – while certainly outside of the norm for a simple classroom teacher – can be tough to define. Nonetheless, I can say with confidence that I work within these appropriate boundaries in these contexts.

    This letter does not cite any specific conversation or instance of supposed failure to maintain appropriate boundaries, and so it is difficult to defend myself or to know exactly what is being referred to. However, the letter states that *"Contacting students via private text message late in the evening is ill-advised."* I am not in the habit of contacting students via text message. If the student is someone where I have a relationship established outside of school, it is possible that we would communicate via text message. If I were to be contacted in the late evening by a young person with a need, I may engage in conversation, depending on the context. I go out of my way to be a trusted adult that can be contacted in times of need, and aim to continue to do so. That is part of ministry. There is nothing wrong with this, and I intend to continue to be an ally for young people or their parents when they are struggling.

    *"While it is true that sharing personal stories can help establish connections with students, the content must be age-appropriate and must not cause any student to feel uncomfortable."* I have shared the same set of stories, generally in the same order, every year that I have been employed by the district. My stories have been much shared by students to their families and siblings and have been the subject of overwhelming positive feedback. Yes, they help to establish connections with students. Yes, that connection results in greater engagement with the content and with school in general. My stories are age-appropriate and educational in themselves and I do not believe that they make any student feel overly uncomfortable. It is worth noting here again that this complaint comes from anonymous detractors in the immediate aftermath of a huge political conflict on campus and in our community where I was a central figure. It is further worth noting that the directive *"must not make any student feel uncomfortable"* is incredibly subjective and cannot be measured on any scale. It is also a sad reflection of our educational system, where educational leaders apparently want to avoid any topics that might make a student "uncomfortable." Topics in literature, history, pop-culture, science, government, current events, and politics cannot be touched without making some students uncomfortable. I cannot imagine that

A35

OFFICE OF ADMINISTRATIVE HEARINGS CLERK'S RECORD FOR OAH CASE NO. 2021050291
05/02/2023
Page 3939 of 6434
Marked for ID D1

A36

educators, passionate about a rich, meaningful, and relevant education for their students, would ever insist that students be always "comfortable."

*"Word Problems."* I often write word problems for math and science classes that are uniquely edgy. They are not graphic. I have used many of the same problems for seven years. They are posted on my website publicly every day. They go home to parents on the tests and homework assignments. Board member's kids have been in my classes and taken the same assignments home. They are talked about often and have been mentioned in valedictorian addresses at graduation. They have also been the subject of much positive feedback from parents, who have commented about how their kids (and they) love the problems and that they engage with the math in a deeper and more enthusiastic way. I have never received a complaint. It is worth noting here again that this complaint comes from anonymous detractors in the immediate aftermath of a huge political conflict on campus and in our community where I was a central figure. Here again, there is no specific word problem described in this letter, and the broad suggestions could be interpreted very subjectively, making them of little value. I intend to use the same word problems that I have used for years now – quite openly – in my classes.

*"Inappropriate Humor."* The letter references a single instance in which a student asked to use the restroom and I offered him a small binder clip. There were no words – just subtle innuendo. It is worth noting that this student is someone who I have an extensive relationship with outside of class and was not intended – nor taken – personally. It is also worth noting that this student did not complain, but that the complaint was brought anonymously by non-involved detractors in the immediate aftermath of a huge political conflict on campus and in our community where I was a central figure. This one event most certainly does not establish a pattern of humor. Further, this subtle joke does not make me a villain, nor does it make me a sexual predator as is implied elsewhere in this letter. I would absolutely use this line again in a different context (not in the classroom) with any number of people, young or old. It is not a remarkable or particularly offensive joke.

*"The use of sarcasm with middle school aged students can have significant negative repercussions and is therefore ill-advised."* I am unclear in this letter if this comment is directly connected to the joke referenced above, or is general corrective guidance. Since sarcasm is generally defined as being a "sharp, bitter, or cutting expression or remark," and is "largely context dependent," I would say that the above humor was not sarcastic and that I am not sarcastic. I would not engage with a student in a sharp or bitter way. Perhaps ironic or witty would be a better way to describe my humor. Because there are no specific examples here of my inappropriate use of sarcasm, and since sarcasm is hard to define, this note is of limited value.

