```
 1       BEFORE A COMMISSION ON PROFESSIONAL COMPETENCE
 2          LOMA PRIETA JOINT UNION SCHOOL DISTRICT
 3         COUNTY OF SANTA CLARA - STATE OF CALIFORNIA
 4   _____
 5   In the Matter of:
 6
 7   David Kissner,                              Case No.
 8   A permanent certificated employee,         2021050291
 9           Respondent.
10   _____
11              VIDEOCONFERENCE DEPOSITION OF
12                    PATRICIA ELLIOT
13   DATE:           Wednesday, August 11, 2021
14   TIME:           9:02 a.m.
15   LOCATION:       Remote Proceeding
16                   Los Angeles, CA 90017
17   REPORTED BY:    Nicole Beaudoin, Notary Public
18   JOB No.:        4731126
19
20
21
22
23
24
25
                                              Page 1
```

```
 1    information, and so the investigation confirmed that, on
 2    at least one occasion, Mr. Kissner was alone with a, I
 3    believe, at the time, 15-year-old boy and supplied him
 4    alcohol.
 5              There were reports -- and then, there was a
 6    second boy who claimed that Mr. Kissner also provided
 7    him alcohol when the two were alone on a camping trip.
 8    The first one, Mr. Kissner acknowledged -- admitted to.
 9    The second one, he denies.  In the second case, the boy
10    took, as I was told by the -- the boy's father, he took
11    a lie detector test and passed it.  Mr. Kissner refused
12    to take a lie detector test on that issue.
13              The factual conclusions of that whole -- whole
14    issue, I would have to look at, double-check, to see how
15    that all was described, but so in terms of answering
16    your question, could providing alcohol to young boys be
17    considered grooming?  It -- it could by that
18    definition -- lowering inhibitions, et cetera.
19    Presumably, alcohol, especially with a young child,
20    would do that.
21         Q    Well, you didn?t hear the definition
22    accurately.
23         A    The definition of grooming that you just read
24    me?
25         Q    Yes, because it doesn't say lowering the
```

<mark>Page 154</mark>

```
 1   child's inhibitions.  It says lowering the child's
 2   inhibitions with the objective of sexual abuse.  Did you
 3   find evidence that Mr. Kissner engaged in conduct to
 4   lower the child's inhibitions with the objective of
 5   sexual abuse?
 6       A    I did not find -- with, again, the caveat that
 7   I -- I didn't feel I had all of the information that was
 8   available, I did not find evidence of sexual abuse.
 9       Q    When you don't have evidence of sexual abuse,
10   you don't have evidence of sexual abuse.  Right?
11       A    That's correct.
12       Q    Okay.  So you didn't find evidence of sexual
13   abuse.  That's a simple answer.  Right?
14       A    It's the simple answer if I feel like -- if --
15   if I was able to say I had access to all the relevant
16   information.  I am not able to say that.
17       Q    Right.  You can't --
18       A    Insufficient -- it's an insufficient evidence
19   finding as opposed to a not confirmed.
20       Q    When you reach an acquittal, it's an
21   acquittal.  When you reach a verdict of guilt, it's
22   guilt.  There's no questioning what evidence didn't come
23   into the case.  Bob Mueller may be able to get away with
24   that explanation --
25                MR. BOCK:  I'm going to object.  You're
```

```
 1  want to make sure that the witness understands the
 2  question now, which I believe she does.
 3  BY MR. BECKER:
 4      Q   And that is that, by the definition that I
 5  gave you, did you come to a conclusion using that
 6  definition whether Mr. Kissner was guilty of child
 7  grooming or, I should put it to you this way, that there
 8  was relevant evidence of child grooming?
 9      A   I did not specifically address the issue of
10  grooming either in your definition or elsewhere.  I
11  gathered information, and I found facts relevant to
12  activities that Mr. Kissner engaged in, and those
13  include that he provided alcohol to --
14      Q   Ma'am, I'm interrupting you, please.
15          MR. BECKER:  I'll move to strike the
16  answer.
17  BY MR. BECKER:
18      Q   Did you conclude that there were relevant
19  factual findings, under the definition of child grooming
20  that I gave you, that Mr. Kissner engaged in conduct
21  that attempted to lower the child's inhibitions with the
22  objective of sexual abuse?
23          MR. BOCK:  Once again, that's
24  argumentative.
25          THE WITNESS:  I did not make a specific
```

