

March 22, 2021

<u>**Via E-Mail Only**</u>
brian@proactiveblg.com

Brian Bock, Esq.
THE BOCK LAW GROUP, P.C.
31610 Railroad Canyon Road, Suite 2
Canyon Lake, CA 92587

      Re:    Kissner Dismissal
      Client: David Kissner

Dear Brian:

At the outset, we want to thank you and the Board for the opportunity to be heard, even briefly, on Thursday. We understand that this accommodation is not necessarily required. Nevertheless, it is appropriate as a "predeprivation safeguard[] [that] minimize[s] the risk of error in the initial [] decision" to deprive David of his property interest in the continuation of his employment. *See Skelly v. State Personnel Bd.*, 15 Cal. 3d 194, 209 (1975) (listing factors satisfying due process).[1] We take particular exception to the *Skelly* hearing officer's failure to note David's evidence in mitigation and refutation. *See*, *e.g.*, *id.* At 200 (noting employee's age, honorable career, physical impairments, et al.).

While the Board's role at this stage is not necessarily evidentiary, it should be given the opportunity to understand that moving forward with a dismissal process carries potentially adverse consequences for the District and that, in light of the perfunctory *Skelly* findings, this might be the appropriate time to put the brakes on dismissal proceedings before the public issues underlying

---

[1] We can agree to disagree on this point but, in our view, the *Skelly* hearing officer improperly proceeded with a hearing without first obtaining confirmation from David that he would be attending it. The assumption the hearing officer made – that David was waiving his right to appear – was, in the absence of confirmation or by placing a call to David, at best, injudicious. I have been to court numerous times where an attorney was late or had miscalendared a hearing and was called by the clerk or was allowed another chance to appear. <u>That's</u> due process. Then, when advised that your emails attempting to notify David of the hearing date went to David's spam folder and that David was requesting an opportunity to appear at a rescheduled hearing, the hearing officer denied the request. And while he agreed to accept David's written response to the charges, he offered absolutely no analysis of the reasonableness of the charges in light of David's defenses. His report does <u>nothing</u> to minimize the risk of error in these initial stages of the dismissal process, and the Board simply can't intelligently or fairly rely on it.

this matter take flight in the media, needlessly drawing adverse attention to the District and potentially exposing it to defamation and other liability.

We request that this letter be forwarded to the Board for review prior to the meeting. I also may be presenting a 15-minute PowerPoint presentation and therefore request that Zoom permissions for screen sharing be authorized.

## I.      GENERAL DEFENSES

David generally contends that the timing of the investigations and charges is more than coincidental and that they coincide with his public statements relating to the 2018 student walkout and his opposition to Measure N in 2020. These highly public controversies brought David into the media spotlight and generated resentment towards his political positions throughout the community.

David's political speech is protected under Cal. Educ. Code §§ 7052 and 7057. He is protected from viewpoint discrimination pursuant to 18 U.S.C. § 1983.[2]

## II.      QUALITY OF THE DISTRICT'S EVIDENCE

Simply put, the Statement of Charges is based almost entirely on inadmissible hearsay; false, salacious, slanderous, trivial, misunderstood, incomplete, and retaliatory information; unlawfully proffered documentary evidence; and desperately contrived accusations of unprofessionalism. It is our purpose here to survey as much of these evidentiary errors as practicable to put the Board on notice of the District's lax consideration of their legal effect.

### A.      <u>Immoral Conduct</u>

We begin with the salacious, slanderous and scandalous charges of immoral conduct.

David is a decorated veteran who spent nine years in uniform serving with the U.S. Navy and Marines as a midshipman and as an artillery and provisional infantry officer in Fallujah, Iraq. He has been married seven years to his wife, Stacy, and has a son who recently turned five. David is a Christian who is active in his church, which he has been attending for eight years. He's involved in youth ministry and prayer groups. For 13 years, he and his wife have operated a Christian youth ministry sponsoring outdoor activities for youth and their families in a Christian environment.

---

[2] Claims involving these legal theories would differentiate legal action arising from dismissal in this matter from *Crawford v. Commn. on Prof. Competence of Jurupa Unified Sch. Dist.*, 53 Cal. App. 5th 327 (Cal. App. 4th Dist. 2020), review denied (Nov. 24, 2020).

