Golnar J. Fozi (Cal. Bar No. 167674)
Daniel S. Modafferi (Cal. Bar No. 294510)
Fozi Dwork & Modafferi, LLP
5942 Priestly Drive, Suite 100
Carlsbad, California 92008
Tel: (760) 444-0039; Fax: (760) 444-0130
Email: gfozi@fdmattorneys.com
dmodafferi@fdmattorneys.com

Attorneys for Defendants,
Lisa Fraser, Kevin Grier, Billy Martin, Deana Arnold, Ben Abeln, Ron Bourque, Charlotte Khandelwal, and Erin Asheghian

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DAVID M. KISSNER,<br><br>Plaintiff,<br><br>v.<br><br>LOMA PRIETA JOINT UNION SCHOOL DISTRICT, et al.,<br><br>Defendants. | Case No.: 3:22-cv-00949-CRB<br>Assigned to: Hon. Charles R. Breyer<br><br>**DEFENDANTS LISA FRASER AND KEVIN GRIER'S NOTICE MOTION AND MOTION FOR SUMMARY JUDGMENT**<br><br>Date: January 26, 2024<br>Time: 10:00 a.m.<br>Ctrm: 6<br><br>Case Filed: February 16, 2022<br>Trial Date: None Set |

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that, on January 24, 2024, at 10:00 a.m., or as soon thereafter as the matter may be heard, in Courtroom 6 of the United States District Court for the Northern District of California, in the courtroom of the Honorable Charles R. Breyer, Senior United States District Judge, located at 450 Golden Gate Avenue, 17th Floor, San Francisco, California 94102, defendants Lisa Fraser and Kevin Grier will, and hereby do, move the Court, pursuant to Federal Rule of Civil Procedure 56, for summary judgment against plaintiff David M. Kissner, and in favor of defendants, for costs of suit, and for such further relief as may be just.

1

1  | This motion is made on the grounds that there is no genuine dispute of material
2  | fact, and the defendants are entitled to judgment as a matter of law.
3  |     This motion will be based on this notice, the points and authorities in support,
4  | the declaration of Daniel S. Modafferi, all documentary evidence attached to the
5  | foregoing declarations, all matters of which the Court may take judicial notice, all
6  | pleadings and papers on file in this action, any reply or supplemental briefing allowed
7  | by the Court, any arguments which may be presented at the time of hearing on this
8  | motion, and such matters and arguments as may be presented at the time of the
9  | hearing.
10 | Dated: December 1, 2023        Fozi Dwork & Modafferi, LLP

By: /s/ Daniel S. Modafferi
Golnar J. Fozi
Daniel S. Modafferi
Attorneys for Defendants,
Lisa Fraser, Kevin Grier, Billy Martin, Deana Arnold, Ben Abeln, Ron Bourque, Charlotte Khandelwal, and Erin Asheghian

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................ 4

SUMMARY OF ARGUMENT ............................................................................................. 6

MEMORANDUM OF POINTS AND AUTHORITIES ........................................................ 7

    I.    INTRODUCTION ................................................................................... 7

    II.    SUMMARY OF RELEVANT FACTS AND PROCEDURAL HISTORY ............................................................................................. 7

    III.    SUMMARY JUDGMENT STANDARD ............................................... 8

    IV.    THE EDUCATION CODE ENSURES PERMANENT CERTIFICATED EMPLOYEES RECEIVE PROCEDURAL DUE PROCESS PRIOR TO TERMINATION, INCLUDING NOTICE OF INTENT TO TERMINATE AND A WRITTEN STATEMENT OF CHARGES ........................................................... 9

    V.    THE QUALIFIED IMMUNITY ANALYSIS ..................................... 11

    VI.    IT WAS NOT CLEARLY ESTABLISHED THAT DISCLOSURE OF THE STATEMENT OF CHARGES CONSTITUTED A DEPRIVATION OF A CONSTITUTIONALLY PROTECTED INTEREST, SEPARATE FROM THE TERMINATION OF EMPLOYMENT. 13

