BECKER DECL. EXHIBIT 1



*23800 Summit Road, Los Gatos California 95033*
*Phone: (408) 353-1101    Fax: (408) 353-8051*
*www.loma.k12.ca.us*
*Lisa Fraser, Superintendent*
*Dr. Billy Martin, Principal*

## NOTICE OF PROPOSED INTENT TO DISMISS WITH STATEMENT OF CHARGES

February 12, 2021

**VIA PERSONAL DELIVERY AND REGISTERED U.S. MAIL**
**(RETURN RECEIPT REQUESTED)**

David Kissner
25059 Skyland Road
Los Gatos, CA 95033

Dear Mr. Kissner:

You are hereby given notice of your dismissal, based upon the enclosed Statement of Charges ("Charges"). The proposed dismissal is under the authority of Education Code section 44932. Enclosed are copies of these Education Code sections, as well as documents upon which the Charges are based upon.

Before the Loma Prieta Joint Union School District ("District") administration makes a recommendation to the Governing School Board of Trustees concerning your dismissal, you have the right to respond to the Charges. For that purpose, I have scheduled a meeting on Monday, February 22, 2021 at 1:00 p.m. to be conducted via Zoom teleconference, at such time you will be provided an opportunity to respond to the Charges. You are advised that you may have a representative of your choice at the meeting. After the meeting, the administration will make a decision whether to proceed forward with this disciplinary action or otherwise, based upon the information available, including your response to the Charges.

During the pendency of this action, the District has determined to place you on paid administrative leave pending further notice. As such, you will remain on payroll and you will continue to receive full pay and benefits.

Until further notice, you are directed not to perform any duties for the District or District schools. You are to remain away from all District facilities, schools, and property unless you first obtain a written authorization from me, the District Superintendent. You are directed to return all District property in your possession immediately to Principal Billy Martin, including, but not limited to,

*Board of Trustees:*
*Deana A. Arnold, President    Ron Bourque, Vice-President*
*Ben Abeln, Member    Erin Asheghian, Member*

keys, files and other documents, supplies and security codes. Please plan to meet with Principal Martin at 12:00 p.m. on Tuesday, February 16, 2021 in order to surrender those items. In the event that you need to retrieve any personal items from your worksite, please let me or Principal Martin know, and we will make arrangements for you to retrieve those items.

You are also directed not to discuss this matter with co-workers, students, parents, and others, except that this directive does not affect your right to discuss this matter, your employment, or any related matter with an attorney or representative of your choice. If you need to contact a District employee regarding a matter unrelated to this action (e.g., benefits questions and the like), you may do so by first contacting my office so that I may schedule a meeting on your behalf.

Please understand that during your administrative leave, you are required to remain available to the District for telephone calls and meetings during normal working hours (if requested to attend by my office or your Principal). Otherwise, you will be notified subsequently if your status with the District changes.

Pursuant to Education Code section 44031, this document and its attachments will be placed in your personnel file within ten (10) days or shortly thereafter. You have a right to submit a written response, which will be included in your personnel file.

Sincerely,

Lisa Fraser
Superintendent
Enclosures:    Statement of Charges
Education Code sections 44031, 44932, and 44939
Exhibits 1-34

## **ACKNOWLEDGEMENT OF RECEIPT**

_____          _____

Signature of David Kissner                    Date


Employee's signature does not signify agreement with the contents of this Notice, but merely confirms receipt of this Notice.   You are hereby informed that pursuant to Education Code section 44031, a copy of this Notice will be placed in your personnel file.   You have the right to prepare a written response to this Notice that will be attached hereto before placement in your file.

3

## STATEMENT OF CHARGES AGAINST DAVID KISSNER

I, Lisa Fraser, Superintendent, for the Loma Prieta Joint Union School District ("District"), hereby charge that there exists cause to dismiss David Kissner as a permanent certificated employee of the District.

## CAUSES FOR DISMISSAL

The specific causes for your dismissal are:

1. Immoral Conduct [Ed. Code § 44932(a)(1);
2. Unprofessional Conduct [Ed. Code, § 44932, subd. (a)(2)];
3. Unsatisfactory Performance [Ed. Code § 44932, subd. (a)(5)];
4. Evident Unfitness for Service [Ed. Code, § 44932, subd. (a)(6)]; and
5. Persistent violation of or refusal to obey the school laws of the state or reasonable regulations prescribed for the government of the public schools by the state board or by the governing board of the school district employing him or her [Ed. Code, § 44932, subd. (a)(8)].

## SPECIFIC ACTS OR OMISSIONS

The specific acts or omissions that constitute this Statement of Charges include, but are not limited to, the following:

1. As a certificated employee of the District, you are required to maintain the highest ethical standards, exhibit professional behavior, and follow District policies and regulations. You are further expected to exercise good judgment and maintain professional standards and boundaries when interacting with students.
(BP/E 4119.21.)

See Board Policy 4119.21, attached as Exhibit 1.

2. As an employee of the District, you are expected to exhibit professional and appropriate conduct.

3. As you are aware, in 2018, very serious allegations of misconduct on your part were brought to the District's administration's attention via an anonymous complaint, which necessitated a formal investigation. As such, an outside professional investigation firm was brought in to conduct the investigation. The independent investigator, who interviewed multiple witnesses, reviewed documentation and other evidence, ultimately determined that you engaged in very serious misconduct. These findings were carefully reviewed by the District and resulted in your receiving a formal letter of reprimand from the Superintendent.

See Letter of Reprimand dated October 18, 2018, attached as Exhibit 2.

4

4. Among the findings, which were made by the Investigator as part of the October 2018 allegations, by a preponderance of evidence, were the following:

    a. It was determined that you knowingly provided an alcohol beverage to a minor(s) (District student, likely Grade 9 or 10) during a non-District activity organized and/or conducted by you.

    b. Not only was it concluded that you knowingly provided an alcoholic beverage to a minor District student, but the Investigator also found that you ultimately <u>admitted</u> to this egregious conduct, claiming that you only gave the boy a "toast" and just a "sip of an alcoholic beverage", claiming it was "after a significant outdoor achievement." You also claimed that this involved a "high school age person." Despite admitting to this egregious and unlawful misconduct, you incredibly tried to justify your actions by claiming that the "offense in question is the legal equivalent of a traffic ticket...."

