BECKER DECL. EXHIBIT 9



*23800 Summit Road, Los Gatos California 95033*
*Phone: (408) 353-1101    Fax: (408) 353-8051*
*www.loma.k12.ca.us*
*Dr. Kevin Grier, Superintendent*
*Dr. Billy Martin, Principal*

July 6, 2021

Via Email Only (allanh@kallisti.com)

Allan Hessenflow

Re:     CPRA request

Dear Mr. Hessenflow:

This correspondence is in response to your June17, 2021 request for records submitted to the Loma Prieta Joint Union School District ("District").  The District interprets your request to be a request for public records pursuant to the California Public Records Act ("PRA"; Govt. Code section 6250 *et seq.*).  Thank you for your clarification email on June 29, 2021 wherein you detailed that you were requesting copies of "new or amended dismissal charges [related to David Kissner] since the February 12, 2021 dismissal letter and statement of charges."

The PRA requires a school district to provide non-privileged, non-exempt documents in response to a request that reasonably identifies a public record or records within its possession.  Additionally, the Government Code exempts certain categories of records from disclosure under the PRA and some of those exemptions may apply directly to your requests.  (*See e.g.*, Gov. Code §§ 6254, 6255; Evid. Code, §§ 954; 1040(b)(2).)  To the extent that the records you have requested fall within any of the categories covered by one or more of the exemptions, the District will not produce those records.  Government Code section 6255 also allows a government agency to withhold records if it can demonstrate that, on the facts of a particular case, the public interest served by withholding the records clearly outweighs the public interest served by disclosure.

The District has determined that your request is objected to on the grounds that it may require information to be disclosed which is exempt from the PRA based on: personnel, medical, or similar files, the disclosure of which would constitute an unwarranted invasion of personal privacy, attorney client privilege and attorney work product.  Government Code section 6254(c).

Specifically, under Government Code section 6255, a public entity may withhold a record if, based on the facts of the particular case, the public interest served by not disclosing the record clearly outweighs the public interest served by disclosing the record.  Additionally, the California Government Code excludes from disclosure other records, including "[r]ecords, the disclosure of

*Board of Trustees:*
*Deana A. Arnold, President    Ron Bourque, Vice-President*
*Ben Abeln, Member    Erin Asheghian, Member    Charlotte Boisvert-Khandelwal*

which is exempted or prohibited pursuant to federal or state law, including, but not limited to, provisions of the Evidence Code relating to privilege." (Gov. Code § 6254(k).)  In this regard, Article I, Section 1 of the California Constitution provides that:

> All people are by nature free and independent and have inalienable rights.  Among these are enjoying and defending life and liberty, acquiring, possessing, and protecting property, and pursuing and *obtaining safety*, happiness, *and privacy*.  (Emphasis added.)

> (*See also, New York Times v. Superior Court* (1990) 218 Cal.App.3d 1579.)

The District will not produce records that are exempt from disclosure under the PRA and/or state and federal law.  Documents potentially responsive to your request may be exempt from production under the PRA's pending litigation, preliminary drafts, attorney-client privilege, attorney work product privilege, and/or deliberative process privilege exemptions. (*See e.g.*, Gov. Code §§ 6254 and 6255.)  Additionally, the District will not disclose information that is likely to allow identification of students in violation of the federal Family Educational Rights and Privacy Act ("FERPA") and corresponding California state law.  (*See e.g.*, Gov. Code §§ 6254(k), 20 U.S.C. 1232g, and Ed. Code § 49076.)  Furthermore, the District will not disclose records which may constitute an unwarranted invasion of personal privacy and employee privacy.  (*See e.g.*, Gov. Code §§ 6254 (c) and 6255, *see also*, Cal. Const. Art. 1, §§ 1 and 3.)

Further, the California Court of Appeals held that records of complaints or investigations against a public employee can be disclosed only if "the complaint is of a substantial nature and there is reasonable cause to believe the complaint or charge of misconduct is well-founded." (See, *Bakersfield City School Dist. v. Superior Court* (2004) 118 Cal.App.4th 1041 at 1044; see also, *BRV, Inc. v. Superior Ct.* (2006) 143 Cal.App.4th 742.)  However, in such instances, a public agency's decision to release confidential documents under the PRA is reviewable by petition for writ of mandate in a "reverse-PRA" lawsuit. (See, *Marken v. Santa Monica-Malibu Unified School Dist.* (2012) 202 Cal.App.4th 1250.)

Notwithstanding and without waiving the aforementioned objections, the District has determined it is in possession of records responsive, at least in part, to your request and is providing you with a copy of the non-exempt, non-privileged, disclosable records responsive to your request herein.

As stated above, the District will not produce privileged document(s) or information encompassed by an exemption under the PRA or any state or federal law.  (*See e.g.*, Gov. Code §§ 6254 and 6255.)  Accordingly, the District will segregate and/or redact privileged and/or exempt information as needed.  To the extent the District inadvertently produces any privileged document that is encompassed by an exemption under the PRA or any state or federal law, such a production is not intended to be a waiver of any privilege or any right to withhold such documents or documents of a similar nature.  The District reserves the right to amend or supplement this response upon discovery of additional responsive documents.  As such, the District will notify you should it need to amend its response.

The District is aware of its obligation under Government Code section 6253.1 to assist you in making more focused and effective requests that reasonably describe an identifiable record or

records.  If, after reviewing this letter, you have any further questions or concerns, please contact me directly.

Sincerely,

Kevin Grier
Superintendent


Enclosure

1

2  **BEFORE A**
3  **COMMISSION ON PROFESSIONAL COMPETENCE**
   **LOMA PRIETA JOINT UNION SCHOOL DISTRICT**
4  **COUNTY OF SANTA CLARA**
   **STATE OF CALIFORNIA**
5

6  
7  In the Matter of:                                OAH NO. 2021050291

8  David Kissner,                                   **AMENDED NOTICE OF INTENT TO**
                                                    **DISMISS; AMENDED STATEMENT OF**
9  A permanent certificated employee,              **CHARGES**

10                           Respondent.            [Ed. Code, §§ 44932, 44934, and 44939]

11                                                  Dismissal Hearing:

12                                                  Date:    October 4-8, 11-15, 2021
                                                    Time:    9:00 a.m.
13                                                  Place:   Telephonic/Remote Hearing

14

15  **TO:    DAVID KISSNER, A PERMANENT CERTIFICATED EMPLOYEE OF THE LOMA**

16  **PRIETA JOINT UNION SCHOOL DISTRICT**

17          Under Education Code Sections 44932, 44934, and 44939, you are hereby notified that Lisa

18  Fraser, Superintendent, intends to file with the Board of Trustees ("Board") the following Amended

19  Notice of Intent to Dismiss ("Notice") and Amended Statement of Charges ("Charges") against you,

20  a permanent certificated employee of the Loma Prieta Joint Union School District ("District").  The

21  undersigned has read the Notice and Charges and certifies, under penalty of perjury under the laws of

22  the State of California, based on information and belief, that the contents are true.

23          The causes for your dismissal, any one of which is sufficient grounds under Education Code

24  section 44932, are set forth below in these Notice and Charges.

