William J. Becker, Jr., Esq. (SBN: 134545)
Bill@FreedomXLaw.com
Freedom X
11500 Olympic Blvd., Suite 400
Los Angeles, California 90064
Telephone: (310) 636-1018

Counsel for *David M. Kissner*

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DAVID M. KISSNER, <br><br> Plaintiff, <br><br> vs. <br><br> LOMA PRIETA JOINT UNION SCHOOL DISTRICT, et al., <br><br> Defendants. | Case No. 22-CV-00949-CRB <br><br> *Hon. Charles R. Breyer* <br><br> **PLAINTIFFS' [CORRECTED][1] OPPOSITION TO DEFENDANTS' SECOND MOTION FOR SUMMARY JUDGMENT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF** <br><br> **Date:** January 26, 2023 <br> **Time:** 10:00 a.m. <br> **Ctrm.:**   6 <br><br> **Compl. Filed:** February 16, 2022 <br> **SAC Filed:** March 20, 2022 <br> **Trial Date:** None set |

---

[1] This version corrects typographical and stylistic errors in the original filed today.

**Pl.'s Opp'n To Second Motion For Summ. J.**                                   Case No. 22-CV-00949-CRB

# TABLE OF CONTENTS

TABLE OF CONTENTS ................................................................................................................. i

TABLE OF AUTHORITIES ......................................................................................................... ii

I.   SUMMARY OF ARGUMENT ........................................................................................ 1

II.  SUMMARY OF RELEVANT AND MATERIAL FACTS ............................................. 2

III. ARGUMENT ..................................................................................................................... 5

    A.  Summary Judgment Cannot Be Granted If Evidence Supports Plaintiff's Causes Of Action ............................................................................................................... 5

    B.  A Clearly Established Right Precludes Qualified Immunity ............................. 6

    C.  Stigma Plus Defamation Standard ...................................................................... 6

    D.  Kissner Had A Clearly Established Right To Receive Procedural Due Process Protections Against The Serious Impairment Of His Future Employment Opportunities ....................................................................................................... 7

        1.  Kissner Has A Liberty Interest In Other Employment Opportunities ................. 7

        2.  It Was Clearly Established Both Prior To And After The Public Disclosure Of The Stigmatizing Grooming Allegations That The District Was Required To Provide Some Form Of Due Process Protection ...................................................... 9

        3.  Kissner's Future Employment Opportunities Were Seriously Impaired When Defendants Deprived Him Of His Constitutional Right To Procedural Due Process By Failing To Remove Or Redact The Stigmatizing Allegations From the Initial And Amended Statement Of Charges ........................................... 10

        4.  Kissner's Future Employment Opportunities Were Seriously Impaired When Defendants Deprived Him Of His Constitutional Right To Procedural Due Process By Failing To Offer Him The Opportunity To File A Reverse PRA Lawsuit .............................................................................................................. 11

        5.  Kissner's Future Employment Opportunities Were Seriously Impaired When Defendants Deprived Him Of His Constitutional Right To Procedural Due Process By Failing To Give Him A Name-Clearing Hearing ............................ 12

IV.  CONCLUSION ............................................................................................................... 13

i

Pl.'s Opp'n To Second Motion For Summ. J.    Case No. 22-CV-00949-CRB

# TABLE OF AUTHORITIES

**Cases**

*Anderson v. Liberty Lobby, Inc*.
    477 U.S. 242 (1986) .................................................................................................. 5, 6

*Bakersfield City School Dist. v. Superior Court*
    118 Cal.App.4th 1041 (2004) ......................................................................................... 10

*Board of Regents of State Colleges v. Roth*
    408 U.S. 564 (1972) ................................................................................................ passim

*Cafeteria Workers v. McElroy*
    367 U.S. 886 (1961) ................................................................................................ 7, 8, 9

*Celotex Corp. v. Cattrett*
    477 U.S. 317 (1986) ............................................................................................................ 5

*Chaudhry v. Aragon*
    68 F.4th 1161 (9th Cir. 2023) ................................................................................ 1, 6, 7

*Collier v. Windsor Fire Protec. Dist. Bd. of Directors*
    No. C 08-2582 PJH, 2011 WL 4635036 (N.D. Cal. Oct. 6, 2011) ................................... 8

*ERV, Inc. v. Superior Ct*.
    143 Cal.App. 4th 742 (2006) ......................................................................................... 10

*Golden Day Schools, Inc. v. State Dept. of Educ*.
    83 Cal. App. 4th 695 (Cal. App. 2d Dist. 2000) ................................................................ 8

*Gray v. Union County Intermediate Education Dist*.
    520 F.2d 803 (9th Cir. 1975) ............................................................................................ 4

*Hernandez v. City of San Jose*
    897 F.3d 1125 (9th Cir. 2018) .......................................................................................... 6

*Hope v. Pelzer*
    536 U.S. 730 (2002) ......................................................................................................... 6

*In re Selcraig*
    705 F.2d 789 (5th Cir. 1983) .......................................................................................... 13