*"Grooming Behavior."* This is the most offensive paragraph in this letter. First of all, I find it to be insulting, cowardly, and dishonorable to verbally state that *the district* is not accusing me of anything, but to then refer in this letter to completely unsubstantiated "parental concerns" that accuse me of such. Any allegations of the sort are false and slanderous, and should not be mentioned or alluded to in this letter. If there is evidence to this point, it needs to be included here. Instead of evidence, this letter takes great pains to take completely innocuous behavior and throw a shadow of doubt on them.

I have never asked a youth about sex and/or sexual encounters. There have been many times when a young person has broached the subject with me, and I am happy to engage with them on that topic. I am in youth ministry - it comes up. It is worth noting that the curriculum that our own district uses to teach sex education encourages students to find a trusted adult – which explicitly might include a teacher – to discuss these difficult topics with. I have been that trusted adult for many, and I aim to continue to be just that. There is nothing here, and it should not be used in a paragraph about "grooming behavior" to "substantiate" that concern.

The comment referencing that I post images of youth on our ministry website is laughable and ridiculous, and has no place here. I have taken many hundreds of young people and families on trips all over the western US over the last 11 years. Multiple kids and parents take pictures and video. I compile and edit them into videos that commemorate the trips and are the central event for celebratory gatherings for families after trips and are available on youtube for the participants. There could not be anything more innocent about it. The fact that teenage boys are in the videos swimming without shirts on is the most normal thing you would expect from a video about a camping trip at lakes and hot springs. It is worth noting that our middle school makes twice annual trips to the beach, where almost all the middle school boys run around with their shirts off and the year book team takes pictures which are included in our year book. It is absurd to make an issue of this. The original version of this letter also mentioned that there was video of me "bracing" children who were shooting firearms, as potential evidence of "grooming behavior." This is equally absurd, as it is a common-sense safety issue to physically brace a young, new shooter handling a lethal weapon. This example, while removed from the current version of the letter after my objections, shows the lengths that are being gone through to paint a misleading picture of ill-intent.

The original letter says that *"While these examples have not risen to the level of criminal activity, they certainly have the potential of becoming problematic should these behaviors continue."* This is outrageous. Of course they have not risen to the level of criminal activity. They haven't risen to anything. But by framing this statement this way, it implies that somehow these examples are on a spectrum on the way toward criminal or unethical behavior. They are not. There will be other camping trips. I fully intend to create videos for the participants and their families. There will be water and swimming and there will be boys with shirts off. I fully intend to continue to introduce young people to firearms safety and marksmanship, as I have been trained professionally to do. I will absolutely brace them from behind when they shoot for the first time, because it is the safe and right thing to do. And there will be video – because there is nothing to hide. I absolutely intend to continue to be a safe, trusted adult that young people can talk with about any challenging topic, including sex. I make no apologies for it, and point to the district's own curriculum that advocates for it.

It is completely inappropriate for this letter to reference, in any way, completely unsubstantiated allegations of "grooming behavior." It also begs the question: If the district is concerned that I may be a threat to children and potentially engaging in "grooming behavior," why did the district bring me back to the classroom in May, with an investigation into said allegations still outstanding? Why does the district currently have me in the classroom? More to the point, why does the district have me employed as the wrestling coach, if they are concerned about me being a safety threat to kids? Coaching wrestling is physical, it involves physical contact with kids, and sometimes, I am the only adult in the gym. It would be reckless and grossly negligent for the district to have a person in that position where they have documented concerns of potential "grooming behavior." Just having that coach in place would be a lawsuit waiting to happen.

I cannot believe that anyone in a leadership role at this school district would allow me to continue in that role if there were real concerns that I was grooming children for inappropriate relationships. So then, why is this a subject of this disciplinary letter? It is a character smear and a set-up for future disciplinary action and should be removed in its entirety.

A37