| | |
|---|---|
| 1 | finding on grooming. |
| 2 | BY MR. BECKER: |
| 3 | Q   So the answer is no? |
| 4 | A   I did not make a specific finding on grooming. |
| 5 | Q   Is that yes or no? |
| 6 | MR. BOCK:  Asked and answered. |
| 7 | BY MR. BECKER: |
| 8 | Q   You don't know? |
| 9 | A   I did not make a specific finding on grooming. |
| 10 | That's what I understand you were asking me about. |
| 11 | That's my answer. |
| 12 | Q   I asked you a yes or no question, and I'd like |
| 13 | the record to reflect yes or no. |
| 14 | MR. BOCK:  Now, you're being harassing. |
| 15 | THE WITNESS:  The answer is: I did not |
| 16 | make a specific finding on grooming, no. |
| 17 | BY MR. BECKER: |
| 18 | Q   Thank you.  Now, you have a different |
| 19 | understanding of the term grooming.  Isn't that correct? |
| 20 | A   Different from whom? |
| 21 | Q   The Wikipedia definition. |
| 22 | A   I -- I'm not -- I wasn't aware of the |
| 23 | Wikipedia definition.  I was and am generally aware of |
| 24 | the term grooming as it relates to abuse of another |
| 25 | person. |

1   Q   Okay. And did you look into when those
2   wrestling incidents occurred in the classroom and what
3   the context or circumstances were?
4   A   Other than receiving the report, no.
5   Q   And you got that information from one of the
6   walkout students. Isn't that right?
7   A   I don't recall.
8   Q   Did you confirm -- or I should say, did you
9   develop any confirmed evidence that Mr. Kissner had ever
10  improperly touched a boy?
11  A   I did not confirm any allegation of that sort.
12  Q   Did anybody ever complain to the school
13  district that he was improperly touching boys?
14  A   Other than the anonymous letter?
15  Q   Yes. Well, that doesn't even -- it says,
16  "I've never heard of him."
17  A   Right. Right. Well, and I guess I was going
18  to say the email that we looked at earlier.
19  Q   Which was merely --
20  A   Makes a difference of that, but no, I've never
21  confirmed any -- any information like that.
22  Q   Right. So there's been no evidence developed
23  that he improperly touches boys. Right?
24  A   Not to my knowledge.
25  Q   Okay. The anonymous letter writes, "Now that

1  you have been put on notice of this person in your
2  employ, you must do your due diligence to protect your
3  students from a potential predator." Did you develop
4  any evidence to establish that Mr. Kissner is either a
5  predator or a potential predator?
6      A   I don't -- I don't know what "a potential
7  predator" means.  The evidence that I uncovered was that
8  he provided alcohol on one confirmed occasion and one
9  likely occasion, a second likely occasion, that he texts
10 late at night with boys, and sometimes had conversations
11 with boys about their sexual activity.
12     Q   So you concluded that he's a predator?
13     A   I did not.
14     Q   And you said you don't know what a potential
15 predator is, so you drew no conclusion on that
16 allegation.  Right?
17     A   I did not.
18     Q   Why didn't you state in the report, in your
19 factual conclusions, that your investigation failed to
20 turn up any evidence that Kissner was either an actual
21 or potential predator?
22     A   I -- I was focused on the facts, not -- not
23 identifying, specifically, a name of something like
24 that.  I wasn't focused on, you know, a definition of
25 predator or grooming or anything like that.  I was