**FREEDOM X**

_____

David has been employed with the District almost nine years teaching math and science and coaching wrestling.

<u>David has never been accused of a crime or, until now, crimes of moral turpitude</u>. Yet, none of these mitigating facts, which describe a person of high moral character, appear in the phony investigative reports on which the charges principally rely or the superficial *Skelly* report offshoot.

What does appear?

    1. Providing Alcohol To Minors (Statement of Charges ("SOC"), ¶ 4)

David has admitted to offering a high school aged student a sip of alcohol more than four years ago, and evidence of it is therefore inadmissible in dismissal proceedings. Cal. Educ. Code § 44944 ("Testimony shall not be given or evidence shall not be introduced relating to matters that occurred more than four years before the date of the filing of the notice…"). The youth was not a District student at the time and it did not occur at a District event. All of the purported accusations of repeating this one-time incident amounts to inadmissible hearsay.

    2. "Potential Grooming Behavior" (SOC, ¶ 4(g))

These slanderous charges lack any substance and are shamelessly based on nothing more than anonymous inadmissible hearsay. Accusations of "potential grooming," asking about sex, etc., are made with NO SOURCE, NO VICTIM, NO DETAILS, NO OFFICIAL COMPLAINT, NO REPORTS. A silly incident involving a binder clip is transformed into a sinister act of predation.[3] We question the competency of the investigator, the *Skelly* officer, and the Superintendent for including these unsubstantiated salacious charges. This is the work of depraved, cowardly saboteurs seeking to destroy an honorable man at any cost. Should these accusations remain in these proceedings or otherwise find their way toward republication, we will not hesitate to hold the District and each person involved accountable.

    **B.**    <u>**Unprofessional Conduct**</u>

The charges purportedly describing unprofessional conduct constitute an assortment of contrived offenses. To our knowledge, the District never once complied with Cal. Educ. Code § 44938[4] and

_____

[3] A student in David's wrestling class asked to go to the bathroom and David remembers responding, "Not now." He tossed a binder clip at the kid in jest. We welcome the chance to litigate this shocking offense.

[4] "The governing board of any school district shall not act upon charges of unprofessional conduct unless at least 45 calendar days prior to the date of the filing, the board or its authorized representative has given the employee against whom the charge is filed, written notice of the

_____

cannot vote on such charges now. *See Galland v. Governing Bd. of the Los Angeles Unified Sch. Dist.*, B258018, 2015 WL 6750091, at \*3 (Cal. App. 2d Dist. Nov. 5, 2015), as modified on denial of reh'g (Nov. 30, 2015) ("The governing board then votes on whether to suspend or dismiss the teacher based upon the statement of charges. (Citation omitted.) If the charges involve 'unprofessional conduct,' the board cannot vote until the district has given the teacher a 45–day 'opportunity to correct his or her faults.'").

Although the SOC does not specify which particular offenses the District has identified as unprofessional conduct subject to section 44938, the Board is prohibited from voting on them because David either was never given 45 days to correct his faults or never was found to re-offend.

### C.    Unsatisfactory Performance

In the same manner, any charge of Unsatisfactory Performance cannot form the basis for dismissal because, to our knowledge, the District has not complied with Cal. Educ. Code § 44938, subd. (b).[5] *See Vergara v. State of California* (2016) 246 Cal.App.4th 619, 630 ("A school district that intends to dismiss a permanent certificated teacher for 'unsatisfactory performance' must provide the teacher with a 'written notice of the unsatisfactory performance' specifying instances of

_____

unprofessional conduct, specifying the nature thereof with such specific instances of behavior and with such particularity as to furnish the employee an opportunity to correct his or her faults and overcome the grounds for the charge."

[5] "(b) The governing board of any school district shall not act upon any charges of unsatisfactory performance unless it acts in accordance with the provisions of paragraph (1) or (2):

"(1) At least 90 calendar days prior to the date of the filing, the board or its authorized representative has given the employee against whom the charge is filed, written notice of the unsatisfactory performance, specifying the nature thereof with such specific instances of behavior and with such particularity as to furnish the employee an opportunity to correct his or her faults and overcome the grounds for the charge. The written notice shall include the evaluation made pursuant to Article 11 (commencing with Section 44660) of Chapter 3, if applicable to the employee.