    VII.    EVEN IF PLAINTIFF'S RIGHT TO DUE PROCESS HAD BEEN CLEARLY ESTABILSHED, IT WAS NOT CLEARLY ESTABLISHED THAT THE PRE- AND POST-TERMINATION PROCEDURES UNDER THE EDUCATION CODE WERE INADEQUATE TO SATISFY THE NAME CLEARING REQUIREMENT ........................................................ 16

    VIII.    STATE LAW DOES NOT OBLIGATE A PUBLIC ENTITY TO NOTIFY AN AFFECTED EMPLOYEE PRIOR TO DISCLOSING HIS RECORDS ............................................................ 18

    IX.    CONCLUSION ..................................................................................... 18

# TABLE OF AUTHORITIES

**Cases**

*Anderson v. Creighton* (1987) 483 U.S. 635 ............................................................. 12

*Anderson v. Liberty Lobby, Inc.* (1986) 477 U.S. 242 ............................................. 9

*Bd. of Regents v. Roth* (1972) 408 U.S. 564 ........................................................... 16

*Blantz v. Cal. Dept. of Corr. & Rehab.* (9th Cir. 2013) 727 F.3d 917 .................. 9

*Bollow v. Fed. Res. Bank of S.F.* (9th Cir. 1981) 650 F.2d 1093 ........................ 16

*Campbell v. Pierce Cnty., Ga.* (11th Cir. 1984) 741 F.2d 1342 ........................... 16

*Celotex Corp. v. Catrett* (1986) 477 U.S. 317 .......................................................... 8

*Chaudhry v. Aragon* (9th Cir. 2023) 68 F.4th 1161 ............................................. 14

*City and County of San Francisco v. Sheehan* (2015) 575 U.S. 600 ................... 13

*City of Escondido v. Emmons* (2019) 586 U.S. __, __, 139 S.Ct. 500 ................ 13

*Codd v. Velger* (1977) 429 U.S. 624 ...................................................................... 16

*Desyllas v. Bernstine* (9th Cir. 2003) 351 F.3d 934 ............................................. 11

*Fogel v. Collins* (9th Cir. 2008) 531 F.3d 8 ........................................................... 12

*Hope v. Pelzer* (2002) 536 U.S. 730 ................................................................. 6, 12

*Humphries v. County of Los Angeles* (9th Cir. 2008) 554 F.3d 1170.................. 13

*In re Selcraig* (5th Cir. 1983) 705 F.2d 789 ......................................................... 17

*Jessop v. City of Fresno* (9th Cir. 2019) 936 F.3d 937 ........................................ 13

*Kilroy v. LAUSD* (C.D. Cal. De. 6, 2018) 2018 WL 7916367 .............................. 9

*Kisela v. Hughes* (2018) 584 U.S. __, __, 138 S.Ct. 1148 .................................. 12

*Marken v. Santa Monica-Malibu Unified School District* (2012) 202 Cal.App.4th 1250............................................................................................................. 18

*Miller v. California* (9th Cir. 2004) 355 F.3d 1172............................................. 15

*Monteilh v. County of Los Angeles* (C.D. Cal. 2011) 820 F.Supp.2d 1081......... 11

*Mullenix v. Luna* (2015) 557 U.S. 7................................................................. 6, 12

*Mustafa v. Clark County School District* (9th Cir. 1998) 157 F.3d 1169............ 17

*Paul v. Davis* (1976) 424 U.S. 693 ........................................................... 13, 14, 15

*Pearson v. Callahan* (2009) 555 U.S. 223 .......................................................... 12

*Rankin v. Indep. Sch. Dist.* (10th Cir. 1989) 876 F.2d 838 ................................. 17

*Rodriguez de Quinonez v. Perez* (1st Cir. 1979) 596 F.2d 486 .......................... 17

*Saucier v. Katz* (2001) 533 U.S. 194 .................................................................. 11

*Tolan v. Cotton* (2014) 572 U.S. 650 .................................................................. 12

*Wilson v. Layne* (1999) 526 U.S. 603 ................................................................ 13

*Wisc. v. Constantineau* (1971) 400 U.S. 433 ............................................... 13, 15

**Statutes**

Ed. Code, § 44932 ................................................................................................ 10

Ed. Code, § 44933 ................................................................................................ 10

Ed. Code, § 44934 ................................................................................................ 10

# SUMMARY OF ARGUMENT

Summary judgment is proper when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." (FRCP 56(c).)