See October 18, 2018 D. Kissner Response, attached as Exhibit 3.

    c. Contrary to your claims in defense of your egregious misconduct, the Investigator uncovered evidence that you:
        i. You poured the minor a glass of whiskey in a "red cup";
        ii. The minor was 15-years old;
        iii. This incident occurred while others had gone on a walk and you remained alone with the minor back at the campsite;
        iv. The minor did not go on the walk claiming he was tired;
        v. Instead of going on the walk, you and the minor listened to the others on a walkie-talkie type device;
        vi. You and the minor laughed at the others who went on the walk;
        vii. You were confronted by the minor's parents and Pastor Haak in a later meeting also attended by the Pastor's wife and your wife as well. Once again, you <u>admitted</u> to serving the alcohol, specifically whiskey. In fact, you also claimed you "sinned in front of [ ] God," among other statements.
        viii. The minor's family was extremely upset with you, and that you potentially exposed their son to a "potential addiction", given that their family has a history of alcoholism killing several relatives.
        ix. In this encounter, you insisted you only had "one glass of whiskey" with the minor.
        x. Additionally, it was discussed that you had "guns" on the campsite premises at that same time.

    d. Further, the Investigator noted that you were involved in a prior incident also involving another minor and alcohol. This incident was reported to the Investigator by Sheriff's Deputy Koenig.

See Investigation Report of Patricia Elliott, Attorney At Law, attached as Exhibit 4.

e. As a result of these astonishing findings, the investigator determined that you have a history of improperly providing alcohol to minors and persons under the age of 21, since it was also determined that you had been disciplined during your military service for giving alcohol to underage troop members. In fact, you admitted such past misconduct in a student interview you gave as part of a school assignment and have also told others of this incident, including Pastor Haak.

f. In addition, there were reports of other incidents involving you providing alcohol to minors on the same and other student trips. Interestingly, in your interview with the Investigator, when discussing the whiskey incident, you also claimed:
   - The minor was a "co-leader" on a backpacking trip;
   - You gave him "some extra responsibility to lead the kids";
   - At the "end of the hike, I gave him a sip of whiskey as a toast, kind of like 'good job on your accomplishments'";
   - "There were no incidents of anything beyond that";
   - You also claimed that "I was just trying to treat him as an adult...";
   - You have a tradition on these trips to have a "100 ML [of alcohol] in the evening," to enjoy your evening;
   - When you gave the minor the whiskey, you and he were "alone", and the younger kids "went on a night hike";
   - Had the younger ones been there, you would "obviously not have offered" the minor the whiskey. "It was meant to be discreet"; and
   - You did not know at the time of the incident that the minor was suffering from mental health issues, but the minor's mother did inform you of that in the meeting with Pastor Haak and others after the incident occurred.

g. In addition to the alcohol incident(s) and other related findings, the Investigator determined there were other serious infractions on your part, which were also reviewed by the Superintendent and included in the October 18, 2018 reprimand. It was determined that there were other instances of misconduct by you with children that represent and compound the finding of a lack of professional boundaries and/or questionable teaching practices on your part. These include:

   - Failing to maintain professional boundaries, including via technology and sharing private texts/messages with minors/students.
   - Sharing personal information that could offend/frighten students.
   - Telling students inappropriate comments of a sexual nature, including informing male student that you could give him a "small binder clip" he could use on his penis to stop his need to go to the

6

bathroom, after you denied him the ability to leave class to go to the restroom.
- Potential grooming behavior, such as: singling out a minor and being alone with a minor; offering alcohol; asking about sex/sexual encounters; and posting images of youth partially unclothed on the internet.

5. As part of her investigation, the Investigator made the following specific findings by a preponderance of evidence with respect to additional incidents beyond the alcohol incident[s]):

    a.  You have made inappropriate personal comments to students/minors about death/violence, including, stories in class (6th and 8th grades) about serving in Iraq and traveling thereafter such as:
- A soldier being blown up while in a porta-potty;
- Others being "blown up by terrorists";
- "Bodies littering the road";
- People being "completely blown up";
- People being blow up so that only "their boot is left of them";
- Telling 6th graders that your troops had to "kill individual people";
- How you were "almost blown up by a rocket missile";
- Held at "gunpoint" with a "gun to [your] throat" during a biking trip;
- Setting up a bomb that "killed a bunch of terrorists"
- Troops were laughing watching "like twenty people being blown up";
- You thought it was funny since just before a dog was blown up and troops were very upset; and
- Telling violent stories.

    b.  Telling students that you liked the video(s) of Bambi (Disney character) being killed - even as a child - since you hated Disney.

    c.  You often showed video clips to students depicting death and violence.

    d.  Inappropriate classroom exercises/instruction included math "word problems" involving violence/death including:
- "Kids falling off cliffs" to find velocity;
- "Time to impact" using same example above;
- People dying;
- People falling out of buses;
- Children drowning;
- Children dying;

7

- Being thrown off a cliff;
- Around Christmas, using Santa Claus, as being "Hung, dying" by rope to figure out the concept of force;
- Using names of actual students and being killed/harmed, such as: Student "gets punched in the face", where guns are involved, "getting eaten by bears";
- Students being "sacrificed" (oftentimes these are students that are perceived to be disliked by you previously, or who may wear glasses, or be short, or other characteristics).

e. When interviewed by the investigator regarding these incidents, you did not deny these actions, and instead admitted that you have a "morbid sense of humor"; "kids love [your] math tests"; the word problems are "humorous" - and "I have got child labor and kids eaten by bears."

f. Also, the Investigator found that you inappropriately physically wrestled with boys on the classroom floor.

See Exhibit 4.

6. Further, the investigator noted that when you were placed on paid administrative leave on or about May 1, 2018 you were given specific written directives including an obligation of confidentiality/protection of the confidentiality of information. Specifically, you were informed that you had "an obligation to maintain the confidentiality of both the fact of and information concerning the investigation, and to not disclose such information to others, including employees, parents, and students of the District." Moreover, you were provided notice that "violations of this policy may result in appropriate disciplinary action."