25                          **STATUTORY CAUSES FOR DISMISSAL**

26          Pursuant to Education Code Section 44932, there exists cause to dismiss you from your

27  employment with the District for:

28          1.      Immoral conduct (Education Code § 44932(a)(1));

---
- 1 -
**AMENDED NOTICE TO DISMISS AND AMENDED STATEMENT OF CHARGES**

2.    Unprofessional Conduct [Ed. Code, § 44932, subd. (a)(2)];

3.    Unsatisfactory Performance [Ed. Code § 44932, subd. (a)(5)];

4.    Evident Unfitness for Service [Ed. Code, § 44932, subd. (a)(6)]; and

5.    Persistent violation of or refusal to obey the school laws of the state or reasonable regulations prescribed for the government of the public schools by the state board or by the governing board of the school district employing him or her [Ed. Code, § 44932, subd. (a)(8)].

## STATEMENT OF CHARGES

The specific acts or omissions that constitute the Charges include the following:

1.  As a certificated employee of the District, you are required to maintain the highest ethical standards, exhibit professional behavior, and follow District policies and regulations.  You are further expected to exercise good judgment and maintain professional standards and boundaries when interacting with students.  (BP/E 4119.21.)

    (See Board Policy 4119.21, attached as Exhibit 1.)

2.  As an employee of the District, you are expected to exhibit professional and appropriate conduct.

3.  As you are aware, in 2018, very serious allegations of misconduct on your part were brought to the District's administration's attention via an anonymous complaint, which necessitated a formal investigation.  As such, an outside professional investigation firm was brought in to conduct the investigation.  The independent investigator, who interviewed multiple witnesses, reviewed documentation and other evidence, ultimately determined that you engaged in very serious misconduct.  These findings were carefully reviewed by the District and resulted in your receiving a formal letter of reprimand from the Superintendent.

    (See Letter of Reprimand dated October 18, 2018, attached as Exhibit 2.)

4.  Among the findings, which were made by the Investigator as part of the October 2018 allegations, by a preponderance of evidence, were the following:

**AMENDED NOTICE TO DISMISS AND AMENDED STATEMENT OF CHARGES**

a. It was determined that you knowingly provided an alcohol beverage to a minor(s) (District student, likely Grade 9 or 10) during a non-District activity organized and/or conducted by you.

b. Not only was it concluded that you knowingly provided an alcoholic beverage to a minor District student, but the Investigator also found that you ultimately admitted to this egregious conduct, claiming that you only gave the boy a "toast" and just a "sip of an alcoholic beverage", claiming it was "after a significant outdoor achievement." You also claimed that this involved a "high school age person." Despite admitting to this egregious and unlawful misconduct, you incredibly tried to justify your actions by claiming that the "offense in question is the legal equivalent of a traffic ticket…." (See October 18, 2018 D. Kissner Response, attached as Exhibit 3.)

c. Contrary to your claims in defense of your egregious misconduct, the Investigator uncovered evidence that you:

- You poured the minor a glass of whiskey (alcohol) in a "red cup";
- The minor was 15-years old;
- This incident occurred while others had gone on a walk and you remained alone with the minor back at the campsite;
- The minor did not go on the walk claiming he was tired;
- Instead of going on the walk, you and the minor listened to the others on a walkie-talkie type device;
- You and the minor laughed at the others who went on the walk;
- You were confronted by the minor's parents and Pastor Haak in a later meeting also attended by the Pastor's wife and your wife as well. Once again, you admitted to serving the alcohol, specifically whiskey (alcohol). In fact, you also claimed you "sinned in front of [ ] God," among other statements.
- The minor's family was extremely upset with you, and that you potentially exposed their son to a "potential addiction", given that their family has a history of alcoholism killing several relatives.

- 3 -

**AMENDED NOTICE TO DISMISS AND AMENDED STATEMENT OF CHARGES**

- In this encounter, you insisted you only had "one glass of whiskey (alcohol)" with the minor.
- Additionally, it was discussed that you had "guns" on the campsite premises at that same time.

d. Further, the Investigator noted that you were involved in a prior incident also involving another minor and alcohol. This incident was reported to the Investigator by Sheriff's Deputy Koenig.

(See Investigation Report of Patricia Elliott, Attorney At Law, attached as Exhibit 4.)

e. As a result of these astonishing findings, the investigator determined that you have a history of improperly providing alcohol to minors and persons under the age of 21, since it was also determined that you had been disciplined during your military service for giving alcohol to underage troop members. In fact, you <u>admitted</u> such past misconduct in a student interview you gave as part of a school assignment and have also told others of this incident, including Pastor Haak.

f. In addition, there were reports of other incidents involving you providing alcohol to minors on the same and other student trips. Interestingly, in your interview with the Investigator, when discussing the whiskey (alcohol) incident, you also claimed:

- The minor was a "co-leader" on a backpacking trip;
- You gave him "some extra responsibility to lead the kids";
- At the "end of the hike, I gave him a sip of whiskey (alcohol) as a toast, kind of like 'good job on your accomplishments'";
- "There were no incidents of anything beyond that";
- You also claimed that "I was just trying to treat him as an adult…";
- You have a tradition on these trips to have a "100 ML [of alcohol] in the evening," to enjoy your evening;
- When you gave the minor the whiskey (alcohol), you and he were "alone", and the younger kids "went on a night hike";

**AMENDED NOTICE TO DISMISS AND AMENDED STATEMENT OF CHARGES**

- Had the younger ones been there, you would "obviously not have offered" the minor the whiskey (alcohol). "It was meant to be discreet"; and
- You did not know at the time of the incident that the minor was suffering from mental health issues, but the minor's mother did inform you of that in the meeting with Pastor Haak and others after the incident occurred.

g. In addition to the alcohol incident(s) and other related findings, the Investigator determined there were other serious infractions on your part, which were also reviewed by the Superintendent and included in the October 18, 2018 reprimand. It was determined that there were other instances of misconduct by you with children that represent and compound the finding of a lack of professional boundaries and/or questionable teaching practices on your part. These include:

15. Failing to maintain professional boundaries, including via technology and sharing private texts/messages with minors/students.

16. Sharing personal information that could offend/frighten students.

17. Telling students inappropriate comments of a sexual nature, including informing male student that you could give him a "small binder clip" he could use on his penis to stop his need to go to the bathroom, after you denied him the ability to leave class to go to the restroom.

18. Potential grooming behavior, such as: singling out a minor and being alone with a minor; offering alcohol; asking about sex/sexual encounters; and posting images of youth partially unclothed on the internet.