*Joint Anti–Fascist Refugee Comm. v. McGrath*
    341 U.S. 123 (1951) .................................................................................................. 8, 12

*Katzberg v. Regents of the University of California*
    29 Cal.4th 300 (2002)). ................................................................................................... 13

*Keenan v. Allan*
    91 F.3d 1275 (9th Cir.1996) ............................................................................................. 5

*Kisela v. Hughes*
    138 S. Ct. 1148 (2018) ..................................................................................................... 6

ii

**Pl.'s Opp'n To Second Motion For Summ. J.**         Case No. 22-CV-00949-CRB

*Kreutzer v. City and Cnty. of San Francisco*
    166 Cal. App. 4th 306 (Cal. App. 1st Dist. 2008)..................................................... 13

*Marken v. Santa Monica-Malibu Unified School Dist.*
    202 Cal.App.4th 1250 (2012) ............................................................................ 1, 11, 12

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*
    475 U.S. 574 (1986)........................................................................................................ 6

*Maxwell v. Cty. of San Diego*
    708 F.3d 1075 (9th Cir. 2013) ....................................................................................... 6

*Morrissey v. Brewer*
    408 U.S. 471 (1972)........................................................................................................ 9

*Murden v. County of Sacramento*
    160 Cal.App.3d 302 (1984) ........................................................................................... 4

*Paul v. Davis*
    424 U.S. 693 (1976)................................................................................................ 6, 7, 8

*Pearson v. Callahan*
    555 U.S. 223 (2009)........................................................................................................ 6

*Quinn v. Shirey*
    293 F.3d 315 (6th Cir. 2002) ....................................................................................... 13

*Siegert v. Gilley*
    500 U.S. 226 (1991)................................................................................................ 6, 7, 8

*Silva v. City of Los Gatos*
    No. 5:21-CV-02639-EJD 2021 WL 5847885 (N.D. Cal. Dec. 9, 2021) ........................ 8

*Taylor v. Resolution Trust Corp.*
    312 App. D.C. 427, 56 F.3d 1497 (D.C. Cir. 1995) ...................................................... 8

*Taylor v. Riojas*
    141 S. Ct. 52 (2020)........................................................................................................ 6

*Tolan v. Cotton*
    572 U.S. 650 (2014)........................................................................................................ 6

*United States v. Lovett*
    328 U.S. 303 (1946)........................................................................................................ 8

*White v. Pauly*
    137 S. Ct. 548 (2017)...................................................................................................... 6

**Statutes**

42 U.S.C. § 1983............................................................................................................... 13

**Rules**

Fed. R. Civ. P. 56............................................................................................................... 5

iii

Pl.'s Opp'n To Second Motion For Summ. J.                    Case No. 22-CV-00949-CRB

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. SUMMARY OF ARGUMENT

The Court has asked the parties "to focus in these proceedings on qualified immunity as it pertains to Kissner's claim that he was entitled to due process in connection with, and at the time of, the PRA disclosures." (Order, Dkt. No. 113.) The Court has further asked to hear from the parties regarding "whether the PRA disclosures, which took place in April and July of 2021, in advance of the December 2021 termination, could themselves have worked 'the denial of some more tangible interest' (quoting *Chaudry v. Aragon*, 68 F.4th 1161, 1170 (9th Cir. 2023), and if so, whether Defendants are entitled to qualified immunity for causing any such harm." *Id*. The Court expressed concern about any harm to Kissner by the PRA disclosures, stating that it "is not clear to the Court why, if Kissner was harmed by the PRA disclosures, process received in connection with a subsequent event alleviates that harm." *Id*.

Defendants have mistakenly limited their argument solely to the scope of Kissner's property interest in his employment with the Loma Prieta Joint Union School District ("District"). Kissner additionally possesses a clearly established liberty interest in other employment opportunities and a rightful claim to due process safeguards in them, yet was unjustly deprived of these protections before and after the public disclosure of the stigmatizing grooming allegations. The precedent for these due process measures is clearly established by the Supreme Court's ruling in *Mathews v. Eldridge*, 424 U.S. 319, 334 (1976) ("*Mathews*") and is not dependent on statutory safeguards found in the California Education Code, the California Public Records Act, or elsewhere.

Before the grooming allegations became public, the defendants were asked to either remove or redact them. Ignoring this demand, they neither implemented nor contemplated any practical procedural safeguards, nor did they make any effort to provide Kissner with any justification for rejecting them at the time or at any time since. When the public records requests were received, defendants declined to notify Kissner of the requests in order to afford him the opportunity to challenge their public release by filing a reverse PRA lawsuit. Although they were under no statutory obligation to provide him such notice, clearly established case law they referenced in their responses (*Marken v. Santa Monica-Malibu Unified School Dist*., 202 Cal.App.4th 1250 (2012).) gave them that option. Finally, after the grooming allegations became public, defendants were asked to provide Kissner with a name-clearing hearing and were given

1

case authority supporting his right to one (e.g., *Board of Regents of State Colleges v. Roth*, 408 U.S. 564, 710 (1972)). They willfully disregarded this demand as well. In fact, with full knowledge of the relevant case law, defendants simply looked the other way.