"(2) The governing board may act during the time period composed of the last one-fourth of the schooldays it has scheduled for purposes of computing apportionments in any fiscal year if, prior to the beginning of that time period, the board or its authorized representative has given the employee against whom the charge is filed, written notice of the unsatisfactory performance, specifying the nature thereof with such specific instances of behavior and with such particularity as to furnish the employee an opportunity to correct his or her faults and overcome the grounds for the charge. The written notice shall include the evaluation made pursuant to Article 11 (commencing with Section 44660) of Chapter 3, if applicable to the employee."

---

unsatisfactory behavior with enough particularity to allow the teacher an opportunity to correct his or her faults. […] After the written notice is issued, the teacher is provided at least 90 days to attempt to correct his or her deficient performance and overcome the grounds for the charge. (§ 44938, subd. (b)(1).)").

Notwithstanding this serious procedural deficiency, once again, the charges levied against David for unsatisfactory performance lack any substance. There are no charges indicating that David failed to maintain proper control of assigned students, or a suitable learning environment, that he had deficiencies in classroom management, student engagement, instructional strategies and lesson design, or that he was unable to perform other duties and responsibilities of his position.

1. Failing to timely file grades or communicate to parents.

These charges fail to recognize David's exemplary service to his students and arise from complaints that, coincidentally, were (1) not made until shortly after Measure N was defeated, (2) brought by parents who backed Measure N, and (3) are unprecedented in David's career until a period of remote learning brought on by a pandemic. The policy for grading and feedback during this period is so unclear that, on February 10, 2021, Principal Martin wrote to David and said, "I heard and acknowledge your request for additional clarity regarding grading and reporting expectations. As a first step in providing that information, I will be gathering data from all content area teachers to assess current practices to ensure my expectations are equitable. Once this data is collected, I will be better able to provide clear, equitable, and actionable expectations."

The District charges that David ignored their questions, sent on November 12, 2020, but David answered them fully, stating, "I have never skipped or canceled a Zoom meeting" (in response to their request about "synchronous Zoom classes") and "the only time that I have not utilized near the full scheduled Zoom time were the few days where there were power outages on the mountain or evacuations."

A letter of reprimand is included in the charges, but it was removed from David's file before the charges were brought, depriving David of an opportunity to engage in grievance procedures required by the Collective Bargaining Agreement.

2. Failure to attend all synchronous classes via Zoom.

David has maintained that he never failed to attend a synchronous Zoom class, and that no synchronous Zoom classes were cut short other than as required by District policy during power outages on the mountain. The District cannot prove that he violated any policy or engaged in any performance irregularity.

3.  Failure to attend required office hours.

The charges include no evidence of a District policy relating to what times or how often to conduct office hours. No such requirements were communicated to David prior to these charges. Furthermore, the charges indicate that David has gone above and beyond the call of duty to help and assist his students outside of scheduled synchronous Zoom classes, even providing advanced math learning to students the District recognized would be treated inequitably if they were not provided advanced math instruction.

## III.    CONCLUSION

On the basis of the foregoing reasoning, it is evident that the District has done nothing to minimize the risk of error in the initial decision to deprive David of his property interest in the continuation of his employment. In fact, it has compounded the risk of error by ignoring David's statutory rights, by alleging potentially defamatory claims, by relying on anonymous sources, by relying on politically-motivated sources without questioning their credibility, by relying on hearsay upon hearsay, and in countless other ways.

Does the Board really wish to be complicit with the District's amateurish attempt to set David up for a fall? We can't understand why, nor can we reasonably expect it to act without taking a serious and deliberative look at the real facts through a competently-managed administrative process. If David were the villain the District has chosen to portray him as, they would have acted in 2018. They have slept on their rights. We urge the Board to vote against moving this matter forward and restore David to his teaching positions without delay. I will be ready to address any questions you may have at the meeting on Thursday.

**FREEDOM X**

Sincerely,

William J. Becker, Jr., Esq.

cc:     David Kissner