"[Q]ualified immunity protects all but the plainly incompetent or those who knowingly violate the law." (*Mullenix v. Luna* (2015) 557 U.S. 7, 12.) If public employees of reasonable competence could disagree on the issue, immunity should be recognized. (*Hope v. Pelzer* (2002) 536 U.S. 730, 741.)

In this case, the disclosure of the statements of charges in response to the PRA requests did not deprive plaintiff of any clearly established liberty or property right. Furthermore, there was no clearly established right to any process beyond what is required under the Education Code in connection with plaintiff's termination. The Education Code hearings and appeals allowed plaintiff a sufficient opportunity to clear his name in response to the publication of the charges. Finally, even state law does not mandate additional procedural protections for employees whose disciplinary records are requested under the PRA. Therefore, defendants are entitled to qualified immunity. Summary judgment must be granted in their favor.

# MEMORANDUM OF POINTS AND AUTHORITIES

Defendants Lisa Fraser and Kevin Grier respectfully submit the following points and authorities in support of their motion for summary judgment:

## I. INTRODUCTION

It is undisputed that plaintiff received constitutionally adequate procedural protections in connection with the termination of his employment with the Loma Prieta Joint Union School District. In order to maintain his stigma-plus defamation cause of action, plaintiff must instead establish that he had a clearly established right to due process in connection with the defendants' disclosure of the written statements of charges against plaintiff, in response to Public Records Act requests. Whether or not the PRA disclosures might be actionable under state defamation law, there was no clearly established right to due process in connection with the disclosures. Therefore, defendants are entitled to qualified immunity. Summary judgment must be granted in favor of defendants.

## II. SUMMARY OF RELEVANT FACTS AND PROCEDURAL HISTORY

The operative second amended complaint originally alleged 19 causes of action, under both federal and state law. (ECF No. 16.) On June 9, 2022, however, plaintiff voluntarily dismissed all state law claims. (ECF No. 50.) Furthermore, on August 25, 2022, plaintiff voluntarily dismissed all remaining claims against the District. (ECF No. 66.) On September 8, 2023, the Court entered an order granting summary judgment in favor of defendants Billy Martin, Deana Arnold, Ben Abeln, Ron Bourque, Charlotte Khandelwal, and Erin Asheghian, as to all remaining claims. (ECF No. 106.) The Court further granted summary judgment in favor of defendants Lisa Fraser and Kevin Grier, as to plaintiff's claims for First Amendment retaliation, Fourteenth Amendment due process, Fourteenth Amendment equal protection, civil rights conspiracy causes of action, as well as all claims arising from plaintiff's layoff. (*Ibid*.) Therefore, the only remaining claim is plaintiff's third cause of action, for stigma-plus defamation, against Fraser and Grier. As to that claim, the Court granted

defendants leave, on October 26, 2023, to file a second motion for summary judgment. (ECF No. 113.)

On February 12, 2021, Fraser issued plaintiff a written Notice of Proposed Intent to Dismiss with Statement of Charges. (Kissner Depo., 68:10-17, Exh. 13.) The notice charged plaintiff with violations of the Education Code which the District alleged constituted grounds for termination. (*Ibid*.) The statement of charges was formally amended on June 11, 2021. (Kissner Depo., 59:21-23.)