7. Despite these strict directives and mandate of confidentiality, the Investigator found that you *failed* to comply and, in fact, disclosed information about the investigation to others, including District parents. When interviewed in 2018, you admitted to the Investigator that you *failed* to comply with the confidentiality directives, but claimed it was "to a very limited degree"; then claimed to parents, you were on leave "related to the Walkout". Also, despite telling the Investigator that your communication with District parents regarding the investigation was person-to-person, not via email; the Investigator found evidence to show that you were, in fact, communicating with numerous parents via email regarding your leave and pending investigation and lobbying them to pressure the District to bring you back from leave. Among such was a mass email from your personal email account to undisclosed persons entitled: "Support Mr. Kissner - Our voices are stronger together!"

See April 30, 2018 Letter, attached as Exhibit 5, Investigation Report of Patricia Elliott, Attorney At Law (Exhibit 4), and email entitled "Support Mr. Kissner-Our voices are stronger together!", attached as Exhibit 6.

8. Thereafter, on March 31, 2020, you received a formal Warning of Unprofessional Conduct, following the receipt and review of concerns raised by a parent related to your treatment of her son in a discriminatory and derogatory manner in the presence of other students during an 8th grade science class. Specifically, it was found that when the student professed to you that another student was "bullying" him, you responded, "You should make fun of his slitty eyes". It was determined that this Warning of Unprofessional Conduct was necessary and placed into your personnel file to ensure that you understood the serious nature of the concerns and refrained from such misconduct in the future.

9. Moreover, you were also given an opportunity to meet and respond to the allegations contained in the March 31, 2020 Warning of Unprofessional Conduct, but instead refused to meet and/or provide any factual information to refute the claims. Your refusal to meet and discuss the allegations and findings was in violation of your duty as a District employee to cooperate with the fact-finding process. Ultimately, you provided a written statement which did not provide any factual response, but instead focused on other irrelevant matters related to another personnel matter from 2018.

   See March 31, 2020 Warning of Unprofessional Conduct (and Response), attached as Exhibit 7.

10. Thereafter, on April 2, 2020, you received an additional formal Warning of Unsatisfactory Performance following another student incident. In this case, it was found that after a student arrived late to a lunch detention, instead of handling this additional infraction in a civil and professional manner as the teacher, you became very angry and slammed your fist on the table. When the student attempted to explain why she was late, you loudly stated, "No shit, Claire." Not only was this uncalled for, it upset the student and the rest of the students present. It was determined that this Warning was necessary and placed into your personnel file to ensure that you understood the serious nature of the concerns and refrained from such unsatisfactory misconduct in the future.

11. Once again, you were given an opportunity to meet and respond to the allegations, but refused to meet and/or provide any factual information to refute the claims. Your refusal to meet and/or respond to the allegations was in violation of your duty as a District employee to cooperate with the fact-finding process. Ultimately, you provided a written statement which did not provide any factual response, but instead again focused on other irrelevant matters related to another personnel matter from 2018.

   See April 2, 2020 Warning of Unsatisfactory Performance (and Response), attached as Exhibit 8.

12. On August 27, 2020, you were sent a Request for Information (regarding Remote Wilderness School Camps), from the Superintendent based on the District's receipt of concerns raised by a community member with respect to the Remote Wilderness School Camps ("Camps"). The Camps were referencing trips conducted by you and in apparent conflict with regular school days/hours for District students, as well as contracted work hours for you as a teacher. As a result, you were directed to provide by the next day,

August 28, 2020, a description of the Camps proposed activities planned during school hours. The purpose was to ensure legality for the District and protection for you from potential liability as well related to the Camps. You *failed* to comply with the directive and provide the District with the requested relevant information.

See August 27, 2020 Request for Information, attached as Exhibit 9.

13. Following your failure to comply with the prior directive/request for information, it was then necessary for the District to follow-up with you for more specific information to ensure the Camps were appropriate for District students and for you as an employee to attend. As such, on August 28, 2020, you were provided with a detailed written questionnaire, which you also ignored and *failed* to provide a response. By failing to respond to the questionnaire you once again ignored specific directives given to you by the District. Each of the questions contained in the questionnaire were necessary for the District to determine the appropriateness and legality of your participation and administration of these Camps trips involving District students potentially during school hours and/or your duty time.

See August 28, 2020 Remote Wilderness School Camps memo, attached as Exhibit 10.

14. Following the above-described incidents, shortly thereafter, the District received a new further concern related to you sending emails to District student(s) directly on their personal/school accounts, as well as to many parents in the community as well. In one instance, you sent an email to an 11-year old student's school email account. Your email to the 11-year old student concerned student grading and providing extra math help through an "online after school homework center" with a direct link to your personal website(s), included the En Gedi Project and an opportunity to donate money. Sending personal emails to students and parents advertising your own online personal website and soliciting donations is inappropriate.

See September 8, 2020 emails, attached as Exhibit 11.

15. As a result of the concerns received from community members about your September 8, 2020 emails, your site Principal, Billy Martin, contacted you on September 14, 2020 to inquire about the matters as they related to your promotion of Mountain Math Initiative ("MMI") and other non-District activities. Specifically, Mr. Martin requested to know whether you were emailing students directly and/or mass emailing students; whether the MMI class was taking place during your District duty time; whether you informed a student/parent that MMI attendance would qualify for school credit or replace missing credits; and whether you recommended MMI to the family of a special-needs student as an alternative resource.

16. Rather than simply providing Principal Martin with the information he requested from you, you requested a meeting with him expressing that you were "getting a bit frustrated with how this is playing out." In response, Mr. Martin offered you several times to meet that day and the next. You then disrespectfully responded that you would meet with him

the next day and "sit on my frustrated and sarcastic email reply for now (said frustration and sarcasm not at all directed towards you)."

See September 14, 2020 emails, attached as Exhibit 12.

17. In October of 2020, the District received a complaint from a parent regarding your teaching practices. Specifically, the parent mentioned that her son was a former student of yours and that you chastised her son and physically tore up her son's math work in front of the class because he used a pen (instead of pencil) on a math assignment. She went on to request that her daughter not be placed in your class for the current school year.