5. As part of her investigation, the Investigator made the following specific findings by a preponderance of evidence with respect to additional incidents beyond the alcohol incident[s]):

a. You have made inappropriate personal comments to students/minors about death/violence, including, stories in class (6th and 8th grades) about serving in Iraq and traveling thereafter such as:

- A soldier being blown up while in a porta-potty;

- 5 -

**AMENDED NOTICE TO DISMISS AND AMENDED STATEMENT OF CHARGES**

- Others being "blown up by terrorists";
- "Bodies littering the road";
- People being "completely blown up";
- People being blow up so that only "their boot is left of them";
- Telling 6th graders that your troops had to "kill individual people";
- How you were "almost blown up by a rocket missile";
- Held at "gunpoint" with a "gun to [your] throat" during a biking trip;
- Setting up a bomb that "killed a bunch of terrorists"
- Troops were laughing watching "like twenty people being blown up";
- You thought it was funny since just before a dog was blown up and troops were very upset; and
- Telling violent stories.

b. Telling students that you liked the video(s) of Bambi (Disney character) being killed - even as a child - since you hated Disney.

c. You often showed video clips to students depicting death and violence.

d. Inappropriate classroom exercises/instruction included math "word problems" involving violence/death including:

- "Kids falling off cliffs" to find velocity;
- "Time to impact" using same example above;
- People dying;
- People falling out of buses;
- Children drowning;
- Children dying;
- Being thrown off a cliff;
- Around Christmas, using Santa Claus, as being "Hung, dying" by rope to figure out the concept of force;
- Using names of actual students and being killed/harmed, such as: Student "gets punched in the face", where guns are involved, "getting eaten by bears";

- 6 -

**AMENDED NOTICE TO DISMISS AND AMENDED STATEMENT OF CHARGES**

- Students being "sacrificed" (oftentimes these are students that are perceived to be disliked by you previously, or who may wear glasses, or be short, or other characteristics).

    e.  When interviewed by the investigator regarding these incidents, you did not deny these actions, and instead admitted that you have a "morbid sense of humor"; "kids love [your] math tests"; the word problems are "humorous" - and "I have got child labor and kids eaten by bears."

    f.  Also, the Investigator found that you inappropriately physically wrestled with boys on the classroom floor.

(See Exhibit 4.)

6.  Further, the investigator noted that when you were placed on paid administrative leave on or about May 1, 2018 you were given specific written directives including an obligation of confidentiality/protection of the confidentiality of information.  Specifically, you were informed that you had "an obligation to maintain the confidentiality of both the fact of and information concerning the investigation, and to not disclose such information to others, including employees, parents, and students of the District."  Moreover, you were provided notice that "violations of this policy may result in appropriate disciplinary action."

7.  Despite these strict directives and mandate of confidentiality, the Investigator found that you *failed* to comply and, in fact, disclosed information about the investigation to others, including District parents.  When interviewed in 2018, you admitted to the Investigator that you *failed* to comply with the confidentiality directives, but claimed it was "to a very limited degree"; then claimed to parents, you were on leave "related to the Walkout".  Also, despite telling the Investigator that your communication with District parents regarding the investigation was person-to-person, not via email; the Investigator found evidence to show that you were, in fact, communicating with numerous parents via email regarding your leave and pending investigation and lobbying them to pressure the District to bring you back from leave.  Among such was a mass email from your personal email account to undisclosed persons entitled: "Support Mr. Kissner - Our voices are stronger together!"

**AMENDED NOTICE TO DISMISS AND AMENDED STATEMENT OF CHARGES**

1    (See April 30, 2018 Letter, attached as Exhibit 5, Investigation Report of Patricia Elliott,

2    Attorney At Law (Exhibit 4), and email entitled "Support Mr. Kissner-Our voices are stronger

3    together!", attached as Exhibit 6.)

4    8.   Thereafter, on March 31, 2020, you received a formal Warning of Unprofessional Conduct,

5        following the receipt and review of concerns raised by a parent related to your treatment of

6        her son in a discriminatory and derogatory manner in the presence of other students during

7        an 8th grade science class.  Specifically, it was found that when the student professed to you

8        that another student was "bullying" him, you responded, "You should make fun of his slitty

9        eyes".  It was determined that this Warning of Unprofessional Conduct was necessary and

10       placed into your personnel file to ensure that you understood the serious nature of the

11       concerns and refrained from such misconduct in the future.

12       (See March 31, 2020 Warning of Unprofessional Conduct (and Response), attached as Exhibit

13       7.)

14   9.   Moreover, you were also given an opportunity to meet and respond to the allegations

15       contained in the March 31, 2020 Warning of Unprofessional Conduct, but instead refused to

16       meet and/or provide any factual information to refute the claims.  Your refusal to meet and

17       discuss the allegations and findings was in violation of your duty as a District employee to

18       cooperate with the fact-finding process.  Ultimately, you provided a written statement which

19       did not provide any factual response, but instead focused on other irrelevant matters related

20       to another personnel matter from 2018.

21       (Id.)

22   10.  Thereafter, on April 2, 2020, you received an additional formal Warning of Unsatisfactory

23       Performance following another student incident.  In this case, it was found that after a

24       student arrived late to a lunch detention, instead of handling this additional infraction in a

25       civil and professional manner as the teacher, you became very angry and slammed your fist

26       on the table.  When the student attempted to explain why she was late, you loudly stated,

27       "No shit, ███." Not only was this uncalled for, but it also upset the student and the rest of

28       the students present.  It was determined that this Warning was necessary and placed into

- 8 -

**AMENDED NOTICE TO DISMISS AND AMENDED STATEMENT OF CHARGES**

your personnel file to ensure that you understood the serious nature of the concerns and refrained from such unsatisfactory misconduct in the future.

(See April 2, 2020 Warning of Unsatisfactory Performance (and Response), attached as Exhibit 8.)

11. Once again, you were given an opportunity to meet and respond to the allegations but refused to meet and/or provide any factual information to refute the claims. Your refusal to meet and/or respond to the allegations was in violation of your duty as a District employee to cooperate with the fact-finding process. Ultimately, you provided a written statement which did not provide any factual response, but instead again focused on other irrelevant matters related to another personnel matter from 2018.

(Id.)

12. On August 27, 2020, you were sent a Request for Information (regarding Remote Wilderness School Camps), from the Superintendent based on the District's receipt of concerns raised by a community member with respect to the Remote Wilderness School Camps ("Camps"). The Camps were referencing trips conducted by you and in apparent conflict with regular school days/hours for District students, as well as contracted work hours for you as a teacher. As a result, you were directed to provide by the next day, August 28, 2020, a description of the Camps proposed activities planned during school hours. The purpose was to ensure legality for the District and protection for you from potential liability as well related to the Camps. You *failed* to comply with the directive and provide the District with the requested relevant information.

(See August 27, 2020 Request for Information, attached as Exhibit 9.)

13. Following your failure to comply with the prior directive/request for information, it was then necessary for the District to follow-up with you for more specific information to ensure the Camps were appropriate for District students and for you as an employee to attend. As such, on August 28, 2020, you were provided with a detailed written questionnaire, which you also ignored and *failed* to provide a response. By failing to respond to the questionnaire you once again ignored specific directives given to you by the District. Each of the questions

- 9 -

**AMENDED NOTICE TO DISMISS AND AMENDED STATEMENT OF CHARGES**

1  contained in the questionnaire were necessary for the District to determine the

2  appropriateness and legality of your participation and administration of these Camps trips

3  involving District students potentially during school hours and/or your duty time.

4  (See August 28, 2020 Remote Wilderness School Camps memo, attached as Exhibit 10.)

5  14. Following the above-described incidents, shortly thereafter, the District received a new

6  further concern related to you sending emails to District student(s) directly on their

7  personal/school accounts, as well as to many parents in the community as well.  In one

8  instance, you sent an email to an 11-year old student's school email account.  Your email to

9  the 11-year old student concerned student grading and providing extra math help through an

10  "online after school homework center" with a direct link to your personal website(s),

11  included the En Gedi Project and an opportunity to donate money.  Sending personal emails

12  to students and parents advertising your own online personal website and soliciting

13  donations is inappropriate.