Defendants were thus presented with and spurned three opportunities presented to them that would have provided Kissner with due process protection against the loss of his liberty interest in other employment opportunities. As such, they are not entitled qualified immunity.

## II.   SUMMARY OF RELEVANT AND MATERIAL FACTS

The Loma Prieta Joint Union School District ("District") initiated dismissal proceedings against Plaintiff David M. Kissner ("plaintiff" or "Kissner") by serving him on February 12, 2021, with a statement of charges containing substantially false, unfounded, and defamatory allegations of child grooming. Becker Decl., ¶ 3, Exh. "1." Paragraph (g)(4) of the statement of charges alleged:

> [T]he Investigator determined there were other serious infractions on your part, which were also reviewed by the Superintendent and included in the October 18, 2018 reprimand. It was determined that there were other instances of misconduct by you with children that represent and compound the finding of a lack of professional boundaries and/or questionable teaching practices on your part. These include:
>
> [] Failing to maintain professional boundaries, including via technology and sharing private texts/messages with minors/students.
>
> [] Sharing personal information that could offend/frighten students.
>
> [] Telling students inappropriate comments of a sexual nature, including informing male student that you could give him a "small binder clip" he could use on his penis to stop his need to go to the bathroom, after you denied him the ability to leave class to go to the restroom.
>
> [] Potential grooming behavior, such as: singling out a minor and being alone with a minor; offering alcohol; asking about sex/sexual encounters; and posting images of youth partially unclothed on the internet.

*Id*. Kissner has consistently denied the allegations. *Id*., ¶ 4, Exh. 2 (October 28, 2018 letter from Kissner to Fraser).

Defendant Lisa Fraser ("Fraser") approved of and signed the statement of charges. *Id*., ¶¶ 3, Exh. 1, & ¶ 5, Exh. 3 (Fraser Dep., 33:14-34:3). The grooming allegations were included in the statement of charges without evidentiary support. *Id*., ¶ 5, Exh. 3 (Fraser Dep., 105:19-106:6; 110:2-6; 114:19-115:2; 135:24-136:3; 140:9-20; 142:14-18) & ¶ 6, Exh. 4 (Elliot Dep., 162:9;

2

Pl.'s Opp'n To Second Motion For Summ. J.                                          Case No. 22-CV-00949-CRB

174:12-17). In fact, at the time the statement of charges was prepared and issued, Fraser did not believe that Kissner posed a grooming risk of harm to students even two years after receiving the anonymous letter that introduced the allegation of grooming. *Id*., ¶ 5, (Fraser Dep., 174:19-25). Fraser simply included the unsubstantiated allegations from the investigative report in the statement of charges without questioning them. *Id*., (105:19-106:6; 110:2-6; 114:19-115:2).

On March 22, 2021, Kissner's attorney, Bill Becker, wrote a letter to Brian Bock ("Bock"), the attorney for the District, seeking a "predeprivation safeguard[] [that] minimize[s] the risk of error in the initial [Skelly] decision to deprive David of his property interest in the continuation of his employment" and demanding the District remove the stigmatizing grooming allegations from the charging documents before they could inflict harm upon Kissner's reputation as a middle school teacher. *Id*., ¶ 7, Exh. "5":

> [Re:] Potential Grooming Behavior" (SOC, ¶ 4(g))
>
> These slanderous charges lack any substance and are shamelessly based on nothing more than anonymous inadmissible hearsay. Accusations of "potential grooming," asking about sex, etc., are made with NO SOURCE, NO VICTIM, NO DETAILS, NO OFFICIAL COMPLAINT, NO REPORTS. A silly incident involving a binder clip is transformed into a sinister act of predation. We question the competency of the investigator, the Skelly officer, and the Superintendent for including these unsubstantiated salacious charges. This is the work of depraved, cowardly saboteurs seeking to destroy an honorable man at any cost. <u>Should these accusations remain in these proceedings or otherwise find their way toward republication, we will not hesitate to hold the District and each person involved accountable</u>.

*Id*. (Emphasis added.) Neither Bock nor District officials responded to this demand. *Id*., ¶ 7.

In April 2021, the District received a request from an individual identifying himself as Dan Dale for "the charges for Mr. Kissner's dismissal." *Id*., ¶ 8, Exh. 6 (Dan Dale PRA Request). Plaintiff was not informed of the request. *Id*., ¶ 8. Defendant Fraser responded to the request within an hour of receiving it, and included an unredacted copy of the Statement of Charges containing the unfounded grooming allegations. *Id*., ¶ 9, Exh. 7, (response letter); ¶ 5, Exh. 3 (Fraser dep. (169:22-170:5; 170:21-171:7; 173:20-25.))