In April 2021, the District received a Public Records Act request for a copy of the statement of charges against plaintiff. In her capacity as Superintendent, Fraser approved the disclosure of the statement of charges in response to the PRA request. (Fraser Depo., 173:4-19, Exhs. 30-31.) Subsequently, in or about June or July 2021, the District received a separate PRA request for the amended statement of charges against plaintiff. Plaintiff contends that Grier approved the disclosure of the amended statement of charges in response to this request. (Kissner Depo., 59:1-60:2.)[1]

## III. **SUMMARY JUDGMENT STANDARD**

Summary judgment serves to isolate and dispose of factually unsupported claims. (*Celotex Corp. v. Catrett* (1986) 477 U.S. 317, 323-324.) Summary judgment is proper when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." (FRCP 56(c); *Celotex Corp. v. Catrett, supra*, 477 U.S. at p. 322.) The moving party is entitled to judgment as a matter of law when the nonmoving party fails to make a sufficient showing on an essential element of its case with respect to which the nonmoving party has the burden of proof. (*Id.* at pp. 322-23.) A party opposing

---

[1] As the Court noted in its prior ruling, the record does not clearly establish what, if anything, was disclosed in response to the second PRA request. Defendants do not concede that plaintiff can meet his burden of proof to establish that defamatory material was contained in the disclosure.

summary judgment may not rest upon mere allegations or denials of pleadings, but must set forth specific facts showing that there is a genuine issue for trial. (*Anderson v. Liberty Lobby, Inc.* (1986) 477 U.S. 242, 248.)

The moving party may satisfy its initial burden in two ways: (1) by presenting evidence to negate an essential element of the nonmoving party's case; or (2) by demonstrating that the nonmoving party failed to make a showing sufficient to establish an element of its claim on which that party will bear the burden of proof at trial. (*Celotex Corp. v. Catrett, supra,* 477 U.S. at pp. 322-23.) If the moving party meets the initial burden, the burden shifts to the nonmoving party to "set forth specific facts showing there is a genuine issue for trial." (*Anderson v. Liberty Lobby, Inc., supra*, 477 U.S. at p. 256.) A fact is material only if proof of that fact would establish or refute one of the elements of a claim or affirmative defense at issue, and only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. (*Ibid.*)

## IV. THE EDUCATION CODE ENSURES PERMANENT CERTIFICATED EMPLOYEES RECEIVE PROCEDURAL DUE PROCESS PRIOR TO TERMINATION, INCLUDING NOTICE OF INTENT TO TERMINATE AND A WRITTEN STATEMENT OF CHARGES

It is established that, at the relevant times, plaintiff was a permanent certificated employee of the District. (Answer (ECF No. 68), ¶ 30 (p. 4, ln. 24 – p. 5, ln. 2).) "[G]overnment employees can have a protected property interest in their continued employment *if* they have a legitimate claim to tenure or if the terms of the employment make it clear that the employee can be fired only for cause." (*Blantz v. Cal. Dept. of Corr. & Rehab.* (9th Cir. 2013) 727 F.3d 917, 923 (emphasis in original).) Therefore, permanent certificated employees of public school districts have a constitutionally protected property interest in their continued employment, and they are entitled to procedural due process before their employment may be terminated. (See, e.g., *Kilroy v. LAUSD* (C.D. Cal. De. 6, 2018) 2018 WL 7916367, *8 ("it is clear that tenured

teachers in California possess a property right in their continued employment as such").) In order to ensure that procedural due process is afforded before permanent certificated employees are terminated, therefore, the Education Code requires that a public school district comply with specific pre-termination procedures.

As relevant to this case, Education Code, section 44934, requires that a school district prepare "written charges… charging that there exists cause, as specified in Section 44932 or 44933, for the dismissal… of a permanent employee of the school district." (*Id.*, subd. (b).) The school district must also "give notice to the permanent employee of its intention to dismiss… him or her." (*Ibid.*) The employee then has the statutory right to demand a pre-termination hearing within 30 days from the date of service of the notice of intent to terminate. (*Ibid.*)

In this case, it is undisputed that, prior to his termination, plaintiff received written notice of the District's intent to terminate him. (Kissner Depo., 68:10-17, 69:3-11, Exh. 13 pp. PL000778-PL000779.) It is also undisputed that plaintiff was afforded the opportunity to respond to the notice of intent to terminate in a meeting with the Board. (Kissner Depo., 69:12-16, 70:19-71:1; Request for Judicial Notice, Exh. A.) Plaintiff was represented by counsel at the Board meeting, and he and his counsel presented their responses to the charges on which the District proposed to terminate plaintiff's employment. (*Ibid.*) Nevertheless, the Board voted to allow the termination proceedings to move forward. (*Ibid.*)