18. In the fall of 2020, due to parent concerns and confusion over whether some students in Math 7 were allowed to receive class attendance credit for alternatively attending your MMI outside Math program, Principal Martin and Superintendent Fraser met with parents to discuss such concerns. Following that meeting, on October 8, 2020, Principal Martin emailed you with a summary of the meeting, which included specific parameters for Math 7 and requirements for participation. Parents were also informed and assured that MMI is an outside enrichment program - not supplanting/replacing any District Math course/coursework; and confirming that attendance in MMI did not count as attendance in any District Math course/class, including CTE, etc.

In closing to his October 8, 2020 email, Principal Martin directed you to provide a "list of students with whom attendance at CTE may have been communicated as optional or who believe participation in Mountain Math Initiative counts as attendance/participation for their CTE classes. I want to make sure those families get the same message as the ones with whom I met today."

See October 8, 2020 emails, attached as Exhibit 13.

19. Despite the October 8, 2020 email directive from Principal Martin in which you were clearly directed to provide the list of students who were misinformed by you that attendance at CTE was optional or who participated in MMI program; as of October 13, 2020, you had *failed* to adhere to said request. As such, on October 13, 2020, Principal Martin emailed you again with his request and further stated, "I am unable to tell from your previous response if you are refusing to provide me the requested information or if you need additional time to do so." The previous response he referenced was a three-page email you wrote which clearly disagreed with the District's approach and directives, but also *failed* to include the student list required of you on October 8th.

See October 13, 2020 (and related) emails, attached as Exhibit 14.

20. Although on October 13, 2020, you finally provide a student list to Mr. Martin, the list was in fact just an entire class roster and was not in compliance with the prior and specific directive to provide a list of students that were informed by you that MMI would count towards attendance credit for District Math courses; you also informed Principal

11

Martin that you incorrectly communicated to students/parents that "any interaction whatsoever with a teacher during the day qualifies as being present in class for attendance purposes." As a result of your statements, on October 14th, Principal Martin informed you that several parents still conveyed that they understood that students are "not required to attend their CT math course if they are participating in Mountain Math Initiative and that the work done and the grade earned for that after school enrichment course will be applied to their CT math course." Principal Martin reiterated to you "[t]his clearly indicates an intention of supplanting that after school activity for their CT math course." Principal Martin went on to reemphasize to you, "This is an action I need to make clear is not [an] acceptable practice." He also re-emphasized that "a qualifying attendance event must be completed by the end of the school day for the day the attendance to count. A qualifying attendance event must happen within the school day; after school hours do not count toward positive attendance."

In closing, Principal Martin re-directed you to provide the actual list of students (names of families who have been explicitly told their child does not have to attend your CT math course and instead can attend Mountain Math for District math credit/attendance).

See October 13, 2020 and October 14, 2020 emails, attached as Exhibit 15.

21. On October 18, 2020, the District learned from a disgruntled parent(s) that you were very late with your Math grading, and as a result they were uninformed that their child's grade had dropped from an "A/B" to a "C" on the last day of the quarter. Further, the late grade report showed the parent that their son had low marks on several assignments from a full month prior. The parent expressed great concern and frustration since he/she frequently checked the online system (PowerSchool) and saw no signs of problems prior to the low grade being given - which indicated that you *failed* to enter such relevant information until the very end of the period. Not only had you not properly/timely entered the information, but you also neglected to otherwise communicate concerns with the parent during the quarter. The parent closed their email to you (copied to your Principal) declaring, "Poorly done!"

See October 14, 2020 emails, attached as Exhibit 16.

22. Although that same day you responded to the parent in an email seemingly to apologize for your failures, you then inappropriately went on attempt to excuse your behavior by claiming, "I can assure that this is not for lack of time spent lesson planning, delivering instruction, meeting with students who need help, answering insane amounts of emails, and other time-consuming admin tasks like attendance that take all day." Not only was this additional information uncalled for in an "apology" to a parent, but much of it was untrue and frankly embarrassing to you and the District. Further, you then continued on for an additional two paragraphs, placing the blame on the student/parents for the problems with the student's grades, before apologizing again for your failures to timely update and grade the student's assignments.

See October 18, 2020 email, attached as Exhibit 17.

23. Besides inappropriately emailing that parent, you also proceeded to mass-email each family in your 7th grade Math class to seemingly update and explain grading and other class activities on October 18th (then other classes on October 22nd [8th Grade Physical Science] and 26th [6th Grade Math]). In virtually identical letters, although you attempted to apologize for being "behind" on PowerSchool, you also used poor judgment in stating: "this has been a 'try to keep my head above water' type of quarter." You further made a proofing/typographical error in *each* (almost identical) letter by stating: "I am foregoing [sp] the normal labs…". Moreover, the October 22nd letter to 8th Grade "Physical Science" families incorrectly addresses "7th grade math classes." That letter was also sent to families at 1:49 a.m. – which may explain the apparent "cut and paste" error.

    See October 18, 22, 26, 2020 emails, attached as Exhibit 18.

24. Subsequently, you were contacted by various District administrators/staff to help you with PowerSchool, to allow you to improve your updating of grades and to facilitate IEP goal updates as well. In an effort to assist you, Staci Ljepava, Director of Student Services and Special Education and Randy Cohen, RSP Teacher/Case Manager, each reached out to you with respect to assist you with properly utilizing PowerSchool. Nevertheless, as of October 27, 2020, according to the Director Ljepava, you had still *failed* to enter the necessary IEP goal information into Power School. In fact, you had not done so by October 23rd despite Dr. Cohen's efforts to help you gather such data. Further, it was discovered that you had not updated 6th grade Math scores since September 11, 2020 (42 days prior). As a result, in an October 27th email from Director Ljepava, she informed you that this required "immediate action" and she added that "[i]n the future, if you need more time please communicate this with the case manager…to remain in IEP compliance." She then directed you to "Please update myself and the case manager on the status of your grade updates, so I can respond accordingly to the [IEP] team with next steps."

    See October 27, 2020 email, attached hereto as Exhibit 19.