14  (See September 8, 2020 emails, attached as Exhibit 11.)

15  15. As a result of the concerns received from community members about your September 8,

16  2020 emails, your site Principal, Billy Martin, contacted you on September 14, 2020 to

17  inquire about the matters as they related to your promotion of Mountain Math Initiative

18  ("MMI") and other non-District activities.  Specifically, Dr. Martin requested to know

19  whether you were emailing students directly and/or mass emailing students; whether the

20  MMI class was taking place during your District duty time; whether you informed a

21  student/parent that MMI attendance would qualify for school credit or replace missing

22  credits; and whether you recommended MMI to the family of a special-needs student as an

23  alternative resource.

24  16. Rather than simply providing Principal Martin with the information he requested from you,

25  you requested a meeting with him expressing that you were "getting a bit frustrated with

26  how this is playing out."  In response, Dr. Martin offered you several times to meet that day

27  and the next.  You then disrespectfully responded that you would meet with him the next

28

- 10 -

**AMENDED NOTICE TO DISMISS AND AMENDED STATEMENT OF CHARGES**

day and "sit on my frustrated and sarcastic email reply for now (said frustration and sarcasm not at all directed towards you)."

(See September 14, 2020 emails, attached as Exhibit 12.)

17. In October of 2020, the District received a complaint from a parent regarding your teaching practices. Specifically, the parent mentioned that her son was a former student of yours and that you chastised her son and physically tore up her son's math work in front of the class because he used a pen (instead of pencil) on a math assignment. She went on to request that her daughter not be placed in your class for the current school year.

18. In the fall of 2020, due to parent concerns and confusion over whether some students in Math 7 were allowed to receive class attendance credit for alternatively attending your MMI outside Math program, Principal Martin and Superintendent Fraser met with parents to discuss such concerns. Following that meeting, on October 8, 2020, Principal Martin emailed you with a summary of the meeting, which included specific parameters for Math 7 and requirements for participation. Parents were also informed and assured that MMI is an outside enrichment program - not supplanting/replacing any District Math course/coursework; and confirming that attendance in MMI did not count as attendance in any District Math course/class, including CTE, etc. In closing to his October 8, 2020 email, Principal Martin directed you to provide a "list of students with whom attendance at CTE may have been communicated as optional or who believe participation in Mountain Math Initiative counts as attendance/participation for their CTE classes. I want to make sure those families get the same message as the ones with whom I met today."

(See October 8, 2020 emails, attached as Exhibit 13.)

19. Despite the October 8, 2020 email directive from Principal Martin in which you were clearly directed to provide the list of students who were misinformed by you that attendance at CTE was optional or who participated in MMI program; as of October 13, 2020, you had *failed* to adhere to said request. As such, on October 13, 2020, Principal Martin emailed you again with his request and further stated, "I am unable to tell from your previous response if you are refusing to provide me the requested information or if you need additional time to do

- 11 -

**AMENDED NOTICE TO DISMISS AND AMENDED STATEMENT OF CHARGES**

so." The previous response he referenced was a three-page email you wrote which clearly disagreed with the District's approach and directives, but also *failed* to include the student list required of you on October 8[th].

(See October 13, 2020 (and related) emails, attached as Exhibit 14.)

20. Although on October 13, 2020, you finally provide a student list to Dr. Martin, the list was in fact just an entire class roster and was not in compliance with the prior and specific directive to provide a list of students that were informed by you that MMI would count towards attendance credit for District Math courses; you also informed Principal Martin that you incorrectly communicated to students/parents that "any interaction whatsoever with a teacher during the day qualifies as being present in class for attendance purposes." As a result of your statements, on October 14th, Principal Martin informed you that several parents still conveyed that they understood that students are "not required to attend their CT math course if they are participating in Mountain Math Initiative and that the work done, and the grade earned for that after school enrichment course will be applied to their CT math course." Principal Martin reiterated to you "[t]his clearly indicates an intention of supplanting that after school activity for their CT math course." Principal Martin went on to reemphasize to you, "This is an action I need to make clear is not [an] acceptable practice." He also re-emphasized that "a qualifying attendance event must be completed by the end of the school day for the day the attendance to count. A qualifying attendance event must happen within the school day; after school hours do not count toward positive attendance. "In closing, Principal Martin re-directed you to provide the actual list of students (names of families who have been explicitly told their child does not have to attend your CT math course and instead can attend Mountain Math for District math credit/attendance).

(See October 13, 2020 and October 14, 2020 emails, attached as Exhibit 15.)

21. On October 18, 2020, the District learned from a disgruntled parent(s) that you were very late with your Math grading, and as a result they were uninformed that their child's grade had dropped from an "A/B" to a "C" on the last day of the quarter. Further, the late grade report showed the parent that their son had low marks on several assignments from a full

**AMENDED NOTICE TO DISMISS AND AMENDED STATEMENT OF CHARGES**

month prior.  The parent expressed great concern and frustration since he/she frequently checked the online system (PowerSchool) and saw no signs of problems prior to the low grade being given - which indicated that you *failed* to enter such relevant information until the very end of the period.  Not only had you not properly/timely entered the information, but you also neglected to otherwise communicate concerns with the parent during the quarter.  The parent closed their email to you (copied to your Principal) declaring, "Poorly done!"

(See October 14, 2020 emails, attached as Exhibit 16.)

22. Although that same day you responded to the parent in an email seemingly to apologize for your failures, you then inappropriately went on attempt to excuse your behavior by claiming, "I can assure that this is not for lack of time spent lesson planning, delivering instruction, meeting with students who need help, answering insane amounts of emails, and other time-consuming admin tasks like attendance that take all day."  Not only was this additional information uncalled for in an "apology" to a parent, but much of it was untrue and frankly embarrassing to you and the District.  Further, you then continued on for an additional two paragraphs, placing the blame on the student/parents for the problems with the student's grades, before apologizing again for your failures to timely update and grade the student's assignments.

(See October 18, 2020 email, attached as Exhibit 17.)

23. Besides inappropriately emailing that parent, you also proceeded to mass-email each family in your 7ᵃ grade Math class to seemingly update and explain grading and other class activities on October 18ᵃ (then other classes on October 22ⁿᵈ [8ᵃ Grade Physical Science] and 26ᵃ [6ᵃ Grade Math]).  In virtually identical letters, although you attempted to apologize for being "behind" on PowerSchool, you also used poor judgment in stating: "this has been a 'try to keep my head above water' type of quarter."  You further made a proofing/typographical error in *each* (almost identical) letter by stating: "I am foregoing [sp] the normal labs…".  Moreover, the October 22ⁿᵈ letter to 8ᵃ Grade "Physical Science"

**AMENDED NOTICE TO DISMISS AND AMENDED STATEMENT OF CHARGES**

1    families incorrectly addresses "7ᵗʰ grade math classes." That letter was also sent to families

2    at 1:49 a.m. – which may explain the apparent "cut and paste" error.

3    (See October 18, 22, 26, 2020 emails, attached as Exhibit 18.)