In May 2021, Becker wrote again to Bock. In his letter, he demanded the District provide Kissner with a name-clearing hearing, citing relevant legal authority for it:

> [W]e make demand on the District … [for a] name-clearing hearing due to the deprivation of David's liberty interest. As you know, the right to a name-clearing hearing may be triggered if the employee is disciplined based on a charge of misconduct that stigmatizes the employee's reputation or seriously impairs the

3

Pl.'s Opp'n To Second Motion For Summ. J.                                   Case No. 22-CV-00949-CRB

employee's reputation to earn a living, or might seriously damage the employee's standing or association in the community. *Gray v. Union County Intermediate Education Dist*. 520 F.2d 803, 806 (9th Cir. 1975). At minimum, notice and an opportunity to be heard prior to the termination must be provided. *Board of Regents v. Roth*, 408 U.S. 564, 570, n. 7, 573, n. 12 (1972). The opportunity to be heard must be at a reasonable time and in a reasonable manner. *Murden v. County of Sacramento* (1984) 160 Cal.App.3d 302, 311.

*Id*., ¶ 10, Exh. 8 (demand letter). Neither Bock nor District officials responded to this demand. *Id*., ¶ 10.

On June 11, 2021, Kissner was served with an amended statement of charges containing the identical stigmatizing allegations. On July 6, 2021, the District received a PRA request seeking a copy of the amended statement of charges from an individual identifying himself as Alan Hessenflow. Fraser's successor, Defendant Grier, responded to the request by releasing the amended statement of charges containing the grooming allegations. *Id*., ¶ 11, Exh. 9 (Grier PRA response).

Lacking evidence in support of the grooming allegations, during the dismissal hearings, the District ultimately offered into evidence a version of the amended statement of charges with the allegations redacted. *Id*., ¶ 12, Exh. 10 (redacted Amended Statement of Charges).

On April 16, 2021, Dale posted the original statement of charges on local social media forums, where they received critical attention from the community. Kissner Decl., ¶ 3, Exh. 1 (discussion thread); Becker Decl., ¶ 8, Exh. "6" (link: "Dale PRA April 2021.pdf"). Hessenflow reposted it on Facebook the same day. Kissner Decl., ¶ 3, Exh. 2. Additionally, Hessenflow appears to be the creator of a website featuring a link to the unredacted amended statement of charges. Becker Decl., ¶ 13, Exh. 11 (screenshot); https://davidmichaelkissner.wordpress.com/.

News coverage of these proceedings continues to mention the grooming allegations. https://news.bloomberglaw.com/daily-labor-report/school-district-must-face-former-teachers-defamation-claim; *id*., ¶ 14, Exh. 12 (John Woolley, Bloomberg Law News, "School District Must Face Former Teacher's Defamation Claim," September 11, 2023 (screenshot with subheading: "Termination document contained allegations of 'grooming' ").)

The public disclosure of the stigmatizing grooming allegations has made it difficult for Kissner to obtain suitable employment opportunities. Kissner Decl, ¶ 5. In September, 2022, Kissner was hired by Elevate, Inc. ("Elevate") to provide online math instruction to students at Liberty Elementary School District ("Liberty"), a public school district in Buckeye, Arizona. *Id*.,

4

Pl.'s Opp'n To Second Motion For Summ. J.                    Case No. 22-CV-00949-CRB

1  ¶ 5. After eight weeks in the position, students and/or staff at the Liberty school accessed newspaper or internet articles about Loma Prieta District's allegations against Kissner, and students asked him about it in class. *Id.*, ¶ 5, Exh. 3 (PL006804). Kissner was promptly notified by email that he was being removed from the program at Liberty. *Id.*, ¶ 6, Exhs. 4 (PL006805) & 5 (PL006806). Elevate terminated Kissner's employment shortly thereafter. *Id.* ¶ 5. Kissner gave sworn testimony concerning the incident at a deposition on June 9, 2023. *Id.*, ¶ 7, Exh. 6. Since then, Kissner has applied for work with numerous online and in-person education employers, both with private companies and public school districts, and has had limited success, even in a climate of extreme teacher shortage. *Id.* ¶ 8.

### III.     ARGUMENT

#### A.     Summary Judgment Cannot Be Granted If Evidence Supports Plaintiff's Causes Of Action

Summary judgment is proper where the pleadings, discovery, and affidavits show that there is "no genuine dispute as to any material fact and the [moving] party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Material facts are those which may affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute as to a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party. *Id.*

The moving party for summary judgment bears the initial burden of identifying those portions of the pleadings, discovery, and affidavits that demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Cattrett*, 477 U.S. 317, 323 (1986). Where the moving party will have the burden of proof on an issue at trial, it must affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party. *Id.* But on an issue for which the opposing party will have the burden of proof at trial, the moving party need only point out "that there is an absence of evidence to support the nonmoving party's case." *Id.*

Once the moving party meets its initial burden, the nonmoving party must go beyond the pleadings to demonstrate the existence of a genuine dispute of material fact by "citing to specific parts of material in the record" or "showing that the materials cited do not establish the absence or presence of a genuine dispute." Fed. R. Civ. P. 56(c). A triable dispute of fact exists only if there is sufficient evidence favoring the nonmoving party to allow a jury to return a verdict for that party. *Anderson*, 477 U.S. at 249. If the nonmoving party fails to make this showing, "the moving party is entitled to judgment as a matter of law." *Celotex*, 477 U.S. at 323.