It is undisputed that, during the course of the termination proceedings, plaintiff was represented by counsel, conducted formal discovery, deposed opposing witnesses, and subpoenaed favorable witnesses. (Kissner Depo., 71:6-20.) Plaintiff was then afforded a full evidentiary trial before a three-member administrative panel, at which he was again represented by counsel, called witnesses to testify, presented documentary evidence, and cross-examined the District's witnesses. (Kissner Depo., 71:21-72:6; Request for Judicial Notice, Exh. B.) Plaintiff's termination took effect only *after* the administrative panel concluded the District had met its burden of proof

to establish statutory grounds for termination. (Kissner Depo., 72:10-14; Request for Judicial Notice, Exh. B.) Then, once his termination took effect, plaintiff had the right to appeal the administrative panel's decision, which he did by filing a petition for writ of administrative mandate in state court. (Kissner Depo., 72:15-25.) Based on these facts, plaintiff no longer claims that the process he received in connection with his termination was constitutionally inadequate. (See ECF No. 106, 13:16-19, fn. 11; see also *id.*, 23:19-20 ("Defendants are correct that Kissner received a lot of process in connection with his layoff and termination.").)

Rather, plaintiff's sole remaining claim – and that which the Court directed the parties to address in this motion – is that defendants Fraser and Grier deprived plaintiff of a constitutionally cognizable liberty or property interest when they authorized the disclosure of the statements of charges against plaintiff, in response to Public Records Act requests. As detailed herein, the mere disclosure of the statements did not deprive plaintiff of a constitutionally protected interest, because the disclosure of those charges did not, in and of itself, terminate plaintiff's employment or otherwise alter or extinguish his rights.

## V. THE QUALIFIED IMMUNITY ANALYSIS

"Qualified immunity shields public officials sued in their individual capacity for monetary damages, unless their conduct violates 'clearly established' law that a reasonable public official would have known." (*Monteilh v. County of Los Angeles* (C.D. Cal. 2011) 820 F.Supp.2d 1081, 1087.) The Supreme Court has established a two-part analysis for determining whether qualified immunity is appropriate in a suit against a public employee for an alleged violation of a constitutional right. (*Saucier v. Katz* (2001) 533 U.S. 194, 201.) Under *Saucier*, courts "must examine first whether the officers violated plaintiff's constitutional rights on the facts alleged and, second, if there was a violation, whether the constitutional rights were clearly established." (*Desyllas v. Bernstine* (9th Cir. 2003) 351 F.3d 934, 939.)

///

Although courts were formerly required to determine whether plaintiffs had been deprived of a constitutional right before proceeding to consider whether that right was clearly established when the alleged violation occurred (see *Saucier v. Katz*, *supra*, 533 U.S. at p. 201), the Supreme Court has since instructed that courts may determine which prong of qualified immunity they should analyze first. (*Pearson v. Callahan* (2009) 555 U.S. 223, 236.) Addressing the second prong before the first is especially appropriate where "a court will rather quickly and easily decide that there was no violation of clearly established law." (*Id.* at p. 239.)

To be clearly established, the "contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." (*Anderson v. Creighton* (1987) 483 U.S. 635, 640.) There must be "some parallel or comparable fact pattern to alert an officer that a series of actions would violate an existing constitutional right." (*Fogel v. Collins* (9th Cir. 2008) 531 F.3d 824, 833.) If public employees of reasonable competence could disagree on the issue, immunity should be recognized. (*Hope v. Pelzer* (2002) 536 U.S. 730, 741.) "We do not require a case directly on point, but *existing precedent* must have placed the statutory or constitutional question *beyond debate*. Put simply, qualified immunity protects all but the plainly incompetent or those who knowingly violate the law." (*Mullenix v. Luna* (2015) 557 U.S. 7, 12 (emphasis added).)