25. On November 3, 2020, the District received a further complaint from a 6th Grade parent, who was upset with your teaching her child's class. Specifically, the parent stated that there were several Zoom class sessions recently (while you were apparently "away in Tahoe") "ending after just a few minutes or just canceled out right". Additionally, the parent was upset that you instructed students to grade their own tests. The parent felt that students self-grading their own tests neglected the student's need to learn from mistakes - rather than just check for the "right answer". The parent was also put off by your prior mass email on October 26th updating parents on the late grading/PowerSchool concerns but stating that you were "trying to keep my head above water" - as part of your excuse/apology. Of particular note, the parent remarked in closing, "I know he has been providing education assistance for kids during his camping trips, but it seems this is causing him issues in keeping up with his teaching position at CT."

The parent went on to note, "He is planning another lengthy (3 week) trip in November - is there a way to have someone in the administration join [Student] classes to make sure he is providing the lessons for kids in his CT classes?"

See November 3, 2020 and related emails, attached as Exhibit 20.

26. As a result of the November 3rd complaint, your Principal informed you of the concerns, and provided you with an email (at 10:21 a.m. - November 12, 2020) containing specific requests for information in order to commence a proper review. These included the following:

> "To date, have you canceled any synchronous Zoom classes that are regularly planned for Mondays, Tuesday, Thursdays. Or Fridays?
> If yes, what days and/or what classes were canceled?
> If a class was canceled what was the reason for the cancellation?
> How far in advance are notified of cancellations?
> How do you notify students of the cancellation?
> Did you assign to students of any canceled classes work or other instruction equal to 35 minutes?"

In response to these simple and specific requests which were necessary to make sure that you were complying with proper remote learning attendance and credit requirements, you responded in the evening at 9:36 p.m. that, "In general, I do not participate in any investigation or inquiry being conducted by the school district because of previous experiences."

You went on to add, "I have never skipped or canceled a Zoom meeting." Further, you stated that, "The only time that I have not utilized near the full scheduled Zoom time were the few days where there were power outages on the mountain or evacuations."

See November 12, 2020 email, Correspondence attached as Exhibit 21.

27. As a further result of the November 3rd complaint and information brought to the District's attention as to your Remote Wilderness School Camps trip planned for November, on November 5, 2020, the Superintendent provided you with a letter requesting important and necessary information (similar to the directive you received in August of 2020- to which you *failed* to respond) to better assess the situation and provide assurances that your planned activities were appropriate and within the state and federal education law confines and mandates for a District teacher and its students involved.

In sum, this letter reminded you of recent Covid-19 restrictions and related State and local policies and mandates. It also cautioned you to adhere to other state mandates based on your intended destination(s) since you were to be transporting and otherwise supervising District students.

Furthermore, the letter specifically directed you "as part of the District's responsibilities owed to all students and staff" to "promptly provide us with information concerning [20 listed areas of concern: ranging from names of each student; Covid-19 preparations and appropriate distance learning/teaching methods; insurance information; parent permission slips; methods of transport/safety; adult supervision/precautions, and activities beyond teaching/learning etc.].

Additionally, this letter referenced and re-incorporated the prior August 28, 2020 notice/directives for your response as well.

In closing, the Superintendent's notice made it abundantly clear that, "If you are unable or unwilling to [provide the information] promptly, completely, and in writing, before you depart", you must "advise the [Superintendent] immediately and appropriately action will be taken as permitted by the circumstances." You were also cautioned that "We all have an obligation to comply with existing health and safety laws during this time, along with longstanding standards for remote learning opportunities and education law requirements. It is trusted that you understand the importance of meeting our respective obligations." You were also reminded that your failure to comply could result in disciplinary action.

See November 5, 2020 Letter from Superintendent, attached as Exhibit 22.

28. Despite the very clear, comprehensive, and imperative directives/information requests given to you in the aforementioned November 5th Superintendent's letter, on November 7, 2020, you responded in a short email to the Superintendent as follows:

"Dear Lisa,

Thank you for your email outlining your concerns. I am confident that: I have been - and will continue to - fully meet (and exceed) my professional obligations equitably to all of my students; Nothing about my physical location or the people that happen to be in my vicinity have any impact on my performance of my professional duties; There is nothing about my physical location or the people that happen to be in my vicinity that has anything to do with the District; and I am not in violation of any laws or District policies.

Sincerely,
David Kissner"

To date, you have *failed* to comply with the specific requested information from the November 5th letter and/or the August 28th letter.

See November 7, 2020 email to Superintendent, attached as Exhibit 23.

29. Thereafter, on December 11, 2020, you received email correspondence from a parent of a student in one of your math classes regarding his child's math grade. Mr. Martin was carbon copied on the email. The parent detailed that he once again found himself in the

15

"uncomfortable potion of not knowing what [his child's] math grade will be for the end of the semester." The parent complained that no homework grades have been posted by you to Powerschool since before Halloween. The parent went on to complain that no grades have been posted by you to google classroom either. The parent noted the importance of parent involvement in the remote schooling process and stated that he is "not able to do [his] job to make sure [his child] lives up to school requirements unless his performance is visible to [him]." The parent asked that grades be updated by you to be current.

See December 11, 2020 email to you from I. Ollmann, attached as Exhibit 24.

30. That same day, you also received email correspondence from another parent in one of your classes regarding her child's grade. Mr. Martin was copied on this email. The parent noted that she was emailing you again about the lack of parental knowledge of student progress in your class. The parent noted that Powerschool has only one grade posted since October 28, 2020, a test taken on November 16, 2020. She went on to detail that not one assignment prior or after the November 16, 2020 test has been posted. The parent also detailed that Google classroom does not have her child's progress updated either. She noted in Google classroom she can only see that one assignment has been submitted by her child. The parent related that that you have *failed* to provide viable feedback on either platform about her daughter's progress. She related that she is unable to get her child the help that she will need to succeed without feedback from you as her teacher.