4    24. Subsequently, you were contacted by various District administrators/staff to help you with

5    PowerSchool, to allow you to improve your updating of grades and to facilitate IEP goal

6    updates as well. In an effort to assist you, Staci Ljepava, Director of Student Services and

7    Special Education and Randy Cohen, RSP Teacher/Case Manager, each reached out to you

8    with respect to assist you with properly utilizing PowerSchool. Nevertheless, as of October

9    27, 2020, according to the Director Ljepava, you had still *failed* to enter the necessary IEP

10   goal information into Power School. In fact, you had not done so by October 23rd despite

11   Dr. Cohen's efforts to help you gather such data. Further, it was discovered that you had not

12   updated 6th grade Math scores since September 11, 2020 (42 days prior). As a result, in an

13   October 27ᵗʰ email from Director Ljepava, she informed you that this required "immediate

14   action" and she added that "[i]n the future, if you need more time please communicate this

15   with the case manager...to remain in IEP compliance." She then directed you to "Please

16   update myself and the case manager on the status of your grade updates, so I can respond

17   accordingly to the [IEP] team with next steps."

18   (See October 27, 2020 email, attached hereto as Exhibit 19.)

19   25. On November 3, 2020, the District received a further complaint from a 6th Grade parent,

20   who was upset with your teaching her child's class. Specifically, the parent stated that there

21   were several Zoom class sessions recently (while you were apparently "away in Tahoe")

22   "ending after just a few minutes or just canceled out right". Additionally, the parent was

23   upset that you instructed students to grade their own tests. The parent felt that students self-

24   grading their own tests neglected the student's need to learn from mistakes - rather than just

25   check for the "right answer". The parent was also put off by your prior mass email on

26   October 26th updating parents on the late grading/PowerSchool concerns but stating that

27   you were "trying to keep my head above water" - as part of your excuse/apology. Of

28   particular note, the parent remarked in closing, "I know he has been providing education

- 14 -

**AMENDED NOTICE TO DISMISS AND AMENDED STATEMENT OF CHARGES**

assistance for kids during his camping trips, but it seems this is causing him issues in keeping up with his teaching position at CT." The parent went on to note, "He is planning another lengthy (3 week) trip in November - is there a way to have someone in the administration join [Student] classes to make sure he is providing the lessons for kids in his CT classes?"

(See November 3, 2020 and related emails, attached as Exhibit 20.)

26. As a result of the November 3rd complaint, your Principal informed you of the concerns, and provided you with an email (at 10:21 a.m. - November 12, 2020) containing specific requests for information in order to commence a proper review.  These included the following:

"To date, have you canceled any synchronous Zoom classes that are regularly planned for Mondays, Tuesday, Thursdays. Or Fridays?

If yes, what days and/or what classes were canceled?

If a class was canceled what was the reason for the cancellation?

How far in advance are notified of cancellations?

How do you notify students of the cancellation?

Did you assign to students of any canceled classes work or other instruction equal to 35 minutes?"

In response to these simple and specific requests which were necessary to make sure that you were complying with proper remote learning attendance and credit requirements, you responded in the evening at 9:36 p.m. that, "In general, I do not participate in any investigation or inquiry being conducted by the school district because of previous experiences." You went on to add, "I have never skipped or canceled a Zoom meeting." Further, you stated that, "The only time that I have not utilized near the full scheduled Zoom time were the few days where there were power outages on the mountain or evacuations."

(See November 12, 2020 email, Correspondence attached as Exhibit 21.)

27. As a further result of the November 3rd complaint and information brought to the District's attention as to your Remote Wilderness School Camps trip planned for November, on

**AMENDED NOTICE TO DISMISS AND AMENDED STATEMENT OF CHARGES**

November 5, 2020, the Superintendent provided you with a letter requesting important and necessary information (similar to the directive you received in August of 2020- to which you *failed* to respond) to better assess the situation and provide assurances that your planned activities were appropriate and within the state and federal education law confines and mandates for a District teacher and its students involved.  In sum, this letter reminded you of recent Covid-19 restrictions and related State and local policies and mandates.  It also cautioned you to adhere to other state mandates based on your intended destination(s) since you were to be transporting and otherwise supervising District students.  Furthermore, the letter specifically directed you "as part of the District's responsibilities owed to all students and staff" to "promptly provide us with information concerning [20 listed areas of concern: ranging from names of each student; Covid-19 preparations and appropriate distance learning/teaching methods; insurance information; parent permission slips; methods of transport/safety; adult supervision/precautions, and activities beyond teaching/learning etc.].  Additionally, this letter referenced and re-incorporated the prior August 28, 2020 notice/directives for your response as well.  In closing, the Superintendent's notice made it abundantly clear that, "If you are unable or unwilling to [provide the information] promptly, completely, and in writing, before you depart", you must "advise the [Superintendent] immediately and appropriately action will be taken as permitted by the circumstances."  You were also cautioned that "We all have an obligation to comply with existing health and safety laws during this time, along with longstanding standards for remote learning opportunities and education law requirements.  It is trusted that you understand the importance of meeting our respective obligations."  You were also reminded that your failure to comply could result in disciplinary action.

(See November 5, 2020 Letter from Superintendent, attached as Exhibit 22.)

28. Despite the very clear, comprehensive, and imperative directives/information requests given to you in the aforementioned November 5th Superintendent's letter, on November 7, 2020, you responded in a short email to the Superintendent as follows:

- 16 -

**AMENDED NOTICE TO DISMISS AND AMENDED STATEMENT OF CHARGES**

1    "Dear Lisa,

2    Thank you for your email outlining your concerns. I am confident that: I have been -- and

3    will continue to - fully meet (and exceed) my professional obligations equitably to all of my

4    students; Nothing about my physical location or the people that happen to be in my vicinity

5    have any impact on my performance of my professional duties; There is nothing about my

6    physical location or the people that happen to be in my vicinity that has anything to do with

7    the District; and I am not in violation of any laws or District policies.

8    Sincerely,

9    David Kissner"

10    To date, you have *failed* to comply with the specific requested information from the

11    November 5th letter and/or the August 28th letter.

12    (See November 7, 2020 email to Superintendent, attached as Exhibit 23.)

13    29. Thereafter, on December 11, 2020, you received email correspondence from a parent of a

14    student in one of your math classes regarding his child's math grade. Dr. Martin was carbon

15    copied on the email. The parent detailed that he once again found himself in the

16    "uncomfortable potion of not knowing what [his child's] math grade will be for the end of

17    the semester." The parent complained that no homework grades have been posted by you to

18    Powerschool since before Halloween. The parent went on to complain that no grades have

19    been posted by you to google classroom either. The parent noted the importance of parent

20    involvement in the remote schooling process and stated that he is "not able to do [his] job to

21    make sure [his child] lives up to school requirements unless his performance is visible to

22    [him]." The parent asked that grades be updated by you to be current.

23    (See December 11, 2020 email to you from ██████, attached as Exhibit 24.)