5

Pl.'s Opp'n To Second Motion For Summ. J.                                    Case No. 22-CV-00949-CRB

It is not a court's task "to scour the record in search of a genuine issue of triable fact." *Keenan v. Allan*, 91 F.3d 1275, 1279 (9th Cir.1996) (internal citation omitted). Rather, a court is entitled to rely on the nonmoving party to "identify with reasonable particularity the evidence that precludes summary judgment." *See id*. When deciding a summary judgment motion, a court must view the evidence in the light most favorable to the nonmoving party and draw all justifiable inferences in its favor. Anderson, 477 U.S. at 255; *see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

### B. A Clearly Established Right Precludes Qualified Immunity

"Qualified immunity protects government officers from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Hernandez v. City of San Jose*, 897 F.3d 1125, 1132 (9th Cir. 2018) (quotation and citation omitted). "To determine whether an officer is entitled to qualified immunity, [courts] ask, in the order [they] choose, (1) whether the alleged misconduct violated a right and (2) whether the right was clearly established at the time of the alleged misconduct." *Maxwell v. Cty. of San Diego*, 708 F.3d 1075, 1082 (9th Cir. 2013) (citing *Pearson v. Callahan*, 555 U.S. 223, 232, 236 (2009)).

If there was a violation, the "salient question" is whether the law at the time gave the defendants "fair warning" that their conduct was unconstitutional. *Tolan v. Cotton*, 572 U.S. 650, 656 (2014). Courts should not define clearly established law "at a high level of generality." *Kisela v. Hughes*, 138 S. Ct. 1148, 1152 (2018) (citation omitted). On the other hand, "a general constitutional rule already identified in the decisional law may apply with obvious clarity to the specific conduct in question." *Taylor v. Riojas*, 141 S. Ct. 52, 53-54 (2020) (quoting *Hope v. Pelzer*, 536 U.S. 730, 741 (2002)); accord *White v. Pauly*, 137 S. Ct. 548, 551 (2017).

### C. Stigma Plus Defamation Standard

Garden variety defamation "is a tort actionable under the laws of most States, but not a constitutional deprivation." *Siegert v. Gilley*, 500 U.S. 226, 233 (1991) ("*Siegert*"). However, if a government official's act of defamation results in a plaintiff being deprived of a previously held constitutionally protected right, a plaintiff can bring a claim of defamation under Section 1983, arguing that he has been deprived of a constitutionally protected right without the procedural guarantees of the Fourteenth Amendment. *Paul v. Davis*, 424 U.S. 693, 708–09 (1976).

6

Pl.'s Opp'n To Second Motion For Summ. J.   Case No. 22-CV-00949-CRB

To establish "stigma-plus" defamation, "a plaintiff must show: (1) the public disclosure of a stigmatizing statement by the government; (2) the accuracy of which is contested; (3) plus the denial of some more tangible interest such as employment." *Chaudhry v. Aragon*, 68 F.4th 1161, 1170 (9th Cir. 2023) (cleaned up). The denial of employment opportunities other than with the terminating employer qualifies as such a tangible interest in employment. *See*, *e.g.*, *Paul v. Davis*, 424 U.S. 693, 705 (1976).

In the Ninth Circuit, a plaintiff can satisfy the "stigma plus" test by alleging that the injury to his reputation was "inflicted in connection with a federally protected right," such as "defamation in the course of termination of public employment by the state." *Chaudhry v. Angell*, No. 173-182, 2021 WL 4461667, at *33 (E.D. Cal. Sept. 29, 2021), aff'd sub nom. *Chaudhry v. Aragon*, 68 F.4th 1161 (9th Cir. 2023); *see also Board of Regents of State Colleges v. Roth*, 408 U.S. 564, 710 (1972) ("*Roth*").

### D. Kissner Had A Clearly Established Right To Receive Procedural Due Process Protections Against The Serious Impairment Of His Future Employment Opportunities

1. <u>Kissner Has A Liberty Interest In Other Employment Opportunities</u>

In *Board of Regents v. Roth*, *supra*, 408 U.S. 564, a non-tenured faculty member at a state university sued for violation of his due process rights after the school declined to renew his contract without stating a reason. In rejecting the claim, the United States Supreme Court opined that " '[w]here a person's good name, reputation, honor, or integrity is at stake because of what the government is doing to him, notice and an opportunity to be heard are essential.' [Citations.] In such a case, due process would accord an opportunity to refute the charge...." *Id*. at 573 (fn. omitted.)