A defendant violates an individual's clearly established rights only when "'the state of the law' at the time of an incident provided 'fair warning'" to the defendant that his or her conduct was unconstitutional. (*Tolan v. Cotton* (2014) 572 U.S. 650, 656 (quoting *Hope v. Pelzer* (2002) 536 U.S. 730, 741).) "Qualified immunity attaches when an official's conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." (*Kisela v. Hughes* (2018) 584 U.S. __, __, 138 S.Ct. 1148, 1152 (per curiam).) "The lack of 'any cases of controlling authority' or a 'consensus of cases of persuasive authority' on the constitutional question compels the conclusion that the law was not clearly established

at the time of the incident." (*Jessop v. City of Fresno* (9th Cir. 2019) 936 F.3d 937, 942 (quoting *Wilson v. Layne* (1999) 526 U.S. 603, 617).)

When courts conduct a qualified immunity analysis, "the clearly established right must be defined with specificity." (*City of Escondido v. Emmons* (2019) 586 U.S. __, __, 139 S.Ct. 500, 503.) The Supreme Court has "repeatedly told courts – and the Ninth Circuit in particular – not to define clearly established law at a high level of generality." (*City and County of San Francisco v. Sheehan* (2015) 575 U.S. 600, 613 (quotes and cites omitted).) The specific question in this case is whether, at the time of the public records disclosures, it was clearly established in the Ninth Circuit that a public employee had a Fourteenth Amendment right to procedural due process before publication of a stigmatizing charge against the employee, independent of the termination of the employee's employment. Because such a right was not clearly established, defendants are entitled to qualified immunity.

## VI. IT WAS NOT CLEARLY ESTABLISHED THAT DISCLOSURE OF THE STATEMENT OF CHARGES CONSTITUTED A DEPRIVATION OF A CONSTITUTIONALLY PROTECTED INTEREST, SEPARATE FROM THE TERMINATION OF EMPLOYMENT

Although a liberty interest may be implicated "where a person's good name, reputation, honor, or integrity is at stake because of what the government is doing to him" (*Wisc. v. Constantineau* (1971) 400 U.S. 433, 437), "procedural due process protections apply to reputational harm only when a plaintiff suffers stigma from governmental action plus alteration or extinguishment of 'a right or status previously recognized by state law.'" (*Humphries v. County of Los Angeles* (9th Cir. 2008) 554 F.3d 1170, 1185 (quoting *Paul v. Davis* (1976) 424 U.S. 693, 711).) While it was certainly clearly established that termination of plaintiff's employment at the District constituted extinguishment of a right recognized by state law to continued employment, it is undisputed that plaintiff received constitutionally adequate process in relation to the termination. Therefore, the Court has instead directed the parties to

analyze "whether the PRA disclosures, which took place in April and July of 2021, in advance of the December 2021 termination, could themselves have worked 'the denial of some more tangible interest.'" (ECF No. 113, 2:13-17 (quoting *Chaudhry v. Aragon* (9th Cir. 2023) 68 F.4th 1161, 1170).) Because it was not clearly established that the mere disclosure of the statements of charges would alter or extinguish an existing right, defendants are entitled to qualified immunity.

Certainly, neither the creation nor the disclosure of the statements of charges effected the termination of plaintiff's employment. The written statement of charges is merely the initiation of the pre-termination process prescribed by the Education Code. Plaintiff's termination did not become effective until the entire procedure had been exhausted and the administrative panel made its final decision at the conclusion of the evidentiary hearing. The only relevant question, therefore, is whether the disclosure of the statements of charges altered or extinguished a constitutionally cognizable right otherwise held by plaintiff. It did not.

In *Paul v. Davis*, *supra*, the Louisville Chief of Police placed Davis's name on a flyer distributed to 800 merchants in Louisville, describing him as a person who had been arrested for shoplifting. Though Davis had been arrested on a shoplifting charge, his guilt or innocence had never been determined. Davis defended the propriety of his § 1983 action by arguing that he had been inhibited from entering some business establishments and that his employment opportunities had been impaired, but the Court observed that the interest in reputation alone is different from the interest in liberty or property that is required to trigger the procedural guarantees of the Due Process Clause of the Fourteenth Amendment. (424 U.S. at p. 711.) As Kentucky did not extend any legal guarantee of present enjoyment of reputation that was altered by the Police Chief's conduct, the Court held that Davis's interest in his reputation was neither liberty nor property guaranteed against state deprivation without due process. (*Id.* at pp. 711-712.)