Further, the parent mentioned that when she expressed her concerns about your failure to provide feedback or update grades via PowerSchool or Google classroom last quarter, you assured her that her child was doing fine and said that you would be more vigilant about posting grades in PowerSchool for parents to access and see the progress of their child. The parents stated, "this has not happen." The parent then noted that since it is almost the end of the quarter, it would be very difficult to improve the grade. The parent stated that she: "is thoroughly disappointed in the lack of information from you and [she] know[s] of many other families that have expressed the same frustrations and concerns.

See December 11, 2020 email from C. Norquist, attached as Exhibit 25.

31. Thereafter, on December 14, 2020, Mr. Martin, your supervising Principal at CT English Middle School, received email correspondence from another parent whose child is enrolled in your math class. The parent provided feedback to Mr. Martin that you had *failed* to grade old assignments. He noted that a few assignments, four, had been graded from November 16, 2020 and December 1-4, 2020; but that no assignments had been graded since December 4, 2020. The parent stated that he is "VERY UNHAPPY and . . . formally making a complaint." (emphasis in the original) The parent also detailed that other parents are complaining about your failures to update and post grades in a timely fashion to allow parents and students to track their progress and allow for improvement.

See December 14, 2020 email correspondence to B. Martin, attached as Exhibit 26.

32. That same day, the Superintendent and Mr. Martin received email correspondence from another parent whose student is enrolled in your math class. The parent related that their child's math grade was not only "NOT current", but that you had not "even been grading or checking" homework "ALL quarter." The parent went on to note that it looked like you had started grading "the kid's papers now-at the END of the quarter." The parent stated that he had been checking Google classroom and at no point had you given his child feedback on progress. The parent questioned how his child can be expected to improve his/her math skills, or course correct throughout the quarter, if he/she does not know when his/her homework is correct. The parent expressed frustration that because you had not provided feedback or updated grades throughout the quarter, there is now no way to turn things around.

The parent went on to note that while they are trying to be patient with distant learning, some accountability from the teachers is required and based on his communications with you, their family has not found you to be accountable. The parent then inquired as to how your failures will be fixed moving forward.

See December 14, 2020 email correspondence to B. Martin and L. Fraser, attached as Exhibit 27.

33. Appropriately, on December 16, 2020, you received a Letter of Reprimand from Mr. Martin regarding your failure of duties and unprofessional email response. Mr. Martin detailed that on December 11, 2020 he was made aware of your continued inability to provide timely progress reports regarding grades to your students and families. Mr. Martin noted that you were contacted via email, with him being cc'd, on December 11, 2020 by a parent concerned that there had not been adequate information provided to determine his child's math grade. Mr. Martin also noted that he had received an additional parent complaint along the same vein reporting that you had not made updates to grades since mid-October 2020. Lastly, Mr. Martin detailed that he was in receipt of two additional complaints via email on December 14, 2020 by another family indicating this behavior is a dis-service to students and families.

Mr. Martin provided that upon review of PowerSchool, it was confirmed that you had not fulfilled your professional obligation of reporting student grades and progress. For example, during the period of October 30, 2020 to November 30, 2020, only one grade had been posted for your students in your period 2 Math 6 course. Mr. Martin informed you that "this negatively impacts the learning of students in that they are not provided accurate and timely feedback related to their completed assignments. This failure on your part hinders the ability of students to take corrective measures to seek assistance when needed."

Mr. Martin proceeded to note that this behavior had also previously occurred during the first quarter of the 2020 school year and at that time, you noted you were behind, trying to keep your head above water, and that it was something you were committed to working on. During a phone conversation with Mr. Martin on October 28, 2020, he

discussed with you the topic of grading and feedback and you indicated that you were aware of this being an issue and believed you would rectify the situation for quarter 2. Appropriately, at that time, Mr. Martin encouraged you to reach out to him if you needed additional support to be able to report grades and provide feedback in a timely manner.

Mr. Martin then reminded and reprimanded you that "providing feedback, grades, and progress reports is a basic and important function of teaching." He noted that "your inability to clearly and regularly communicate student progress and grades to students and families demonstrates a failure to perform the functions of your position as a classroom teacher. This behavior negatively impacts student performance and the ability of families to provide adequate support for their child."

Mr. Martin further reprimanded you regarding an inappropriate, disrespectful, and unprofessional email response you sent to a parent on December 12, 2020, after she provided you her recurring concerns about your ongoing failure to properly and in a timely manner communicate grades and performance with students and families. Incredibly, your December 12th response to this parent did not address her concern(s), and instead was laced with sarcasm and disrespect for her issues. Mr. Martin admonished you that "responding in this manner adversely affects the professional relationship with the parent that is necessary for student success - and frankly makes a bad situation even worse." Mr. Martin went on to detail that this is not the type of professional communication expected of you in the performance of your duties. He reminded you that you are expected to respond to parent inquiries in a professional, courteous and supportive manner. He detailed that your responses should directly address the question or concern only, without the inclusion of sarcasm, excuses, or other inappropriate discussion.

Accordingly, Mr. Martin advised you that effective immediately, and until further notice, you are required to:

    a. Update PowerTeacher Pro at least one time each week in a manner that clearly communicates student grade progress; and otherwise not allow yourself to continue to fall behind on PowerSchool and/or timely providing parents/students with grades and progress.

    b. Send responses to parent complaints and/or concerns to me, as your Principal, for review and approval *prior* to sending the response to any parent/student.

    c. Always communicate with parents/students and others in a professional manner.

See December 16, 2020 Letter of Reprimand, attached hereto as Exhibit 28.

34. The next day, December 17, 2020, Mr. Martin sent you an email correspondence entitled "Response Requested-Alleged Algebra Course". In this email Mr. Martin informed you that it had recently been brought to his attention that you may be hosting an unapproved Algebra course for a select group of students during the time designated as "office hours and student support" from 1:00 p.m. to 2:30 p.m. Appropriately, to help him understand

the situation and so that he could determine what, if anything needs to be done further, he asked that you provide answers to each of the following questions by December 18 at 3 p.m.:

    a. Are you currently conducting a class on Mondays, Tuesdays, and Thursdays at 1p.m. for algebra instruction?

    b. Are you hosting this class using a non-school provided platform or a personal Zoom account?

    c. Are the students attending the course currently enrolled in any of your CT math courses?

    d. How have the students participating in this class been chosen?

    e. Is this class open to any student at any grade who wishes to participate?

    f. What arrangements have you made for students enrolled in your CT courses to access you for help and support during the office hours that are impacted by this class?

    g. What arrangements have you made for students participating in this class to access office hours and supports offered by other teachers?

    h. The students participating in this class are receiving an additional 90+ minutes of instruction per week. What plans have you made to provide supplemental instructional minutes to other students, particularly any students in your 1-6 period classes who struggle?

    i. How have you communicated the logistics of this class to participants and parents?

    j. Did you seek parent permission for students to participate in this class?