24    30. That same day, you also received email correspondence from another parent in one of your

25    classes regarding her child's grade. Dr. Martin was copied on this email. The parent noted

26    that she was emailing you again about the lack of parental knowledge of student progress in

27    your class. The parent noted that Powerschool has only one grade posted since October 28,

28    2020; a test taken on November 16, 2020. She went on to detail that not one assignment

AMENDED NOTICE TO DISMISS AND AMENDED STATEMENT OF CHARGES

prior or after the November 16, 2020 test has been posted.  The parent also detailed that
Google classroom does not have her child's progress updated either.  She noted in Google
classroom she can only see that one assignment has been submitted by her child.  The parent
related that that you have *failed* to provide viable feedback on either platform about her
daughter's progress.  She related that she is unable to get her child the help that she will
need to succeed without feedback from you as her teacher.  Further, the parent mentioned
that when she expressed her concerns about your failure to provide feedback or update
grades via PowerSchool or Google classroom last quarter, you assured her that her child was
doing fine and said that you would be more vigilant about posting grades in PowerSchool
for parents to access and see the progress of their child.  The parents stated, "this has not
happened."  The parent then noted that since it is almost the end of the quarter, it would be
very difficult to ███████ the grade.  The parent stated that she: "is thoroughly disappointed
in the lack of information from you and [she] know[s] of many other families that have
expressed the same frustrations and concerns.

(See December 11, 2020 email from ███████, attached as Exhibit 25.)

31. Thereafter, on December 14, 2020, Dr. Martin, your supervising Principal at CT English
Middle School, received email correspondence from another parent whose child is enrolled
in your math class.  The parent provided feedback to Dr. Martin that you had *failed* to grade
old assignments.  He noted that a few assignments, four, had been graded from November
16, 2020 and December 1-4, 2020; but that no assignments had been graded since December
4, 2020.  The parent stated that he is "VERY UNHAPPY and . . . formally making a
complaint." (emphasis in the original) The parent also detailed that other parents are
complaining about your failures to update and post grades in a timely fashion to allow
parents and students to track their progress and allow for improvement.

(See December 14, 2020 email correspondence to B. Martin, attached as Exhibit 26.)

32. That same day, the Superintendent and Dr. Martin received email correspondence from
another parent whose student is enrolled in your math class.  The parent related that their
child's math grade was not only "NOT current", but that you had not "even been grading or

AMENDED NOTICE TO DISMISS AND AMENDED STATEMENT OF CHARGES

checking" homework "ALL quarter." The parent went on to note that it looked like you had started grading "the kid's papers now-at the END of the quarter." The parent stated that he had been checking Google classroom and at no point had you given his child feedback on progress. The parent questioned how his child can be expected to ████ his/her math skills, or course correct throughout the quarter, if he/she does not know when his/her homework is correct. The parent expressed frustration that because you had not provided feedback or updated grades throughout the quarter, there is now ████████████████ ████. The parent went on to note that while they are trying to be patient with distant learning, some accountability from the teachers is required and based on his communications with you, their family has not found you to be accountable. The parent then inquired as to how your failures will be fixed moving forward.

(See December 14, 2020 email correspondence to B. Martin and L. Fraser, attached as Exhibit 27.)

33. Appropriately, on December 16, 2020, you received a Letter of Reprimand from Dr. Martin regarding your failure of duties and unprofessional email response. Dr. Martin detailed that on December 11, 2020 he was made aware of your continued inability to provide timely progress reports regarding grades to your students and families. Dr. Martin noted that you were contacted via email, with him being cc'd, on December 11, 2020 by a parent concerned that there had not been adequate information provided to determine his child's math grade. Dr. Martin also noted that he had received an additional parent complaint along the same vein reporting that you had not made updates to grades since mid-October 2020. Lastly, Dr. Martin detailed that he was in receipt of two additional complaints via email on December 14, 2020 by another family indicating this behavior is a dis-service to students and families.   Dr. Martin provided that upon review of PowerSchool, it was confirmed that you had not fulfilled your professional obligation of reporting student grades and progress. For example, during the period of October 30, 2020 to November 30, 2020, only one grade had been posted for your students in your period 2 Math 6 course. Dr. Martin informed you that "this negatively impacts the learning of students in that they are not provided accurate and

- 19 -

**AMENDED NOTICE TO DISMISS AND AMENDED STATEMENT OF CHARGES**

timely feedback related to their completed assignments.  This failure on your part hinders the ability of students to take corrective measures to seek assistance when needed." Dr. Martin proceeded to note that this behavior had also previously occurred during the first quarter of the 2020 school year and at that time, you noted you were behind, trying to keep your head above water, and that it was something you were committed to working on. During a phone conversation with Dr. Martin on October 28, 2020, he discussed with you the topic of grading and feedback and you indicated that you were aware of this being an issue and believed you would rectify the situation for quarter 2. Appropriately, at that time, Dr. Martin encouraged you to reach out to him if you needed additional support to be able to report grades and provide feedback in a timely manner. Dr. Martin then reminded and reprimanded you that "providing feedback, grades, and progress reports is a basic and important function of teaching."  He noted that "your inability to clearly and regularly communicate student progress and grades to students and families demonstrates a failure to perform the functions of your position as a classroom teacher. This behavior negatively impacts student performance and the ability of families to provide adequate support for their child." Dr. Martin further reprimanded you regarding an inappropriate, disrespectful, and unprofessional email response you sent to a parent on December 12, 2020, after she provided you her recurring concerns about your ongoing failure to properly and in a timely manner communicate grades and performance with students and families. Incredibly, your December 12th response to this parent did not address her concern(s), and instead was laced with sarcasm and disrespect for her issues. Dr. Martin admonished you that "responding in this manner adversely affects the professional relationship with the parent that is necessary for student success - and frankly makes a bad situation even worse." Dr. Martin went on to detail that this is not the type of professional communication expected of you in the performance of your duties. He reminded you that you are expected to respond to parent inquiries in a professional, courteous and supportive manner. He detailed that your responses should directly address the question or concern only, without the inclusion of

**AMENDED NOTICE TO DISMISS AND AMENDED STATEMENT OF CHARGES**

sarcasm, excuses, or other inappropriate discussion. Accordingly, Dr. Martin advised you that effective immediately, and until further notice, you are required to:

   a. Update PowerTeacher Pro at least one time each week in a manner that clearly communicates student grade progress; and otherwise not allow yourself to continue to fall behind on PowerSchool and/or timely providing parents/students with grades and progress.

   b. Send responses to parent complaints and/or concerns to me, as your Principal, for review and approval *prior* to sending the response to any parent/student.

   c. Always communicate with parents/students and others in a professional manner.

(See December 16, 2020 Letter of Reprimand, attached hereto as Exhibit 28.)

34. The next day, December 17, 2020, Dr. Martin sent you an email correspondence entitled "Response Requested-Alleged Algebra Course". In this email Dr. Martin informed you that it had recently been brought to his attention that you may be hosting an unapproved Algebra course for a select group of students during the time designated as "office hours and student support" from 1:00 p.m. to 2:30 p.m. Appropriately, to help him understand the situation and so that he could determine what, if anything needs to be done further, he asked that you provide answers to each of the following questions by December 18 at 3 p.m.:

   a. Are you currently conducting a class on Mondays, Tuesdays, and Thursdays at 1p.m. for algebra instruction?

   b. Are you hosting this class using a non-school provided platform or a personal Zoom account?

   c. Are the students attending the course currently enrolled in any of your CT math courses?

   d. How have the students participating in this class been chosen?

   e. Is this class open to any student at any grade who wishes to participate?

   f. What arrangements have you made for students enrolled in your CT courses to access you for help and support during the office hours that are impacted by this class?

   g. What arrangements have you made for students participating in this class to access office hours and supports offered by other teachers?