It is a constitutionally "established principle" that reputational injury deprives a person of liberty when combined not only with loss of present employment, but with the loss of future employment. *Siegert v. Gilley*, *supra*, 500 U.S. at 241-42 & 244 (Kennedy, J., dissenting) ("*Siegert*"). The Supreme Court has "repeatedly recognized that an individual suffers the loss of a protected liberty interest 'where government action has operated to bestow a badge of disloyalty or infamy, <u>with an attendant foreclosure from other employment opportunity</u>.' " *Id*. at 241 (quoting *Paul v. Davis*, 424 U.S. 693, 705 (1976) ["*Paul*"], in turn quoting *Cafeteria Workers v. McElroy*, 367 U.S. 886, 898 (1961) ["*McElroy*"].) (Emphasis added.) "Thus, although the at-will government employee in *Board of Regents of State Colleges v. Roth*, 408 U.S. 564 (1972) "*Roth*",

7

Pl.'s Opp'n To Second Motion For Summ. J.                                   Case No. 22-CV-00949-CRB

did not have a legal entitlement to retain his job, the Court recognized that a liberty interest would be deprived where 'the State ... imposed on [the plaintiff] a stigma or other disability <u>that foreclosed his freedom to take advantage of other employment opportunities</u>.' " *Siegert* at 241 (quoting *Paul v. Davis*, 424 U.S. at 573) (parallel citation omitted).

Justice Kennedy's *Siegert* analysis bears repeating at some length because it traces the Court's development of the liberty interest impacted by stigmatizing statements made without providing due process:

> Although *Paul* rejected a private employee's claim, it expressly reaffirmed *Roth*, *McElroy*, and other decisions recognizing that stigmatization deprives a person of liberty when it causes loss of present <u>or future government employment</u>. *See Paul*, *supra*, at 702–710. Indeed, the *Paul* Court explained the decision in *Joint Anti–Fascist Refugee Comm. v. McGrath*, 341 U.S. 123 (1951) ["*McGrath*"]—which held that the plaintiffs stated a cognizable claim against the Attorney General's designation of certain organizations as "Communist" on a list furnished to the Civil Service Commission—primarily in terms of the deprivation this action would work on the present <u>and future government employment opportunities</u> of members of such organizations. *See Paul*, 424 U.S., at 702–705,; *see also id.*, at 704 (" 'To be deprived not only of present government employment but <u>of future opportunity</u> for it certainly is no small injury when government employment so dominates the field of opportunity,' " quoting *Joint Anti–Fascist Refugee Comm.*, *supra*, 341 U.S., at 184–185 (Jackson, J., concurring)). Foreclosure of opportunity for <u>future government employment</u> clearly is within the ambit of the "more tangible interests" that, when coupled with reputation, create a protected liberty interest. *See Paul, supra*, 424 U.S., at 701–702 (noting the Court's recognition of a liberty interest in *United States v. Lovett*, 328 U.S. 303 (1946), where congressional action stigmatized three Government employees and " 'prohibit[ed] their ever holding a government job' ").

*Id*. at 242. (Parallel citations omitted.) (Emphasis added.)

Thus, defendants' focus on Kissner's protected property interest in his employment with the District overlooks his equally tangible property interest in future government employment. Extending this right to non-governmental employment opportunities, the court in *Taylor v. Resolution Trust Corp.*, 312 App. D.C. 427, 56 F.3d 1497, 1506 (D.C. Cir. 1995) concluded, based on the Supreme Court cases reviewed in *Siegert*, that government action that "precludes the plaintiff from so broad a spectrum of opportunities that it interferes with the right to follow a chosen profession or trade" may result in a change of status sufficient to implicate a liberty interest. *Cited with approval in Golden Day Schools, Inc. v. State Dept. of Educ.*, 83 Cal. App. 4th 695, 707 (Cal. App. 2d Dist. 2000), as modified on denial of reh'g (Sept. 27, 2000); *and see Roth* at

8

Pl.'s Opp'n To Second Motion For Summ. J.                                Case No. 22-CV-00949-CRB

573; *Silva v. City of Los Gatos*, No. 5:21-CV-02639-EJD, 2021 WL 5847885, at *2 (N.D. Cal. Dec. 9, 2021), aff'd, No. 22-15017, 2023 WL 1989771 (9th Cir. Feb. 14, 2023); *Collier v. Windsor Fire Protec. Dist. Bd. of Directors*, No. C 08-2582 PJH, 2011 WL 4635036, at *9 (N.D. Cal. Oct. 6, 2011) ("To implicate constitutional liberty interests, … the reasons for dismissal must be sufficiently serious to 'stigmatize' or otherwise burden the individual so that he is not able to take advantage of other employment opportunities.")

Accordingly, Kissner has a protected liberty interest in other employment opportunities, especially government employment opportunities. Not only was the public disclosure of the stigmatizing grooming allegations foreseeably capable of depriving Kissner of those prospects, at least on one occasion there is evidence that it did.

2. It Was Clearly Established Both Prior To And After The Public Disclosure Of The Stigmatizing Grooming Allegations That The District Was Required To Provide Some Form Of Due Process Protection

"Once it is determined that due process applies, the question remains what process is due." *Morrissey v. Brewer*, 408 U.S. 471, 481 (1972). "The very nature of due process negates any concept of inflexible procedures universally applicable to every imaginable situation." *Cafeteria Workers v. McElroy*, 367 U.S. *supra*, at 895. Unlike some rules, due process "is not a technical conception with a fixed content unrelated to time, place and circumstances." *Mathews v. Eldridge*, 424 U.S. 319, 334 (1976). (Cleaned up.) In *Mathews*, the Supreme Court articulated three factors that guide decisions about "what process is due." *Id*. at 333. They are: (1) the private interest that will be affected by the official action; (2) the risk of an erroneous deprivation of such interest through the procedures used and the probable value, if any, of alternative or substitute procedural safeguards; and (3) the government interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail. *Id*.