///

The Court in *Paul* distinguished the mere reputational harm suffered by the plaintiff with the deprivation of existing rights suffered by the plaintiff in *Wisconsin v. Constantineau*, *supra*. In *Constantineau,* the Chief of Police of Hartford had posted a notice to all retail outlets that sales or gifts of liquors to Constantineau were forbidden for one year. This was done pursuant to a Wisconsin statute that provided for posting when a person caused himself or his family "to want" or became "dangerous to the peace" of the community by "excessive drinking." Constantineau brought suit to have that statute declared unconstitutional. The Court held that it was, because the Wisconsin Act contained no provision for notice and hearing, and notice and an opportunity to be heard are essential where a person's good name, reputation, honor, or integrity are at issue on account of what the government is doing to him. (400 U.S. at p. 473.) However, as the Court explained in *Paul,* the posting in *Constantineau* altered Constantineau's status as a matter of state law, and "it was that alteration of legal status which, combined with the injury resulting from the defamation, justified the invocation of procedural safeguards." (424 U.S. at pp. 708-709.) Whereas Constantineau had previously enjoyed the same right as any member of the public to purchase alcohol, placing her name on the list extinguished that right.

Relying on the distinction between *Paul* and *Constantineau*, the Ninth Circuit held in *Miller v. California* (9th Cir. 2004) 355 F.3d 1172 that the plaintiffs "suffered no similar change of legal status" when their names were placed on an official list of suspected child abusers. While placement on the list was certainly harmful to the plaintiffs' reputation, the court held that the plaintiffs were not "legally disabled by the listing alone from doing anything they otherwise could do." (*Id.* at p. 1179.) Therefore, the court concluded that the plaintiffs were not entitled to procedural due process in connection with the placement of their names on the list.

Similarly, in this case, although plaintiff may plausibly claim that his reputation was harmed by the disclosure of the statements of charges, the mere disclosure did not "legally disable" plaintiff "from doing anything [he] otherwise could do."

Therefore, PRA disclosures did not deprive plaintiff of any legally cognizable liberty or property interest. Defendants are entitled to qualified immunity.

## VII. EVEN IF PLAINTIFF'S RIGHT TO DUE PROCESS HAD BEEN CLEARLY ESTABILSHED, IT WAS NOT CLEARLY ESTABLISHED THAT THE PRE- AND POST-TERMINATION PROCEDURES UNDER THE EDUCATION CODE WERE INADEQUATE TO SATISFY THE NAME CLEARING REQUIREMENT

It is undisputed that plaintiff was afforded all of the pre- and post-termination procedural protections required under the Education Code. To overcome qualified immunity on his stigma-plus due process claim, therefore, plaintiff must establish not only that the PRA disclosures deprived him of a clearly established liberty or property interest, but also that he had a clearly established right to some other form of process in addition to the Education Code's notice, hearing, and appeal procedures.

"Assuming all of the other elements necessary to make out a claim of stigmatization under *Roth* and *Bishop*, the remedy mandated by the Due Process Clause of the Fourteenth Amendment is 'an opportunity to refute the charge.'" (*Codd v. Velger* (1977) 429 U.S. 624, 627 (quoting *Bd. of Regents v. Roth* (1972) 408 U.S. 564, 573).) "The purpose of such notice and hearing is to provide the person an opportunity to clear his name." (*Ibid*.) The liberty interest that the Due Process Clause protects "encompasses an individual's freedom to work and earn a living" and, "when the government dismisses an individual for reasons that might seriously damage his standing in the community, he is entitled to notice and a hearing to clear his name." (*Bollow v. Fed. Res. Bank of S.F.* (9th Cir. 1981) 650 F.2d 1093, 1100.)