To date, you have *failed* to provide a response to Mr. Martin's questions in violation of his directives to do so.

See December 17, 2020 email correspondence entitled "Response Requested-Alleged Algebra Course", attached hereto as Exhibit 29.

35. Recently, on January 28, 2021, the District received a note of concern from a parent, who wanted to bring attention to the fact that you previously (in or about October 2020) shared graphic stories with his son and other classmates related to your military experience in Afghanistan, and specifically "combat fatalities."  This parent, currently serving overseas, felt your stories were highly inappropriate for youth, but specifically, his son, while he was away serving - and facing the peril(s) of military action.

See January 28, 2021 email correspondence entitled "Class Discussions", attached hereto as Exhibit 30.

36. Not only does this email concern the District in that it comes from a military parent about your inappropriate discussions, but further it shows that - almost two (2) years after the 2018 investigation and aftermath, including specific reprimand and counseling, you continued to engage in this inappropriate conduct and flatly refused to follow prior directives.

19

37. In addition, in the January 28th Email forwards, you mentioned to that parent (in an October 19, 2020 email) that you could not meet in person - since you have "been out of state since March - taking remote teaching to new levels of remote." This statement is not only inappropriate to provide to a parent, but, if true, would indicate - by your admission - that you were neglecting your duties and using your "remote" teaching as an excuse.

38. On or about January 28-29, 2021, the District, through the office at CT English Middle School, received a parent inquiry about student attendance the prior week. Specifically, the parent inquired about her daughter possibly missing a "1PM Math class" and was concerned. This inquiry caused some confusion in the office, since there was no such class, so the office asked the parent to clarify and she then confirmed after talking to her child that it was "the after school math class with Mr. Kissner at 1 p.m." The parent apologized for the "confusion." Most concerning to the District, this exchange shows that you - as recently as January 25th - continued to ignore prior directives to cease this activity during school and duty hours.

See January 28-29, 2021 Email correspondence entitled "Power outage 1/25", attached hereto as Exhibit 31.

39. Similarly, on January 29th, the District received additional information showing that you continued to violate its directives, after another student informed Principal Martin that he could not move math classes (Math 7 to 8) because he already attends a "1pm advanced math class with Mr. Kissner."

See January 29, 2021 email correspondence entitled "dk algebra class", attached as Exhibit 32.

40. Among other instances, the District also has determined that back in November, you also appear to have violated these directives as well. Specifically, in this email exchange between you and a student, after the student informed you that he could not make it to "math" that day, you responded by asking if he was "planning to continue to meet at 1 Mon, Tue, Thur for algebra separately."

See November 9, 2021 Zoom chat correspondence (snapshot), attached as Exhibit 33.

41. To compound your failures and misconduct in Charges 38-40, your actions directly evidence insubordination after you had been repeatedly directed to not conduct the "after school math class."

42. Also, upon a recent review of District Zoom records (applicable to you and during your required duty time for "office hours" this past school year), it appears that you *failed* to conduct and/or attend required "office hours" on numerous occasions (approximately 29 days) from August 2020-January 2021. Incredibly, it appears that many of these were shortly after your Principal made a formal directive(s) for information and confirmation

in November/December to which you ignored and *failed* to respond. (matters discussed in Charges 26 and 34 above).

See Zoom usage log (account:dkissner@loma.k12.ca.us), attached as Exhibit 34.

43. Moreover, it now also appears that you were dishonest to the District in November when, in response to your Principal, you specifically stated in your November 12th email (Charge 26 - Exhibit 21) that:

    a. "I have never skipped or canceled a Zoom meeting"; and
    b. "The only time that I have not utilized near the full scheduled Zoom time were the few days where there were power outages on the mountain or evacuations."

See Exhibit 21 (Charge 26).

44. In sum, your misconduct as identified herein is contrary to the District's expectations that our teachers, and frankly all staff, create and maintain a productive, safe, inclusive, and effective learning environment in our schools. Furthermore, your actions demonstrate your inability and/or failure to comply with the District's policies, administrative regulations, school rules, management directives, and the duties and responsibilities of your position as a certificated teacher, as previously described above. Specifically:

    a. You have repeatedly chosen to ignore District directives and counseling regarding remote instruction and instead have chosen to operate as you "want" without authorization to do so.

    b. By meeting, traveling, and/or providing instruction with select District students and conducting "in person" instruction during the current COVID 19 pandemic while at the time the District itself had only been authorized to conduct "remote" instruction due to state and public health orders and restrictions, you are in violation of District policies, directives, intent, and local/state mandates.

    c. Failing to seek prior authorization for these non-sanctioned "in person" instruction classes that are/were taking place off-District premises during the school day and duty time, is insubordinate and unacceptable conduct, as well as further evidence that you are unable and unwilling to follow state, local and District instructional and operation protocols and rules.

    d. By conducting un-sanctioned "in person" instruction in violation of current COVID restrictions in place for the District and its students, staff and families, you also have potentially exposed students to physical danger, as well as the District to liability and government sanction.

45. Your overall conduct as detailed herein negatively impacts your working relationships with students and your colleagues, your job effectiveness, the efficiency of operations, overall staff and student/parents morale, and has compromised the safety and welfare of

students.  Moreover, your actions have had a detrimental effect on your students/parents and the operations of the District.

The foregoing causes and specific charges stated herein, individually and collectively, are sufficient grounds for your dismissal from the position of a certificated employee.  Subsequent to the service of this Statement of Charges, amended or supplemental charges may be served upon you.  If the amended or supplemental charges present new information, the District will assume that you deny such charges, and you will be afforded an opportunity to respond to the amended or supplemental charges.