- 21 -

**AMENDED NOTICE TO DISMISS AND AMENDED STATEMENT OF CHARGES**

h.  The students participating in this class are receiving an additional 90+ minutes of instruction per week. What plans have you made to provide supplemental instructional minutes to other students, particularly any students in your 1-6 period classes who struggle?

i.  How have you communicated the logistics of this class to participants and parents?

j.  Did you seek parent permission for students to participate in this class?

To date, you have *failed* to provide a response to Dr. Martin's questions in violation of his directives to do so.

(See December 17, 2020 email correspondence entitled "Response Requested-Alleged Algebra Course", attached hereto as Exhibit 29.)

35. Recently, on January 28, 2021, the District received a note of concern from a parent, who wanted to bring attention to the fact that you previously (in or about October 2020) shared graphic stories with his son and other classmates related to your military experience in Afghanistan, and specifically "combat fatalities." This parent, currently serving overseas, felt your stories were highly inappropriate for youth, but specifically, his son, while he was away serving - and facing the peril(s) of military action.

(See January 28, 2021 email correspondence entitled "Class Discussions", attached hereto as Exhibit 30.)

36. Not only does this email concern the District in that it comes from a military parent about your inappropriate discussions, but further it shows that - almost two (2) years after the 2018 investigation and aftermath, including specific reprimand and counseling, you continued to engage in this inappropriate conduct and flatly refused to follow prior directives.

37. In addition, in the January 28th Email forwards, you mentioned to that parent (in an October 19, 2020 email) that you could not meet in person - since you have "been out of state since March - taking remote teaching to new levels of remote." This statement is not only inappropriate to provide to a parent, but, if true, would indicate - by your admission - that you were neglecting your duties and using your "remote" teaching as an excuse.

**AMENDED NOTICE TO DISMISS AND AMENDED STATEMENT OF CHARGES**

38. On or about January 28-29, 2021, the District, through the office at CT English Middle School, received a parent inquiry about student attendance the prior week. Specifically, the parent inquired about her daughter possibly missing a "1PM Math class" and was concerned. This inquiry caused some confusion in the office, since there was no such class, so the office asked the parent to clarify and she then confirmed after talking to her child that it was "the after school math class with Mr. Kissner at 1 p.m." The parent apologized for the "confusion." Most concerning to the District, this exchange shows that you - as recently as January 25th - continued to ignore prior directives to cease this activity during school and duty hours.

(See January 28-29, 2021 Email correspondence entitled "Power outage 1/25", attached hereto as Exhibit 31.)

39. Similarly, on January 29th, the District received additional information showing that you continued to violate its directives, after another student informed Principal Martin that he could not move math classes (Math 7 to 8) because he already attends a "1pm advanced math class with Mr. Kissner."

(See January 29, 2021 email correspondence entitled "dk algebra class", attached as Exhibit 32.)

40. Among other instances, the District also has determined that back in November of 2020, you also appear to have violated these directives as well. Specifically, in this email exchange between you and a student, after the student informed you that he could not make it to "math" that day, you responded by asking if he was "planning to continue to meet at 1 Mon, Tue, Thur for algebra separately." See November 9, 2021 Zoom chat correspondence (snapshot), attached as Exhibit 33.

41. To compound your failures and misconduct in Charges 38-40, your actions directly evidence insubordination after you had been repeatedly directed to not conduct the "after school math class."

42. Also, upon a recent review of District Zoom records (applicable to you and during your required duty time for "office hours" this past school year), it appears that you *failed* to

- 23 -

AMENDED NOTICE TO DISMISS AND AMENDED STATEMENT OF CHARGES

conduct and/or attend required "office hours" on numerous occasions (approximately 29 days) from August 2020-January 2021.  Incredibly, it appears that many of these were shortly after your Principal made a formal directive(s) for information and confirmation in November/December to which you ignored and *failed* to respond.

(See Zoom usage log (account:dkissner@loma.k12.ca.us), attached as Exhibit 34.)

43. Moreover, it now also appears that you were dishonest to the District in November when, in response to your Principal, you specifically stated in your November 12th email (Charge 26 - Exhibit 21) that:

   a. "I have never skipped or canceled a Zoom meeting"; and

   b. "The only time that I have not utilized near the full scheduled Zoom time were the few days where there were power outages on the mountain or evacuations."

(See Exhibit 21 (Charge 26).)

44. In sum, your misconduct as identified herein is contrary to the District's expectations that our teachers, and frankly all staff, create and maintain a productive, safe, inclusive, and effective learning environment in our schools.  Furthermore, your actions demonstrate your inability and/or failure to comply with the District's policies, administrative regulations, school rules, management directives, and the duties and responsibilities of your position as a certificated teacher, as previously described above.  Specifically:

   a. You have repeatedly chosen to ignore District directives and counseling regarding remote instruction and instead have chosen to operate as you "want" without authorization to do so.

   b. By meeting, traveling, and/or providing instruction with select District students and conducting "in person" instruction during the current COVID 19 pandemic while at the time the District itself had only been authorized to conduct "remote" instruction due to state and public health orders and restrictions, you are in violation of District policies, directives, intent, and local/state mandates.

   c. Failing to seek prior authorization for these non-sanctioned "in person" instruction classes that are/were taking place off-District premises during the school day and duty

**AMENDED NOTICE TO DISMISS AND AMENDED STATEMENT OF CHARGES**

time, is insubordinate and unacceptable conduct, as well as further evidence that you are unable and unwilling to follow state, local and District instructional and operation protocols and rules.

    d.  By conducting un-sanctioned "in person" instruction in violation of current COVID restrictions in place for the District and its students, staff and families, you also have potentially exposed students to physical danger, as well as the District to liability and government sanction.

45. As you are aware, in March of 2021 additional very serious allegations of misconduct on your part were brought to the District administration's attention via three separate complaints, which necessitated a formal investigation. An outside professional investigation firm was brought in to conduct the investigation. The independent investigator, who interviewed multiple witnesses, reviewed documentation and other evidence, ultimately determined that you engaged in very serious misconduct as part of an April 2019 camping trip with former District students. (See June 8, 2021 Confidential Report of Investigation, attached as Exhibit 35.)

46. Among the findings, which were made by the Investigator as part of the March 2021 complaint allegations, by a preponderance of evidence, were the following:

    a.  In April 2019, you organized a week-long camping trip to Death Valley, California (hereafter "Camping Trip") for minors, including students of the District.   As the organizer of this camping trip, you planned the trip and required that all parents sign a permission slip for the trip. District students attending this camping trip were left in your care and supervision.

    b.  During this Camping Trip, at least two students, who were under your direct supervision and control, engaged in illegal drug use. These two minor students were found by you to have been smoking marijuana. However, despite direct knowledge of this illegal and serious misconduct involving a controlled substance by two minors and District students, you failed to inform the minors' parents of this serious incident involving drug abuse upon discovery.