Kissner was entitled to, but was never given, procedural due process either prior to or after the public disclosure. As elaborated below, defendants deprived Kissner of due process by failing to (1) remove or redact the grooming allegations from the statement of charges, (2) provide him with an opportunity to challenge the public disclosure of the grooming allegations through a reverse PRA lawsuit, and (3) provide him with a name-clearing hearing within a reasonable time after it learned of his desire for one.

9

Pl.'s Opp'n To Second Motion For Summ. J.                    Case No. 22-CV-00949-CRB

3. <u>Kissner's Future Employment Opportunities Were Seriously Impaired When Defendants Deprived Him Of His Constitutional Right To Procedural Due Process By Failing To Remove Or Redact The Stigmatizing Allegations From the Initial And Amended Statement Of Charges</u>

Prior to the PRA disclosures, Kissner placed defendants on notice that the grooming allegations were unsubstantiated and baseless. Kissner's attorney unambiguously characterized the allegations as slanderous, lacking substance, shameless, and "made with NO SOURCE, NO VICTIM, NO DETAILS, NO OFFICIAL COMPLAINT, NO REPORTS." In fact, Defendant Fraser has testified that she had no reasonable cause for believing the charges to be true. Through counsel, Kissner demanded that the accusations be purged from all records in the termination proceedings: "Should these accusations remain in these proceedings or otherwise find their way toward republication, we will not hesitate to hold the District and each person involved accountable."

The unambiguous message conveyed to the District and the defendants that, without the provision of due process, the allegations would inevitably subject Kissner to significant reputational harm could not have been made more clearly or emphatically. Yet, the defendants not only refused to respond and disregarded Kissner's emphatic demand but failed to offer any procedural recourse that might have prevented the predictable harm to a middle-school math and science teacher.

It is especially egregious where the defendants had taken care to reference well-established case law in their PRA response letters holding that "records of complaints or investigations against a public employee can be disclosed only if 'the complaint is of a substantial nature and there is reasonable cause to believe the complaint or charge of misconduct is wellfounded.' " *Bakersfield City School Dist. v. Superior Court*, 118 Cal.App.4th 1041, 1044 (2004); *see also*, *ERV, Inc. v. Superior Ct.*, 143 Cal.App. 4th 742 (2006). Applying the *Mathews v. Eldridge* test, the risk of an erroneous deprivation of Kissner's right to obtain future employment opportunities was clearly evident, and removing or redacting the allegations was an obvious procedural safeguard imposing absolutely no administrative burden on defendants.

Defendants maintain they have provided all procedural due process owed to Kissner in connection with termination proceedings. But defendants have not addressed Kissner's tangible interest in other employment opportunities, only his continued employment with the District. This reflects the same deficiency exhibited by the defendants in their initial motion for summary

10

Pl.'s Opp'n To Second Motion For Summ. J.                                              Case No. 22-CV-00949-CRB

judgment. ECF No. 106 (Order, 23:15-17) ("Defendants' reply brief therefore failed to address the argument Kissner actually made in his briefing—that he was denied adequate process when the PRA disclosures took place.").

> 4. **Kissner's Future Employment Opportunities Were Seriously Impaired When Defendants Deprived Him Of His Constitutional Right To Procedural Due Process By Failing To Offer Him The Opportunity To File A Reverse PRA Lawsuit**

This Court's order denying defendants' partial summary judgment motion as to stigma-plus defamation left no doubt that the failure to provide Kissner with an opportunity to file a reverse PRA lawsuit presents a triable issue:

> Defendants are correct that Kissner received a lot of process in connection with his layoff and termination. [] But however much process he got in connection with his layoff and termination, Kissner seems to have gotten no process in connection with the PRA disclosures by Fraser and Grier. Some process would have been possible. The District could have redacted the grooming allegations from the Statement of Charges, or at the very least it could have notified Kissner's counsel of the PRA requests in time for him to file a reverse-PRA lawsuit. Instead, Defendants released the Statement of Charges in their entirety (and, in the first instance, within an hour of the request). See Opp'n Ex. 6. Once the Statement of Charges was released to the public, the genie was out of the bottle: the stigmatizing grooming allegations that Kissner's counsel had earlier demanded the District remove were public.

(ECF No. 99.)

In their responses to the PRA requests, defendants cited the case of *Marken v. Santa Monica-Malibu Unified School Dist.*, 202 Cal.App.4th 1250 (2012). In *Marken*, a mathematics teacher at Santa Monica High School, received a written reprimand from the Santa Monica-Malibu Unified School District for violating the District's policy prohibiting the sexual harassment of students. Following a student's complaint, the district investigated Marken, who had been placed on administrative leave during the investigation. Michael Chwe, a professor of political science at UCLA and the father of two children who attend Santa Monica High School, made a California Public Records Act request to the District, seeking copies of all public records concerning the investigation of Marken and the decision to place him on leave. Before releasing the records, the District notified Marken of its intention to do so. Marken then filed a complaint for injunctive and declaratory relief/petition for writ of mandate, alleging that the disclosure of his personal records was not authorized under the CPRA and would violate his constitutional and statutory rights of privacy.