"Because it is provided simply to cleanse the reputation of the claimant, the hearing need not take place prior to his termination or to the publication of related information adverse to his interests." (*Campbell v. Pierce Cnty., Ga.* (11th Cir. 1984) 741 F.2d 1342, 1345; see also *Codd v. Velger*, *supra*, 429 U.S. at pp. 627-628 (post-termination name-clearing hearing sufficient); *Rodriguez de Quinonez v. Perez* (1st

Cir. 1979) 596 F.2d 486, 490-491 (pre-termination hearing not required but post-termination hearing necessary); *Rankin v. Indep. Sch. Dist.* (10th Cir. 1989) 876 F.2d 838, 842 (name clearing hearing may be provided after dissemination of allegedly defamatory information); *In re Selcraig* (5th Cir. 1983) 705 F.2d 789, 796 (state need only inform stigmatized employee that the opportunity to clear his name exists upon request; pre-termination hearing is not a prerequisite to publication).)

In *Mustafa v. Clark County School District* (9th Cir. 1998) 157 F.3d 1169, the Ninth Circuit cited *Codd* and *Selcraig*, *supra*, in support of its conclusion that a post-publication name-clearing hearing was sufficient to satisfy the procedural due process requirements of the Fourteenth Amendment. The plaintiff in *Mustafa* was a public school teacher who was transferred to a different school amid allegations of sexual misconduct. After a hearing at which Mustafa was permitted to present "his version of events," the school district recommended his termination. (*Id.* at pp. 1172-1173.) Before the termination could take effect, however, Mustafa was entitled to an arbitration in accordance with the collective bargaining agreement. (*Id.* at p. 1173.) The arbitrator held that the school district had not proved the charges by clear and convincing evidence and therefore nullified the termination. (*Ibid.*) The Ninth Circuit held that the arbitration – if not the prior hearing with the school district – afforded Mustafa an adequate opportunity to clear his name, and therefore, there was no due process violation. (*Id.* at p. 1179.)

Plaintiff received much more process than the constitutional minimum of a post-termination name clearing hearing. He received formal, written notice of the charges against him, the right to representation by counsel, a formal hearing before the school board, and the right to conduct discovery – all before the statements of charges were ever disclosed in response to the PRA requests. Even after the disclosures, the name-clearing procedures continued, culminating in a formal, multi-day, evidentiary hearing before a three-member administrative panel. Plaintiff was then afforded the opportunity to appeal the panel's decision, as well. There was no

clearly-established right to receive even *more* procedural protections. Therefore, defendants are entitled to qualified immunity.

### VIII. STATE LAW DOES NOT OBLIGATE A PUBLIC ENTITY TO NOTIFY AN AFFECTED EMPLOYEE PRIOR TO DISCLOSING HIS RECORDS

Finally, although not dispositive on the issue of qualified immunity, state law is informative as to the respective rights and obligations of the parties. California courts have created a non-statutory procedure by which employees whose private records are requested in accordance with the Public Records Act may petition for a writ of mandate to review the public entity's decision to disclose the records. (*Marken v. Santa Monica-Malibu Unified School District* (2012) 202 Cal.App.4th 1250, 1265.) Despite creating this reverse-PRA procedure, however, the California courts acknowledge that the public entity whose records are requested is under no obligation to notify an affected employee of the pending request or to delay its production of records to provide the employee an opportunity to bring a reverse-PRA action. (*Id.* at p. 1268.) Because state law imposes no affirmative duty for public officials responding to a public records request to provide an affected employee notice or an opportunity to initiate reverse PRA proceedings, the Court should conclude that there is no clearly established constitutional right to such procedural protections.

### IX. CONCLUSION

For all of the foregoing reasons, defendants are entitled to summary judgment.

Dated: December 1, 2023                     Fozi Dwork & Modafferi, LLP


By:   /s/ Daniel S. Modafferi
      _____
      Golnar J. Fozi
      Daniel S. Modafferi
      Attorney for Defendants,
      Lisa Fraser, Kevin Grier, Billy Martin,
      Deana Arnold, Ben Abeln, Ron Bourque,
      Charlotte Khandelwal, and Erin
      Asheghian