Please be advised that retaliation in any form is unacceptable.  Any such retaliation against anyone who participated in the investigation of this matter will not be tolerated and may result in further disciplinary action against you.

Pursuant to Education Code section 44031, a copy of this letter and its attachments will be placed in your personnel file shortly.  A copy of Education Code section 44031 is attached to this letter.  You may prepare a response and have that response attached to this document to be placed in your personnel file.

The undersigned declares that, under penalty of perjury and the laws of the State of California, the foregoing is true and correct to the best of my information and belief.

Dated:  February 12, 2021

Lisa Fraser
Superintendent

CALIFORNIA EDUCATION CODE

## § 44031

(a) Every employee has the right to inspect personnel records pursuant to Section 1198.5 of the Labor Code.

(b) In addition to subdivision (a), all of the following shall apply to an employee of a school district:

(1) Information of a derogatory nature shall not be entered into an employee's personnel records unless and until the employee is given notice and an opportunity to review and comment on that information. The employee shall have the right to enter, and have attached to any derogatory statement, his or her own comments. The review shall take place during normal business hours and the employee shall be released from duties for this purpose without salary reduction.

(2) The employee shall not have the right to inspect personnel records at a time when the employee is actually required to render services to the district.

(3) A noncredentialed employee shall have access to his or her numerical scores obtained as a result of a written examination.

(4) Except as provided in paragraph (3), nothing in this section shall entitle an employee to review ratings, reports, or records that

(A) were obtained prior to the employment of the person involved,

(B) were prepared by identifiable examination committee members, or

(C) were obtained in connection with a promotional examination.

## § 44932

(a) A permanent employee shall not be dismissed except for one or more of the following causes:

(1) Immoral conduct, including, but not limited to, egregious misconduct. For purposes of this chapter, "egregious misconduct" is defined exclusively as immoral conduct that is the basis for an offense described in Section 44010 or 44011 of this code, or in Sections 11165.2 to 11165.6, inclusive, of the Penal Code.

(2) Unprofessional conduct.

(3) Commission, aiding, or advocating the commission of acts of criminal syndicalism, as prohibited by Chapter 188 of the Statutes of 1919, or in any amendment to that chapter.

(4) Dishonesty.

(5) Unsatisfactory performance.

(6) Evident unfitness for service.

(7) Physical or mental condition unfitting him or her to instruct or associate with children.

(8) Persistent violation of or refusal to obey the school laws of the state or reasonable regulations prescribed for the government of the public schools by the state board or by the governing board of the school district employing him or her.

23

(9) Conviction of a felony or of any crime involving moral turpitude.

(10) Violation of Section 51530 or conduct specified in Section 1028 of the Government Code, added by Chapter 1418 of the Statutes of 1947.

(11) Alcoholism or other drug abuse that makes the employee unfit to instruct or associate with children.

(b) The governing board of a school district may suspend without pay for a specific period of time on grounds of unprofessional conduct a permanent certificated employee or, in a school district with an average daily attendance of less than 250 pupils, a probationary employee, pursuant to the procedures specified in Sections 44933, 44934, 44934.1, 44935, 44936, 44937, 44943, and 44944. This authorization does not apply to a school district that has adopted a collective bargaining agreement pursuant to subdivision (b) of Section 3543.2 of the Government Code.

(Amended by Stats. 2015, Ch. 303, Sec. 86. Effective January 1, 2016.)


### § 44939

(a) This section applies only to dismissal or suspension proceedings initiated pursuant to Section 44934.

(b) Upon the filing of written charges, duly signed and verified by the person filing them with the governing board of a school district, or upon a written statement of charges formulated by the governing board of a school district, charging a permanent employee of the school district with immoral conduct, conviction of a felony or of any crime involving moral turpitude, with incompetency due to mental disability, with willful refusal to perform regular assignments without reasonable cause, as prescribed by reasonable rules and regulations of the employing school district, or with violation of Section 51530, the governing board of the school district may, if it deems that action necessary, immediately suspend the employee from his or her duties and give notice to him or her of his or her suspension, and that 30 days after service of the notice of dismissal, he or she will be dismissed, unless he or she demands a hearing.

(c) (1) An employee who has been placed on suspension pursuant to this section may serve and file with the Office of Administrative Hearings a motion for immediate reversal of suspension. Review of a motion filed pursuant to this section shall be limited to a determination as to whether the facts as alleged in the statement of charges, if true, are sufficient to constitute a basis for immediate suspension under this section. The motion shall include a memorandum of points and authorities setting forth law and argument supporting the employee's contention that the statement of charges does not set forth a sufficient basis for immediate suspension.

(2) The motion shall be served upon the governing board of the school district and filed with the Office of Administrative Hearings within 30 days after service upon the employee of the initial pleading in the matter. The governing board of the school district has the right to serve and file a written response to the motion before or at the time of hearing.

(3) The hearing on the motion for immediate reversal of suspension shall be held no later than 30 days after the motion is filed with the Office of Administrative Hearings.

(4) The administrative law judge shall, no later than 15 days after the hearing, issue an order denying or granting the motion. The order shall be in writing, and a copy of the order shall be served by the Office of Administrative Hearings upon the parties. The grant or denial of the motion shall be without prejudice to consideration by the Commission on Professional Competence, based upon the full evidentiary record before it, of the validity of the grounds for

dismissal. The ruling shall not be considered by the commission in determining the validity of the grounds for dismissal and shall not have any bearing on the commission's determination regarding the grounds for dismissal.

(5) An order granting a motion for immediate reversal of suspension shall become effective within five days of service of the order. The school district shall make the employee whole for any lost wages, benefits, and compensation within 14 days after service of an order granting the motion.

(6) A motion made pursuant to this section shall be the exclusive means of obtaining interlocutory review of suspension pending dismissal. The grant or denial of the motion is not subject to interlocutory judicial review.

(d) A motion for immediate reversal of suspension pursuant to this section does not affect the authority of a governing board of a school district to determine the physical placement and assignment of an employee who is suspended or placed on administrative leave during the review of the motion or while dismissal charges are pending.