**AMENDED NOTICE TO DISMISS AND AMENDED STATEMENT OF CHARGES**

c. During the Camping Trip, you also drove four minor boys out of the state of California to Las Vegas, Nevada, without parental permission or notification, to obtain a replacement trailer part. During your drive to Las Vegas, you decided to stop with the group of minor boys at a liquor (convenience) store before checking into a hotel for the night. Before entering the liquor store, you asked two of the minor boys, who you knew had engaged in illegal drug use the previous evening, if they wanted something to "drink." In fact, the investigator noted that when she interviewed both of the minor boys about your solicitation to buy them alcohol, both of the minor boys made statements that inferred that when asked if they wanted something to "drink," they understood that you meant alcohol. You then proceeded to purchase a bottle of whiskey (alcohol) at the liquor store and then drove with the four minor boys to a hotel. In fact, you admitted to the investigator that you purchased the whiskey (alcohol). After checking in to the hotel, you and the group of minor boys went up to the single hotel room to shower and rest up for the day. Shockingly, you allowed these boys to take shots of the whiskey (alcohol) you had purchased compounded by the fact that these were the same two boys who had engaged in illegal drug use the previous evening. Not only did the two boys take shots of whiskey (alcohol), but you also poured yourself a drink of the whiskey (alcohol), sat on the bed, and began to watch TV.

d. You then proceeded to give the two minor boys, who were now inebriated, permission to leave the hotel room and explore the Las Vegas "strip." In fact, the investigator detailed that one of the minor boys testified that you related, "Alright, you guys can have some, but not too much, and be back in 30 minutes." The investigator concluded that you allowed minors to consume alcohol and then wander around the streets of Las Vegas until approximately 4:00 A.M., while under the influence of alcohol and unaccompanied by an adult. In fact, you initially informed the two minors, "you can't walk on the strip it's dangerous;" yet despite your own admission that walking the strip is dangerous, you allowed the minors to leave the hotel room, unaccompanied and inebriated, to do just that until early the next morning.

- 26 -

**AMENDED NOTICE TO DISMISS AND AMENDED STATEMENT OF CHARGES**

e. The investigator concluded that you either gave alcohol to the minors and/or did not reasonably prevent minors from consuming alcohol while in your care. She also concluded that you exacerbated this misconduct by leaving the whiskey (alcohol) unattended (showering/allegedly falling asleep), in the open, in front of four (4) teenage boys; two (2) of which had previously engaged in smoking "weed" (marijuana) the day prior, and one that had recently completed substance abuse treatment.

f. Your decision to allow at least two minor children to consume alcohol and explore the Las Vegas strip unsupervised demonstrates your poor judgement and improper conduct. Your misconduct of allowing the minors to go out on the Las Vegas Strip while under the influence of alcohol was an endangerment to the health and/or safety of the two boys.

g. The investigator went on to conclude that she found overwhelming evidence that demonstrates that you continued to engage in a troubling pattern of furnishing alcohol to minors. (See Charge 4 .)

h. The investigator also determined from her investigation that you have repeatedly engaged in a pattern of misconduct in which you collect personal information from minor children that you then later use to embarrass the minors or their parents to deflect the issue off of yourself.

i. The investigator also concluded that your behavior during the April 2019 Camping Trip was insubordinate and shows a pattern of misconduct, immoral behavior, and otherwise highly inappropriate behavior for a middle school teacher . The investigator pointed out that the 2018 investigation concluded that you furnished alcohol to minors.  She also noted that following the 2018 investigation you received notice from the District warning you to cease drinking alcohol with minors.  In fact, the investigator found that in approximately April of 2019, less than six (6) months after receiving written warning and directives from the District to cease providing alcohol to minors, you once again allowed at least two (2) more minors to drink alcohol in a hotel room in Las Vegas,

- 27 -

AMENDED NOTICE TO DISMISS AND AMENDED STATEMENT OF CHARGES

1  Nevada. In fact, the investigator specifically concluded that you "almost seem to have an

2  inability to control [your]self in regard to this issue."

3  j.  To compound things, you admitted to the investigator that you chose not to contact

4      either of the minor boys' parents to inform them of the boys' plans to walk on the strip

5      because you, "did not want to deal with it."

6  k.  You continue to engage in the same type of behavior despite negative consequences. For

7      instance, you have admitted on multiple occasions that you were disciplined in the

8      military after providing alcohol to underage troops. In addition, as previously detailed,

9      you went through a similar investigation with the District in 2018; wherein it was

10     discovered that your conduct of providing alcohol to minors had been reported to law

11     enforcement and to CPS. Moreover, your job was placed in jeopardy in 2018 as a result

12     of this immoral conduct. Yet, despite all of the above listed incidents, you have once

13     again been found to have provided alcohol to minors, a mere six months after your most

14     recent prior incident.

15  (See June 8, 2021 Confidential Report of Investigation, attached as Exhibit 35.)

16  47. Your overall conduct as detailed herein negatively impacts your working relationships with

17     students and your colleagues, your job effectiveness, the efficiency of operations, overall staff,

18     parent, and student morale, and has compromised the safety and welfare of

19     students. Moreover, your actions have had a detrimental effect on your students and their

20     parents and the operations of the District. Your conduct as described above constitutes a clear

21     violation of District policies and regulations. Not only has your conduct eroded your

22     relationship with your students, but it's also created distrust and tarnished your reputation in

23     the community. Based on the foregoing, the District has lost all confidence in your ability to

24     continue serving as an employee of the District and seeks to dismiss you from your

25     employment.

26  ## RECOMMENDATION FOR DISCIPLINE

27     The facts described above demonstrate: (1) immoral conduct; (2) unprofessional conduct; (3)

28  unsatisfactory performance; (4) evident unfitness for service; and (5) persistent violation of, or refusal

- 28 -

**AMENDED NOTICE TO DISMISS AND AMENDED STATEMENT OF CHARGES**

1  to obey, the school laws of the State, or reasonable regulations prescribed for the government of public

2  schools by the state board or by the governing board of the District.  The above charges therefore

3  support, separately or in any combination, your dismissal from employment with the District.

4  **SUPPLEMENTAL CHARGES**

5  Subsequent to the service of these amended charges, additional amended or supplemental

6  charges may be served upon you.  The Board delegates authority to the Superintendent, or designee,

7  to change, amend and/or supplement these charges.  If the amended or supplemental charges present

8  new information, you will be afforded an opportunity to respond to the new charges.

9  **NOTICE OF RIGHT TO DEFEND AND REQUEST A HEARING**

10  You are hereby notified that this document constitutes the District's charges against you

11  pursuant to Education Code sections 44932, 44934, and 44939.

12  On or about April 22, 2021, the District received your Demand for Hearing form in response

13  to the initial charges served on you on February 12, 2021.  The hearing is currently scheduled to take

14  place from October 4, 2021, through October 15, 2021.  If you would like an opportunity to respond

15  to the amended Charges prior to hearing, please contact my office.  Otherwise, you will have the right

16  to respond to the Charges at the hearing.  The hearing shall be commenced pursuant to Education

17  Code sections 44944, *et seq.*, and conducted in accordance with Government Code sections 11500,

18  *et seq.*  A true and correct copy of Title 2, Division 3, Part 25, Chapter 4, Article 3, (commencing

19  with section 44930) of the California Education Code is attached to this Notice as Exhibit 36.

20  Under Education Code section 44031, a copy of this letter and attachments will be placed in

21  your personnel file.  You may prepare a written response to this letter and its attachments, and it

22  will be attached to this letter in your personnel file.  The undersigned declares that, under penalty of

23  perjury and the laws of the State of California, the foregoing is true and correct to the best of my

24  information and belief.

25

26  Dated:  6-11-2021

27  Lisa Fraser
   Superintendent

28

- 29 -

**AMENDED NOTICE TO DISMISS AND AMENDED STATEMENT OF CHARGES**