11

Pl.'s Opp'n To Second Motion For Summ. J.          Case No. 22-CV-00949-CRB

The trial court denied Marken's request for a preliminary injunction, and the appellate court affirmed. The court acknowledged Marken's significant privacy interest, but concluded that the records of the investigation reflected "substantial or well founded" claims of misconduct, based on reliable information from an independent investigator's report. Therefore, disclosure of the records, as redacted by the trial court, was required.

In this case, the evidence shows that defendants' allegations were not well-founded and that the information should have been redacted. Disclosure is "permissive" but not "mandatory." *Id*. at 1262. "The CPRA allows nondisclosure but does not prohibit disclosure. *Id*. *Marken* thus demonstrates that the unfounded and stigmatizing grooming allegations against Kissner were not required and could have been redacted, but that the District also could have provided Kissner with due process protection by providing him an opportunity to file a reverse PRA lawsuit.

Defendants hide the ball by asserting that they were not compelled to provide Kissner with this opportunity. Whether compelled or not is beside the point. It was a process available to them to provide, and they most certainly rebuffed it. Defendants, however, were not free to disregard the scheme laid out in *Mathews v. Eldridge*. As the Supreme Court made clear there, a fundamental requirement of due process is the opportunity to be heard at a meaningful time and in a meaningful manner. *Id*. at 333. "This Court consistently has held that some form of hearing is required before an individual is finally deprived of a property interest." *Ibid*. "The 'right to be heard before being condemned to suffer grievous loss <u>of any kind</u> … is a principle basic to our society.' " *Ibid*. citing *McGrath*, *supra*. (Emphasis added.)

   5. <u>Kissner's Future Employment Opportunities Were Seriously Impaired When Defendants Deprived Him Of His Constitutional Right To Procedural Due Process By Failing To Give Him A Name-Clearing Hearing</u>

Finally, after the public release of the stigmatizing grooming allegations, when, as this Court aptly noted, "the genie was out of the bottle," Kissner sought a name-clearing hearing. In keeping with the holding in *Roth*, the California Supreme Court has adopted the rule that even when a public employee occupies an at-will position, terminable without cause, and hence has no due process property right to that position, it is well established that an at-will public employee's liberty interests are deprived when his discharge is accompanied by charges "that might seriously damage his standing and associations in his community" or "impose [ ] on him a stigma or other disability that foreclose[s] his freedom to take advantage of other employment opportunities." *Kreutzer v. City and Cnty. of San Francisco*, 166 Cal. App. 4th 306, 320 (Cal. App. 1st Dist. 2008)

12

Pl.'s Opp'n To Second Motion For Summ. J.                                    Case No. 22-CV-00949-CRB

(quoting *Katzberg v. Regents of the University of California*, 29 Cal.4th 300, 305 (2002)). "When such a liberty deprivation occurs, a party has a right to a 'name-clearing hearing.' " *Ibid*. "It is the denial of the name-clearing hearing that causes the deprivation of the liberty interest without due process." *Quinn v. Shirey*, 293 F.3d 315, 320 (6th Cir. 2002). "Thus, the public employer deprives an employee of his liberty interest without due process, if upon request for a name-clearing hearing, the employee is denied." *Ibid*.

Citing a Fifth Circuit case, defendants maintain that the state need only inform the stigmatized employee that the opportunity to clear his name exists upon request. (Defts.' Op. Br., 17:4-6, *citing In re Selcraig*, 705 F.2d 789, 796 (5th Cir. 1983).) However, after being apprised of Kissner's request for a name-clearing hearing, Defendants neither responded nor provided an explanation for their inaction. At the dismissal trial, they denied Kissner a hearing by redacting the stigmatizing allegations, leaving the issue of immoral conduct a moot issue before the Commission yet failing to affirmatively clear Kissner's name, thus depriving him of the opportunity. While defendants may argue that Kissner could have rebutted the allegations in those proceedings, once the allegations were removed from controversy they were rendered moot and the Commission lacked jurisdiction to consider them. Thus, Kissner was never given a name-clearing hearing.

### IV. CONCLUSION

For the foregoing reasons, defendants have failed to show, as a matter of law, that they are entitled to qualified immunity as to Kissner's third cause of action for Civil Rights Defamation under 42 U.S.C. § 1983 (stigma-plus defamation). Accordingly, the Court is respectfully asked to deny their motion.

Date: December 22, 2023            Respectfully submitted,

                                   Freedom X


                           By:     /s/ *William J. Becker, Jr.*
                                   William J. Becker, Jr.

13

Pl.'s Opp'n To Second Motion For Summ. J.                Case No. 22-CV-00949-CRB